ORIGINAL

#300022849

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**
MAR 10 2026
CLERK, U.S. DISTRICT COURT
By ___CK___
   Deputy

GALLIT FISCHMAN,
Plaintiff,

v.    Civil Action No. _____

3-26CV0770-D

EPIC SYSTEMS CORPORATION,
Defendant.

**PLAINTIFF'S ORIGINAL CIVIL COMPLAINT**

**JURY TRIAL DEMANDED**

(Wrongful Death; Negligence; Negligent Misrepresentation;

Products Liability—Design Defect; Gross Negligence)

## I. INTRODUCTION

This action arises from the design and control of a safety-critical electronic health record ("EHR") system used by hospitals to manage medication information, clinical documentation, and patient records.

Defendant Epic Systems Corporation ("Epic") develops and licenses an EHR platform used by major hospital systems throughout the United States. The platform functions as the primary repository of patient medication histories, prescribing information, and clinical reporting relied upon by physicians, hospitals, and patients.

Plaintiff brings this action in her individual capacity as the adult daughter of Dov Fischman, who died on January 6, 2025, as a wrongful-death beneficiary under Tex. Civ. Prac. &

Page 1 of 16

Rem. Code § 71.004. Dov Fischman's Epic-generated medical record did not permit reconstruction of a coherent medication timeline, identification of active versus discontinued medications, or reliable differentiation between current and historical clinical information.

These deficiencies arise from Epic's architectural design of its electronic record system. This action does not challenge physician treatment decisions or medical standards of care. The harm alleged here did not result from a physician choosing the wrong course of treatment. It resulted from an information system so structurally deficient that the information necessary to identify the problem—a current, accurate, reconciled medication record—did not exist in the record at all. That is an engineering failure, not a clinical one. Resolution of these claims does not require expert testimony regarding medical standards of care. The issues presented concern software architecture, safety engineering, and information-system design—domains independent of physician judgment.

## II. PARTIES

Plaintiff Gallit Fischman is a resident of Dallas County, Texas. She is the adult daughter of Dov Fischman, deceased, and brings this action individually in her own right as a statutory wrongful-death beneficiary under Tex. Civ. Prac. & Rem. Code § 71.004.

Defendant Epic Systems Corporation is a Wisconsin corporation headquartered in Verona, Wisconsin that designs, licenses, and maintains electronic health record software used by healthcare institutions across the United States, including Texas. Epic may be served through its principal offices at 1979 Milky Way, Verona, Wisconsin 53593.

## III. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of Texas, Defendant is a citizen of Wisconsin, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

Venue is proper in this district under 28 U.S.C. § 1391 because the events giving rise to this action occurred in Texas and Epic conducts substantial business in this district.

## IV. FACTUAL ALLEGATIONS

### A. Epic's Control Over a Safety-Critical System

Epic designs and licenses an EHR platform used for medication ordering, medication reconciliation, clinical documentation, patient communications, and clinical reporting. Epic knows that healthcare providers and patients rely on its platform as the authoritative source of medication status, prescribing responsibility, treatment history, and clinical information.

Epic maintains architectural control over core elements of the platform including database structure, medication record architecture, reporting frameworks, and system logic governing medication timelines and historical data. Epic's system obtained federal certification under the ONC Health IT Certification Program, 45 C.F.R. Part 170, representing that it met federal standards for medication management and patient safety. Healthcare institutions and patients foreseeably relied on that certification.

Epic further knew or should have known that design choices affecting medication-record structure, reporting clarity, and the differentiation of active versus historical information would directly affect how clinicians interpret patient records—and could directly affect patient safety and survival.

### B. Epic's Duty Runs Directly to Patients

Under Texas law, an entity that designs and controls a safety-critical system owes a duty of reasonable care to persons foreseeably and directly exposed to the risk of physical harm created by that system. Epic's duty of care extends beyond its hospital licensees to the patients whose records the system manages. That duty arises from three independent grounds.

First, patients are the foreseeable end users of Epic's system. Epic designs its platform knowing that medication records will be read and relied upon by patients, that patients will make or fail to flag treatment decisions based on what they can and cannot see in their records, and that errors in those records will cause harm to identifiable individuals—not merely to abstractly conceived hospital clients. Foreseeability of harm to a specific class of persons gives rise to a duty of reasonable care, and Epic's awareness that patients would rely on its system as the authoritative record of their treatment history places patients squarely within that foreseeable class.

Second, Epic maintains a direct, independent relationship with patients through its proprietary patient-portal product, MyChart, through which Epic communicates directly with patients, presents medication records and clinical summaries, and markets the product's accuracy and utility to patients as end users. Epic is not merely a behind-the-scenes vendor dealing at arm's length with sophisticated hospital clients. It directly interfaces with patients, presents itself as the source of reliable health information, and profits from patient reliance. A duty of care follows from that direct relationship.

Third, Epic's ONC certification under 45 C.F.R. Part 170 constituted a representation to the public—including to patients whose records would be managed on the platform—that the system met federal standards for medication management and patient safety. Patients are the

intended beneficiaries of those federal standards, and Epic's voluntary undertaking of certification for their benefit gives rise to an independent duty running to them.

### C. Architectural Control Versus Hospital Customization

Epic frequently represents that hospitals configure aspects of their EHR environments. However, hospitals cannot modify the underlying architecture of Epic's platform, including database structure, medication record design, reporting architecture, and system capabilities. Hospitals operate within the structural framework established by Epic, and systemic risks created by ambiguous medication records, unclear reporting outputs, or fragmented information originate from Epic's architectural design rather than hospital configuration.

This distinction is legally dispositive. The claims in this action do not depend on evaluating whether any physician interpreted the record correctly or made the right clinical decision. The claims depend on the prior question: whether the record was capable of conveying accurate medication information at all. That is a question about software architecture, not clinical judgment. Even a physician exercising perfect clinical judgment cannot act on information the system structurally failed to produce. The causal chain runs from Epic's design defect to the absence of accurate information to the inability to act—and that chain exists entirely upstream of any clinical decision.

### D. Epic's System Controlled the Structure of the Medication Record

Epic's electronic health record platform determines the structure through which medication information is created, stored, displayed, and reported within the medical record. Clinicians do not design that structure. They enter information only within the data fields, workflows, and reporting frameworks established by Epic's system architecture.

When a system architecture permits incomplete medication timelines, fails to require start and stop dates, allows discontinued medications to remain displayed as active, or permits inconsistent information to appear across reports without reconciliation, those conditions are not the result of physician judgment. They are the direct consequence of system design.

Clinicians rely on the electronic health record as the authoritative representation of the patient's medication history precisely because the system is designed to function as the centralized source of that information. Epic knew that clinicians would depend on the system's structure to communicate medication status across encounters and across providers in complex clinical environments.

Where the architecture of the system prevents the accurate medication status from being recorded or reliably reconstructed, the resulting absence of information is attributable to the system design itself. In such circumstances, the causal defect arises from the engineering structure of the record rather than from any individual clinical decision.

### E. Medication-Management Architectural Defects

Epic designed its system to permit medication entries without enforced start and stop dates, inconsistent prescriber attribution, and medication lists that do not clearly distinguish active medications from discontinued drugs. Specifically:

- Epic's medication-list architecture permits a drug to remain displayed as active after discontinuation, with no automated system-level mechanism to expire or reclassify entries;
- Epic's reconciliation module does not require affirmative clinical reconciliation at care transitions, permitting outdated entries to persist across encounters without review;

- Epic's reporting outputs can simultaneously display inconsistent information about the same drug without a system-level reconciliation requirement or alert; and
- Epic's audit-control architecture does not support reliable reconstruction of medication status at prior points in time.

These design choices foreseeably create environments in which medication histories and prescribing responsibility cannot be reliably determined. They are not configuration gaps that hospitals can fill—they are structural features of Epic's platform that hospitals have no ability to correct.

### F. Reporting and Data-Currency Failures

Epic's reporting architecture permits duplication of data across reports and commingling of historical and current information without clear indicators of data currency. These limitations make it difficult for clinicians and patients to determine the present clinical status reflected in the medical record.

### G. Epic's Knowledge of Foreseeable Harm

Epic has long been aware through published patient-safety literature, ONC guidance, and its own participation in health IT safety working groups that medication-list failures in EHR systems are a leading cause of patient harm. Epic therefore knew that defects in its medication-list architecture could foreseeably result in patients receiving or continuing dangerous medications without detection, and that those failures could cause serious injury or death in high-acuity, multi-provider settings. Despite that knowledge, Epic has not corrected the architectural defects described above and has continued to market its platform as suitable for medication management in precisely those settings.

### H. Application to Dov Fischman—Causation

Dov Fischman received care at a facility using Epic's EHR system. His care involved a high-risk immunosuppressant medication managed across multiple providers over an extended period in a rotating, multi-provider academic medical center environment—the precise clinical setting in which Epic's medication-record defects create the greatest risk.

When Plaintiff reviewed the Epic-generated medical record following her father's death, the record did not permit reconstruction of: (a) which medications were active at any specific point in time; (b) consistent medication start and stop dates; (c) which clinician bore prescribing responsibility for the continuation of the medication at issue; or (d) reliable identification of current versus historical clinical information.

Plaintiff plausibly alleges that the causal chain between Epic's design defects and Dov Fischman's death is direct and does not depend on evaluating any physician's clinical judgment. Because Epic's system did not enforce medication-timeline documentation, the medication record did not accurately reflect which drugs were active at critical points in time. Because the record did not accurately reflect active medications, the treating providers—relying on the record as the authoritative source of medication information, as Epic designed them to—could not identify the dangerous medication status from the record. Because that information was absent from the record, it was not acted upon. Because it was not acted upon, Dov Fischman died. Each step in that chain is a direct and foreseeable consequence of Epic's architectural design choices, not of physician error. The healthcare providers were using Epic's system exactly as Epic intended and marketed it to be used—as the centralized, authoritative source of medication information in a multi-provider clinical environment. The informational failure that resulted was not a misuse of the system; it was the foreseeable consequence of the system's architecture operating as designed.

Page **8** of **16**

Had Epic's system enforced medication-timeline documentation, required prescriber attribution at care transitions, reconciled active and discontinued medication entries, and produced reports that reliably differentiated current from historical clinical information, the medication status that contributed to Dov Fischman's death would have been visible in the record and correctable. The defect was a but-for cause of his death. The defect alleged here is informational and architectural: Epic's system failed to generate an accurate medication record capable of conveying the information necessary to identify and correct the dangerous medication status.

The causal chain between Epic's architectural defects and Dov Fischman's death is direct: (1) Epic's system architecture allowed medication-timeline and medication-status information to go unrecorded or to appear inconsistently; (2) clinicians and patients reasonably relied on the Epic record as the authoritative source of medication information; (3) because of the architectural defects, the record did not accurately reflect the dangerous medication status at critical times; (4) the missing information was therefore not identified or corrected; and (5) the uncorrected medication status was a but-for and proximate cause of Dov Fischman's death.

Plaintiff does not allege that Epic's system merely recorded information inaccurately after the relevant clinical decisions occurred. Rather, the defect alleged here existed at the level of system architecture and governed the structure through which medication information could be recorded, displayed, and interpreted by clinicians and patients. Because Epic's system determined the structure of the medication record itself—including whether medication timelines were enforced, whether discontinued medications remained visible as active, and whether inconsistent information could appear across reports—the absence of an accurate medication record was a direct consequence of Epic's design choices. The resulting informational defect

prevented the creation of a coherent and reliable medication record, and that absence of reliable information foreseeably prevented the identification and correction of the dangerous medication status that led to Dov Fischman's death.

### I. Epic's EHR Platform Is a Product Under Texas Law

Epic's EHR platform is a product subject to products liability under the Texas Products Liability Act, Tex. Civ. Prac. & Rem. Code §§ 82.001 et seq. The Act defines "product" broadly as any item placed in the stream of commerce for use or consumption, without limiting that definition to tangible goods. Tex. Civ. Prac. & Rem. Code § 82.001(2). Epic's EHR platform satisfies that definition. It is a fixed, non-customizable software package that Epic designs, manufactures, markets, sells, and licenses for consideration. The core architecture—the database schema, medication-record structure, reconciliation logic, and reporting framework—is determined entirely by Epic prior to distribution and is not subject to modification by the hospital licensee. Epic places its finished product into the stream of commerce, hospitals purchase and deploy it, and patients are the foreseeable end users whose safety depends on its design integrity.

To the extent the Court considers whether intangible software qualifies as a product, Texas courts have recognized that intangible items delivered commercially and capable of causing physical harm may be treated as products in the liability context—analogously to electricity, which Texas courts have held subject to product liability principles despite its intangibility. Epic's platform also functions analogously to embedded software in medical devices, where code-level defects are treated as product defects attributable to the manufacturer rather than as professional malpractice. Epic's EHR platform is not a professional service rendered in real time by human professionals exercising independent judgment; it is an engineered system whose defects are fixed in the architecture and attributable entirely to Epic's

pre-distribution design choices. In the alternative, even if the Court concludes the platform is not a product, the identical factual allegations support an independent negligence claim under Count Two.

In the alternative, even if the Court were to determine that the platform does not qualify as a product in whole or in part, the same factual allegations support an independent negligence claim—Count Two below—under which liability does not depend on product classification. The design-defect and negligence theories are pled in the alternative and are independently sufficient.

## V. CAUSES OF ACTION

### COUNT ONE: WRONGFUL DEATH

(Tex. Civ. Prac. & Rem. Code §§ 71.001–71.011)

Plaintiff incorporates all preceding paragraphs by reference. Plaintiff brings this action individually as the adult daughter of Dov Fischman and a statutory wrongful-death beneficiary under Tex. Civ. Prac. & Rem. Code § 71.004. The wrongful acts, negligence, and product defects of Epic as described herein were a proximate cause of Dov Fischman's death. As a direct result, Plaintiff has suffered and continues to suffer damages including loss of companionship, loss of society, mental anguish, loss of inheritance, and pecuniary loss.

### COUNT TWO: NEGLIGENCE

Plaintiff incorporates all preceding paragraphs by reference. Epic owed a duty of reasonable care to Dov Fischman arising from the grounds set forth in Section IV.B above. Epic breached that duty by designing and licensing an EHR system with the architectural defects described in Sections IV.D and IV.E above. Those defects were a proximate cause of Dov Fischman's death for the reasons set forth in Section IV.H above. Plaintiff suffered damages as a direct result.

## COUNT THREE: PRODUCTS LIABILITY—DESIGN DEFECT

(Tex. Civ. Prac. & Rem. Code §§ 82.001 et seq.)

Plaintiff incorporates all preceding paragraphs by reference. For the reasons set forth in Section IV.H above, Epic's EHR platform is a product within the meaning of the Texas Products Liability Act, and Epic is its manufacturer and seller. The platform contained a design defect in that it lacked enforced medication-timeline documentation, required no prescriber attribution across care transitions, permitted simultaneous display of inconsistent medication information without reconciliation, and did not support reliable reconstruction of medication status at prior points in time. The risks posed by these design choices outweigh their utility, and safer, feasible alternative designs exist and are employed in other safety-critical software systems. Such alternatives include mandatory medication-timeline enforcement with system-level start and stop date requirements, automated expiration of discontinued medications, system-level reconciliation requirements at care transitions, and reporting structures that differentiate current from historical clinical information. Such safeguards are routinely employed in other safety-critical software domains, including aviation, nuclear control systems, and medical device software, which require enforced state transitions, audit-ready status histories, and reconciliation of conflicting safety-critical data. The design defect was a proximate cause of Dov Fischman's injury and death.

Epic also failed to provide adequate warnings regarding the material limitations of its medication-record architecture to healthcare institutions and to patients who would rely on the system for safety-critical clinical decisions—a marketing defect independently actionable under § 82.001 et seq.

## COUNT FOUR: NEGLIGENT MISREPRESENTATION

Plaintiff incorporates all preceding paragraphs by reference. Epic represented that its EHR system was suitable for medication management, clinical documentation, and patient safety-critical communication, and that it met applicable federal standards for medication-record accuracy and clinical information reconciliation. These representations were false or materially misleading. Epic failed to disclose the material limitations of its medication-list architecture, reconciliation module, and reporting outputs. Epic made these representations without reasonable care as to their truth in circumstances where healthcare institutions and patients would foreseeably rely on them. Hospitals relied on Epic's representations and ONC certification in selecting and deploying the system for medication management, and Plaintiff and her father reasonably relied on the Epic-generated record and MyChart interface as accurate reflections of his medication status. Plaintiff suffered harm as a direct result of that reliance.

**COUNT FIVE: GROSS NEGLIGENCE**

(Tex. Civ. Prac. & Rem. Code § 41.003)

Plaintiff incorporates all preceding paragraphs by reference. Epic's conduct constitutes gross negligence as defined by Tex. Civ. Prac. & Rem. Code § 41.001(11). The extreme degree of risk is not merely possible—it is the documented, foreseeable consequence of deploying a medication-management system with structural defects in safety-critical clinical settings where patients receive high-risk medications across rotating multi-provider teams. The probability and magnitude of harm are both extreme: medication-record failures are a leading documented cause of preventable patient death, and Epic's platform is deployed in precisely the high-acuity academic medical center environments where that risk is most severe.

Epic had actual, subjective awareness of that risk. The ONC has issued public guidance, safety-event reports, and certification updates specifically identifying medication-list accuracy,

reconciliation failures, and active-versus-discontinued medication display as patient safety hazards in EHR systems—guidance directed at certified developers including Epic. Epic participated in the ONC Health IT Safety Center and in industry working groups convened specifically to address EHR-related medication errors. Epic received or had constructive access to incident reports, published case studies, and regulatory correspondence documenting the class of harm caused by the specific architectural defects at issue here. These materials documented the precise failure mode alleged here—persistent display of outdated or discontinued medications, lack of enforced reconciliation, and inability to reconstruct medication status in multi-provider settings—thereby giving Epic actual, subjective awareness of an extreme degree of risk to patients like Dov Fischman.

Despite that actual, subjective awareness, Epic proceeded with conscious indifference to patient welfare by declining to correct the architectural defects described above, failing to disclose those defects to deploying hospitals and patients, and continuing to represent its platform as meeting federal patient safety standards. Plaintiff is entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 in an amount sufficient to deter future conduct of the same character.

## VI. CLARIFICATION OF CLAIM NATURE

This action does not constitute a health care liability claim under Tex. Civ. Prac. & Rem. Code Chapter 74. The defendant is a software corporation, not a health care provider. The claims do not require evaluation of any physician's treatment decisions or breach of any medical standard of care. The subject matter is software architecture and engineering design, not clinical judgment. Chapter 74 has no application to these claims. These claims do not arise from "treatment, lack of treatment, or other claimed departure from accepted standards of medical

care, or health care, or safety" by a health care provider as those terms are defined in Chapter 74. The defect alleged here exists upstream of any clinical encounter: Epic's architecture prevented the creation of an accurate medication record in the first place. No evaluation of what a reasonably prudent physician would have done with information the system never generated is required.

This action also does not implicate the economic loss rule. Plaintiff's claims arise from personal injury and death, not from purely economic harm. The economic loss rule has no application where, as here, the defendant's conduct caused physical injury to a person.

Plaintiff's claims do not seek to impose duties inconsistent with federal regulation of health information technology; rather, they enforce Epic's independent duties under Texas law not to design and market an unreasonably dangerous safety-critical system or to make materially misleading statements regarding its capabilities.

## VII. DAMAGES

Plaintiff seeks all damages recoverable under applicable law, including:

- Wrongful death damages under § 71.004, including loss of companionship, mental anguish, loss of inheritance, and pecuniary loss;
- Compensatory damages in an amount to be proven at trial;
- Exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003;
- Pre- and post-judgment interest at the maximum rate permitted by law; and
- Court costs and all other relief to which Plaintiff is justly entitled.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

## IX. PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant Epic Systems Corporation for all damages proven at trial, together with exemplary damages, costs, interest, and any additional relief to which Plaintiff is entitled.

Respectfully submitted,

Date: March 4, 2026

/s/ *Gallit Fischman*
_____

GALLIT FISCHMAN, Pro Se

10114 Deermont Trail | Dallas, TX 75243 | (214) 893-6720 | gallitfischman@yahoo.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
GALLIT FISCHMAN

**DEFENDANTS**
EPIC SYSTEMS CORPORATION

**(b)** County of Residence of First Listed Plaintiff: Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Dane (WI)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gallit Fischman (Pro Se) 10014 Deermont Trail, Dallas, TX 75243
214-893-6720, gallitfischman@yahoo.com

Attorneys *(If Known)*

RECEIVED
MAR 10 2026
CLERK, U.S. DISTRICT
NORTHERN DISTRICT

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332 (Diversity of Citizenship)
Brief description of cause:
Negligence, negligent misrepresentation, and products liability arising from defective EHR system design.

## VII. REQUESTED IN COMPLAINT:
- ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $ 75.00
- CHECK YES only if demanded in complaint:
- JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 03/04/2026
SIGNATURE OF ATTORNEY OF RECORD: Gallit Fischman, Pro Se  */s/ Gallit Fisch*

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



Gallit Fischman
10114 Deermont Trail
Dallas, TX 75243

Clerk of Court
U.S. District Court
Northern District of Texas
Dallas Division
1100 Commerce St. Room 1452
Dallas, TX 75242

RECEIVED - 2
MAR 10 2026
MAILROOM