IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-CV-0770-D |
| | § | |
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**

**DEFENDANT'S MOTION TO DISMISS**

**Use of Generative Artificial Intelligence**

Plaintiff discloses that generative artificial intelligence was used to assist in drafting and revising portions of this brief.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION.............................................................................................................1

STANDARD OF REVIEW ...............................................................................................2

ARGUMENT ...................................................................................................................3

CONCLUSION ................................................................................................................24

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page**

*Amrhein v. eClinicalWorks, LLC,* 954 F.3d 328 (1st Cir. 2020)                                                        12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)                                                                          2, 5, 24

*Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005)                                                     23

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)                                                             2, 5, 24

*Butler v. Juno Therapeutics, Inc.*, 541 F. Supp. 3d 774 (S.D. Tex. 2021)                                             11

*Correct RX Pharmacy Services, Inc. v. Cornerstone Automation Systems, L.L.C.,*
   945 F.3d 423 (5th Cir. 2019)                                                                         18

*Davis v. Dallas County,* 541 F. Supp. 2d 844 (N.D. Tex. 2008)                                                    10, 11

*Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164 (Tex. 2005)                                                   21

*Elephant Ins. Co., LLC v. Kenyon,* 644 S.W.3d 137 (Tex. 2022)                                                        12

*Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913 (Tex. 2010)                                         17

*Graves v. CAS Medical Systems, Inc.*, 735 S.E.2d 650 (S.C. 2012)                                                      7

*Greenman v. Yuba Power Products, Inc.*, 377 P.2d 897 (Cal. 1963)                                                     16

*Houston Area Safety Council, Inc. v. Mendez,* 671 S.W.3d 580 (Tex. 2023)                                              9

*Shepherd v. Ledford*, 962 S.W.2d 28 (Tex. 1998)                                                                      23

*Suday v. Suday,* 716 S.W.3d 586 (Tex. 2025)                                                                          23

*Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex. 1994)                                                        21

*University of Texas Medical Branch v. York,* 871 S.W.2d 175 (Tex. 1994)                                              16

*White v. Ford Motor Co.*, No. 3:24-CV-2139-D,
   2024 WL 4895726 (N.D. Tex. 2024)                                                                      23

**Statutes and Rules**

Fed. R. Civ. P. 8                                                                                          1, 2, 7, 8, 20, 22

Fed. R. Civ. P. 9                                                                                                      3

Fed. R. Civ. P. 12(b)(6)                                           1, 2, 3, 5, 9, 16, 19, 21, 22, 23, 24

Fed. R. Civ. P. 15(a)(2)                                           24, 25

Fed. R. Civ. P. 19                                                 3, 23

Tex. Civ. Prac. & Rem. Code § 71.004                              22

**Regulations**

45 C.F.R. § 170.315                                                20

45 C.F.R. § 170.315(b)(2) (Clinical Information Reconciliation)    18

45 C.F.R. § 170.315(b)(11) (Decision Support Interventions)       18

**Other Authorities**

Restatement (Second) of Torts § 552 (1977)                        17, 18, 20

Restatement (Third) of Torts: Products Liability § 19 (1998)       15

## <u>INTRODUCTION</u>

This action arises from defects in Epic Systems Corporation's electronic health record platform at UT Southwestern Medical Center, causing failures in generating, reconciling, and presenting critical medical information that led to Dov Fischman's death.

**This is a wrongful death action.** Plaintiff seeks recovery for the loss of Dov Fischman, caused by Defendant's system-level failures that prevented the generation of critical medical information necessary to identify and treat a life-threatening condition. The claims asserted provide the legal basis for that recovery.

**Defendant's Motion Does Not Apply the Rule 12(b)(6) Standard.** Rather than answer the Amended Complaint, Defendant moves to dismiss under Rule 12(b)(6), which permits dismissal only where a complaint fails to state a plausible claim for relief, accepting all well-pleaded factual allegations as true. The motion fails to apply that standard.

**The Amended Complaint Alleges Specific, Non-Conclusory Facts.** Defendant's motion does not identify any actual pleading deficiency. The Amended Complaint alleges specific, non-conclusory facts that plausibly state each claim. Rather than apply the Rule 12(b)(6) standard, Defendant repeatedly recasts those allegations as unsupported assertions, substitutes its own characterization of the facts, and imposes requirements not found in Rule 8.

**Defendant's Arguments Attempt to Reframe the Pleadings.** These arguments, including those concerning capacity, do not challenge the pleadings as written; they recast them to fit Defendant's preferred narrative. Plaintiff is not required to anticipate or negate every inference Defendant draws. A motion to dismiss tests the sufficiency of the allegations as pleaded, not Defendant's version of events. Under that standard, the Amended Complaint is sufficient.

Page 1

**The Motion Improperly Seeks Resolution of Fact-Intensive Issues.** The Amended Complaint plausibly alleges specific defects in how Epic's platform generated, reconciled, and presented critical medical information. Defendant's motion therefore misapplies Rule 12(b)(6) by seeking dismissal based on fact-intensive disputes that cannot be resolved without discovery. See *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

**The Alleged Failures Are Architectural, Not Clinical.** The core theory is architectural, not clinical. The failure arises in the system's design. The platform did not distinguish active from discontinued medications. It did not generate a coherent treatment timeline. It lacked safeguards in high-risk prescribing contexts. It permitted inconsistent inputs to persist as reliable data.

**These Architectural Defects Preclude Reliance on Clinical Judgment.** These are failures of system architecture. They prevented the generation of accurate and usable medical information. A physician cannot act on information the system did not generate. The defect is antecedent to and independent of any clinical judgment and therefore cannot be attributed to it.

## STANDARD OF REVIEW

A complaint survives Rule 12(b)(6) if it contains sufficient factual matter, accepted as true, to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A claim is plausible when the pleaded facts permit the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. In evaluating a motion to dismiss, the Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor. Dismissal with prejudice is disfavored where amendment would not be futile.

**Pleading Standard Under Rules 8 and 9.** Plaintiff's Amended Complaint satisfies pleading standards. Under Rule 8(a)(2), a complaint must contain a short and plain statement showing entitlement to relief. The Amended Complaint alleges specific defects in Defendant's

system architecture, including failures in medication reconciliation, data accuracy, and the generation of a coherent treatment record.

Rule 9 imposes no heightened requirement here. Plaintiff does not allege fraud, mistake, or any claim requiring particularity under Rule 9(b). Instead, Plaintiff's claims are directed solely at Defendant's system design, not individual clinical conduct. Because the alleged failure occurred at the level of data architecture and information generation, prior to and independent of clinical judgment, Plaintiff is not required to identify specific physicians or assert claims against non-defendant entities to state a plausible claim for relief.

## ARGUMENT

Defendant moves solely under Rule 12(b)(6), which tests only the sufficiency of the pleadings. The Court's review is therefore limited to whether the Amended Complaint plausibly states a claim for relief based on its well-pleaded allegations.

**Defendant's "Novelty" Argument Does Not Support Dismissal**

Defendant may characterize Plaintiff's theory as "novel" to suggest it lacks legal foundation. But Plaintiff alleges that the absence of prior litigation reflects Epic's vendor-contract structure, which places liability on hospitals and clinicians even where the defect originates in Epic's system architecture. Plaintiff further alleges that Defendant designs and controls how clinical data is generated, reconciled, and presented, yet the consequences fall on downstream users. That allocation does not eliminate the underlying defect or Defendant's role in creating it. The claimed "novelty," as alleged, is created by Epic itself, not the industry, and is not a basis for dismissal under Rule 12(b)(6).

**Defendant's Motion Is Limited to Rule 12(b)(6) and Does Not Establish a Pleading Defect.** To the extent Defendant raises capacity, it mischaracterizes the pleadings. The Amended

Page 3

Complaint expressly asserts claims in Plaintiff's individual capacity as a statutory wrongful-death beneficiary and does not assert claims on behalf of the estate. That limitation was deliberate and does not create a defect under Rule 12(b)(6).

**Any Issues Regarding Additional Beneficiaries Do Not Support Dismissal.** Any suggestion regarding additional beneficiaries implicates Rule 19, not Rule 12(b)(6). Defendant does not move under Rule 12(b)(7), identify a required party, or argue that the case cannot proceed in that party's absence. This does not support dismissal.

**Defendant Mischaracterizes the Nature of the Claims.** Defendant's motion mischaracterizes the claims. Plaintiff does not allege errors in physician judgment or treatment, which would require identifying clinical actors or scrutinizing treatment decisions. The care at issue was delivered through a coordinated clinical unit rather than a single primary physician, confirming that liability does not arise from any individual provider's conduct but from system-level failures that governed the information available for care. In that setting, Defendant's system functioned as the single Source of Truth for patient information across all providers.

**Liability Arises from System Design, Not Individual Clinical Conduct.** Plaintiff alleges that Defendant's system design determined what information existed for care and failed to generate accurate and actionable medical information. That failure is attributable to Defendant. The alleged defects arise from design, certification, and deployment decisions that defined the structure of the medical record and the information available for treatment. Hospital personnel did not design or control those functions and instead relied on them.

**The Claims Do Not Depend on Identifying Individual Physicians.** Liability does not turn on identifying physicians or dissecting treatment based on incomplete data. It arises from Defendant's system-level decisions that governed what information existed in the first instance.

Where multiple providers relied on the same system and information, the issue is not individual error but the integrity of the system's information architecture.

The relevant decision-makers are Defendant's corporate actors, including officers or managerial agents responsible for the system's design, certification, and deployment. Hospital personnel did not design or control those functions and instead relied on them. The identities of those individuals are within Defendant's control and are not required to be pleaded at this stage.

**The Motion Improperly Seeks Resolution of Merits Issues.** The motion ultimately asks the Court to decide disputed questions about how Defendant's system functioned and what information it generated. Those are merits issues, not pleading issues. The question at this stage is only whether the Amended Complaint plausibly alleges each claim. It does.

## A. THE AMENDED COMPLAINT PLEADS A PLAUSIBLE CAUSAL CONNECTION BETWEEN EPIC'S SYSTEM DEFECTS AND MR. FISCHMAN'S DEATH.

Plaintiff alleges a defined causal chain in which system-level defects prevented the generation and presentation of information needed to identify and respond to a dangerous condition. The chain is straightforward: the system did not generate an accurate and reconciled record; the condition was not recognized in time; intervention was not undertaken; and death resulted. This is not a case where information was available but misinterpreted. It is a case where the system failed to generate information required for interpretation. At the pleading stage, that is sufficient under Ashcr*oft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*. Defendant's argument demands evidentiary detail and resolution of factual issues not required under Rule 12(b)(6).

**The Alleged Failure Is System-Level and Independent of Clinical Judgment.** Plaintiff's claims arise from defects in the system's data architecture and processing logic, not interface presentation or clinical decisions. The failure occurred upstream of any provider decision,

where the system did not generate accurate, reconciled clinical information. In a multi-provider environment, the record is the mechanism of coordination and must present a coherent longitudinal account of the patient's condition and treatment. Where the system fragments information across encounters, critical information is predictably missed. Epic's platform is designed to maintain a longitudinal patient record and support reconciliation and decision support, but Plaintiff alleges it failed to perform those functions. The system does not maintain a single authoritative record. It stores information across separate structures and presents it without reconciliation, so no output reflects a complete and reliable record, resulting in reliance on incomplete information.

**The Amended Complaint Identifies Concrete Architectural Defects.** The system should have guided the creation of a complete clinical record through enforced templates and required fields. Instead, it permitted complete clinician discretion in data entry and did not require validation, reconciliation, or consistency at the point of entry. As Decedent's condition worsened, it did not require a unified care plan, multidisciplinary review, or maintain consistent visibility of critical developments.

These failures are reflected in medication management. After the introduction of a high-risk medication, the system did not enforce when it was initiated, whether it remained active, or which provider was responsible, and did not enforce a coherent timeline, preventing identification of the relationship between medication exposure and deterioration.

The system also failed to maintain a structured, persistent record of medication-related side effects. Adverse developments were not integrated into a unified clinical picture or presented to support recognition of a common cause, and critical treatment information, including proposed interventions, was not maintained in a visible, actionable form across the care team. The system

did not flag that Decedent's side effects were consistent with known high-risk warnings, further preventing recognition of a common cause.

**These Defects Plausibly Caused the Failure to Recognize and Treat the Condition.** The Amended Complaint alleges that the system failed to generate an accurate and reconciled medication record, which prevented identification of the cause of Decedent's deterioration and, in turn, prevented timely intervention.

Plaintiff alleges a direct, system-driven causal chain. The system's architecture permitted inconsistent recording of medication information and failed to maintain a coherent longitudinal record. Clinicians relied on the system as the central source of patient information, yet the system-generated record did not accurately reflect Decedent's medication status or present a coherent timeline linking Everolimus exposure to deterioration. These deficiencies were not identified or corrected because the system did not enforce reconciliation, surface inconsistencies, or prompt review. The absence of accurate system-generated information is the causal mechanism: without it, recognition and intervention cannot occur.

Defendant's challenges to the causal chain and reliance on *Graves v. CAS Medical Systems, Inc.*, 735 S.E.2d 650 (S.C. 2012), do not support dismissal. Rule 8 requires plausible allegations, not proof of each step or identification of actors within Defendant's control. The Amended Complaint identifies concrete system defects and alleges that, because the system did not generate accurate information, the condition was not recognized and no corrective action was taken. *Graves* arose at summary judgment and addresses expert proof, not pleading sufficiency.

The details of how Epic's system generated, reconciled, and presented this information are within Defendant's control and require discovery. The motion disputes system operation, which

Page 7

cannot be resolved on the pleadings. Causation turns on real-time system behavior, including logs, reconciliation processes, and decision-support functions in Defendant's possession.

Plaintiff's allegations satisfy the substantial factor requirement under Texas law. The Amended Complaint identifies specific system features and failure modes that directly affected the availability of critical medical information. The system's failure to generate an accurate and reconciled medication record, and to present the relationship between Everolimus exposure and deterioration, was a substantial factor in preventing recognition and intervention.

**Defendant's Arguments Mischaracterize the Claims and the Pleading Standard.** Defendant incorrectly assumes that causation depends on predicting physician decision-making. The alleged failure occurred prior to and independent of clinical judgment. Where the system fails to generate usable information, the issue is not how a physician would have responded, but that the information needed to identify the condition was not presented in a usable, actionable form. The defect is structural: the system's architecture governing how medication data is recorded and reconciled produced inaccurate or incomplete information across system outputs, including those available to clinicians during treatment. Because the failure was not visible and did not prompt correction, the inaccuracies persisted and prevented identification and intervention.

**Defendant's Argument That No Specific Defect or Mechanism of Harm Is Alleged Is Incorrect.** The Amended Complaint identifies concrete architectural failures, including the inability to generate a coherent medication timeline, failure to distinguish active from discontinued medications, lack of reconciliation, and absence of safeguards governing high-risk medication use. These are specific design deficiencies that determined what information existed in the record.

Defendant's assertion that the Amended Complaint does not identify a specific provider is immaterial. The Amended Complaint alleges that Decedent received care at a hospital using Epic's

EHR platform, which governed the information available during treatment. Rule 8 does not require identification of a specific provider where the alleged defect is architectural and independent of user conduct.

**Plaintiff's Allegations Are Grounded in System Architecture, Not Speculation.** Plaintiff's allegations are not speculative. Both the patient-facing portal and clinical interface draw from the same underlying data architecture and reconciliation logic, so the deficiencies alleged affected the information presented to treating clinicians during care. Plaintiff has professional experience in system architecture and integration, including work involving hospital data systems and enterprise platforms, and has served as a solutions architect on API-based integrations with Epic systems. That experience informs Plaintiff's understanding of how underlying data structures govern the exchange, reconciliation, and presentation of information across clinical systems.

The claim rests on system structure, not what physicians may have seen. Where the architecture fails to generate a coherent, reconciled record, it affects all outputs and the information available to clinicians, preventing identification of a dangerous condition. Because the system did not generate an accurate record, no corrective action occurred, resulting in the wrongful death of Dov Fischman. Taken together, the Amended Complaint alleges a plausible chain from system design to the absence of critical information to death. Defendant's motion advances alternative narratives and invites resolution of disputed factual issues at the pleading stage, which is not a proper basis for dismissal under Rule 12(b)(6).

## B. EPIC OWES A COGNIZABLE TORT DUTY TO INDIVIDUAL PATIENTS UNDER TEXAS LAW.

Defendant's argument that Epic owes no duty rests on an incorrect characterization of both the relationship at issue and the system alleged. The Amended Complaint does not describe Epic

as a passive third-party vendor providing discrete services. It alleges that Epic had distinct relationships with the hospital and the patient: it controlled the system architecture that determined what patient-specific information existed for care, and the system directly generated and communicated life-critical information used in care. Where a defendant controls the structure of information on which others must rely, the resulting risk is inherent in the system's functions and extends beyond the limited vendor role addressed in *Houston Area Safety Council, Inc. v. Mendez*.

**This Case Falls Outside the Limited Vendor Relationship Addressed in *Mendez*.** *Mendez* involved a third party with no role in generating or controlling clinical information. Here, Plaintiff alleges that Defendant's system generated, structured, and communicated the patient-specific information used in care. *Mendez* addressed a discrete third-party error, not a system that governs the creation and delivery of clinical information. That distinction places this case outside its scope. Because Texas law evaluates duty based on the relationship between the parties and the foreseeability of harm, the risk created by a system that determines what information exists for clinical decision-making is inherent and foreseeable.

**Epic, as the System of Truth, Functioned as an Active Participant in Care.** This Court has recognized that a software vendor may owe a duty where system defects plausibly result in direct harm. Plaintiff's position aligns with *Davis v. Dallas County*, 541 F. Supp. 2d 844 (N.D. Tex. 2008), where the Court declined to dismiss claims based on defects affecting the information available for decision-making. *Mendez* does not alter that principle; it addressed a third party with no role in generating clinical information. Here, Plaintiff alleges that Epic did not merely store or transmit information, but determined what information existed for clinical decision-making, and thereby directly shaped the care that could be provided.

Defendant's attempt to distinguish *Davis* fails. The Amended Complaint alleges that Epic's system determined whether accurate, reconciled information existed at all. Where a system controls the existence and content of information used for care, it is not a passive tool, and the presence of a physician does not break that chain. Nor do allegations of local configuration alter that analysis, where the defects arise from Epic's underlying system design.

Plaintiff alleges that Epic designed the architecture governing safety-critical clinical information and that defects in that architecture resulted in the absence of life-critical information. At the pleading stage, those allegations are sufficient to establish a duty under Texas law.

**The Learned Intermediary Doctrine Does Not Apply Where the Defect Prevents Information from Being Generated.** The doctrine presumes the intermediary receives accurate information and can exercise independent judgment. Here, Plaintiff alleges that Epic's system failed to generate accurate, reconciled information, preventing the intermediary from acting at all. Where a defect operates upstream and determines whether usable information exists for decision-making, the doctrine does not apply.

Defendant's reliance on *Butler v. Juno Therapeutics, Inc.*, 541 F. Supp. 3d 774 (S.D. Tex. 2021), is misplaced. *Butler* extends the doctrine beyond FDA-approved drugs but does not alter its core premise that the intermediary receives information and exercises judgment. This case alleges the opposite: the system failed to generate the information necessary for judgment. Where no reliable information exists, there is no independent judgment to shield, and the doctrine does not apply.

**Epic's Direct Patient Relationship Extends Beyond MyChart.** The Amended Complaint alleges a direct relationship between Epic and patients through its platform. Epic designed and controls the system through which patients access medical information, including

Page 11

medication status and treatment history, and delivers patient-specific clinical data to end users. This is a defined, foreseeable interaction in which patients rely on the system's outputs as accurate representations of their medical information. Where the system presents inaccurate medication information due to its design, the resulting misrepresentation is made directly to the patient.

Defendant's attempt to limit any duty to MyChart's patient-facing functions misstates the Amended Complaint. Plaintiff's theory is based on Epic's control over a unified system that governs how clinical information is generated, reconciled, and presented across both clinical and patient-facing outputs. The same underlying data structures and system logic determine what information exists in both contexts. A defect in that architecture necessarily affects both, and the resulting duty is not confined to MyChart alone.

**Epic's Own Representations Reinforce the Foreseeability of Harm.** Plaintiff alleges that Epic represented its system performs safety-critical functions, including medication management and coordination. The issue is not regulatory compliance but whether the system performed those functions. Where a defendant represents its platform performs safety-critical functions and designs the architecture governing them, harm from failure is foreseeable.

**The Texas Duty Factors Support Recognition of a Duty.** Under *Elephant Ins. Co., LLC v. Kenyon*, the risk involves incomplete medication information in high-acuity settings, and foreseeability follows from the system's role in managing and delivering that information for clinical use. The social utility of electronic health records does not eliminate liability for design defects in life-critical systems, and the affected class is limited to patients whose information the system generates and manages.

**Defendant's Remaining Authorities Do Not Support Dismissal.** Defendant's reliance on *Amrhein v. eClinicalWorks, LLC* is misplaced. *Amrhein* addressed Article III standing and did

not decide whether an EHR vendor owes a duty under state tort law; it therefore does not support dismissal or establish the absence of a duty here.

Taken together, the Amended Complaint alleges that Epic's system directly structured, processed, and delivered patient-specific medical information used in care, and that defects in that system foreseeably resulted in harm. Where a defendant occupies that role, it functions as an active participant rather than a remote vendor. At the pleading stage, those allegations are sufficient to establish a cognizable duty under Texas law. At minimum, the Amended Complaint alleges a relationship and risk structure that falls outside existing no-duty categories, and dismissal would resolve an unsettled question of Texas law without a developed factual record.

## C. EPIC'S ROLE WAS KNOWN, PATIENT-FACING, AND NOT ELIMINATED BY LOCAL CONFIGURATION.

Defendant argues that Epic's role was not known or relied upon and that any alleged deficiencies are attributable solely to local configuration or physician judgment. Those arguments misstate the allegations and fail at the pleading stage.

**Epic's Platform Functioned as the Known and Central System of Care.** Plaintiff alleges that Epic's platform functioned as the System of Truth through which Decedent's medical information was maintained, presented, and relied upon throughout his care. Decedent used MyChart, Epic's patient-facing platform for accessing medical records and communicating with providers, and Plaintiff observed the system being used during clinical encounters. These facts support the reasonable inference that Epic's system functioned as the central platform through which Decedent's medical information was delivered and used in treatment.

Technical awareness is not required where the system governs the information used in care. The relevant inquiry is not whether Decedent understood the system's architecture, but whether

Page 13

Epic's platform served as the mechanism through which his medical information was structured, communicated, and relied upon.

**Local Configuration Does Not Eliminate Architectural Responsibility.** Configuration operates on top of, and cannot alter, the platform's core architecture, so variability in clinician data entry is absorbed at the input level while the system determines and presents fixed outputs. The architecture lacks an enforcement layer that standardizes and reconciles inputs into a complete longitudinal record, leaving patients to rely on outputs they cannot verify or reconcile. Where the system fails to generate a coherent longitudinal record and instead fragments information across encounters, that failure arises from design, not configuration. A system that does not produce an integrated and reliable clinical record reflects a design limitation.

Taken together, the Amended Complaint alleges that Epic's platform was a known, patient-facing system central to Decedent's care, and that the alleged defects arise from its architecture, not local configuration or user conduct. At the pleading stage, these allegations are sufficient.

## D. WHETHER THE EHR PLATFORM MAY CONSTITUTE A PRODUCT UNDER TEXAS LAW CANNOT BE RESOLVED AT THE PLEADING STAGE.

Defendant argues that software cannot constitute a product under Texas law. That argument overreads its authorities and seeks to resolve a fact-dependent issue at the pleading stage. The Amended Complaint challenges the system's architecture, not the content of information, and alleges defects arising from standardized components of Epic's platform distributed across installations, not site-specific configuration.

**Epic's Platform Operates as a Product to Patients.** Epic characterizes its platform as a "service" for purposes of this Complaint, but in reality, the system serves two different functions for two distinct audiences. For the hospital, it may be characterized as a service relationship

implemented as part of ongoing operations. For the patient, the system functions as a product: it generates and presents a concrete medical record relied upon as an accurate representation of the patient's condition. That output is the product from the patient's perspective. This distinction is not addressed in the typical vendor–hospital framework and cannot be confined to that classification at the pleading stage.

**Standardized Core, Configurable Features, and Safer Alternative Design.** Plaintiff alleges that the defects arise from Epic's core logic governing how medication information is structured and reconciled. Although hospitals may configure certain features, they do not alter this core logic, which is distributed uniformly across installations and produces consistent outputs. The alleged failures therefore reflect a defect in standardized design, not site-specific implementation. Under the *Restatement (Third) of Torts: Products Liability* § 19, such uniformly distributed software may be treated as a product, and Texas courts have not foreclosed that approach. Plaintiff also alleges a safer alternative design. A feasible alternative architecture would have reconciled medication status across system outputs, distinguished active from discontinued medications, generated a coherent timeline linking medication exposure to deterioration, and imposed safeguards against high-risk off-label prescribing before safer alternatives were bypassed.

**The System's Operation Within Physical Infrastructure Undermines the "Service" Characterization.** Defendant's characterization of the platform as an intangible "service" does not resolve the issue. The Amended Complaint alleges that the system operates within the hospital's clinical environment and physical infrastructure, integrated into the servers, networks, and hardware used to deliver care, rather than existing as a purely remote or informational service. To the extent Epic provides or requires hardware components or on-premises infrastructure as part

of its deployment, that further supports treatment of the system as a product deployed in a physical setting, not merely a service providing abstract information.

**Defendant Mischaracterizes Plaintiff's Product Theory.** Plaintiff does not rely on electricity or embedded-device analogies as a basis for classification. Those references illustrate functional characteristics of control and integration, not legal equivalence. The claim rests on the system's architecture, standardized design, and role in generating, structuring, and governing clinical information used in care. Whether such a system may be treated as a product under Texas law is a fact-dependent inquiry not suitable for resolution on a motion to dismiss, and Defendant's reliance on regulatory classifications such as the 21st Century Cures Act does not control common-law products liability or the existence of a duty for a private defendant.

**Defendant's Authorities Do Not Address the Product and Architecture Claims at Issue.** Defendant's reliance on *Greenman v. Yuba Power Products, Inc.* and *University of Texas Medical Branch v. York* is misplaced. *Greenman* addresses strict liability for defective products and does not resolve whether software embedded in clinical systems may constitute a product under Texas law, a fact-dependent issue. *York* is inapposite. It addresses sovereign immunity under the Texas Tort Claims Act and the distinction between information and tangible property for a waiver, not the existence of a duty or liability for a private defendant. Plaintiff's claims do not challenge the abstract accuracy of information; they challenge system architecture that determines how medical information is generated, reconciled, and presented for use in care.

**The Precise Nature of the System's Deployment Is a Matter for Discovery.** Upon information and belief, Epic's platform operated within UT Southwestern's clinical environment on systems used in the provision of care, including those connected to the hospital's physical infrastructure. Discovery is required to establish the nature of Epic's deployment infrastructure.

At minimum, Plaintiff pleads this theory in the alternative and alleges defects in standardized architecture rather than a configuration issue unique to a particular implementation. Texas courts have not squarely resolved whether such a system may be treated as a product in these circumstances, and dismissal at the pleading stage would prematurely resolve that issue without a developed record. If the Court finds additional detail necessary, dismissal should be without prejudice and with leave to amend.

## E. PLAINTIFF PLAUSIBLY ALLEGES A NEGLIGENT MISREPRESENTATION CLAIM UNDER § 552.

Defendant argues that the negligent misrepresentation claim fails on the grounds that patients are not within a limited class, Epic is not an "information supplier," and reliance is not adequately alleged. The Amended Complaint plausibly alleges each element.

**Patients Fall Within a Limited and Foreseeable Class.** The Amended Complaint alleges that patients fall within a limited and foreseeable class for whose benefit Epic's representations were supplied. Epic represents that its platform performs core patient-safety functions, including accurate medication tracking, reconciliation, and the generation of clinically reliable information. The purpose of those functions is patient safety, and the intended beneficiaries are the patients whose medical information is generated and delivered through the system. Patients are not an indeterminate class. They are the direct recipients of the system's outputs and the intended end users of the information it generates.

Defendant's reliance on *Grant Thornton LLP v. Prospect High Income Fund* is misplaced. That case addressed liability to an indeterminate class based on publicly available information. This case does not. Epic operates a system that generates and delivers patient-specific medical information directly to patients. The alleged reliance is direct, not remote, and arises from the

system's outputs. Patients who access and rely on information provided through MyChart fall within a defined and limited class.

**Epic Supplies Information Within the Meaning of § 552.** The Amended Complaint plausibly alleges that Epic is an "information supplier" within the meaning of § 552. Defendant's argument that it merely provides software ignores the role alleged. Epic's platform does not passively store data. It determines how information is structured, reconciled, and presented, and generates the outputs on which patients and providers rely. Plaintiff's claim arises from Epic's representations regarding the functionality of that system, including its ability to generate accurate medication information and perform patient-safety functions.

Courts recognize that software vendors may be subject to negligent misrepresentation claims based on representations about system capabilities. In *Correct RX Pharmacy Services, Inc. v. Cornerstone Automation Systems, L.L.C.*, the court allowed such a claim to proceed where the alleged misrepresentation concerned how a system would function. The same principle applies here. Where a defendant represents that its system performs defined safety functions and controls the architecture that produces the resulting outputs, it supplies information for the guidance of others within the meaning of § 552.

**Epic's Representations Are Made Through System Outputs.** Plaintiff's negligent misrepresentation claim is based on the specific medication and treatment information the system generated and presented as accurate for reliance in care. The claim does not depend on generalized marketing language. It depends on Defendant's system supplying patient-specific information in a form intended to guide understanding of active treatment and clinical status. Where the system presents that information as accurate and usable for reliance, and Plaintiff alleges it was not, the misrepresentation claim is tied to a concrete representation and a direct reliance path.

**The Amended Complaint Plausibly Alleges Justifiable Reliance and Resulting Pecuniary Loss.** Defendant argues that Mr. Fischman did not know which EHR system was used or review Epic's certification materials. That is not the standard. The relevant inquiry is whether Decedent and his family relied on the system-generated outputs as accurate representations of his medical information. The Amended Complaint alleges that they did.

Decedent and his family accessed and relied on the medication and treatment information presented through MyChart and during clinical encounters as an accurate statement of his active medications and condition. That reliance was direct: the system was the mechanism through which medication information was communicated, and it was used to understand what medications were active and how his condition was progressing. Plaintiff relied on these system-generated outputs not only as a patient's family member, but as a caretaker responsible for administering medications and managing Decedent's care, making her a direct and foreseeable end-user of the information the system generated and the functional extension of the patient in receiving and acting on that information. That reliance was reasonable, as the system was presented as the authoritative source of patient medical information and was used to guide care, and it foreseeably resulted in pecuniary loss in the form of expenses and financial harm incurred in the course of Decedent's care.

Texas law requires only that reliance be justified and that the plaintiff fall within a limited and foreseeable class. Patients using a system designed to provide their medical information, including those responsible for managing and acting on that information in the course of care, fall squarely within that class. Reliance on the system's outputs as accurate is the very use the system is intended to serve.

Taken together, the Amended Complaint alleges that Decedent and his family directly relied on system-generated medical information, that such reliance was reasonable given the

system's role and representations, and that the information provided was inaccurate. That is sufficient to plead justifiable reliance under § 552 at this stage.

## F. THE GROSS NEGLIGENCE ALLEGATIONS ARE NOT CONCLUSORY AND SHOULD NOT BE DISMISSED.

Defendant argues that the gross negligence claim is conclusory and fails to identify a vice principal with actual awareness of the alleged risk. Those arguments impose a level of specificity not required at the pleading stage and mischaracterize the allegations.

**Subjective Awareness by Epic's Vice Principals.** The Amended Complaint plausibly alleges actual, subjective awareness by Defendant acting through its vice principals responsible for product design, certification, and deployment. Those decision-makers defined the system architecture, determined how medication information would be generated, structured, and reconciled, and obtained and maintained ONC certification representing that the system performs those functions. The alleged gap between what the system was represented and certified to do and what it was capable of doing supports a reasonable inference that these vice principals were aware of the system's limitations at the time of design, certification, and deployment.

**Conscious Disregard in the Face of Known Transplant-Related Risk.** Epic's own product design further reflects that awareness. Epic has developed specialized transplant functionality, including its Phoenix application, demonstrating that its leadership recognized that transplant care requires longitudinal, reconciled, and reliable clinical information. Plaintiff alleges that, despite that awareness, Epic's system did not generate such information in this transplant context. Where a system is designed with knowledge that transplant care depends on accurate, reconciled information, yet fails to generate it, the resulting risk is not only foreseeable—it is inherent, supporting a plausible inference of conscious disregard.

**The Allegations Concern Product-Specific Knowledge, Not Generalized Industry Awareness.** Defendant's attempt to reframe the allegations as "generalized industry awareness" fails. The Amended Complaint alleges that Epic certified its system as capable of accurate medication reconciliation while its own system could not reliably perform that function. It further identifies specific limitations in Epic's medication-list and reconciliation features, including the inability to distinguish active from discontinued medications and to generate a coherent reconciled record. As a leading developer of electronic health record systems, Epic does not merely reflect industry awareness; it shapes it. Defendant cannot recast knowledge of defects in its own system as abstract industry risk when those alleged limitations arise from the platform it designed, certified, and deployed.

**The Alleged Defects Present an Extreme Risk of Serious Harm.** The risk presented by these defects is not speculative. A system that governs life-critical medical information yet cannot reliably generate accurate, reconciled medication data creates a direct and foreseeable risk of serious harm. That risk arises from the system's design, not user error. In high-risk clinical settings, such failures lead to continued use of inappropriate medications, failure to detect adverse conditions, and missed opportunities for timely intervention. These are not peripheral issues; they determine whether life-critical information exists for care. The Amended Complaint alleges that Epic continued to design, market, and deploy the system despite these risks, without implementing safeguards necessary to ensure accurate and reliable medication information.

**Defendant's Authorities Address Proof, Not Pleading.** Defendant's reliance on *Transportation Ins. Co. v. Moriel* and *Diamond Shamrock Refining Co. v. Hall* improperly applies an evidentiary standard at the pleading stage. Those cases define what must be proven to establish

Page 21

gross negligence at trial, not what must be alleged under Rule 12(b)(6). At this stage, Plaintiff need only allege facts supporting a plausible inference of extreme risk and actual, subjective awareness.

The Amended Complaint does so. It identifies specific defects in Epic's medication-reconciliation functionality that prevent the system from reliably generating accurate, reconciled medication information in high-risk clinical settings. It further alleges that Epic obtained and maintained certification representing compliance with standards requiring those functions while continuing to design, market, and deploy the system. These allegations support a reasonable inference that Epic, through its decision-makers, knew of the system's limitations and the risk those limitations posed, yet proceeded without implementing safeguards to address them.

Rule 8 does not require identification of specific individuals at this stage, particularly where that information is within Defendant's control. Defendant's arguments ask the Court to require proof of awareness and indifference now, but those are issues for discovery. The Amended Complaint plausibly alleges both elements, which is sufficient to state a claim for gross negligence.

## G. PLAINTIFF HAS CAPACITY TO PURSUE WRONGFUL DEATH DAMAGES.

Defendant's capacity argument rests on a mischaracterization of the Amended Complaint. As set forth above, Plaintiff brings this action solely in her individual capacity as a wrongful-death beneficiary under Tex. Civ. Prac. & Rem. Code § 71.004 and does not assert a survival claim or seek recovery on behalf of the estate.

**Plaintiff Brings This Action Solely in Her Individual Capacity.** Under Texas law, a wrongful-death beneficiary has an independent cause of action for her own damages arising from the decedent's death, which does not depend on the existence of an estate. Plaintiff seeks recovery only for her own losses, and the Amended Complaint does not expand beyond that scope.

**Generalized Damages Language Does Not Expand the Pleading.** To the extent Defendant relies on generalized damages language to suggest otherwise, that argument ignores the express limitations of the pleading and does not establish a defect under Rule 12(b)(6).

**The Existence of Other Beneficiaries Implicates Joinder, Not Capacity.** Defendant's reference to other potential beneficiaries likewise does not support dismissal. Plaintiff is one of three statutory beneficiaries, and Texas law recognizes that wrongful-death beneficiaries may pursue their individual claims, and any issue regarding additional beneficiaries concerns joinder under Rule 19, not dismissal under Rule 12(b)(6). See *Austin Nursing Ctr., Inc. v. Lovato*.

**Defendant Improperly Conflates Capacity with Liability Theories.** Defendant also conflates capacity with the legal theories asserted. Plaintiff's negligence, products liability, negligent misrepresentation, and gross negligence claims are asserted solely as bases for liability supporting her wrongful-death damages. They do not convert this action into a survival claim. See *Shepherd v. Ledford*.

**Defendant's Remaining Authority Does Not Support Dismissal.** Defendant's reliance on *Suday v. Suday* is misplaced. That case addresses procedural issues concerning multiple beneficiaries and does not bar a single statutory beneficiary from pursuing her own claim. Any such issue, if it arises, is addressed through joinder, not dismissal.

Defendant's reliance on cases such as *White v. Ford Motor Co.* is misplaced. Those cases address conclusory pleadings lacking specific factual allegations, whereas the Amended Complaint identifies concrete system defects, defined failure modes, and a factual basis for inferring awareness. The damages at issue arise directly from the death caused by Defendant's system failures as alleged throughout the Amended Complaint. Accordingly, Defendant's capacity argument does not establish a basis for dismissal under Rule 12(b)(6).

**H. PLAINTIFF REQUESTS LEAVE TO AMEND.**

If the Court determines that any claim is insufficiently pleaded, Plaintiff requests leave to amend under Rule 15(a)(2). Any deficiency concerns additional factual detail rather than the absence of a viable claim and can be cured through more specific pleading. The issues raised by Defendant, including identification of corporate actors, capacity, and additional detail regarding system architecture and operation, are within Defendant's control or subject to clarification and do not warrant dismissal with prejudice. Plaintiff has not previously had an opportunity to respond to Defendant's Rule 12(b)(6) arguments, and this is the first motion to dismiss. Under these circumstances, leave to amend is appropriate and amendment would not be futile.

<u>**CONCLUSION**</u>

Defendant's Motion fails to establish a basis for dismissal under Rule 12(b)(6). The Amended Complaint alleges specific, non-conclusory facts identifying system defects, explaining how those defects operated, and plausibly connecting them to the absence of critical medical information and the resulting death of Dov Fischman, independent of physician judgment. These allegations satisfy the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* and warrant that the claims proceed to discovery.

**Defendant's Arguments Improperly Seek Resolution of Merits Issues.** Defendant's arguments impose evidentiary burdens not required at the pleading stage and seek resolution of fact-intensive disputes concerning system design, functionality, and causation. Those issues are not appropriate for resolution on a motion to dismiss. At this stage, Plaintiff need only allege a plausible connection between system design and harm. The Amended Complaint does so.

**New Arguments Raised in Reply Should Not Be Considered.** To the extent Defendant raises new arguments or materially reframes its position in reply, those arguments are not properly before the Court and should not be considered.

At minimum, dismissal with prejudice is improper where the issues involve fact-intensive questions of system design, operation, and causation, and where additional detail lies within Defendant's control. Accordingly, the Motion should be denied in whole or in part. The allegations are sufficient for at least one claim to proceed to discovery, even if the Court narrows others at this stage. In the alternative, Plaintiff respectfully requests leave to amend under Rule 15(a)(2).

Respectfully submitted,

Date: April 23, 2026

/s/ _Gallit Fischman_____

**GALLIT FISCHMAN, Pro Se**
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2026, a true and correct copy of the foregoing was served on counsel for Defendant via ECF electronic filing.

/s/ _Gallit Fischman_____

Gallit Fischman, Plaintiff, Pro Se