IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-CV-0770-D |
| | § | |
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## JOINT SCHEDULING PROPOSAL

Pursuant to Federal Rules of Civil Procedure 16(b) and 26(f) and the Court's Order entered April 17, 2026 (ECF No. 14), Plaintiff Gallit Fischman, proceeding pro se, and Defendant Epic Systems Corporation (collectively, the "Parties"), submit this Joint Scheduling Proposal.

### I.    RULE 26(F) CONFERENCE

Chris Schwegmann, counsel for Epic, and Gallit Fischman, pro se, conferred regarding the issues contained in the Court's Order dated April 17, 2026 on May 4, 2026 by telephone.

### II.    PROPOSED DEADLINES

**Defendant's Position.** Defendant Epic Systems Corporation respectfully requests that the Court stay all case deadlines, including the deadline for exchanging initial disclosures and all other discovery, pending the Court's resolution of Epic's pending Motion to Dismiss (ECF No. 13), filed April 14, 2026. Epic's Motion seeks dismissal of

Plaintiff's Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) and presents threshold legal questions, including whether Plaintiff has plausibly alleged proximate causation, whether Texas law recognizes the asserted product-liability theories against an electronic-health-record vendor, and whether Plaintiff's negligent-misrepresentation and gross-negligence claims are cognizable on the facts pled, the resolution of which may dispose of all claims and obviate the need for discovery. Epic's motion to dismiss also raises as an issue Plaintiff's capacity to bring wrongful death claims pro se, which could affect the rights of other wrongful death beneficiaries if discovery proceeds.

Discovery in this matter would be substantial and burdensome, particularly given the technical complexity of any inquiry into Epic's electronic-health-record software and the clinical care and decision-making by relevant health care providers, and the likely need for protective-order procedures governing protected health information, Epic's proprietary system architecture, source code, and trade-secret information, and—in light of Plaintiff's indicated use of artificial-intelligence platforms in connection with this litigation—the negotiation and entry of AI-use safeguards of the kind recently imposed in *Morgan v. V2X, Inc.,* 2026 WL 864223 (D. Colo. Mar. 30, 2026). Courts in this District have broad discretion to stay discovery where, as here, a potentially dispositive motion under Rule 12(b)(6) is pending and may be resolved without further factual development. In the alternative, if the Court declines to stay all deadlines, Defendant proposes that the deadlines set forth below run from the date of any order denying the Motion to Dismiss in whole or in part.

Moreover, the central facts at issue in any discovery in this matter sit not with Epic but with non-party UT Southwestern, the health system at which Plaintiff's father was treated. The configuration of the Epic system as actually deployed at UT Southwestern, the information that was actually available to and reviewed by the treating physicians, and the clinical decision-making of those providers all lie at the heart of any plausible causation theory in this case—and that information is in the hands of UT Southwestern and the providers, not Epic. Permitting full discovery against Epic before the Motion to Dismiss is decided would not only burden Epic with discovery into matters that may never be reached, but would also enable Plaintiff to obtain by the substance of healthcare-liability discovery from her father's treating providers without first complying with the procedural prerequisites that Chapter 74 of the Texas Civil Practice and Remedies Code imposes on plaintiffs asserting claims arising from medical care, including the expert-report requirements of Sections 74.351 and 74.352. The Court should not permit such a procedural end-run by entertaining merits discovery against Epic while the threshold viability of Plaintiff's claims remains undecided.

**Plaintiff's Position.** Plaintiff objects to Defendant's request for a blanket stay. Insofar as Defendant relies on substantive merits arguments from its Motion to Dismiss as the basis for its stay request, Plaintiff addresses those arguments only in that limited Rule 26(f) case-management context. These positions are submitted solely for scheduling purposes, do not constitute admissions, factual concessions, amendments to the pleadings, or limitations on discovery otherwise permitted under the Federal Rules, and Plaintiff reserves all rights.

The mere pendency of a Rule 12(b)(6) motion does not automatically warrant a stay of discovery or suspension of Rule 26(a)(1) obligations. A blanket stay would impose asymmetric harm by preventing Plaintiff from developing the factual record while Defendant continues to rely on its own disputed characterization of Epic's systems, role, and functionality. Defendant's assertion that its pending Motion to Dismiss may be dispositive does not itself justify halting discovery, particularly where Defendant's threshold arguments depend in part on disputed factual and technical assumptions concerning Epic's systems, allocation of control, functionality, and role in the events at issue that Plaintiff seeks limited discovery to test. Plaintiff has opposed Defendant's Motion to Dismiss, and those issues remain unresolved.

Contested legal questions do not automatically justify freezing discovery where relevant factual and technical information remains materially within Defendant's possession, custody, or control. Defendant's assertion that discovery would be "substantial and burdensome" likewise does not justify a blanket stay where Plaintiff seeks not full merits discovery, but narrowly tailored, proportional Phase 1 discovery directed to discrete Epic-controlled technical issues central to the claims actually pleaded. Defendant's attempt to rely on product-liability principles and product-manufacturer defenses to support dismissal while simultaneously arguing that Epic's platform cannot be analyzed as a product further underscores that these are contested legal questions for the Court, not a basis for Defendant to impose its preferred merits outcome as a case-management framework before factual development occurs. Defendant identifies no privilege concern that independently justifies a blanket stay.

The Court evaluates the operative pleading based on its four corners, not Defendant's alternative merits narrative. Defendant's competing characterization of the case, including its effort to reframe Plaintiff's pleaded architecture-level claims as provider-conduct, local-configuration, clinical-decision, or healthcare-liability claims, is advocacy, not the operative framework for Rule 26 case-management decisions. Plaintiff's First Amended Complaint expressly pleads a technical architecture-based case against Epic arising from Epic's own platform design, system logic, information structure, reconciliation functionality, longitudinal record behavior, workflow safeguards, and related system conduct, not a medical-malpractice claim against healthcare providers or an attempt to circumvent Chapter 74. Defendant's references to Chapter 74 expert-report requirements, asserted "procedural end-run" concerns, causation assumptions, or separate beneficiary-capacity arguments do not redefine the claims before the Court or justify suspending discovery where the factual and technical issues underlying Defendant's defenses remain disputed and materially within Epic's possession, custody, or control. To the extent Defendant characterizes responsive arguments in Plaintiff's opposition as "new," those arguments responded to Defendant's own reframing of the case and do not alter the operative pleading.

Epic's alleged role was separate and antecedent. Defendant's assertion that the "central facts" reside with non-parties improperly assumes Defendant's own characterization of causation and control; Plaintiff expressly alleges that core architecture, system-functionality, information-structure, and safety-functionality facts relevant to Epic's role reside with Epic. The existence of other potential contributing actors does not

eliminate the need for discovery into Epic's own architecture, system functionality, and technical design where those issues are expressly pleaded. Defendant's attempt to characterize causation as a threshold issue capable of resolution without factual development likewise depends on Defendant's disputed characterization of Epic's system role and information functionality, which are appropriate subjects for limited discovery. The alleged defect is antecedent to and independent of clinical judgment.

Phase 1 should be defined by Plaintiff's pleaded architecture-level claims, not Defendant's attempt to reframe the case around provider conduct, local configuration, or clinical decision-making. Plaintiff seeks limited, proportional Phase 1 discovery directed to Epic-controlled technical materials relevant to the claims actually pleaded, including system architecture, data logic, information presentation, reconciliation behavior, workflow functionality, longitudinal record handling, safeguards, monitoring capabilities, escalation mechanisms, implementation framework materials, configuration architecture, customer-facing documentation, and related safety-functionality materials.

Defendant's own stay argument confirms that the core technical materials relevant to Plaintiff's pleaded architecture-level claims exist and are within Epic's possession, custody, or control, as Defendant itself asserts that discovery would implicate Epic's proprietary architecture, source code, and technical materials. To the extent Defendant maintains that Epic functioned only as a configurable software vendor while control over the relevant conduct rested elsewhere, limited discovery is the appropriate mechanism to test that position.

Potential confidentiality, proprietary-information, trade-secret, protected-health-information, or AI-related concerns can be addressed through ordinary Rule 26 procedures, case-specific protections, and targeted objections rather than a blanket preemptive stay. Initial disclosures likewise remain required absent Court order, and Defendant's pending motion does not automatically suspend Rule 26 obligations. Plaintiff likewise opposes Defendant's alternative proposal to defer discovery deadlines until resolution of the Motion to Dismiss, as such relief would function as a de facto stay for the same reasons addressed above.

Plaintiff respectfully requests that the Court deny Defendant's request for a blanket stay, require Rule 26(a)(1) initial disclosures, and permit limited Phase 1 discovery directed to Epic's software-architecture issues.

### A. Deadline to Join Other Parties

**Defendant's Position.** Epic proposes that the deadline to join other parties should be 60 days after the Court resolves the pending motion to dismiss.

**Plaintiff's Position.** Plaintiff proceeds solely in her individual capacity, as expressly stated in the operative pleading. Plaintiff is the only person prosecuting claims in this case. Plaintiff does not assert estate, survival, representative, or claims on behalf of any other person or entity, and no other wrongful-death beneficiary is a party to this action.

Plaintiff provides this clarification because Defendant continues to suggest hypothetical capacity or beneficiary issues as a basis for delay. Those issues do not justify

postponing case progression. The operative pleading defines the claims before the Court, and Plaintiff does not presently seek joinder of additional parties.

If the Court requires a joinder deadline in the scheduling order, Plaintiff respectfully proposes that any motion to join additional parties be filed within 30 days after entry of the scheduling order, subject to any good-cause showing the Court may permit.

### B. Deadline to Amend the Pleadings

**Defendant's Position**. Epic proposes that the deadline to amend the pleadings should be 90 days after the Court resolves the pending motion to dismiss.

**Plaintiff's Position.**   Plaintiff does not agree that the amendment deadline should be tied to resolution of Defendant's Motion to Dismiss, as the timing of judicial rulings is outside the parties' control. Plaintiff proposes that the deadline to amend be set at 90 days after entry of the Court's scheduling order. This provides sufficient time to review initial discovery without undue delay.

### C. Deadline to File Motions, Including Summary Judgment and Other Dispositive Motions

**Defendant's Position.** Epic proposes that the deadline for dispositive motions should be 120-days before the trial date.

**Plaintiff's Position.** Plaintiff does not oppose setting a dispositive-motion deadline before trial, but respectfully proposes that dispositive motions be due ninety days before trial rather than 120 days before trial. Under Defendant's proposed schedule, fact discovery would close 150 days before trial, leaving only approximately 30 days

between the close of discovery and the dispositive-motion deadline. Given the technical nature of the case, Plaintiff respectfully submits that a sixty-day interval would provide a more reasonable period for the parties to prepare dispositive motions and responses based on the completed factual record.

### D. Deadline to Complete Discovery

**Defendant's Position.** Epic proposes that the deadline to complete discovery should be 150-days before the trial date.

**Plaintiff's Position.** Plaintiff does not oppose setting the deadline to complete discovery at 150 days before trial.

### E. Deadline to Designate Experts and Make Rule 26(a)(2) Expert Disclosures

**Defendant's Position.** Epic proposes that the deadline for the party with the burden of proof to designate experts and produce Rule 26(a)(2) reports be 210-days before the trial date and that the deadline for the opposing party to designate and produce Rule 26(a)(2) reports be 165-days before the trial date.

**Plaintiff's Position.** Plaintiff does not oppose phased expert disclosures in principle, but respectfully requests that Plaintiff's opening expert designation and report deadline be set 30 days after the close of fact discovery so expert opinions may be based on a substantially complete factual record. Because the core technical information is largely within Defendant's possession, custody, or control, requiring opening expert reports before fact discovery closes risks forcing expert opinions on an incomplete record. Plaintiff proposes that Defendant's rebuttal expert designation and report deadline be set forty-five days after Plaintiff's opening expert deadline.

### III.    PARTIES' VIEWS AND PROPOSALS UNDER RULE 26(F)(3)(A)–(F)

### A.    Rule 26(f)(3)(A) — Changes in the Timing, Form, or Requirement for Initial Disclosures

**Defendant's Position.** Defendant respectfully requests, for the reasons stated in Section II above, that the Court stay the deadline for exchanging initial disclosures pending resolution of the pending Motion to Dismiss (ECF No. 13). Compelling initial disclosures while a potentially dispositive motion is pending would impose unnecessary burden and expense, particularly because the threshold legal issues raised in the Motion to Dismiss can be resolved on the pleadings and do not require disclosure of witnesses, documents, or damages computations. Defendant therefore objects to the timing of initial disclosures and, consistent with Section III of the Court's April 17, 2026 Order (ECF No. 14), is filing a separate letter contemporaneously with this Joint Scheduling Proposal alerting the Court to that objection. In the alternative, Defendant proposes that initial disclosures be exchanged within 30 days following entry of any order denying the Motion to Dismiss in whole or in part.

**Plaintiff's Position.** Plaintiff opposes Defendant's request to stay initial disclosures. Rule 26(a)(1) requires mutual initial disclosures, and a pending motion to dismiss does not automatically suspend those obligations. Defendant's burden arguments concern broader discovery, not the mandatory exchange of Rule 26(a)(1) disclosures.

Absent further order of the Court or stipulation of the parties, Rule 26(a)(1)(C) requires initial disclosures within fourteen (14) days after the Rule 26(f) conference, making the deadline May 18, 2026.

Plaintiff respectfully requests that the Scheduling Order confirm that the parties' Rule 26(a)(1) initial disclosures shall be exchanged on that date and clarify that discovery may proceed in accordance with the Court's case-management deadlines, including any phased discovery adopted by the Court, absent further order staying or limiting discovery.

### B. Rule 26(f)(3)(B) — Subjects on Which Discovery May Be Needed; Discovery Completion; Phasing

**Defendant's Position.** Defendant respectfully requests, for the reasons stated in Section II above, that the Court stay all discovery in this action pending resolution of the pending Motion to Dismiss (ECF No. 13). The discovery Plaintiff is likely to seek into the architecture, design, development, and operation of Epic's electronic-health-record software (including the particular configurations and use by the organization that provided Mr. Fischman's care), the implicated clinical-decision-support functionality, and Epic's communications with the customer health system, would be technically complex and would require extensive ESI protocols, custodian and source negotiations, protective-order procedures governing confidential, proprietary, trade-secret, and HIPAA-protected information, and—in light of Plaintiff's indicated use of artificial-intelligence platforms in connection with this litigation—the negotiation and entry of AI-

use restrictions of the kind recently imposed in *Morgan v. V2X, Inc.*, 2026 WL 864223 (D. Colo. Mar. 30, 2026), as discussed further in Section III.F below.

Subjecting Epic and third parties to that burden before the threshold viability of Plaintiff's claims is determined is not warranted, particularly where the Motion to Dismiss raises legal issues capable of resolution on the pleadings and without further factual development. In the alternative, if discovery proceeds notwithstanding the pending Motion to Dismiss, Defendant's preliminary view is that all fact and expert discovery should be completed within 210 days of the trial date, that discovery be conducted in two phases, with Phase 1 limited to threshold causation issues—including the configuration of Epic's electronic-health-record system as deployed at the relevant health system, the information actually available to the treating physicians, and the providers' clinical decision-making—and Phase 2 (consisting of all remaining discovery, including damages) commencing only after the close of Phase 1 and any narrowing motion the parties may file based on Phase 1 discovery.

**Plaintiff's Position:** Plaintiff opposes Defendant's request for a blanket stay and submits that, if discovery proceeds in phases, Phase 1 should be structured around Plaintiff's pleaded architecture-level claims rather than Defendant's defense theories.

A pending motion to dismiss does not automatically justify a stay. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545-46 (5th Cir. 1983). Under Rule 26(b)(1), parties may obtain discovery of nonprivileged matters relevant to any claim or defense and proportional to the needs of the case. Confidentiality, privilege, protective-order, proportionality, ESI, HIPAA, and AI-related concerns can be addressed through ordinary

discovery procedures, case-specific protections, and targeted objections rather than a blanket suspension of discovery.

Phase 1 should be issue-based and tied to Plaintiff's pleaded architecture-level theory, not artificially limited by claim label or Defendant's preferred threshold defenses. Defendant alternatively proposes phased discovery if a stay is denied, confirming that phased discovery is manageable; the dispute is whether Defendant may define Phase 1 around its own threshold-causation, provider-conduct, local-configuration, and control-allocation narrative rather than the claims actually pleaded. Defendant asks the Court to treat causation, system functionality, allocation of control, configuration, information availability, and provider reliance as threshold matters capable of resolution without factual development, but those same issues turn on technical materials materially within Epic's possession, custody, or control and are appropriate subjects for limited discovery so that any later narrowing motion, summary-judgment motion, or merits determination rests on an actual record rather than Defendant's characterization.

Whether Plaintiff's claims present pleading issues, factual disputes, or merits questions is for the Court to decide, not for Defendant to resolve by treating disputed issues as already-settled threshold defects. That includes whether Epic's platform may be analyzed under product-liability principles, whether Epic's own representations support Plaintiff's negligent-misrepresentation theory, whether Epic's corporate knowledge and internal design decisions support Plaintiff's pleaded gross-negligence claims, and whether Defendant's duty and causation theories accurately characterize Epic's role. Those remain contested legal and factual questions that do not justify freezing discovery.

The First Amended Complaint alleges specific architecture-level defects, failures, and resulting harm, not abstract conclusions untethered to actionable conduct, and Defendant's contrary characterization does not convert the pleading into the type of conclusory complaint contemplated by the Rule 12 authorities Defendant cites.

Plaintiff alleges that Epic's own system architecture governs how information is structured, reconciled, surfaced, safeguarded, tracked longitudinally, and relied upon across the platform. Defendant's assertion that Epic merely provided configurable software while other actors controlled the relevant conduct presents a factual dispute appropriately tested through limited discovery. The fact that architecture-level claims against an EHR vendor may present questions courts have not yet fully resolved does not establish that such claims are legally foreclosed or justify staying discovery before Plaintiff can test Defendant's factual assertions.

The scope of Phase 1 discovery Plaintiff seeks is proportional and targeted. Plaintiff does not seek source code, patient data, customer-wide discovery, trade secrets for their own sake, or full merits discovery in Phase 1. Plaintiff seeks limited discovery concerning Epic-controlled software-architecture issues, including how medication and care information is structured, reconciled, displayed, tracked longitudinally, surfaced, safeguarded, and presented across a distributed multi-provider environment, as well as related materials concerning workflow safeguards, monitoring capabilities, escalation mechanisms, protocol-based safety functions, safer-functionality comparators, implementation framework materials, configuration options, customer-facing documentation, and materials made available to customers or implementation partners.

Defendant's own stay argument, asserting that discovery would implicate proprietary architecture, source code, and trade secrets, confirms that the relevant technical materials exist and are within Epic's possession, custody, or control, but those concerns do not justify a blanket stay or make limited Phase 1 discovery improper. Defendant should not be permitted to avoid scrutiny of its own architecture by recasting architecture-level defects as provider conduct before discovery occurs. Defendant's capacity challenge likewise identifies, at most, a potential later procedural issue concerning beneficiary structure rather than an independent present basis to halt discovery. Plaintiff likewise opposes any sequencing that would require completion of Phase 1 and a subsequent narrowing motion before broader discovery may proceed, as such a structure would function as an additional de facto stay tied to Defendant's preferred merits framework rather than neutral case management.

Plaintiff respectfully requests that the Scheduling Order authorize limited Phase 1 discovery directed to Epic-controlled software-architecture issues and reject Defendant's proposed Phase 1 framework, which is structured around Defendant's disputed characterization of Plaintiff's pleaded claims. If the Court concludes that further narrowing or refinement of Plaintiff's proposed Phase 1 scope is appropriate, Plaintiff respectfully requests that the Court define any such limitations directly rather than adopting Defendant's proposed framework, imposing a blanket stay, or using restrictive discovery procedures as a substitute for neutral case management.

C. **Rule 26(f)(3)(C) — Disclosure, Discovery, and Preservation of Electronically Stored Information**

**Defendant's Position.** If discovery proceeds notwithstanding the pending Motion to Dismiss, Defendant proposes that the Parties negotiate and submit, within 30 days following entry of any order denying the Motion to Dismiss in whole or in part, a separate Stipulated ESI Protocol Order addressing preservation, identification, collection, search, review, and production of electronically stored information. Without prejudice to that further negotiation, Defendant's preliminary positions on the principal ESI issues are set forth below.

**Preservation.** Each Party shall take reasonable steps to preserve potentially relevant ESI within its possession, custody, or control. The Parties' preservation obligations shall not extend to (i) backup tapes maintained for disaster-recovery purposes, (ii) ephemeral data and short-message communications not retained in the ordinary course, (iii) deleted, fragmented, or unallocated data, or (iv) other categories of ESI that are not reasonably accessible within the meaning of Federal Rule of Civil Procedure 26(b)(2)(B). Each Party reserves all rights to object to discovery of any source of ESI on the basis that production would impose undue burden or cost.

**Custodians, Sources, and Search Methodology.** Custodians, data sources, and search methodologies (including search terms, date ranges, and any technology-assisted-review or analytics protocols) shall be the subject of cooperative negotiation between the Parties before any large-volume collection or production is undertaken. Defendant does

PAGE 16 OF 32

not consent to any blanket or unilateral demand for production of all data from any custodian or source.

**Production Format.** Documents shall be produced as single-page Group IV TIFF images with corresponding text-extracted load files (Concordance .DAT and Opticon .OPT or equivalent), Bates numbering, and a standard set of objective metadata fields, including (without limitation) custodian, source, file name, file path, original file extension, document date, sender, recipients, subject, and hash value. Spreadsheets, presentations with embedded macros, audio, video, and similar files for which TIFF imaging is not reasonably useful shall be produced in native format with appropriate slip-sheet placeholders.

**Source Code and Trade Secrets.** The architecture, source code, and proprietary technical specifications of Epic's electronic-health-record system constitute highly sensitive trade-secret information. To the extent any such material is determined to be discoverable, Defendant proposes that it be produced subject to a separate Source Code Protocol providing, at a minimum, that (i) review take place on a stand-alone, non-networked computer at Epic's counsel's office or another mutually agreed secure location; (ii) no copying, photographing, printing, or remote access of source code be permitted absent advance written agreement; (iii) any printouts be tightly limited and Bates-marked HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY; and (iv) any AI-platform restrictions adopted by the Court (see Section III.F below) apply with full force.

**De-Duplication and Threading.** Production may be globally de-duplicated across custodians on the basis of MD5 or SHA-1 hash values, with all custodians for any de-duplicated record identified in metadata. Email-thread suppression of inclusive emails may be employed where appropriate.

**Cost-Shifting.** Each Party reserves the right to seek cost-shifting under Federal Rule of Civil Procedure 26(b)(2)(B) with respect to any ESI source determined to be not reasonably accessible.

**Plaintiff's Position.** Plaintiff does not oppose reasonable ESI preservation obligations, proportional ESI procedures, conferral regarding custodians, sources, search methods, metadata, de-duplication, production format, or application of Federal Rule of Civil Procedure 26(b)(2)(B), but reserves the right to challenge unsupported assertions that information is not reasonably accessible, unduly burdensome, privileged, confidential, or subject to cost-shifting. Any ESI or confidentiality protocol should be tailored to the limited discovery actually sought and should facilitate Phase 1 discovery rather than delay it, narrow otherwise discoverable information, impose unnecessary costs, or allow Defendant to control the practical scope of production before Plaintiff has served targeted requests.

Plaintiff proceeds pro se and does not have access to enterprise e-discovery platforms such as Relativity or Concordance. Consistent with Rule 34's requirement that electronically stored information be produced in a reasonably usable form, Plaintiff requests that text-based documents be produced, to the extent practicable, as searchable PDFs, and that spreadsheets, structured data, logs, exports, tables, and similar materials

be produced in native format, including .xlsx or .csv where applicable, with metadata preserved as required by the Federal Rules. Plaintiff does not seek duplicative production in multiple formats, but objects to production methods that convert searchable electronic materials into less usable formats, require specialized litigation software unavailable to a pro se litigant, impose unnecessary paper-copy or imaging costs, rely on proprietary load-file formats, or otherwise make simpler electronic exchange impracticable where reasonably available. Plaintiff intends to produce materials electronically and requests reciprocal electronic production.

Plaintiff does not presently seek unrestricted source-code production and does not concede that any protective order, heightened confidentiality regime, attorney-only designation, special discovery restriction, or source-code protocol is necessary before limited Phase 1 discovery may proceed. If Defendant later seeks specific restrictions concerning source code, trade secrets, proprietary architecture materials, or highly sensitive technical specifications, Defendant should be required to make the showing required by Federal Rule of Civil Procedure 26(c), and any such restrictions should be narrowly tailored, supported by a particularized showing, and not operate as a functional bar to Plaintiff's meaningful review of discoverable non-source-code technical materials relevant to Phase 1, including customer-facing materials, implementation documentation, configuration framework materials, product-functionality materials, and related technical documentation. An Attorneys Eyes Only tier should not be included in any protective order or confidentiality procedure applicable to Plaintiff, as Plaintiff proceeds pro se and has no attorney through whom such materials could be reviewed.

Likewise, any source-code review protocol requiring access exclusively at Defendant's counsel's office or otherwise preventing practical pro se access would operate as a functional bar. Plaintiff respectfully requests that any confidentiality procedure preserve a practical mechanism for pro se access to discoverable materials.

Defendant's anticipated concerns regarding source code, trade secrets, complex ESI procedures, AI restrictions, confidentiality, or cost-shifting do not justify delaying or burdening targeted Phase 1 discovery into Epic's own system design, functionality, safeguards, configuration framework, implementation materials, and customer-facing or implementation-facing documentation.

### D.  Rule 26(f)(3)(D) — Privilege and Trial-Preparation Materials

**<u>Defendant's Position</u>.** The Parties have not yet reached agreement on a privilege protocol. Defendant's preliminary positions are set forth below.

**FRE 502(d) Order.** Defendant requests that the Court enter an order under Federal Rule of Evidence 502(d) providing that the production of any document or ESI subject to the attorney-client privilege or the attorney work-product doctrine shall not constitute a waiver of any privilege or protection in this or any other federal or state proceeding, regardless of whether the production was inadvertent. Defendant will submit a proposed FRE 502(d) order separately.

**Clawback Procedure.** If a Producing Party determines that privileged or protected material has been produced, the Producing Party shall promptly notify the Receiving Party in writing identifying the produced material with reasonable specificity. Within five (5) business days of such notice, the Receiving Party shall return, destroy, or

sequester the identified material and all copies, and shall not use or disclose the material pending resolution of any privilege dispute. Any Party may move for an order compelling production of, or otherwise contesting the privilege call as to, the identified material in accordance with Federal Rule of Civil Procedure 26(b)(5)(B).

**Privilege Log.** Each Party shall serve a privilege log identifying any responsive document withheld on the basis of privilege or work-product protection, no later than 30 days following the substantial completion of that Party's document production. The log shall include, for each entry, (i) a sequential identifier; (ii) date; (iii) author(s); (iv) recipient(s) (including cc and bcc); (v) document type; (vi) general subject matter sufficient to assess the claim of privilege without revealing privileged content; and (vii) the privilege or protection asserted. Where appropriate, the Parties may agree to log certain categories of communications (e.g., communications with outside counsel of record after the litigation-hold date) on a categorical or metadata basis rather than a document-by-document basis.

**Plaintiff's Position.** Plaintiff does not oppose a reasonable Federal Rule of Evidence 502(d) order, a proportional clawback procedure, or privilege logs consistent with Federal Rule of Civil Procedure 26(b)(5). Plaintiff agrees that privileged attorney-client or work-product materials may be withheld if properly identified and that inadvertently produced privileged material may be addressed under Rule 26(b)(5)(B).

Plaintiff objects, however, to any privilege protocol that delays limited Phase 1 discovery, imposes unnecessary cost or technical burden, or allows broad withholding without enough information to assess the claim of privilege. Any privilege log should be

simple, proportional, and provided within a reasonable time after production. The log should identify the basis for any privilege claim without requiring excessive detail or creating satellite disputes unrelated to the merits.

Plaintiff also agrees that categorical logging may be appropriate for clearly privileged categories, including communications with counsel after litigation began, if the categories are described with enough specificity to evaluate the privilege claim. Plaintiff reserves the right to challenge unsupported privilege assertions, overbroad categorical withholding, or privilege claims used to shield nonprivileged business, technical, implementation, product, or customer-facing materials.

### E. Rule 26(f)(3)(E) — Changes in Limitations on Discovery

**Defendant's Position.** Defendant proposes that the presumptive limits established by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Texas govern this action. Each Party reserves the right to seek leave of Court to expand any of the foregoing limits upon a showing of good cause and proportionality under Federal Rule of Civil Procedure 26(b)(1).

**Plaintiff's Position.** Plaintiff does not oppose application of the presumptive discovery limits under the Federal Rules and Local Rules at this stage. Because the core technical information is largely within Defendant's possession, custody, or control, Plaintiff does not presently seek expanded numerical limits before receiving Defendant's initial disclosures and Phase 1 production. Plaintiff requests only that the presumptive limits not be construed to exclude targeted, proportional Phase 1 discovery into the Epic-controlled software-architecture issues central to the claims and defenses. Plaintiff

reserves the right to seek modification of discovery limits upon a showing of good cause and proportionality under Rule 26(b)(1).

### F. Rule 26(f)(3)(F) — Other Orders Under Rule 26(c) or Rule 16(b) and (c)

**<u>Defendant's Position.</u>** If the Court declines to stay discovery and discovery proceeds in this action, Defendant respectfully requests that the Court enter, before any production of confidential or proprietary information, a stipulated protective order under Federal Rule of Civil Procedure 26(c). This action may involve disclosure of (i) the protected health information; (ii) Epic's proprietary information, including source code, system architecture, design documentation, implementation and configuration documentation, and other trade-secret information regarding its electronic-health-record system; and (iii) confidential information concerning Epic's contractual relationship with the implicated health system. Entry of a protective order is warranted under Rule 26(c)(1)(G).

Defendant further requests that any protective order entered in this action include AI-specific provisions modeled on those recently entered in *Morgan v. V2X, Inc.*, No. 25-cv-01991-SKC-MDB, 2026 WL 864223 (D. Colo. Mar. 30, 2026). Plaintiff has indicated her use of artificial-intelligence platforms in connection with this litigation. As the *Morgan* court recognized when confronted with a similar circumstance, mainstream consumer AI platforms—including the standard configurations of ChatGPT, Claude, and Gemini— collect and store user inputs in ways that pose substantial risks of compromise to confidential and proprietary information that would be disclosed in discovery. *See id.* at

*5–*7. Defendant therefore proposes that the protective order include the following provision, modeled on the AI-use restriction adopted in *Morgan*:

> **Restrictions on Use of AI Platforms with Confidential Information.** Without prior notice to and the written permission of the producing party, no party or other person authorized to access information designated CONFIDENTIAL or CONFIDENTIAL ATTORNEYS EYES ONLY under this Order may submit, upload, or otherwise input such information into any artificial-intelligence platform (including, without limitation, any generative, analytical, or large-language-model-based tool), unless the AI provider is contractually obligated to satisfy each of the following requirements: (a) inputs may not be retained, stored, or used by the provider to train or improve any model; (b) inputs may not be shared with or disclosed to any third party other than as strictly necessary to deliver the service to the user, and any such third party must be contractually bound by protections at least as restrictive as those imposed by this Order; (c) the user must have the contractual right, on demand, to require the provider to delete or remove any CONFIDENTIAL information previously submitted; and (d) the using party must retain written documentation evidencing the foregoing contractual protections. Notwithstanding the foregoing, no information produced by any party in discovery in this action—whether or not designated CONFIDENTIAL—may be submitted to, retained by, or otherwise made available to any AI provider for the purpose of training, fine-tuning, or otherwise improving any AI model.

Defendant further requests that the Court order each party—including pro se Plaintiff—to disclose, within a reasonable time set by the Court, the identity of any AI platform that the party intends to use, to input, upload, submit, process, review, analyze, organize, or store any information designated CONFIDENTIAL under the protective order. As *Morgan* explained, such disclosure is necessary to permit each producing party to assess whether its confidential information has been or could be compromised; the disclosure of an AI tool's identity does not, without more, infringe a litigant's work-

product protections. *See id.* at \*4–\*5. Defendant further requests that, contemporaneously with entry of the protective order, each party file a one-time disclosure identifying any AI platform the party has used in connection with this litigation up to the date of entry, so that each producing party may assess any pre-order use of AI on materials relevant to this case.

**Plaintiff's Position.** Plaintiff objects to entry of Defendant's proposed protective order as a condition precedent to limited Phase 1 discovery. Plaintiff will comply with the Federal Rules, including applicable confidentiality, privacy, redaction, and filing requirements, and will handle properly identified confidential information responsibly. The possibility that some discovery may involve confidential, proprietary, trade-secret, or AI-related issues does not justify delaying discovery, imposing blanket restrictions, or conditioning Phase 1 discovery on entry of a protective order before any specific production issue arises.

If Defendant seeks a protective order or other special discovery restriction, Defendant should be required to make the showing required by Federal Rule of Civil Procedure 26(c). Any such procedure should be narrowly tailored, apply only to properly designated confidential information, require good-faith designations, apply equally to all parties, and include a practical procedure for resolving disputed designations. Plaintiff objects to blanket designations unsupported by a document-specific basis or particularized showing, and to confidentiality designations used to impede Plaintiff's review of non-trade-secret, non-source-code, customer-facing, training, implementation, user-guide, marketing, ordinary-course, or otherwise nonconfidential materials.

Plaintiff proceeds pro se and has no attorney through whom Attorneys' Eyes Only materials could be reviewed. Any Attorneys' Eyes Only designation would therefore operate as a complete bar to Plaintiff's access to those materials, and Defendant must demonstrate that no less restrictive designation would adequately protect the claimed interest before invoking that tier. An Attorneys' Eyes Only tier should not be included in any protective order or confidentiality procedure applicable to Plaintiff.

Plaintiff specifically objects to any provision that would limit Plaintiff's ordinary use of drafting, research, organizational, or analytical tools with nonconfidential information, public information, pleadings, court filings, or her own work product, or require retroactive disclosure of such tools used before entry of any protective order, as such a requirement would not protect confidential discovery material and would instead improperly seek disclosure into litigation methods, work product, or pre-protective-order conduct unrelated to any properly designated confidential information. Any AI-related restriction should be limited to preventing disclosure, retention, training, or exposure of properly designated confidential discovery material outside this litigation, should apply only to tools used with designated confidential material, and must be reciprocal. If Defendant seeks disclosure of Plaintiff's AI tools or restrictions on Plaintiff's use of AI, Defendant and its counsel should be subject to the same requirements for any AI-enabled legal research, document-review, drafting, analytics, litigation-support, or e-discovery tools used to process, review, summarize, store, or analyze confidential information in this case. Defendant's reliance on *Morgan v. V2X, Inc.* does not justify

asymmetrical tool-based restrictions or converting confidentiality concerns into a barrier to limited Phase 1 discovery.

## IV.   CONSENT TO TRIAL BEFORE A UNITED STATES MAGISTRATE JUDGE

The Parties do not jointly consent to referral of this case to a United States Magistrate Judge for trial pursuant to 28 U.S.C. § 636(c).

## V.   ALTERNATIVE DISPUTE RESOLUTION

**Defendant's Position.** Defendant does not believe that referral to alternative dispute resolution or a court-supervised settlement conference is appropriate at this time. Defendant's pending Motion to Dismiss (ECF No. 13), which seeks dismissal of all claims, places the Parties at materially different positions concerning the threshold viability of Plaintiff's claims, and meaningful settlement discussions cannot productively occur until the scope of the case (if any) is defined by the Court's ruling on the Motion to Dismiss. Defendant submits that mediation may become appropriate at a later stage in this matter—for example, after a ruling on the Motion to Dismiss and the substantial completion of fact discovery—and proposes that the Parties be directed to confer regarding mediation no later than 30 days following the close of fact discovery and to file a joint status report informing the Court whether ADR is then advisable.

**Plaintiff's Position.** Plaintiff agrees that referral to ADR or a court-supervised settlement conference is not appropriate at this time. Plaintiff further agrees that the Parties may confer regarding mediation after substantial completion of fact discovery

and file a joint status report advising the Court whether ADR is then advisable, provided that ADR does not stay or delay discovery or other case-management deadlines.

## VI.    ADDITIONAL MATTERS (PERMITTED CONTENTS)

### A.  Modifications to Timing of Disclosures Under Rule 26(a) and Rule 26(e)(1)

**Defendant's Position.**

The Parties' positions on the timing of Rule 26(a)(1) initial disclosures are set forth in Section III.A above, and the proposed deadlines for Rule 26(a)(2) expert disclosures are set forth in Section II.E above. Defendant proposes that Rule 26(a)(3) pretrial disclosures be made on the schedule established by the Local Rules and the Court's pretrial-conference order, and that Rule 26(e)(1) supplementation be made promptly upon a Party's discovery of additional or corrective information, consistent with the Federal Rules.

**Plaintiff's Position.** Plaintiff does not oppose application of the timing provisions set forth in the Federal Rules and Local Rules with respect to Rule 26(a)(3) pretrial disclosures and Rule 26(e)(1) supplementation. Plaintiff's positions regarding Rule 26(a)(1) initial disclosures and Rule 26(a)(2) expert disclosures are stated above.

### B.  Modifications to the Extent of Discovery Otherwise Permitted

**Defendant's Position.** The Parties' positions on the subjects of discovery, the proposed timing of discovery completion, and proposals concerning phasing are set forth in Section III.B above; Defendant's positions on the numerical and durational limits applicable to discovery are set forth in Section III.E above. Defendant does not propose

any further modifications to the extent of discovery beyond those addressed in those Sections.

**Plaintiff's Position.** Plaintiff does not propose any modifications to the extent of discovery beyond those addressed above and opposes any limitations that would restrict discovery of relevant, nonprivileged information under Rule 26(b)(1).

## C.  Pre-Motion Conference Procedure for Discovery Disputes

**Defendant's Position.** Defendant does not propose a separate pre-motion conference requirement for discovery disputes beyond the meet-and-confer obligations imposed by Federal Rule of Civil Procedure 37(a)(1) and Local Rule 7.1(a)–(b). Defendant submits that those existing requirements provide an adequate procedural framework for resolving discovery disputes without imposing additional layers of conference or status-reporting obligations on either Party.

**Plaintiff's Position.** Plaintiff does not oppose reliance on the meet-and-confer requirements set forth in Federal Rule of Civil Procedure 37(a)(1) and Local Rule 7.1(a)–(b). Because this case involves technical software-design issues and Defendant has already indicated that it may object to discovery on burden, confidentiality, source-code, trade-secret, AI-use, and third-party grounds, Plaintiff respectfully requests that the Court permit either party to request an early discovery-status conference if disputes arise concerning phased discovery, ESI scope, confidentiality designations, requested discovery restrictions, or the proper distinction between system-design discovery and provider-conduct discovery. Such a procedure would promote efficiency, reduce motion practice, and allow discovery to proceed in a proportional manner.

D. **Proposed Dates for Pretrial Conferences, Final Pretrial Conference, and Trial**

**Defendant's Position.** Defendant requests that this matter be set for trial in February 2028. Defendant estimates that trial will require approximately five (5) trial days. Plaintiff has demanded a jury trial in her Amended Complaint, and the matter shall therefore be tried to a jury. Defendant requests that the final pretrial conference be set approximately 30 days before the trial date, with any additional interim pretrial conferences set in the Court's discretion based on the needs of the case.

**Plaintiff's Position.** Plaintiff confirms her jury demand. Plaintiff proposes that the Court set this matter for trial in Fall 2027. Plaintiff believes a Fall 2027 trial setting is feasible and consistent with efficient case management, particularly given that the core technical issues are discrete and largely within Defendant's possession, and does not agree that February 2028 is necessary. Plaintiff estimates that trial will require approximately five (5) to seven (7) trial days, depending on the scope of claims remaining after resolution of any dispositive motions. Plaintiff does not oppose setting the final pretrial conference approximately 30 days before trial or allowing the Court to set any additional interim pretrial conferences as needed.

E. **Other Appropriate Matters**

**Defendant's Position.** Defendant identifies the following additional matters for inclusion in the Court's scheduling order:

**Service of Discovery Materials.** Pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), the Parties consent to electronic service of discovery requests, responses, objections, and other discovery materials by email to designated service addresses, with

service deemed complete upon transmission, except that materials transmitted after 5:00 p.m. Central Time shall be deemed served on the next business day.

**Daubert Motions and Motions in Limine.** Defendant proposes that any motion to exclude or limit expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), be filed concurrently with dispositive motions, and that motions in limine be filed no later than 30 days before the trial date.

**Familiarity with Local Practice.** The undersigned counsel for Defendant confirms his familiarity with *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the Civil Justice Expense and Delay Reduction Plan for the Northern District of Texas.

**Plaintiff's Position.** Plaintiff will comply with the applicable standards of conduct, including those set forth in *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the Court's Civil Justice Expense and Delay Reduction Plan.

Plaintiff does not oppose electronic service of discovery requests, responses, objections, and discovery-related correspondence by email to designated service addresses. Materials transmitted after 5:00 p.m. Central Time shall be treated as served on the next business day unless otherwise required by the Federal Rules or agreement of the parties.

Plaintiff does not oppose, for scheduling purposes only, requiring motions to exclude or limit expert testimony under Federal Rule of Evidence 702 and *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to be filed concurrently with dispositive motions, or requiring motions in limine concerning trial evidence or argument to be filed no later than thirty days before the trial date. Plaintiff reserves all substantive objections, responses, and arguments regarding any such motion, and further reserves all rights to object to the use of any undisclosed evidence, factual material, discovery, arguments, or information from any other litigation involving Defendant unless properly disclosed and used in compliance with the Federal Rules.

DATE: May 15, 2026

| | |
|---|---|
| Respectfully submitted,<br><br>*/s/ Gallit Fischman*<br>Gallit Fischman<br>10114 Deermont Trail<br>Dallas, Texas 75243<br>Telephone: (214) 893-6720<br>gallitfischman@yahoo.com<br><br>**PLAINTIFF, PRO SE** | Respectfully submitted,<br><br>*/s/ Christopher J. Schwegmann*<br>Christopher J. Schwegmann<br>Texas Bar No. 24051315<br>**LYNN PINKER HURST & SCHWEGMANN, LLP**<br>2100 Ross Avenue, Suite 2700<br>Dallas, Texas 75201<br>Telephone: (214) 981-3800<br>cschwegmann@lynnllp.com<br><br>**ATTORNEY FOR DEFENDANT**<br>**EPIC SYSTEMS CORPORATION** |

### CERTIFICATE OF SERVICE

The undersigned certifies that, on May 15, 2026, a true and correct copy of the foregoing Joint Scheduling Proposal was served on all counsel and pro se parties of record via the Court's ECF system.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann

**PAGE 32 OF 32**