IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:26-CV-0770-D |
| | § | |
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This is a *pro se* diversity action by plaintiff Gallit Fischman ("Fischman") asserting

various state-law claims against defendant Epic Systems Corporation ("Epic") arising from

the death of her father. Epic moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to

state a claim on which relief can be granted. For the reasons that follow, the court grants in

part and denies in part Epic's motion and grants Fischman leave to replead.

I

The court need not set out the background facts and procedural history at length.

Fischman sues Epic based on claims arising from the death of her father, who died after

receiving medical care at a facility that used Epic's electronic health record ("EHR") system.

According to Fischman's first amended complaint ("amended complaint"), the Epic EHR

system is "a centralized platform that structures clinical workflows, governs data entry, and

determines how information is presented and used in patient care." Am. Compl. ¶ 16.[1] "Epic exclusively controls the structure through which medication data is created, stored, and displayed." *Id.* ¶ 26. Fischman alleges that deficiencies in Epic's EHR system caused her father's death by preventing the display of accurate medical information necessary to identify and treat his condition.

Fischman now sues Epic, alleging state-law claims for wrongful death, negligence, products liability, negligent misrepresentation, and gross negligence. Epic moves to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Fischman opposes the motion, which the court is deciding on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the] plaintiff['s] amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (final alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the

---

[1]In deciding Epic's Rule 12(b)(6) motion to dismiss, the court construes the amended complaint in the light most favorable to Fischman, as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Fischman's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). Moreover, because Fischman is proceeding *pro se*, the court construes the allegations of her amended complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam).

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court turns first to Fischman's claim for wrongful death damages. Fischman seeks damages, including for loss of companionship, mental anguish, loss of inheritance, and pecuniary loss.

A

Epic moves to dismiss this claim to the extent that Fischman seeks non-wrongful-death damages, contending that she lacks the capacity to do so. Epic maintains that Fischman sues only in her individual capacity as the adult daughter of Dov Fischman, and as a statutory wrongful-death beneficiary under Tex. Civ. Prac. & Rem. Code Ann. § 71.004,

- 3 -

and that she does not allege that she is the personal representative of her father's estate. Epic contends that counts two through five of the amended complaint should be dismissed without prejudice to the extent they seek damages recoverable only by the representative bringing those claims.

B

Under the Texas Wrongful Death Act, a defendant is liable "for damages arising from an injury that causes an individual's death if the injury was caused by the [defendant's] or [its] agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default." Tex. Civ. Prac. & Rem. Code Ann. § 71.002(b) (West 1985). "A cause of action under the Texas Wrongful Death Act is, by its nature, a derivative action." *Davenport v. Phillip Morris, Inc.*, 761 S.W.2d 70, 71 (Tex. App. 1988, no pet.). In other words, "the code provisions which create the wrongful death cause of action apply 'only if the individual injured would have been entitled to bring an action for the injury if he had lived.'" *Id.* (quoting Tex. Civ. Prac. & Rem. Code Ann. § 71.003 (West 1986)). "A wrongful death action cannot be maintained successfully when the decedent has no cause of action if he survived the injuries." *Id.* The controlling question, therefore, is whether Fischman has plausibly pleaded that Epic would have been liable to her father, as the decedent, had he lived and brought this lawsuit. *See id.*

Because Fischman's wrongful death cause of action is derivative of her other claims—two of which she has plausibly pleaded, *see infra* at §§ IV and V—the court

- 4 -

concludes that her claim for wrongful death damages should not be dismissed.[2]

IV

The court now considers Fischman's negligence claim.

A

"A negligence claim requires proof of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Bartolowits v. Wells Fargo Bank, N.A.*, 2016 WL 1436430, at *7 (N.D. Tex. Apr. 11, 2016) (Fitzwater, J.) (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001)). "The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). In undertaking this analysis, the court weighs "the risk, foreseeability, and likelihood of injury . . . against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Hous. Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 583 (Tex. 2023) (alteration in original) (citation omitted). The court also considers "whether one party would generally

---

[2]The damages recoverable in a wrongful death action are those suffered by the wrongful death beneficiaries, not the decedent. *See THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 568 (Tex. App. 2010, pet. denied). Consequently, Epic asks the court to dismiss Fischman's claims to the extent they seek damages recoverable only by the estate's personal representative. Fischman does not appear to dispute Epic's assertion that she cannot seek such damages; she states instead that she does not assert a survival claim or seek recovery on behalf of her father's estate. Because Fischman does not purport to seek damages other than those permitted under the Texas Wrongful Death Act, the court discerns no basis to dismiss counts two through five of the amended complaint to the extent Epic seeks to dismiss them.

have superior knowledge of the risk or a right to control the actor who caused the harm." *Id.* (citation omitted).

Proximate cause consists of cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). "Cause in fact has two components: (1) 'but-for' causation, and (2) 'substantial-factor' causation." *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 532 (Tex. 2025) (citation omitted). "The defendant's negligence is the 'but-for' cause of an injury if, without the act or omission, the harm would not have occurred." *Id.* (citation and internal quotation marks omitted). And to satisfy the substantial factor component, it must be reasonable to conclude that the defendant is "actually responsible for the ultimate harm." *Id.* at 533 (citation omitted). In other words, the defendant's conduct must do more than "merely create[] the condition that makes the harm possible." *Id.* (citation omitted). Foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe v. Boys Clubs*, 907 S.W.2d at 478.

B

Fischman alleges that Epic retains exclusive and ongoing architectural control over the EHR software used by the medical professionals who treated her father. This control, Fischman alleges, extends to the "database structure, medication record design, reporting frameworks, and system logic governing medication timelines and historical data." Am. Compl. ¶ 17. She identifies deficiencies in the EHR software that she alleges resulted in incomplete and unreliable medication records that affected her father's care, including the

software's failure to "enforce[] medication timelines, require[] prescriber attribution, reconcile[] active and discontinued medications, and produce[] reports distinguishing current from historical information." Am. Compl. ¶ 61. Fischman alleges that these systematic deficiencies are inherent to the EHR system and cannot be modified by hospitals, and that the deficiencies therefore constrained all subsequent medical judgment.

C

Construing the *pro se* amended complaint liberally, the court concludes that Fischman's allegations are sufficient to plausibly plead a negligence claim. The court can draw the reasonable inference from the amended complaint that Epic breached its duty of care to Fischman's father by designing and licensing an EHR system with architectural defects that proximately caused his death.

Epic maintains that, as a third-party vendor, it owed no duty to patients whose records are managed on its EHR platform. Although the court is unaware of a decision of a Texas court that specifically recognizes such a duty,[3] it faced a similar question in *Davis v. Dallas*

---

[3]When, as here, the law that a Texas court would apply is Texas law, and there is no binding decision of the Supreme Court of Texas on the question, this court must make an "*Erie*-guess," i.e., a prediction of how the Supreme Court of Texas would resolve the issue if presented with the same case. *See, e.g.*, *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). In doing so, this court is not required to be prescient. Instead, "[w]hen confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue." *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir. 1995) (alteration in original) (quoting *DeWeerth v. Baldinger*, 38 F.3d 1266, 1273 (2d Cir. 1994)). "*Erie* and its progeny require no more of a federal court than that it conscientiously satisfy its duty to predict how the state court would decide a question." *Id.*

*County, Texas*, 541 F.Supp.2d 844 (N.D. Tex. 2008) (Fitzwater, C.J.).  *Davis* involved a technology support contractor who installed and programmed a computer system at the Dallas County Jail.  *Id.*  Underlying the plaintiffs' negligence claim was their allegation that the defendant would have known that Dallas County would rely on the computer system "to transmit accurate prisoner information among the relevant Dallas County officials to ensure that Dallas Jail inmates were released in accordance with the law." *Id.* at 853.  In concluding that the plaintiffs had plausibly pleaded that the contractor owed a duty of care to prisoners, the court drew from Texas courts' general imposition of "a duty of care on contractors to prevent injury to third parties that result from the performance of their contractual duties." *Id.*  And the court determined that the foreseeability of the harm caused by the alleged technological deficiencies outweighed the burden of imposing a duty of care on the defendant and other public policy concerns.  *Id.*

Although Fischman does not allege that Epic acted as a contractor, the court finds *Davis* persuasive in this context, where Fischman has also alleged injury stemming from deficiencies in a software system that are traceable to ongoing control exercised by the defendant.  Moreover, in analogous contexts, Texas courts have recognized that product manufacturers owe a duty of reasonable care, not only to users of a product, but also to individuals in the foreseeable zone of danger.  *See, e.g.*, *Syrie v. Knoll Int'l*, 748 F.2d 304, 307 (5th Cir. 1984) ("Generally, a person who manufactures or supplies a product owes a duty of reasonable care to users of the product and to those in the foreseeable zone of danger." (citation omitted)); *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 590-91 (Tex.

- 8 -

1986) ("A manufacturer has long been held to have a duty to exercise ordinary care in the design of a product.").

Fischman has plausibly pleaded that it was foreseeable to Epic that the alleged deficiencies in its EHR system would cause harm and potentially fatal injuries to patients, like Fischman's father, whose care depended on the accuracy of that information. Even accepting Epic's assertions that its software has important social utility, the court is not persuaded that imposing a duty here would be any more burdensome, or contrary to public policy, than the duties of care already recognized under Texas law, such as that of product manufacturers.[4] Therefore, the court predicts that the Supreme Court of Texas would impose a duty of care in these circumstances, and concludes that Fischman has plausibly pleaded the duty element of her negligence claim.[5]

---

[4]The court finds Epic's reliance on *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580 (Tex. 2023), unpersuasive. *Mendez* concerned the question whether a third-party laboratory hired by an employer to test employees' biological samples for drugs owed a duty of care to those employees. *Id.* at 581. The Supreme Court of Texas's analysis in that case relied on guideposts that are not present here, such as Texas precedent establishing that employers owed no duty to employees in the same context, *id.* at 588 n.52; existing protections and regulations addressing the same risks; and the employment at-will doctrine, *id.* at 591. *Mendez* does not establish the broad rule that third-party vendors owe no duty to their clients' end users.

[5]In reaching the conclusion that Fischman has plausibly pleaded the duty element of her claim, the court accepts as true, as it must, the well-pleaded allegations of her amended complaint. *See Lovick*, 378 F.3d at 437. Although Epic offers its own view of how its EHR software operates and the degree of ongoing control that it exercises, the court considers only the well-pleaded facts in the amended complaint. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). If the record later develops, however, in a manner that persuades the court that a duty of care does not exist, the court may revise this conclusion. And if the Supreme Court of Texas later issues a decision that is pertinent on this question,

Epic also contends that Fischman has not plausibly pleaded proximate cause. The court disagrees. Fischman alleges that physicians who treated her father relied on Epic's EHR system and that inaccuracies traceable to Epic's ongoing conduct adversely impacted his treatment, contributing to his death. She plausibly pleads that it was foreseeable to Epic that the alleged deficiencies in the EHR software would cause the general kind of injury that Fischman's father suffered. *See Davis*, 541 F.Supp.2d at 853 ("[P]laintiffs' general injury . . . was a foreseeable consequence of [defendant's] alleged negligence in installing, programming, and integrating [the computer system].").

Even assuming *arguendo* that Epic is correct that treating physicians' independent judgment must play a role in Fischman's alleged causal chain, Fischman's allegations enable the court to draw the reasonable inference that the EHR system's deficiencies were a but-for cause of, and substantial factor in, her father's death. *See Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017) ("[A] defendant's act or omission need not be the sole cause of an injury, as long as it is a substantial factor in bringing about the injury."); *see also Davis*, 541 F.Supp.2d at 854 ("When a new cause cooperates with the defendant's original negligent act in causing the injury, the original defendant remains a proximate cause of the injury, regardless of whether the new concurring act was foreseeable." (quoting *J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 663 (Tex. App. 1999, pet. denied)). Moreover, the court is not

---

the court will follow that ruling. *See Broussard v. S. Pac. Transp. Co.*, 625 F.2d 1242, 1246 n.3 (5th Cir. 1980), *on reh'g*, 665 F.2d 1387 (5th Cir. 1982) ("As state law changes, the federal courts must apply the new law, regardless of prior decisions.").

persuaded that the learned intermediary doctrine, which applies to claims premised on a failure to adequately warn, *see Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 168 (Tex. 2012), compels dismissal of Fischman's negligence claim, which relies on alleged deficiencies that are broader than just inadequate warnings.

Construed liberally and taken as true, Fischman's allegations are sufficient to state a negligence claim. Accordingly, the court declines to dismiss this claim.

V

The court now considers Fischman's products liability claim for design defect.

A

To state a design defect claim, Fischman must plausibly plead that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (citation omitted); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a) (West 1993).

B

In support of her design defect claim, Fischman alleges that Epic's EHR software was defective insofar as it "lacked enforced medication-timeline documentation, required no prescriber attribution across care transitions, permitted inconsistent medication information to be displayed without reconciliation, and did not support reliable reconstruction of medication status over time." Am. Compl. ¶ 99. She also alleges that "[s]afer alternative designs existed, including mandatory medication-timeline enforcement, automated expiration

- 11 -

of discontinued medications, required reconciliation at care transitions, reporting structures that distinguish current from historical information, and system-level validation rules that prevent inconsistent or incomplete medication states." *Id.* ¶ 100. And she alleges that the these deficiencies were producing and proximate causes of her father's injuries. *Id.*

C

The court concludes that Fischman has plausibly pleaded a design defect claim. Fischman identifies defects in the EHR platform, which she plausibly alleges caused her father's death. And the court can draw the reasonable inference that a platform that lacks such defects would be a safer alternative design. *See, e.g.*, *Est. of Alex through Coker v. T-Mobile US, Inc.*, 313 F.Supp.3d 723, 732 n.9 (N.D. Tex. 2018) (Lynn, J.) (presuming that a software that lacked the alleged design defects was a safer alternative design).

Epic maintains that its EHR platform is not a "product" for purposes of the Texas Products Liability Act, Tex. Civ. Prac. & Rem. Code Ann. § 82.001 *et seq*. Although the Supreme Court of Texas has not decided this issue,[6] this court predicts that the Supreme Court of Texas would conclude that Epic's EHR platform falls within the ambit of Chapter 82.

In deciding the definition of "product," the Supreme Court of Texas has looked to the Third Restatement of Torts ("Restatement"). *See, e.g.*, *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 897 (Tex. 2010). The Restatement recognizes that items that are not tangible

---

[6]In the absence of Supreme Court of Texas precedent, the court must once again make an *Erie*-guess. *See supra* note 3.

- 12 -

property can still be products "when the context of their distribution and use is sufficiently analogous to the distribution and use of tangible personal property." *Id.* (quoting Restatement (Third) of Torts: Products Liability § 19 (Am. L. Inst. 1998)). Moreover, in at least one case, a Texas court of appeals recognized that software was a "product" where that software was "a highly technical tool used to create a graphic representation from technical data." *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 n.2 (Tex. App. 2000, no pet.) (citing *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991)). And although in *Estate of Alex* Judge Lynn did not expressly grapple with the question whether software can constitute a "product" for purposes of a products liability claim, she permitted a Texas-law design defect claim to proceed where the alleged defective product was "software installed on mobile devices." *Est. of Alex*, 313 F.Supp.3d at 732.

Fischman's allegations enable the court to draw the reasonable inference that the EHR platform is a "highly technical tool" designed to display complex information, *Hou-Tex*, 26 S.W.3d at 107 n.2, and that is marketed and licensed to hospitals in a manner similar to how tangible products are distributed, *see Fresh Coat*, 318 S.W.3d at 897. The court is therefore persuaded that the Supreme Court of Texas would hold—at least based on the pleadings—that the EHR platform is a "product" for purposes of a design defect claim.

Epic also maintains that Fischman has failed to plausibly plead that the alleged deficiencies in the EHR platform were, together, a "producing cause" of her father's death. *See Goodner*, 650 F.3d at 1040. The court disagrees. "Texas courts define producing cause as one that is 'a substantial factor in bringing about an injury, and without which the injury

- 13 -

would not have occurred.'" *Id.* at 1044 (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)).  Here, for the same reasons that Fischman has plausibly pleaded proximate cause for purposes of her negligence claim, the court concludes that she has plausibly pleaded causation for her design defect claim.  *See supra* at § IV.

Accordingly, the court declines to dismiss Fischman's products liability claim.

VI

The court considers next Fischman's negligent misrepresentation claim.

A

To state a negligent misrepresentation claim, Fischman must plausibly plead that:

> (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*TIB—The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F.Supp.3d 661, 669 (N.D. Tex. 2014) (Fitzwater, C.J.).  The Supreme Court of Texas has limited liability for a negligent misrepresentation cause of action to situations in which the plaintiff is a "known party." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010). "[A] known party is one who falls in a limited class of potential claimants, for whose benefit and guidance one intends to supply the information or knows that the recipient intends to supply it." *Id.* (cleaned up).

- 14 -

B

In support of her negligent misrepresentation claim, Fischman alleges that Epic "represented that its EHR system was suitable for medication management, clinical documentation, and patient safety-critical communication, and that it met applicable federal standards for medication-record accuracy and reconciliation." Am. Compl. ¶ 102. She asserts that Epic "failed to disclose material limitations in its medication-list architecture, reconciliation processes, and reporting outputs, and made these representations without reasonable care." *Id.* ¶ 104. Fischman alleges that she "and her father relied on the system as an accurate reflection of medication status," and that "[Fischman] suffered harm as a direct result." *Id.*

C

Fischman has failed to plausibly plead a negligent misrepresentation claim. Even construing her amended complaint liberally, the court is unable to draw from Fischman's allegations the reasonable inference that Epic supplied the information for Fischman or her father's benefit and guidance in their business transactions. *See Axcess Broad. Servs., Inc. v. Donnini Films*, 2006 WL 2679982, at *3 (N.D. Tex. Sept. 18, 2006) (Lindsay, J.) (negligent misrepresentation claim failed for similar reasons). Moreover, Fischman's allegations that she and her father justifiably relied on Epic's alleged misrepresentations and that she suffered pecuniary harm as a result are unsupported by specific factual allegations and are therefore insufficient to plausibly plead the final element of her claim.

Accordingly, the court dismisses Fischman's negligent misrepresentation claim.

- 15 -

VII

Fischman also alleges a gross negligence claim, to which the court now turns.

A

Under Texas law,

> [g]ross negligence requires a showing of two elements: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others. Under the first, objective element, an extreme risk is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. Under the subjective element, actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care.

*Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (citation modified).

"A corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). A corporation commits gross negligence "if it authorizes or ratifies an agent's gross negligence," "if it is grossly negligent in hiring an unfit agent," or "if it commits gross negligence through the actions or inactions of a vice principal." *Id.* at 921-22.

B

Because Fischman has failed to identify any agents or vice presidents for whose actions Epic is liable, she has not plausibly pleaded a gross negligence claim. *See Culver v. Lowe's Home Ctrs. LLC*, 2025 WL 2402016, at *3 (N.D. Tex. Aug. 19, 2025) (Fitzwater, J.)

- 16 -

(granting summary judgment on gross negligence claim); *Lopez v. Lennar Homes of Tex. Land & Constr., Ltd*, 2024 WL 7018320, at \*4 (S.D. Tex. Sept. 13, 2024) (dismissing gross negligence claim for similar reason).

Accordingly, the court dismisses Fischman's gross negligence claim.

## VIII

Although the court is dismissing some of Fischman's claims, it will grant her leave to replead. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). There is no indication that Fischman cannot, or is unwilling to, cure the defects that the court has identified. And she has expressly requested leave to amend. Moreover, as a *pro se* plaintiff, Fischman should be given a fair opportunity to plead her best case. *See, e.g.*, *Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at \*1 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.) ("Although the court granted Merrill Lynch's motion to dismiss, it gave Robinette one more opportunity to plead his best case, because he was proceeding *pro se*."). Accordingly, the court will grant Fischman 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\* \* \*

For the reasons explained, the court dismisses Fischman's negligent misrepresentation and gross negligence claims, declines to dismiss her wrongful death, negligence, and products liability claims, and grants her leave to replead.

**SO ORDERED**.

June 8, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE