IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-CV-0770-D |
| | § | |
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

Plaintiff discloses that generative artificial intelligence was used to assist in the preparation of

this brief.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT AND SUPPORTING BRIEF**

---

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................... 1

II. THIS RENEWED MOTION EXCEEDS THE PROPER SCOPE OF RULE 12(B)(6)............ 2

III. EPIC CANNOT RELITIGATE THE COURT'S PRIOR RULING THROUGH
MATERIALS AVAILABLE WHEN IT FILED ITS ORIGINAL MOTION .............................. 5

IV. ADDITIONAL AUTHORITIES SUPPORT CLARIFICATION OF THE COURT'S
CONDITIONAL LANGUAGE........................................................................................ 6

V. EPIC'S APPENDIX IMPROPERLY ATTEMPTS TO ELIMINATE EPIC'S CAUSAL ROLE
............................................................................................................................... 9

VI. EVEN IF THE COURT CONSIDERS EPIC'S APPENDIX, IT DOES NOT ESTABLISH
ANY CONTRADICTION .............................................................................................. 11

VII. EPIC'S REMAINING ARGUMENTS DO NOT WARRANT DISMISSAL OR A MORE
DEFINITE STATEMENT.............................................................................................. 17

VIII. PLAINTIFF'S PRO SE PLEADINGS REMAIN ENTITLED TO LIBERAL
CONSTRUCTION....................................................................................................... 23

IX. CONCLUSION.......................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. California*, 460 U.S. 605, 618 (1983).............................................................. 4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................... 3

*Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir.
    1990) ............................................................................................................................ 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)........................................ 3

*BellSouth Telecommunications, Inc. v. Louisiana Public Service Commission*, No. 06-324-C-M2,
    2007 WL 9701563, at *7 n.14 (M.D. La. Mar. 23, 2007) ........................................... 14

*Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017)................................................. 9

*Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013)............................... 15

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816–17 (1988)................... 4

*Cicalese v. University of Texas Medical Branch*, 456 F. Supp. 3d 859, 872 (S.D. Tex. 2020).... 15

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ............. 3

*Coulter v. Deere & Co.,* No. CV H-21-2105, 2022 WL 912778 (S.D. Tex. Mar. 29, 2022) ....... 22

*De La Hoya Moreno v. K-Bar Tex. Elec., Inc.,* No. 07-18-00377-CV, 2020 WL 1161097 (Tex.
    App.—Amarillo Mar. 10, 2020, no pet.) ..................................................................... 22

*Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164 (Tex. 2005)......................... 22

*Doe v. University of Texas M.D. Anderson Cancer Center*, 653 F. Supp. 3d 359, 370 (S.D. Tex.
    2023)............................................................................................................................ 15

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ............................ 4

*Doyle v. Combined Systems, Inc.*, No. 3:22-CV-01536-K, 2023 WL 5945857, at *7 (N.D. Tex.
    Sept. 11, 2023)............................................................................................................. 13

*Fischman v. Boston Children's Hospital*, No. 1:26-cv-11504-WGY (D. Mass. filed Mar. 30,
    2026)............................................................................................................................. 5

*Fischman v. Epic Systems Corp.*, No. 3:26-CV-0770-D (N.D. Tex. June 8, 2026) (Fitzwater, J.)..
    ................................................................................................................................ 2, 4, 6

*Fischman v. Novartis Pharmaceuticals Corp.*, No. 3:26-cv-01882-K-BT (N.D. Tex. filed June 5,
    2026).............................................................................................................................. 5

*Fischman v. University of Texas Southwestern Medical Center*, No. DC-25-18350 (101st Dist.
    Ct., Dallas Cnty., Tex. filed Sept. 2025) ..................................................................... 5

*Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011).............................................. 3

*Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) ......................... 20

*HEI Resources, Inc. v. S. Lavon Evans, Jr. Operating Co.*, No. 5:09-CV-124, 2011 WL 1230338,
    at *6 (S.D. Tex. Mar. 29, 2011)................................................................................... 14

*Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-CV-1790-D, 2012 WL 5903780, at *4
    (N.D. Tex. Nov. 26, 2012)............................................................................................ 18

*Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983).............................................. 4

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)...................... 3

*Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921–22 (Tex. 1998) ........................... 20

*Mortland v. IK Onkar Hospitality LLC*, 775 F. Supp. 3d 1024, 1029 (N.D. Ind. 2025) ........ 11, 14

*Nix v. Major League Baseball, Office of the Commissioner of Baseball*, No. CV H-21-4180, 2022 WL 2118986, at \*5 (S.D. Tex. June 13, 2022).................................................................... 15

*Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)......................................................... 3

*Payne v. City of Houston*, No. 24-20150, 2025 WL 999085 (5th Cir. Apr. 3, 2025) (unpublished) .................................................................................................................................................... 3

*Quesnot v. Costco Wholesale Corp.,* No. 5:15-CV-1014-OLG, 2016 WL 11586209 (W.D. Tex. Aug. 24, 2016) ...................................................................................................................... 22

*Sanders v. University of Texas Pan American*, 776 F. App'x 835, 837–38 (5th Cir. 2019) .. 13, 17

*Tafolla v. Wacker, et al.,* No. 3:24-CV-00331, 2025 WL 875488, at 1 n.1 (N.D. Tex. Mar. 19, 2025) ............................................................................................................................................ 14

*Taylor v. Charter Medical Corp.*, 162 F.3d 827, 829-31 (5th Cir. 1998)....................................... 3

*Williams v. Avon Products, Inc.,* No. 4:19-CV-02337, 2019 WL 6040073 (S.D. Tex. Oct. 24, 2019), *report and recommendation adopted,* No. 4:19-CV-02337, 2019 WL 6038525 (S.D. Tex. Nov. 14, 2019) .......................................................................................................................... 22

**Statutes**

Tex. Civ. Prac. & Rem. Code ch. 82.............................................................................................. 4

**Other Authorities**

*Comparison of Medication Alerts from Two Commercial Applications in the USA*, Drug Safety (2021).............................................................................................................................................. 8

*Electronic Health Record Data Quality Assessment and Tools: A Systematic Review*, 30 J. Am. Med. Inform. Ass'n 1730, 1730–40 (2023) ............................................................................. 7

*Implementing a New Electronic Health Record System in a University Hospital: The Effect on Reported Medication Errors*, Healthcare 10(6):1020 (2022) ....................................................... 8

*Medication Reconciliation*, in *Patient Safety and Quality: An Evidence-Based Handbook for Nurses* (AHRQ 2008) ..................................................................................................................... 7

*Medication Reconciliation* PSNet (reviewed Dec. 2024) ............................................................... 7

*Medications at Transitions and Clinical Handoffs (MATCH) Toolkit for Medication Reconciliation* (AHRQ Pub. No. 11(12)-0059, updated Apr. 2023).......................................... 7

*Patient Safety Issues From Information Overload in Electronic Medical Records*, 18 J. Patient Safety e999, e999–e1003 (2022) ............................................................................................... 8

*Preventing Medication Errors* (Nat'l Academies Press 2007) ........................................................ 7

**Rules**

Fed. R. Civ. P. 11.................................................................................................................... 11, 16

Fed. R. Civ. P. 12(b)(6)............................................................................. 3, 5, 13, 16, 22, 25

Fed. R. Civ. P. 12(d) ................................................................................................................. 16, 17

Fed. R. Civ. P. 12(e) ................................................................................................................. 18, 19

Fed. R. Civ. P. 26(a)(1)(A)(i) ......................................................................................................... 21

Fed. R. Civ. P. 8.................................................................................................. 11, 20, 24, 25

Fed. R. Civ. P. 8(d) ................................................................................................................. 11, 14

Fed. R. Civ. P. 9(b) ................................................................................................................. 20, 21

Fed. R. Evid. 201 ............................................................................................................................ 3

## I. INTRODUCTION

Epic's renewed Motion to Dismiss asks the Court to revisit issues it has already decided while relying on allegations drawn from Plaintiff's separate lawsuits rather than the well-pleaded allegations of the Second Amended Complaint. Rule 12(b)(6) confines the Court's review to the four corners of the operative pleading, yet Epic asks the Court to resolve disputed factual questions through a 184-page Appendix comprised primarily of filings from separate actions involving different defendants, different duties, and different legal theories.

Epic's own Motion acknowledges that the other complaints "do not mention Epic" and "assert no causal role for Epic or its software." Having failed to identify any allegation inconsistent with Plaintiff's claims against Epic, Epic instead mines those pleadings for isolated references to the electronic health record and presents them as though they concern the same functionality challenged here. The cited allegations concern different EHR functions performed by different actors under different legal duties. Epic manufactures the appearance of inconsistency by collapsing those distinct functions into a single generic reference to an "EHR" and then comparing unlike allegations as though they were the same.

The Court has already determined that Plaintiff plausibly stated claims for negligence, products liability, and wrongful death under Texas law. Epic's renewed Motion identifies no pleading deficiency in those claims. Instead, it recasts issues already resolved and attempts to obtain a different result through materials outside the operative pleading. Much of the material now relied upon, including Plaintiff's other publicly filed actions, existed before Epic filed its original Motion to Dismiss and could have been raised at that time.

Page 1

Plaintiff amended the gross-negligence allegations in response to the Court's Order, and Epic may challenge whether those amendments cure the deficiency previously identified. That limited issue does not permit Epic to use outside pleadings to reopen the negligence, products-liability, and wrongful-death claims the Court already held plausible.

Most importantly, the Court has already resolved the central premise underlying Epic's renewed causation argument. Applying Texas law, the Court held that Plaintiff plausibly alleged Epic's EHR deficiencies were "a but-for cause of, and substantial factor in," her father's death. The existence of additional alleged tortfeasors therefore does not eliminate Epic's independently pleaded causal role. At most, Plaintiff's separate actions allege distinct conduct by different defendants that contributed to the same injury.

Epic's renewed Motion therefore asks the Court to disregard the Rule 12(b)(6) standard, revisit rulings already made, and transform allegations concerning different defendants, functions, and duties into contradictions that do not exist. Rule 12(b)(6) permits none of those approaches. Discovery, not dismissal, is the proper mechanism for determining the extent of each defendant's role in the events giving rise to Plaintiff's claims.

## II. THIS RENEWED MOTION EXCEEDS THE PROPER SCOPE OF RULE 12(B)(6)

Epic's renewed Motion identifies no deficiency within the four corners of the Second Amended Complaint as to Plaintiff's negligence, design-defect product-liability, or wrongful-death claims, which the Court held plausibly pleaded in its June 8, 2026 Memorandum Opinion and Order. *Fischman v. Epic Systems Corp.*, No. 3:26-CV-0770-D (N.D. Tex. June 8, 2026) (Fitzwater, J.). Instead, Epic relies extensively on an appendix composed largely of pleadings from Plaintiff's separate lawsuits and asks the Court to use those materials to draw factual conclusions

concerning causation, control, and the respective roles of different defendants. Epic does not cite those pleadings as legal authority. It uses them as evidence to invite the Court to resolve disputed factual issues at the motion-to-dismiss stage.

That approach exceeds the proper scope of Fed. R. Civ. P. 12(b)(6). A Fed. R. Civ. P. 12(b)(6) motion tests whether the operative complaint states a plausible claim for relief, and the Court accepts well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court considers the complaint, documents attached to it, documents referred to in the complaint and central to Plaintiff's claims, and matters properly subject to judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

Court filings may be judicially noticed as matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). Judicial notice, however, permits the Court to consider what those filings contain, not to accept their disputed factual assertions as true. See *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). The public availability of Plaintiff's filings therefore does not render the allegations within them indisputably true. Fed. R. Evid. 201 permits notice only of facts not subject to reasonable dispute. *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 829-31 (5th Cir. 1998) recognizes the distinction between taking judicial notice of the existence of another proceeding and treating factual matters reflected in that proceeding as established. More recently, the Fifth Circuit refused to take judicial notice of disputed facts from a separate action that had already reached summary judgment, rejecting an effort to resolve alleged contradictions in favor of those materials. *Payne v. City of Houston*, No. 24-20150, 2025 WL 999085 (5th Cir. Apr. 3, 2025) (unpublished).

In its prior Memorandum Opinion and Order, the Court stated the controlling rule plainly: "the court considers only the well-pleaded facts in the amended complaint." *Fischman v. Epic Systems Corp.*, No. 3:26-CV-0770-D, Memorandum Opinion and Order at 9 n.5 (N.D. Tex. June 8, 2026) (Fitzwater, J.) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). That ruling forecloses treating disputed allegations from Plaintiff's other filings as facts bearing on causation, control, or responsibility.

The Court has already ruled that Plaintiff plausibly alleged negligence, design defect, and wrongful death, including that Epic plausibly owed a duty of reasonable care and that its EHR platform could constitute a product under Tex. Civ. Prac. & Rem. Code ch. 82. Plaintiff did not materially amend those claims after the Court's June 8, 2026 Order. She removed negligent misrepresentation and amended only the gross-negligence allegations as directed. Epic nevertheless seeks dismissal of the surviving claims without identifying any material amendment, intervening change in controlling law, or other recognized basis for revisiting the Court's ruling.

The law-of-the-case doctrine exists to prevent precisely this kind of repeated litigation of issues already decided. "When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Although discretionary, the doctrine protects against unnecessary reconsideration absent a legitimate basis for reopening the issue. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816–17 (1988); *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983). Pleadings from separate lawsuits do not supply that basis. They may be noticed as filings, but they cannot be treated as evidence proving disputed allegations or used to undo the Court's prior determination that Plaintiff's negligence, design-defect, and wrongful-death claims are plausibly pleaded.

Page 4

## III. EPIC CANNOT RELITIGATE THE COURT'S PRIOR RULING THROUGH MATERIALS AVAILABLE WHEN IT FILED ITS ORIGINAL MOTION

Fed. R. Civ. P. 12(b)(6) does not permit repeated challenges to the same claims based on new interpretations of materials already available. Even assuming Epic's appendix is properly before the Court, it does not justify reconsideration of the Court's prior ruling.

When Epic filed its original Motion to Dismiss on April 14, 2026, the *Fischman v. Boston Children's Hospital*, No. 1:26-cv-11504-WGY (D. Mass. filed Mar. 30, 2026) Complaint was already public, and the prior *Fischman v. University of Texas Southwestern Medical Center*, No. DC-25-18350 (101st Dist. Ct., Dallas Cnty., Tex. filed Sept. 2025) action had already been litigated. Plaintiff's later amendment of the *Boston Children's Hospital* Complaint added no materially new allegation concerning Epic; it refined the claims against Boston Children's Hospital and its distinct duties relating to TEAMMATE and its safeguards. If Epic believed either proceeding rendered Plaintiff's claims implausible or inconsistent, it could have raised that argument in its original Motion. Instead, its renewed motion identifies no material change to Plaintiff's surviving claims that warrants revisiting the Court's prior ruling.

The only later-filed action was *Fischman v. Novartis Pharmaceuticals Corp.*, No. 3:26-cv-01882-K-BT (N.D. Tex. filed June 5, 2026). Plaintiff promptly disclosed it through a Notice of Related Case. The Court neither consolidated nor reassigned the cases, nor directed that the Novartis allegations be considered here. Epic therefore cannot assign the Novartis case procedural significance the Court itself did not.

Plaintiff amended only the matters identified in the Court's Order. Epic should not relitigate materially unchanged claims through arguments available when it filed its original Motion. The renewed Motion provides no basis to revisit the Court's prior ruling.

Page 5

## IV. ADDITIONAL AUTHORITIES SUPPORT CLARIFICATION OF THE COURT'S CONDITIONAL LANGUAGE

Although Epic's renewed Motion provides no basis to revisit the Court's prior ruling, Epic has again placed the duty issue before the Court. Plaintiff therefore respectfully requests clarification that the conditional language in the Court's June 8, 2026 *Memorandum Opinion and Order* concerns Epic's factual role and control, not the legal duty recognized by the Court.

The Court predicted that the Supreme Court of Texas would impose a duty of reasonable care on an electronic health-record developer whose system design decisions affect patient care and further held that an EHR platform may constitute a product under Tex. Civ. Prac. & Rem. Code ch. 82. The Court explained:

"In reaching the conclusion that Fischman has plausibly pleaded the duty element of her claim, the court accepts as true . . . the well-pleaded allegations of her amended complaint. . . If the record later develops, however, in a manner that persuades the court that a duty of care does not exist, the court may revise this conclusion."

Plaintiff recognizes that the Court's conditional language reflected the early procedural posture. The authorities below confirm that the risks associated with the challenged EHR functions were well documented and foreseeable. The remaining inquiry is factual: Epic's actual role, control, and responsibility in this case.

The authorities below establish that the architecture, functionality, and safety features identified in the Second Amended Complaint are recognized patient-safety functions whose design directly affects clinical decision-making and creates foreseeable risks of patient harm. They further

Page 6

reinforce the Court's prior duty analysis and confirm that the remaining questions concern Epic's control, breach, and causation.

The patient-safety significance of the functions at issue was well recognized before the events alleged here. AHRQ identifies medication reconciliation as a patient-safety process intended to maintain accurate medication information across transitions of care and prevent errors arising from omissions, discrepancies, and incomplete histories. See Agency for Healthcare Research and Quality ("AHRQ"), *Medication Reconciliation* PSNet (reviewed Dec. 2024); Agency for Healthcare Research and Quality, *Medications at Transitions and Clinical Handoffs (MATCH) Toolkit for Medication Reconciliation* (AHRQ Pub. No. 11(12)-0059, updated Apr. 2023). Barnsteiner likewise explains that medication reconciliation enables clinicians to identify and resolve discrepancies as patients move among providers and care settings. See Jane H. Barnsteiner, *Medication Reconciliation*, in *Patient Safety and Quality: An Evidence-Based Handbook for Nurses* (AHRQ 2008). The Institute of Medicine similarly recognized medication errors as a major patient-safety concern and emphasized the need for reliable systems to reduce preventable medication harm. See Institute of Medicine, *Preventing Medication Errors* (Nat'l Academies Press 2007).

Recent published research confirms that EHR data-quality failures remain persistent. A 2023 systematic review of 103 publications identified completeness as the most frequently assessed EHR data-quality problem, followed by correctness, concordance, plausibility, and currency, and concluded that no standard method yet exists for ensuring EHR data quality. *See* Abigail E. Lewis et al., *Electronic Health Record Data Quality Assessment and Tools: A Systematic Review*, 30 J. Am. Med. Inform. Ass'n 1730, 1730–40 (2023).

The literature further recognizes that EHR design directly affects patient safety. A systematic review identified poor information display, information overload, note bloat, excessive alerts, and usability limitations as sources of increased cognitive burden and patient-safety risk. See Sohn Nijor, Gavin Rallis, Nimit Lad & Eric Gokcen, *Patient Safety Issues From Information Overload in Electronic Medical Records*, 18 J. Patient Safety e999, e999–e1003 (2022). That review also noted that the American Medical Informatics Association identified EHR usability as a patient-safety priority and called for improvements directed toward reducing technology-related harm. *Id.*

Research involving Epic-based systems identifies related medication-safety concerns. One study found that medication reconciliation, medication ordering, and prescribing errors increased after implementation of an Epic-based EHR and identified severe medication events involving system use and user skills, technical failures and flaws, or both. See Carita Lindén-Lahti et al., *Implementing a New Electronic Health Record System in a University Hospital: The Effect on Reported Medication Errors*, *Healthcare* 10(6):1020 (2022). Separate research examining Epic's medication-alert environment identified opportunities to reduce unnecessary alerts while preserving clinically significant warnings. See Shah S.N. et al., *Comparison of Medication Alerts from Two Commercial Applications in the USA*, *Drug Safety* (2021).

These authorities show that the risks associated with deficient medication reconciliation, fragmented information, inaccurate medication histories, and EHR usability were well recognized before the events at issue. The functions identified in the Second Amended Complaint are patient-safety functions, and defects in their design or operation create foreseeable risks of serious harm.

In light of these authorities, Plaintiff respectfully requests clarification that the Court's conditional language concerns Epic's factual role and control, rather than the legal duty recognized in its prior Order. Discovery should therefore focus on whether Epic exercised that control, whether it breached the resulting duty of reasonable care, and whether that breach contributed to Plaintiff's injuries. Such clarification would define the remaining factual issues without expanding the Court's prior ruling.

## V. EPIC'S APPENDIX IMPROPERLY ATTEMPTS TO ELIMINATE EPIC'S CAUSAL ROLE

The unresolved factual inquiry identified in the Court's prior Order is precisely what Epic's Appendix attempts to bypass. Plaintiff's allegations distinguish UT Southwestern's control over local implementation and use from Epic's control over the EHR's underlying architecture and safety design. Whether the alleged failures resulted from Epic's design, UT Southwestern's decisions, or both remains a factual question for discovery.

Texas law does not require Epic's conduct to be the sole cause of the injury. Cause in fact requires both but-for and substantial-factor causation, and an injury may have more than one proximate cause. As the Court already held:

"Fischman's allegations enable the court to draw the reasonable inference that the EHR system's deficiencies were a but-for cause of, and substantial factor in, her father's death."

Mem. Op. & Order at 10. The Court further recognized that "a defendant's act or omission need not be the sole cause of an injury, as long as it is a substantial factor in bringing about the injury." *Id.* (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017)). Although the Court considered Epic's argument regarding treating physicians' independent judgment, its causation

Page 9

holding was not limited to physicians. It held that Plaintiff plausibly alleged Epic's own deficiencies satisfied both components of cause in fact, notwithstanding the participation of other actors who also plausibly contributed to the injury.

Epic relied on a learned-intermediary theory, attributing the alleged deficiencies to physicians and hospital customers rather than its own product. After the Court held that Plaintiff plausibly alleged Epic's EHR deficiencies were a but-for cause and substantial factor in the death, Epic turned to Plaintiff's other lawsuits to repackage the same argument. That holding was not conditioned on physicians' or hospital customers' alleged conduct. The common medication does not make the distinct conduct alleged in each action the same but-for cause. The other actions concern separate failures involving warnings, research and oversight, and clinical deployment, while this action concerns how Epic's EHR handled and presented the information. The existence of other alleged but-for causes does not negate Epic's independently pleaded role as a but-for cause and substantial factor, establish exclusive causation elsewhere, or eliminate Epic's causal role.

Plaintiff does not allege inconsistent explanations for the injury. Rather, Plaintiff's theory is that each defendant created a separate condition necessary for the injury to occur. Had any one of those conditions not existed, the injury would not have occurred. Allegations that other defendants likewise created necessary conditions do not alter the Court's prior determination that Plaintiff plausibly alleged Epic's conduct formed part of the environment that allowed the death to occur. See App. 3.

Epic cannot treat unadjudicated allegations against other defendants as conclusive while minimizing its own alleged role. Its Appendix identifies separate alleged failures that converged

Page 10

upon the same injury, not a contradiction that defeats causation. The extent of Epic's control, knowledge, and contribution remains a factual question for discovery.

## VI. EVEN IF THE COURT CONSIDERS EPIC'S APPENDIX, IT DOES NOT ESTABLISH ANY CONTRADICTION

### A. Epic Has Not Identified an Actual Contradiction

Before Fed. R. Civ. P. 8(d), evidentiary admissions, judicial estoppel, Fed. R. Civ. P. 11, or Epic's cited authorities become relevant, Epic must identify an actual contradiction. Epic identifies no allegation in another action stating that Epic played no role, that another defendant was solely responsible, or that another entity exclusively controlled the architecture and safety features challenged here. Epic instead treats the absence of allegations against it in suits against other defendants as an affirmative allegation that it bears no responsibility.

Each complaint addresses conduct specific to the defendant named in that action. Fed. R. Civ. P. 8 does not require every complaint arising from the same events to identify every potentially responsible actor or contributing cause. Plaintiff has consistently alleged that multiple entities breached distinct duties and separately contributed to the same injury. Those theories are not mutually exclusive and do not require Plaintiff to select a single wrongdoer before discovery.

Epic's reliance on *Mortland v. IK Onkar Hospitality LLC, 775 F. Supp. 3d 1024, 1029 (N.D. Ind. 2025)* and related authorities does not cure that defect. Those decisions involved genuinely inconsistent allegations. Here, Epic infers inconsistency from omissions inherent in defendant-specific pleadings. The absence of allegations concerning Epic in actions against other defendants is consistent with Plaintiff's position that each defendant contributed to the same harm.

Epic likewise disclaims reliance on judicial estoppel while invoking its underlying rationale. No court accepted any allegedly inconsistent position, Plaintiff obtained no advantage from such a position, and Epic identifies no irreconcilable allegation. The doctrine and its equitable rationale therefore provide no basis for dismissal.

Epic's suggestion that Plaintiff filed this action merely to obtain discovery from UT Southwestern is speculative and contradicted by the chronology. On August 11, 2025, six weeks before filing the UT Southwestern action, Plaintiff sought counsel to pursue substantially the same claims against Epic alleged here. See App. 5–6. Epic's Initial Disclosures also identify UT Southwestern personnel and records as relevant to its defenses. See App. 13. The discovery sought from UT Southwestern is solely directed to Epic's independent alleged liability.

## B. Epic's Own Motion Defeats Its Rule 12(e) Request

Epic's extensive Motion further defeats its request for a more definite statement. Epic claims to identify contradictions across several pleadings while simultaneously asserting that it cannot understand Plaintiff's theory well enough to respond. Those positions cannot be reconciled. If Epic can identify and analyze the alleged inconsistencies, it understands the claims sufficiently to admit, deny, or otherwise answer them. If it cannot understand the claims, its asserted contradictions rest on speculation and counsel's own reinterpretation rather than the allegations pleaded.

Epic's argument depends on substituting its characterizations for Plaintiff's actual allegations. Its asserted contradictions rely on technical assumptions concerning EHR architecture, hospital configuration, and clinical workflows that do not appear in Plaintiff's pleadings. Those assumptions are counsel's interpretations, not established facts. Epic extracts phrases from

Page 12

separate pleadings, removes them from context, and assigns them technical meanings Plaintiff never alleged. When the pleadings are read in context, they describe distinct duties, different sources of responsibility, and multiple contributions to one injury. Determining whether Epic's technical interpretations are accurate would require factual development and cannot be resolved under Fed. R. Civ. P. 12(b)(6).

### C. Epic's Authorities Do Not Support Dismissal Based on Separate Pleadings

Allegations asserted against different defendants in separate lawsuits do not become binding admissions that defeat otherwise plausible claims under Fed. R. Civ. P. 12(b)(6). At most, Epic's authorities permit consideration of prior assertions in appropriate circumstances. They do not establish that defendant-specific allegations become indisputably true or binding, that every difference among separate pleadings creates a contradiction, or that a court may resolve disputed questions of causation, control, or responsibility on a motion to dismiss.

*Sanders v. University of Texas Pan American*, 776 F. App'x 835, 837–38 (5th Cir. 2019), and *Doyle v. Combined Systems, Inc.*, No. 3:22-CV-01536-K, 2023 WL 5945857, at *7 (N.D. Tex. Sept. 11, 2023), recognize that allegations in another pleading may constitute evidentiary admissions. Epic cites those cases to argue that Plaintiff's allegations in separate actions conclusively defeat the allegations asserted here. Those cases do not go that far. They expressly recognize that such admissions are not conclusive and may be explained or reconciled. Here, Plaintiff's pleadings consistently allege that different defendants breached different duties and made concurrent contributions to the same injury. None alleges that another defendant was the exclusive cause or that Epic played no role.

Page 13

Plaintiff prepared each pleading based on the information available at the time concerning that particular defendant. As Plaintiff's investigation progressed, her understanding became more informed. That progression does not create an irreconcilable contradiction or convert preliminary allegations into binding judicial admissions.

Epic's own Motion underscores the defect in its position. Epic expressly states that it "does not ask the Court to decide that any competing account is true" and is "not suggesting the Court apply a formal judicial estoppel analysis." Yet Epic simultaneously asks the Court to conclude that Plaintiff's allegations in separate actions "render the allegations against Epic in the SAC implausible," "undermine the basis for the Court's prior order," and "negate the but-for premise" of Plaintiff's claims. Those positions cannot be reconciled. If the allegations in Plaintiff's other lawsuits are neither binding nor offered for their truth, they cannot simultaneously be treated as conclusive evidence that the allegations in this action are implausible. Rule 12(b)(6) tests the sufficiency of the complaint before the Court, not the factual merits of allegations asserted in separate actions against different defendants.

*HEI Resources, Inc. v. S. Lavon Evans, Jr. Operating Co.*, No. 5:09-CV-124, 2011 WL 1230338, at *6 (S.D. Tex. Mar. 29, 2011), *Tafolla v. Wacker, et al.,* No. 3:24-CV-00331, 2025 WL 875488, at 1 n.1 (N.D. Tex. Mar. 19, 2025) , *Mortland v. IK Onkar Hospitality LLC*, 775 F. Supp. 3d 1024, 1029 (N.D. Ind. 2025), *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990), and *BellSouth Telecommunications, Inc. v. Louisiana Public Service Commission*, No. 06-324-C-M2, 2007 WL 9701563, at *7 n.14 (M.D. La. Mar. 23, 2007), likewise do not support Epic's position. Plaintiff is not invoking Fed. R. Civ. P. 8(d) to justify inconsistent factual allegations across multiple actions. Plaintiff's position is that the pleadings are not inconsistent in the first place. Each complaint addresses a different defendant's

Page 14

alleged conduct, duties, and role in the same sequence of events. Alleging that multiple actors independently contributed to the same injury does not create conflicting factual accounts or require Plaintiff to identify a single exclusive cause before discovery.

Epic's remaining authorities, including *Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013), *Doe v. University of Texas M.D. Anderson Cancer Center*, 653 F. Supp. 3d 359, 370 (S.D. Tex. 2023), *Nix v. Major League Baseball, Office of the Commissioner of Baseball*, No. CV H-21-4180, 2022 WL 2118986, at *5 (S.D. Tex. June 13, 2022), and *Cicalese v. University of Texas Medical Branch*, 456 F. Supp. 3d 859, 872 (S.D. Tex. 2020), likewise do not authorize dismissal here. Those decisions involved direct contradictions, materially inconsistent factual positions, or procedural circumstances absent here. Plaintiff's separate complaints neither deny Epic's alleged role nor identify another defendant as the exclusive cause. They address distinct duties and alleged contributions arising from the same underlying events. Epic's argument therefore rests on its disputed interpretation of those pleadings, not any contradiction on their face.

Epic also mischaracterizes Plaintiff's reliance on the underlying medical record as an endorsement of the EHR's accuracy. The physician who completed the death certificate relied on that record yet identified Hodgkin's lymphoma, rather than sepsis, as the immediate cause of death. Plaintiff knew from her presence during her father's final hospitalization and communications with his treating physicians that sepsis caused his final decline. She therefore referred to the underlying medical information in her filings not as proof that the EHR was reliable, but to identify that the immediate cause of death stated on the death certificate was unsupported and required correction. That reliance does not show that the EHR presented the information clearly, completely, or coherently. To the contrary, the discrepancy between the information contained in the record and the conclusion drawn from it reinforces Plaintiff's central allegation that critical information may

Page 15

exist within the EHR yet remain fragmented, difficult to locate, and inadequately presented to the clinicians who need it.

Plaintiff's allegations are based primarily on her firsthand involvement in her father's care and were reinforced by her subsequent review of more than 11,000 pages of medical records, not created by that review. The records confirmed specific omissions, documentation errors, and a broader pattern of fragmented information that failed to present a coherent longitudinal picture during a prolonged critical illness. The later ability to locate information within thousands of pages does not establish that clinicians were presented with a complete, integrated, and clinically meaningful picture when treatment decisions were made.

Epic's citations to Fed. R. Civ. P. 11 sanctions decisions are inapposite. Those authorities address litigation misconduct, not the pleading issues presented here. Epic has not moved for sanctions, and Plaintiff's pleadings allege distinct but complementary conduct by different defendants that contributed to the same injury. Plaintiff has pleaded specific claims against Epic based on Epic's own alleged conduct, and those claims should be evaluated on their merits under the governing Fed. R. Civ. P. 12(b)(6) standard, not through sanctions authorities arising from materially different circumstances.

Epic argues that Plaintiff's separate pleadings establish factual conclusions unfavorable to Plaintiff, an interpretation Plaintiff disputes. Resolving those disputes exceeds the limited inquiry permitted under Fed. R. Civ. P. 12(b)(6). Conversion under Fed. R. Civ. P. 12(d) is unnecessary as the Court can limit judicial notice to the existence and procedural posture of the documents in Epic's Appendix without relying on disputed allegations to resolve factual questions or disturb its prior determination that Plaintiff's claims are plausibly pleaded. Only if the Court determines that

consideration of matters outside the pleadings is necessary should Fed. R. Civ. P. 12(d) apply, in which event Plaintiff respectfully requests the notice and reasonable opportunity required by the Rule.

Plaintiff disputes Epic's assertion that the pleadings are contradictory. If the Court concludes that any particular prior allegation requires further explanation, *Sanders* recognizes that a party may explain or controvert a prior pleading. Plaintiff therefore respectfully requests an opportunity to provide that explanation before dismissal is considered.

## VII. EPIC'S REMAINING ARGUMENTS DO NOT WARRANT DISMISSAL OR A MORE DEFINITE STATEMENT

Apart from its improper reliance on Plaintiff's other pleadings, Epic raises only two arguments that warrant separate discussion: its alternative request for a more definite statement, and its challenge to the re-pleaded gross-negligence allegations. Neither shows that the Second Amended Complaint is deficient.

### A. Epic Has Not Shown That a More Definite Statement Is Required or That Rule 12(e) Demands the Evidentiary Detail It Seeks

Epic had no difficulty addressing the First Amended Complaint on its face, and its detailed Motion confirms that it understands Plaintiff's claims and can frame a response. It identifies Plaintiff's theory, addresses the allegations supporting it, and advances extensive arguments for dismissal. Epic therefore cannot plausibly contend that the operative pleading is too vague or ambiguous to answer.

Fed. R. Civ. P. 12(e) applies only when a pleading is so vague or ambiguous that the opposing party cannot reasonably prepare a response. Epic's request goes well beyond that

standard. Rather than identify ambiguity within the Second Amended Complaint, Epic demands evidentiary detail, explanations concerning allegations contained in its 184-page appendix, and facts largely within the possession of Epic and UT Southwestern. Fed. R. Civ. P. 12(e) requires none of that. As this Court previously explained, "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-CV-1790-D, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012).

The Second Amended Complaint alleges that Epic's EHR failed to reliably present complete, clinically significant medication information, impairing the longitudinal record and causing clinicians to rely on fragmented information that delayed recognition and intervention. These allegations provide fair notice of the claimed system failures and theory of liability.

Epic argues that a more definite statement is required since the Complaint does not identify clinician-specific details. Those details are unnecessary to claims concerning whether Epic's EHR architecture reliably presented critical patient information. Fed. R. Civ. P. 12(e) does not require Plaintiff to recast this product-design case as one concerning individual clinical decisions.

Epic's argument also addresses only a subset of Plaintiff's allegations. The Second Amended Complaint does not challenge only medication records or what a particular clinician did or did not see. It alleges broader defects in Epic's information architecture, including defects in the longitudinal record and other patient-safety functions integral to the design of a safety-critical EHR. The medication-related allegations are one example of those broader architectural deficiencies, not the entirety of Plaintiff's claims.

Page 18

Plaintiff's allegations are based primarily on her firsthand involvement in her father's care and information communicated by his treating physicians. Her subsequent review of approximately 11,000 pages of medical records reinforced those observations and showed that, although the records initially appeared adequate while Dov Fischman was stable, they became increasingly fragmented and failed to present the longitudinal picture required as his condition declined and care became more complex. Fed. R. Civ. P. 12(e) does not require Plaintiff to attach or prove the contents of that voluminous record to provide Epic fair notice of her claims.

Epic's reliance on Plaintiff's discovery requests is likewise misplaced. Objections to discovery scope are governed through the ordinary discovery process, not Fed. R. Civ. P. 12(e). Plaintiff's first discovery set, served before the Court's June 8, 2026 Order, addressed Epic's overall architecture and offered alternatives intended to reduce production. Plaintiff's second set narrowed the requests to the issues identified in the Court's ruling. The accompanying Clarification of the Discovery Scope, attached as App. 8–11, reflects Plaintiff's effort to streamline discovery, not uncertainty about her claims. Epic cannot recast those efforts as evidence that the Second Amended Complaint is too vague to answer.

Epic's objection reflects disagreement with Plaintiff's allegations and legal theory, not genuine uncertainty about what is alleged. Fed. R. Civ. P. 12(e) addresses unintelligible pleadings, not a defendant's demand for greater factual detail or a different theory of the case. The alternative request for a more definite statement should be denied.

**B. The Re-Pleaded Gross-Negligence Allegations Are Sufficient**

Plaintiff amended her gross-negligence claim to allege that Epic acted through vice principals who exercised corporate authority over the challenged architecture, possessed actual

Page 19

awareness of the alleged extreme risks, and consciously authorized, maintained, or ratified the challenged design. Plaintiff identified those decisionmakers by their roles and responsibilities, including authority over system design, product safety, regulatory compliance, post-market surveillance, warnings, and corporate governance. Their personal identities and precise titles remain within Epic's internal records.

Epic characterizes the amendment as merely adding the term "vice principals" and repeating the definition stated in *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). The Complaint does considerably more. It identifies the categories of corporate decisionmakers alleged to have exercised authority over the specific architectural decisions challenged here and attributes particular conduct to them. The allegations concern Epic's institutional decision making, not isolated conduct by an unidentified employee.

Epic also mischaracterizes the Court's Order. The Court held that the First Amended Complaint failed to "identify any agents or vice presidents for whose actions Epic is liable." It did not require Plaintiff to plead personal names or identify subjective awareness as the deficiency requiring amendment. The Second Amended Complaint directly cures the identified deficiency by alleging that Epic acted through vice principals responsible for the EHR's core architecture and safety-critical functions, who knew of the extreme risks created by the challenged design and authorized, maintained, or ratified those decisions.

Neither the Court's Order, *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921–22 (Tex. 1998), nor Fed. R. Civ. P. 8 requires Plaintiff to know the names of Epic's internal officers or decisionmakers before discovery. Although Fed. R. Civ. P. 9(b) governs allegations of fraud or mistake, it reflects the broader federal pleading principle that "malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Identifying the responsible corporate actors by function is sufficient at the pleading stage, since their names are uniquely within Epic's possession and properly obtained through discovery.

Texas law attributes a corporation's actual awareness and conduct through its vice principals. Plaintiff's gross-negligence claim is against Epic itself, not separate individuals. The absence of names does not defeat Epic's corporate responsibility where Plaintiff identified the vice principals by role. Plaintiff will amend the Complaint once discovery reveals their identities.

Epic's Initial Disclosures identify only a generic corporate representative, despite Fed. R. Civ. P. 26(a)(1)(A)(i). Having failed to disclose the individuals likely to possess discoverable information, Epic cannot fault Plaintiff for not identifying them by name. Epic's position would require Plaintiff to plead information that only Epic possesses while simultaneously faulting Plaintiff for not possessing it. The Federal Rules do not permit a defendant to defeat an otherwise plausible claim by withholding the identities of its own decisionmakers and then relying on that absence as a pleading defect. See App. 13.

The Complaint also plausibly alleges subjective awareness. It alleges that the challenged medication-management and information architecture created patient-safety hazards recognized within the EHR industry and that Epic actively participated in the industry in which those risks were recognized and addressed. At the pleading stage, those allegations support the reasonable inference that the vice principals responsible for the challenged architecture possessed actual awareness of the extreme risks it presented.

Epic attempts to create an artificial separation between itself and the broader EHR community whose knowledge Plaintiff alleges. The Complaint does not treat Epic as an outside

observer. It alleges that Epic actively participated in the industry through which these risks were recognized and addressed. Epic cannot plausibly characterize risks recognized within the community in which it actively participated as risks outside its own awareness.

Nor are Plaintiff's allegations limited to generalized awareness that software may create risks. The Complaint identifies the challenged architecture, Epic's awareness of the resulting patient-safety hazards, and the vice principals responsible for that architecture. Whether those allegations are ultimately proven is a matter for discovery, not Fed. R. Civ. P. 12(b)(6).

Epic's cited authorities do not establish otherwise. *Quesnot v. Costco Wholesale Corp.,* No. 5:15-CV-1014-OLG, 2016 WL 11586209 (W.D. Tex. Aug. 24, 2016), *Coulter v. Deere & Co.,* No. CV H-21-2105, 2022 WL 912778 (S.D. Tex. Mar. 29, 2022), and *Williams v. Avon Products, Inc.,* No. 4:19-CV-02337, 2019 WL 6040073 (S.D. Tex. Oct. 24, 2019), *report and recommendation adopted,* No. 4:19-CV-02337, 2019 WL 6038525 (S.D. Tex. Nov. 14, 2019) involved conclusory allegations that failed to connect corporate authority, identified safety risks, and specific corporate decisions. *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164 (Tex. 2005) and *De La Hoya Moreno v. K-Bar Tex. Elec., Inc.,* No. 07-18-00377-CV, 2020 WL 1161097 (Tex. App.—Amarillo Mar. 10, 2020, no pet.) addressed the sufficiency of evidence after factual development, not pleading before discovery.

Epic compares Plaintiff's pleading only to dismissed gross-negligence complaints, never to complaints that survived. That selective comparison is telling. Had Plaintiff's allegations genuinely fallen below the pleading standard, Epic could have demonstrated how they differ from allegations courts have found sufficient. Instead, it relies exclusively on dismissed complaints and asks the Court to reach the same result here.

Page 22

Epic conflates two distinct legal standards. "Known or knowable" applies to the objective inquiry under the failure-to-warn claim, including whether the alleged architectural limitations were discoverable when the product was placed into the market. It does not address the subjective-awareness element of gross negligence, which separately requires actual awareness and conscious indifference by Epic's vice principals. The standards are distinct, not contradictory.

Plaintiff repleaded gross negligence in good faith and directly addressed the deficiency identified by the Court. She alleges that the Epic personnel responsible for the system's architecture and safety were aware of serious risks and consciously disregarded them. Epic cannot transform the Court's direction to identify the responsible vice principals into a heightened requirement to plead personal names and internal corporate evidence solely within Epic's control. Allowing that result would permit a private software manufacturer to defeat a gross-negligence claim by withholding the identities and records of its own decisionmakers. The re-pleaded claim is plausible and should proceed to discovery.

## VIII. PLAINTIFF'S PRO SE PLEADINGS REMAIN ENTITLED TO LIBERAL CONSTRUCTION

Plaintiff's ability to present detailed factual and technical allegations does not alter her status as a self-represented litigant. Plaintiff is not an attorney and has no formal legal education or professional litigation experience. The organization and technical content of her filings reflect her firsthand knowledge of the underlying events and professional experience in enterprise solution architecture and technology consulting. That experience permits Plaintiff to analyze complex systems, but it does not provide the legal training or judgment of licensed counsel.

Epic characterizes the alleged omission of certain facts as "perturbing" in light of Plaintiff's technical experience. What is truly perturbing is Epic's suggestion that Plaintiff's technical

experience imposes pleading obligations beyond Rule 8. Epic cites no authority holding that a plaintiff's professional background alters the Federal Rules of Civil Procedure or requires allegations tailored to a defendant's preferred theory of the case.

Plaintiff recognizes that liberal construction does not excuse compliance with Fed. R. Civ. P. 8 or permit the Court to supply missing facts. It does require a pro se pleading to be read reasonably and in context. Plaintiff therefore respectfully requests that the Court evaluate the Second Amended Complaint under the same standard applied in its prior Memorandum Opinion and Order, rather than treat Plaintiff's technical background as a basis for imposing a heightened pleading standard.

## IX. CONCLUSION

Epic asks the Court to apply a rule unsupported in these circumstances. Plaintiff is aware of no authority holding that separate actions against entities contributing to the same injury render any complaint implausible. Epic's cases involve materially different circumstances, including superseded pleadings in the same action or factual admissions absent here. They do not permit disputed allegations from separate lawsuits involving different defendants, duties, governing law, and facts to be treated as binding determinations in this case.

Epic incorrectly treats Plaintiff's allegations against other defendants as established facts that foreclose causation against Epic. Those allegations have not been tested through discovery or adjudication, and Plaintiff has never alleged that any other defendant was the exclusive cause of the harm. The separate actions address distinct conduct, duties, and legal standards that allegedly contributed to the same injury and could not properly have been litigated as a single case.

Epic's attempt to portray these lawsuits as frivolous or excessive should be rejected. Plaintiff filed them after her father's death to address the distinct failures of entities she believes contributed to his injuries. Epic's theory would permit dismissal based not on deficiencies in the allegations against it, but on Plaintiff's effort to hold multiple entities accountable. Nothing in Fed. R. Civ. P. 8, Fed. R. Civ. P. 12(b)(6), or Epic's cited authorities requires an injured party to select a single wrongdoer or permits one defendant to absolve another.

The Second Amended Complaint plausibly alleges that Epic caused or contributed to the injuries, and the Court has already held that Epic's EHR deficiencies were "a but-for cause of, and substantial factor in," Plaintiff's father's death. Separate, unresolved actions do not establish exclusive causation elsewhere, eliminate Epic's causal role, or foreclose discovery. Plaintiff therefore respectfully requests that the Court deny Epic's Renewed Motion to Dismiss and request for a more definite statement, permit discovery to proceed, and, if any claim is found deficient, grant leave to amend before dismissal with prejudice.

Date: July 22, 2026

Respectfully submitted,

/s/ _Gallit Fischman_

**GALLIT FISCHMAN, Pro Se**
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com

**CERTIFICATE OF SERVICE**
I certify that on July 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which served all counsel of record pursuant to Fed. R. Civ. P. 5(b)(2)(E).

/s/ _Gallit Fischman_

Gallit Fischman, Plaintiff, Pro Se