IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-CV-0770-D |
| | § | |
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

---

## APPENDIX

---

**EXHIBIT A**

**ILLUSTRATIVE SUMMARY OF PLAINTIFF'S ALLEGED INDEPENDENT**

**NECESSARY CONDITIONS**

This exhibit is an organizational aid summarizing the distinct role attributed to each defendant. It

is not offered as independent evidence, to establish any element of Plaintiff's claims, or as a

substitute for the allegations in the applicable pleadings. Rather, it is provided solely to assist the

Court in understanding the distinct duties and alleged conduct attributed to each defendant.





**EXHIBIT B**

**CONTEMPORANEOUS ATTORNEY OUTREACH REGARDING EPIC SYSTEMS**

This exhibit consists of a contemporaneous email dated August 11, 2025, sent before Plaintiff filed her Original Petition against UT Southwestern on September 24, 2025. The email demonstrates that Plaintiff had already identified Epic Systems as a potential source of liability and was seeking legal representation specifically to pursue claims against Epic. Recipient identifying information has been redacted for privacy.

Exhibit B is submitted solely to rebut Defendant's assertion in Footnote 5 that Plaintiff brought this action merely to obtain discovery from UT Southwestern. It is not offered to establish the sufficiency of the Second Amended Complaint or to prove any element of Plaintiff's claims. Rather, it responds only to Defendant's collateral assertion regarding Plaintiff's litigation purpose. The exhibit demonstrates that, before the UT Southwestern action was filed, Plaintiff had already identified Epic as a potential source of independent liability and was actively seeking legal representation to pursue claims against Epic.

████████████  Patient Safety Concerns Regarding Epic Systems

From:  Gallit Fischman (gallitfischman@yahoo.com)

To:  ██████████████

Date:  Monday, August 11, 2025 at 05:40 PM UTC

███████ ,

I am writing to seek your review and possible representation regarding a critical issue involving Epic Systems, the overwhelmingly dominant provider of electronic health records (EHR) systems in the United States.

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████

As the largest EHR provider, Epic has a legal responsibility to ████████████████████████ deliver a system that meets or exceeds industry standards. Instead, Epic has maintained tight controls on their platform:

- API access is limited to standard plug-ins only, with expensive and difficult customization required.

- Partners must sign strict non-disclosure agreements.

- Screenshots of the system are forbidden, limiting transparency.

- Configuration is complex and poorly documented.

From my personal and professional experience,  hese restrictions have direct consequences for healthcare providers and patients. I am a Salesforce consultant who has worked on projects integrating patient data with Epic. The proprietary nature of Epic's system means that hospitals and partners bear high costs and face steep barriers to creating effective, customized data solutions.

Most troublingly, these systemic restrictions and Epic's failure to foster interoperability have tangible, dangerous effects on patient care.

My father was treated at UT Southwestern (UTSW), a teaching hospital where physician teams rotate frequently instead of a single primary doctor providing long-term care. In such a setting, **accurate, complete, and easily accessible patient records are absolutely essential** for continuity of care.

Epic failed my father in multiple ways:

- The backend Epic records were incomplete and disorganized.

- ███████████████████████████████████████████████████████████████████████████

- Reports were repetitive, scattered, and difficult to navigate, complicating physicians' ability to fully understand his medical history.

- Important clinical data and historical notes were missing when new doctors assumed his care.

These issues were not solely hospital errors — they stem from Epic's system architecture and restrictive policies. The failure to deliver complete, reliable records contributed to gaps in my father's care and, ultimately, serious harm.

███████████████████████████████████████████████████████████████████████████
███████████████████████

## Legal Allegations

### 1. Negligent System Design and Implementation

- Failure to require mandatory fields for high-risk procedures.

- Lack of approval workflows for dangerous interventions.

- No safeguards preventing incomplete documentation.

### 2. Inadequate Drug Safety Features

- No cross-checking of prescribed medications against patient history.

- Absence of alerts for dangerous interactions or contraindica ions.

- Failure to flag prescriptions when side effects were documented.

- Lack of complete historical medication records.

### 3. Data Integrity and Record Keeping Failures

- Epic's backend records contain far less data than patient-facing MyChart.

- Phone call logs and communications are not reliably captured.

- Physician notes are scattered and incomplete with no system enforcement.

- Critical patient visits and orders are sometimes undocumented.

## 4. Selective Data Retention and Concealment

- Patient complaints and signed consent forms missing from records.

- Arbitrary deletion or exclusion of historical medical data.

- Inconsistent access between MyChart and provider records ██████████

## 5. Teaching Hospital Environment Failures

- Epic's system lacks adequate tools for smooth care transitions among rotating staff.

- No systematic handoff protocols or comprehensive patient summaries.

- Inadequate documentation leads to loss of critical patient history.

## 6. Breach of Implied Warranties

- Epic markets its system as suitable for complex care environments but fails to meet those needs.

- System lacks basic functions expected of an EHR, undermining fitness for purpose and merchantability.

## 7. Causation and Damages

- Epic's system failures directly contributed to incomplete care and medication errors for my father.

- These lapses were foreseeable consequences of Epic's design choices and contributed to harm.

- Damages include wrongful death, medical expenses, lost earnings, and pain and suffering.



Their failure to promote interoperability ██████████ harms not only the healthcare industry but also the patients it serves-—especially in complex environments like teaching hospitals, where seamless access to complete and accurate medical records is critical for effective care.

My father's experience painfully illustrates the real-world consequences of these systemic failures. Epic's ██████████████████ system design led to incomplete medical records and disrupted continuity of care, contributing directly to harm.

I would welcome the opportunity to discuss these issues with you in greater detail and explore potential legal avenues. Please let me know if you are interested in a conversation or require any additional information.

Sincerely,
Gallit Fischman

# EXHIBIT C

## EXCERPT FROM PLAINTIFF'S FIRST INTERROGATORIES AND FIRST

## REQUESTS FOR PRODUCTION

Clarification of the Discovery Scope

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GALLIT FISCHMAN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Action No. 3:26-CV-0770-D** |
| | § | |
| **EPIC SYSTEMS CORPORATION,** | § | |
| | § | |
| Defendant. | § | |

---

**PLAINTIFF'S FIRST INTERROGATORIES AND
FIRST REQUESTS FOR PRODUCTION
TO DEFENDANT EPIC SYSTEMS CORPORATION**

---

**CLARIFICATION OF THE DISCOVERY SCOPE**

The requests below are directed to materials and access Epic already makes available in the ordinary operation of its business. Plaintiff seeks only publicly accessible materials, materials Epic already makes available to customers or implementers, and access to environments Epic already provides.

In its Motion to Dismiss, Epic attributed the alleged deficiencies in the Epic system as used at UT Southwestern to UTSW's implementation, configuration, or operational decisions rather than to Epic's architecture or design. Epic did not dispute the plausibility of the alleged record fragmentation or the absence of the safety features identified in the Amended Complaint. Instead, Epic attempted to shift responsibility for those conditions to UT Southwestern. Plaintiff seeks discovery into the factual basis for that position, including the specific decisions Epic contends caused those system conditions.

Plaintiff also seeks discovery regarding the extent of Epic's responsibility for the system at issue, including whether that responsibility extends beyond the platform's underlying architecture into the broader system environment Epic created or governed. As the system of record and source of truth relied upon throughout patient care, the Epic platform serves not only as a repository of information, but as the foundation upon which customer configurations, workflows, safety functions, and other operational components are built and maintained.

Plaintiff has professional experience with Salesforce, including work in which Salesforce functioned as middleware connected to Epic-related hospital systems. Salesforce is therefore not merely an unrelated comparison point. Salesforce serves industries involving sensitive and regulated information, including healthcare, legal, government, finance, and other enterprise environments, yet makes its help, training, release, and implementation documentation publicly available online and provides sandbox or user-environment access through a simple request process.

Epic has raised confidentiality, trade-secret, and source-code concerns, but Plaintiff seeks only materials and environments Epic already makes available to people who ordinarily operate within the Epic system. The Salesforce model shows that implementation and training materials are not inherently confidential or protected merely due to the type of software involved, indicating that any restrictions appear to be ones Epic applies itself, rather than an industry standard.

Plaintiff seeks access to the Epic system and related materials in the form Epic ordinarily maintains or provides them, so the functionality at issue can be evaluated end to end. This

requested access is less burdensome than document-by-document production. If Epic declines to provide available access and instead requires document production, any resulting burden arises from Epic's chosen method, not from the scope of Plaintiff's request.

Plaintiff understands that limited clarification may be necessary for some requests. That does not excuse delaying production of straightforward responsive materials that can be identified and produced without clarification. If Epic declines to provide access and instead elects document-by-document production, Plaintiff requests that Epic involve personnel with technical knowledge of the system when preparing its responses, searches, objections, and productions. Proceeding this way promotes judicial efficiency, avoids unnecessary rounds of clarification, and reduces the need for Court intervention on issues the parties should be able to resolve without motion practice.

Plaintiff opposes any stay of discovery. A motion to stay discovery does not itself stay discovery unless and until the Court enters an order granting a stay. Unless discovery is stayed by court order, Defendant remains required under Fed. R. Civ. P. 33(b)(2), Fed. R. Civ. P. 34(b)(2)(A), and Fed. R. Civ. P. 37(e) to preserve responsive electronically stored information, serve timely responses and objections, and comply with the applicable discovery deadlines.

Plaintiff believes that the majority of the information sought in these requests can be obtained through access to Epic's sandbox and demonstration environments and the repositories of materials Epic makes available to customers and implementers. To the extent Epic provides that access, Plaintiff is prepared to prioritize review of those materials before pursuing individual document production on the remaining requests, and will confer with Epic in good faith

regarding any requests that may be deferred or narrowed following that review. Plaintiff reserves all rights with respect to the full scope of these requests pending that review.

The Clarification of the Discovery Scope is incorporated into each Interrogatory and Request for Production below. Each request should be read together with this statement and Plaintiff's request for access in the form in which Epic ordinarily maintains or makes the materials available.

**EXHIBIT D**

**EXCERPT FROM DEFENDANT EPIC SYSTEMS CORPORATION'S INITIAL**

**DISCLOSURES**

| | |
|---|---|
| **Corporate Representative of Epic Systems Corporation**<br><br>c/o Christopher Schwegmann, Jessica Cox, Madelyn Stanley<br>LYNN PINKER HURST & SCHWEGMANN, LLP<br>2100 Ross Avenue, Suite 2700<br>Dallas, Texas 75201<br>(214) 981-3800 | Epic is the named defendant in this matter and has knowledge of facts relevant to the parties' claims and defenses, including: Epic's business; the design, development, and functionality of Epic's EHR software; Epic's business relationship with UTSW; and Epic's role in assisting UTSW with UTSW's use and implementation of Epic's software. |
| **Corporate Representative of The University of Texas Southwestern Medical Center**<br><br>c/o Jason Warner<br>OFFICE OF THE ATTORNEY GENERAL OF TEXAS<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711<br>(512) 457-4442 | UTSW was previously a defendant in a lawsuit brought by Plaintiff regarding the same harm at issue in this case. UTSW is anticipated to have knowledge regarding Dov Fischman's medical history, medical treatment, and cause of death, the use of Everolimus in treating Dov Fischman, UTSW's use and implementation of Epic's software, and other facts relevant to this case that were also at issue in *Gallit Fischman v. The University of Texas Southwestern Medical Center*, No. DC-25-18350 (101st Dist. Ct., Dallas Cnty., Tex.). |