AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

**RECEIVED**

**JUN 2 5 2026**

**Office of Legal Affairs**

| Gallit Fischman | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:26-CV-0770-D |
| Epic Systems Corporation | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:　　UT Southwestern Medical Center, c/o Erin Sine, J.D., Vice President for Legal Affairs, 5323 Harry Hines Blvd., Dallas, TX 75390-9008

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See attached Schedule A.**

| Place: | Production may be made electronically in a reasonably usable format to: Gallit Fischman gallitfischman@yahoo.com | Date and Time: 07/25/2026 5:00 pm |
|---|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

　　　　The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:　　06/01/2026

*CLERK OF COURT*

OR

s/K. Mendoza

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:

Gallit Fischman Plaintiff, Pro Se

10114 Deermont Trail, Dallas, TX 75243, gallitfischman@yahoo.com, 214-893-6720

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:26-CV-0770-D

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

◻ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

◻ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-CV-0770-D |
| | § | |
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## SCHEDULE A TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS TO NON-PARTY UT SOUTHWESTERN MEDICAL CENTER

### CLARIFICATION OF THE SCOPE OF THE SUBPOENA

Plaintiff serves these requests pursuant to Federal Rule of Civil Procedure 45. They seek documents and electronically stored information concerning Dov Fischman's medical record, the Epic system as configured and used in his care, and related clinical, operational, technical, and governance materials maintained by UT Southwestern. The requests are limited to those systems, features, issues, and decision-making processes relevant to the claims and defenses in this action.

The requests are directed to materials in Epic, MyChart, and any connected or related UT Southwestern repository. Plaintiff seeks materials as kept in the ordinary course of business or in another reasonably usable form. If any requested material cannot be produced directly, Plaintiff requests documents sufficient to show the same information.

These requests seek both patient-specific records and system-level materials showing how information relevant to Dov Fischman's care was created, stored, displayed, routed, reconciled, monitored, audited, restricted, exported, and made available within Epic and connected UT Southwestern systems. Where automated workflows, clinical decision support, or classification-based behavior is at issue, the requests seek the configuration materials needed to understand how that behavior occurred.

Epic has placed UT Southwestern's implementation and use of Epic at issue. Plaintiff therefore seeks discovery to determine what Epic made available, what Epic or any implementation partner communicated or recommended, what UT Southwestern implemented, and whether the events at issue resulted from Epic's underlying architecture or functionality, UT Southwestern's configuration or implementation decisions, user workflows, operational practices, or some combination thereof. These materials are necessary to distinguish between Epic-controlled system design and UT Southwestern's configuration decisions.

This subpoena is issued under Federal Rule of Civil Procedure 45 and is not a Texas Public Information Act request. The requested materials are not limited to records UT Southwestern considers public information. Rule 45 requires production of responsive materials within UT Southwestern's possession, custody, or control, subject only to proper, specific objections or court order. Objections must be specific to the request at issue and do not excuse production of non-objectionable responsive materials.

Plaintiff requests that UT Southwestern involve personnel with operational and technical knowledge of the Epic environment used in Dov Fischman's care when collecting, reviewing, and producing responsive materials. Technical involvement is necessary to identify responsive

materials accurately, determine where responsive information is maintained, and avoid unnecessary disputes.

To the extent UT Southwestern asserts burden, confidentiality, technical-access, system-structure, or privacy concerns, it should identify the specific basis and produce all non-objectionable responsive materials. Plaintiff seeks protected health information only for Dov Fischman. The non-patient-specific requests concern the configuration, operation, and structure of Epic and connected UT Southwestern systems, not any other patient's information.

Plaintiff further states that the materials produced in response to this subpoena will be used to identify personnel with knowledge relevant to the claims and potential deposition witnesses.

Plaintiff believes much of the system-level information sought can be obtained through access to UT Southwestern's Epic training, sandbox, demo, or non-production environment; any Epic-related documentation repository UT Southwestern maintains; and complete access to Dov Fischman's patient record, MyChart record, audit logs, provider-facing views, and back-end system data. If UT Southwestern provides that access, Plaintiff is prepared to prioritize review of those materials and confer in good faith regarding any requests that may be deferred, narrowed, or satisfied through an alternative form of production.

To minimize burden and expense, Plaintiff is willing to proceed through staged production by subject-matter section:

- **Phase One:** All materials responsive to Section I (Complete Record, Audit Trail, and Production), Section IV (Care Team, Handoffs, and Responsibility for Record Entries), Section V (Everolimus, Consent, Authorization, and Medication Monitoring), Section VI

Page 3

(Diagnosis and Cause-of-Death Determination), and Section VII (Family Communications, Advocacy, and Complaints).

- **Phase Two:** All materials responsive to Section II (System Architecture, Data Flow, and Reporting Logic) and Section III (Workflows, Alerts, Clinical Decision Support, and Deterioration Detection).

- **Phase Three:** All materials responsive to Section VIII (TEAMMATE Trial and Research-Related Records) and Section IX (Implementation, Configuration, Governance, and Known Limitations).

This sequencing does not waive any request or category of information. It is intended to permit efficient production, allow the parties to evaluate what information is obtained from earlier phases, and reduce unnecessary collection efforts if responsive information can be obtained through a more targeted or less burdensome method.

Plaintiff does not require duplicative production of the same document in response to multiple requests. UT Southwestern may identify each request to which a document responds and produce the document once. Where a request can be satisfied through an existing report, configuration export, audit report, data dictionary, screenshot, demonstration, knowledgeable witness, or representative set of documents, UT Southwestern may propose that form of production before undertaking a broader collection.

If UT Southwestern asserts that any request creates undue burden or expense, it should identify the particular request, custodians, departments, systems, repositories, date ranges, search methods, estimated document volume, estimated hours and cost, and technical or operational basis supporting that assertion. UT Southwestern should also identify any narrower search, alternative

source, representative production, phased production, system demonstration, knowledgeable witness, or other method capable of supplying substantially the same information with less burden.

Plaintiff recognizes that the subpoena seeks substantial information and does not intend to impose unnecessary burden or expense. If UT Southwestern believes that the requested information can be obtained through a less burdensome method, Plaintiff requests that UT Southwestern identify that method and propose an alternative that would provide substantially the same information. Plaintiff is willing to confer in good faith regarding any reasonable proposal that preserves the substance of the requested discovery.

## DEFINITIONS

1. "Plaintiff" means Gallit Fischman.

2. "Epic" means Epic Systems Corporation's electronic health record platform, including any Epic module, workflow, portal, configuration, report, audit tool, or integrated application used in connection with Dov Fischman's care.

3. "MyChart" means the patient-facing portal, including any historical, restored, proxy, restricted, archived, or read-only view maintained by UT Southwestern or accessible through Epic.

4. "Connected UT Southwestern system" means any system that interfaces with, exchanges data with, supplements, or is used in connection with Epic and Dov Fischman's care.

5. "Care team" means any person or role associated with Dov Fischman's care in Epic, MyChart, or any connected UT Southwestern system.

6. "Record" means any document, ESI, metadata, attachment, note, order, message, task, flag, communication, audit trail, report, screen view, export, image, log, data field, summary, or classification.

7. "TEAMMATE" means the TEAMMATE trial and related protocols, communications, safety materials, monitoring materials, and data.

8. "Documents sufficient to show" means documents or ESI that, without requiring UT Southwestern to create a new narrative or summary, reflect the requested information in a reasonably usable form.

9. "Implementation Partner" means any person or entity, other than Epic Systems Corporation or UT Southwestern, that participated in the implementation, configuration, optimization, support, maintenance, testing, training, governance, or operation of Epic functionality used in connection with Dov Fischman's care.

## INSTRUCTIONS

1. Produce responsive materials as kept in the ordinary course of business or organized to correspond to these requests.

2. If any responsive material is withheld or redacted, identify the specific basis for the withholding or redaction.

3. If responsive materials are maintained in multiple systems, produce the materials from each system or identify the systems in which they are maintained.

Page 6

4. If UT Southwestern contends that any configuration or functionality identified in these requests was affected by an Epic system limitation, training gap, or unavailable functionality, it should identify that issue and produce supporting documents.

5. If UT Southwestern contends that any responsive material no longer exists, was deleted, was purged, is not reasonably accessible, or is outside its possession, custody, or control, UT Southwestern should identify what is unavailable, where it was maintained, when and why it became unavailable, who or what department controlled it, and whether the same information can be obtained or reconstructed from another source.

6. The fact that responsive information is maintained in more than one Epic module, connected system, repository, department, or document type does not permit withholding all responsive material. UT Southwestern should produce the reasonably accessible responsive material, identify any remaining source claimed to impose undue burden, and propose a less burdensome means of obtaining substantially the same information.

## SCHEDULE A — DOCUMENTS REQUESTED

### I. Complete Record, Audit Trail, and Production

**Request No. 1:** Produce Dov Fischman's complete medical record and complete MyChart record from January 1, 2023 through May 1, 2025, including all notes, orders, medication records, lab results, imaging, clinical communications, MyChart messages, proxy-access records, attachments, consent forms, medication authorizations, patient-assistance-program records, specialty-pharmacy records, metadata, audit history, and any records maintained outside Epic but connected to, referenced in, or used with his Epic record.

**Request No. 2:** Produce the complete clinical and administrative audit logs for Dov Fischman's electronic health record from January 1, 2023 through May 1, 2025, including access logs, timestamps for data entry, viewing, modification, deletion, correction, transfer, export, restriction, and post-death activity, and user-identifying information for activity at UT Southwestern, Clements University Hospital, and the UT Southwestern Heart Clinic.

**Request No. 3:** Provide Plaintiff with restored access to Dov Fischman's MyChart account, including historical communications, proxy-access logs, attachments, and post-death access history. If restored access is not available, produce documents sufficient to show the same information.

**Request No. 4:** Provide Plaintiff with a read-only view, export, screenshots, or visual demonstration showing how Dov Fischman's record appeared from the provider-facing Epic views used by clinicians at the UT Southwestern Heart Clinic and Clements University Hospital, including his medication history, care team, alerts, clinical notes, orders, transplant information, recent changes, active risks, and signs of clinical deterioration. This request includes documents sufficient to show whether Epic presented a complete and current summary of that information on a single screen or required providers to navigate among separate tabs, encounters, modules, notes, lists, or historical views to reconstruct the patient's condition; what information was visible without additional navigation; what information required opening other screens; and whether any emergency, urgent-care, or deterioration workflow provided a consolidated view sufficient for a provider to understand the patient's immediate condition and treatment history.

**Request No. 5:** Produce documents sufficient to show where and how Dov Fischman's records were stored, exported, produced, withheld, or accessed within Epic or any connected UT

Page 8

Southwestern system, including how Epic stored, exported, or withheld his records, metadata, and audit trails in response to record requests, subpoenas, or regulatory complaints, and including documents sufficient to show any difference between Plaintiff's initial production of his medical records and any subsequent production — including any records, entries, or documents present in a later production that were absent from the initial production — and when each such item was created, finalized, or made available in Epic. This request includes documents sufficient to identify what UT Southwestern and Epic treated as Dov Fischman's complete legal medical record and complete clinical record; which data classes, modules, notes, flowsheets, medication-administration records, messages, tasks, attachments, audit information, specialty records, research records, and other materials were included in or excluded from ordinary record productions; the reason for each exclusion; and where excluded information remained accessible.

**Request No. 6:** Produce documents sufficient to show how Dov Fischman's MyChart access, proxy access, and post-death access restrictions were managed, changed, or audited in Epic.

**Request No. 7:** Produce documents sufficient to show any non-standard display settings, hidden fields, or suppressed content in Dov Fischman's Epic record that affected how clinical information appeared to clinicians, administrators, or record reviewers.

## II. System Architecture, Data Flow, and Reporting Logic

**Request No. 8:** Produce documents sufficient to show the solution architecture for the Epic environment and connected UT Southwestern systems used in Dov Fischman's care, including module maps, schema maps, data-flow diagrams, interface maps, middleware, reporting tools, Clarity, any data warehouse, pharmacy interfaces, laboratory interfaces, clinical-trial interfaces, billing and coding interfaces, and MyChart or patient-portal connections. This request includes

documents sufficient to show how and when data was extracted, transferred, transformed, loaded, refreshed, matched, and made available between the live Epic environment, Clarity, and any other reporting or data-warehouse system; the expected and actual latency for those processes; any failed, delayed, incomplete, or duplicate transfers involving information relevant to Dov Fischman; and whether any report, dashboard, workqueue, monitoring process, patient-safety review, clinical review, or record production relied upon data that was incomplete or not current due to that latency. Produce the report definitions, query criteria, extract logic, filters, parameters, data sources, reporting tables, reporting views, and user selections used to generate, export, print, transmit, or produce his medical records, medication lists, discharge summaries, transfer records, continuity-of-care documents, MyChart records, audit logs, diagnosis records, coding records, and any records produced to Plaintiff.

**Request No. 9:** Produce documents sufficient to show the timing between clinical events and their entry into Dov Fischman's Epic record, including any lag between when an event occurred and when it appeared in the provider-facing record. Produce documents sufficient to show how records from outside hospitals, prior providers, pharmacies, health-information exchanges, claims sources, and other connected systems were received, matched, incorporated, reconciled, and displayed in his Epic record, including the patient-matching criteria used; the source and provenance retained for each item; how conflicting, duplicate, unmatched, or incomplete information was handled; which source controlled when information differed; whether any information was suppressed or excluded; and how UT Southwestern determined whether the imported information was complete and accurately associated with Dov Fischman.

**Request No. 10: Discharge and Rehabilitation Transfer Medication Export Logs:** Produce complete, unedited system metadata, transaction logs, interoperability transmission records, Care

Everywhere records, HL7 message logs, transfer-manifest records, discharge-medication export records, and related audit trails, to the extent maintained, for the medication summaries exported, transmitted, or printed for Dov Fischman's discharge and transfer to the rehabilitation facility. This request includes records showing whether the system bundled inactive, discontinued, historical, or un-reconciled medication rows alongside active prescriptions on the discharge summary, transfer manifest, continuity-of-care document, or medication list provided to the receiving facility. This request includes documents sufficient to show when admission, transfer, and discharge medication reconciliation began and was completed; whether any medication order was entered, signed, released, modified, discontinued, held, or resumed after reconciliation was completed; whether Epic generated any subsequent-reconciliation or "Reconciliation on the Fly" prompt; how each user responded; and whether any medication included in a discharge or transfer snapshot had not been reviewed by the clinician performing medication reconciliation.

**Request No. 11:** Produce documents sufficient to show the relationship between Epic's billing and clinical-record architecture at UT Southwestern, including whether encounters, accounts, coding, or reimbursement requirements affected how Dov Fischman's clinical information was structured, stored, linked, displayed, or separated within the system.

**Request No. 12:** Produce documents sufficient to show how Epic distinguished between information that merely existed within a patient's record and information that could participate in alerts, workflows, clinical decision support, monitoring functions, reporting functions, routing functions, provider-facing displays, patient-safety safeguards, or other system actions applicable to Dov Fischman's care, including any configuration, data-classification, mapping, indexing, rule-engine, workflow, or system-design materials reflecting those distinctions.

### III. Workflows, Alerts, Clinical Decision Support, and Deterioration Detection

**Request No. 13:** Produce documents sufficient to show the Epic configurations, workflows, alerts, and modules that applied to Dov Fischman's transplant care, medication monitoring, sepsis detection, MyChart access, and record production, including whether information in his Epic record was usable by those workflows, alerts, or clinical decision support and patient-safety safeguards, or was stored only as static documentation, and including any automated workflow, trigger, or system action in Epic or any connected UT Southwestern system that applied to his record — including any workflow that changed, restricted, or disabled his MyChart access.

**Request No. 14:** Produce documents sufficient to show whether any clinical decision support, risk-scoring, diagnostic-support, antimicrobial-stewardship, infectious-disease, pharmacy, or medication-safety functionality was available in Epic or any connected UT Southwestern system from January 1, 2023 through May 1, 2025, and whether any such functionality was used in connection with Dov Fischman's care. This request includes documents sufficient to show whether the system could combine or analyze his immunosuppressive medications, degree of immunosuppression, transplant status, laboratory results, cultures, microbiology findings, symptoms, diagnoses, prior infections, medication history, and known infection risks to identify or prioritize possible causes of infection, recommend additional testing, or support selection or modification of antibiotic, antifungal, antiviral, or other treatment. Produce documents sufficient to show any alerts, recommendations, differential-diagnosis support, treatment guidance, pharmacy review, escalation, or other system response generated or available in connection with his clinical deterioration.

**Request No. 15:** Produce documents sufficient to show whether Epic detected or responded to any clinical deterioration involving Dov Fischman from January 1, 2023 through May 1, 2025, including any resulting alerts, notifications, escalations, record reviews, or provider involvement. Produce documents sufficient to show whether, during any emergency or urgent-care event, providers relied upon information displayed in Epic that was incomplete, delayed, fragmented, inaccurate, or unavailable, and any resulting clinical decision, treatment, delay, adverse event, or patient-safety review reflected in the record. This request also seeks documents showing what deterioration-detection functionality was available, how it was configured, and any known issues affecting its operation.

**Request No. 16:** Produce documents sufficient to show whether Epic Phoenix or any transplant-related Epic module, workflow, or tracking function was active, configured, or used in connection with Dov Fischman's care, including how it appeared to providers.

**Request No. 17:** Produce documents sufficient to show what data validation, quality control, or post-implementation review was recommended, required, or performed for Epic functionality used in Dov Fischman's care.

**Request No. 18:** Produce documents sufficient to show any Epic workflow, documentation requirement, or validation rule designed to ensure complete documentation for high-risk patients.

**Request No. 19:** Produce documents sufficient to show any Epic requirement or safeguard that had to be satisfied before information could be entered, completed, submitted, or relied upon in Dov Fischman's care.

**Request No. 20:** Produce documents sufficient to show how wound and skin-integrity information concerning Dov Fischman was recorded, displayed, routed, and incorporated into Epic task and care-plan workflows.

### IV. Care Team, Handoffs, and Responsibility for Record Entries

**Request No. 21: Treatment Team Assignment, Reassignment, and Longitudinal Provider Involvement Records:** Produce documents sufficient to show how Dov Fischman's care team was established and managed in Epic, including who was listed, when assignments changed, how responsibility was transferred, and how those assignments affected access to information, routing, review, and participation in his care. Produce complete Treatment Team records, assignment histories, provider-list histories, modification logs, user-action logs, privilege logs, routing records, and related communications showing the addition, removal, attempted removal, replacement, continued listing, notification, consultation, or involvement of any attending physician, transplant physician, cardiology physician, primary-care physician, endocrinologist, oncology physician, coordinator, or other provider during the relevant outpatient encounters and admissions. This request includes documents sufficient to show how the knowledge, recommendations, concerns, objections, or differing clinical opinions of providers who had previously treated Dov Fischman were entered, displayed, routed, preserved, and made available to providers assuming responsibility for his care, including Dr. MaryJane Farr's and Dr. Lauren Truby's roles in his Epic record after everolimus was proposed or prescribed and how those roles were defined and controlled by the system.

**Request No. 22:** Produce records showing the person responsible for each entry, modification, correction, or deletion in Dov Fischman's record and, if Epic did not track that information,

produce documents sufficient to show how responsibility for record entries was determined, together with any provider-facing view, report, summary, or record reflecting the clinical history presented to a provider assuming responsibility for his care and, if no such record exists, documents sufficient to show how that information was presented.

**Request No. 23:** Produce documents sufficient to show whether and how Epic, any implementation partner, or UT Southwestern configured, implemented, or adapted the system to support rotating providers, handoffs, changes in responsibility, and multi-facility, multi-specialty transplant care, including medication reconciliation, clinical decision support, care-team routing, patient-safety safeguards, monitoring workflows, and transplant-related functionality. This request includes documents sufficient to show whether Epic required, prompted, scheduled, documented, or escalated multidisciplinary review, care conferences, specialist consultation, reassessment of the treatment plan, or notification of prior treating physicians when a high-risk transplant patient experienced clinical deterioration, conflicting recommendations, a major medication change, prolonged delay before treatment initiation, or transfer of care to different providers.

**Request No. 24: Inpatient and Outpatient Communication Routing Records:** Produce complete In Basket messages, routing records, access logs, privilege-denial records, message-delivery records, escalation records, and related metadata showing communications between outpatient transplant or cardiology coordinators and inpatient care teams concerning Dov Fischman during November and December 2024.

**Request No. 25:** Produce documents sufficient to show the extent to which Epic served as UT Southwestern's primary system for transplant patient care, including clinical, scheduling, pharmacy, and patient-facing processes.

**Request No. 26:** Produce documents sufficient to show the relationship between the UT Southwestern Heart Clinic and Clements University Hospital in Epic, including whether they shared a common Epic environment for Dov Fischman's care.

**Request No. 27:** Produce documents sufficient to show how Clements University Hospital's teaching-hospital and academic medical center model was translated into Epic workflows, provider roles, supervision, and handoff structures.

## V. Everolimus, Consent, Authorization, and Medication Monitoring

**Request No. 28:** Produce any record reflecting how everolimus was identified, classified, configured, displayed, or treated in Dov Fischman's care and, if no such record exists, documents sufficient to show whether everolimus was identified in Epic as off-label or subject to restrictions or approvals. Produce documents sufficient to show the process for adding, configuring, validating, approving, and activating a new medication or new clinical use of an existing medication in Epic, including the personnel involved, the expected time required, and any interim process used while configuration remained incomplete. This request includes documents sufficient to show whether medication requests, orders, authorizations, prescriptions, pharmacy transactions, or related records could become orphaned, unlinked, unmatched, or associated with the wrong encounter or medication record; how Epic identified, matched, joined, reconciled, or re-associated those records; whether that process occurred automatically or required manual intervention; and whether an unlinked or orphaned record could be omitted from medication lists, alerts, monitoring, clinical decision support, reconciliation, reporting, or provider-facing displays. This request further includes whether notes, comments, free-text fields, or other non-structured documentation were used as a temporary or permanent workaround for everolimus or for other medication,

Page 16

authorization, monitoring, or clinical-workflow information when structured Epic functionality was unavailable, incomplete, delayed, or unlinked.

**Request No. 29:** Produce documents sufficient to show whether Epic required or surfaced formulary alternatives, on-label options, dose adjustments, continuation of the existing immunosuppressive regimen, or other available treatment approaches before everolimus was prescribed off-label to Dov Fischman, including whether any override, approval, or bypass was used. Produce documents sufficient to show whether Epic displayed, flagged, summarized, or otherwise used his dermatology history, kidney function, laboratory trends, medication history, primary-care records, endocrinology records, recommendations from prior treating providers, or skin-cancer diagnoses in connection with the decision to prescribe everolimus. This request includes any alert, recommendation, order set, protocol, decision-support function, consultation request, or documentation reflecting whether another provider recommended continuing, lowering, adjusting, or otherwise modifying his existing medication rather than changing to everolimus. Produce documents sufficient to show whether Epic required or supported reevaluation of the proposed medication change during the period between the initial decision and the start of everolimus, including whether changes in kidney function, dermatology status, clinical condition, specialist recommendations, or the availability of approved alternatives could trigger review, consultation, approval, or reconsideration. This request further includes documents sufficient to show whether the information needed to evaluate that decision was presented to clinicians in a consolidated, current summary on a single screen or required navigation among separate tabs, encounters, notes, modules, reports, or historical views, and what information was visible or omitted from the screen used when the medication decision was made or reviewed.

Page 17

**Request No. 30:** Produce Dov Fischman's complete consent records, medication authorizations, off-label-use documentation, patient-assistance-program records, and specialty-pharmacy records maintained in Epic, MyChart, pharmacy systems, or any other UT Southwestern repository; documents sufficient to show how that consent, medication-access, and authorization information was stored and used in Epic or any connected UT Southwestern system, including whether it affected prescribing, monitoring, or medication selection; all provider communications maintained in Epic or any connected UT Southwestern system concerning everolimus, medication access, consent, patient-assistance-program enrollment, or follow-up for Dov Fischman; and documents sufficient to show how his off-label everolimus prescription moved through Epic and any connected system after Medicare denied coverage, including the prior-authorization, denial, patient-assistance, approval, prescribing, activation, and monitoring workflow. This request includes the complete electronic prior-authorization message history, authorization identifiers, payer responses, denial reasons, cancellation or resubmission records, patient-notification records, and documents sufficient to show whether each authorization request and response was correctly linked to Dov Fischman, the applicable encounter, coverage record, medication, dose, instructions, and prescription. Produce documents sufficient to show whether the payer response exactly matched the medication-order information submitted; how any mismatch was displayed, routed, corrected, or resolved; and whether the Medicare denial or transition to patient assistance affected the visibility, status, activation, monitoring, or clinical review of the prescription in Epic.

**Request No. 31:** Produce documents sufficient to show whether Epic or any connected UT Southwestern system could trigger monitoring, follow-up, or approval workflows based on an off-label prescription, and whether any such workflow applied to everolimus in Dov Fischman's care, and documents sufficient to show whether Epic or any connected UT Southwestern system

Page 18

contained a workflow or documentation field for recording patient hesitancy, refusal, lack of understanding, or concerns about consent regarding a medication decision.

**Request No. 32:** Produce documents sufficient to show how medication risks and adverse events were captured, displayed, and used for alerts in Epic or any connected UT Southwestern system during Dov Fischman's care.

**Request No. 33:** Produce documents sufficient to show how Epic handled Valcyte, CMV risk, and antiviral prophylaxis in Dov Fischman's care, including whether any alert, approval, or escalation was required before Valcyte was discontinued.

**Request No. 34:** Produce documents sufficient to show how Epic distinguished active from inactive, discontinued, completed, cancelled, on-hold, entered-in-error, and historical medications in Dov Fischman's record, including the data fields, status-transition rules, effective dates, start dates, stop dates, end dates, and other temporal boundaries used to determine medication status. This request includes documents sufficient to show how each medication, including everolimus, appeared at the same point in time in MyChart, the provider-facing Epic record, medication-reconciliation views, pharmacy records, clinical reports, discharge records, exports, and connected systems; whether the medication's status, dates, instructions, prescriber, or other information differed among those views; the reason for any difference; and whether a change made in one view automatically propagated to the others. This request includes documents sufficient to show whether any medication information received from an outside provider, pharmacy, health-information exchange, claims source, or connected system was placed into a pending reconciliation activity rather than filed directly into Dov Fischman's active medication record; when and by whom it was reviewed, accepted, rejected, modified, or left unresolved; and whether

Page 19

information awaiting reconciliation was visible to clinicians or available to medication lists, alerts, clinical decision support, monitoring, reporting, or exports.

**Request No. 35:** Produce documents sufficient to show whether Epic could generate a complete medication history for Dov Fischman showing each medication, prescribing provider, ordering provider, start date, stop date, discontinuation date, medication status, ordering encounter, pharmacy routing, and medication-reconciliation history, and produce any such report if it exists. This request includes the authorizing provider, ordering provider, documenting provider, signing provider, verifying pharmacist, modifying user, and discontinuing user associated with each medication order; all structured and free-text administration instructions; and the complete history of any hold, unhold, pause, restart, refusal, missed administration, automatic hold, discontinuation, replacement, or status change. Produce documents sufficient to show whether each such action was displayed consistently in the medication order, medication list, MAR, reconciliation activity, MyChart, reports, exports, and connected systems.

## VI. Diagnosis and Cause-of-Death Determination

**Request No. 36: Diagnosis, Coding, and Death Workflow Records:** Produce documents sufficient to show how diagnoses and cause-of-death information concerning Dov Fischman — including sepsis, infection, COVID-19 status, unresolved viral load, PTLD, Hodgkin's lymphoma, medication-related causation, and other contributing conditions — were entered, displayed, modified, reviewed, prioritized, omitted, coded, selected, approved, and exported through Epic, and who entered, approved, or modified that information, together with complete diagnosis records, problem-list records, coding records, billing-interface records, death-summary records,

discharge-summary records, mortality-review records, query records, audit logs, user-action metadata, and Deceased Patient workflow records reflecting those determinations.

## VII. Family Communications, Advocacy, and Complaints

**Request No. 37:** Produce documents sufficient to show how Epic or any connected UT Southwestern system recorded, displayed, routed, tracked, escalated, assigned, and preserved patient or family consent, refusals, objections, advocacy, complaints, and other care-related concerns involving Dov Fischman, including how that information was associated with his record, care team, clinical workflows, patient-relations activities, or administrative review.

## VIII. TEAMMATE Trial and Research-Related Records

**Request No. 38:** Produce documents sufficient to show how the TEAMMATE trial was structured in Epic, including how its workflows, consent, and monitoring compared to Dov Fischman's transition to everolimus outside the trial.

**Request No. 39:** Produce documents sufficient to show whether TEAMMATE safety or adverse-event data was incorporated into Epic or any connected UT Southwestern system, who had access to it, and whether it was considered in Dov Fischman's care.

**Request No. 40: Clinical Trial or Research Protocol References in Chart:** Produce complete records, notes, order sets, protocol references, clinical-trial flags, research-module entries, transplant-protocol entries, and related audit trails showing whether Dov Fischman's care, medication conversion, biopsy planning, rejection surveillance, or follow-up testing was linked to, influenced by, or documented in connection with any transplant protocol, research pathway, clinical trial tracking pathway, or standardized order set.

Page 21

## IX. Implementation, Configuration, Governance, and Known Limitations

**Request No. 41:** Produce agreements, software license agreements, statements of work, system specifications, order forms, module lists, amendments, and related documents in UT Southwestern's possession, custody, or control concerning Epic functionality used or available in Dov Fischman's care, together with the standard implementation, configuration, build, workflow, testing, validation, training, and support materials that Epic provided or made available to UT Southwestern concerning that functionality, and UT Southwestern's completed workbooks, playbooks, decision records, build records, and records of post-implementation changes.

**Request No. 42: Local Epic Configuration for Dov Fischman's Care Areas:** Produce documents sufficient to show the Epic configuration, build, templates, order sets, role-based access settings, routing rules, patient-banner settings, medication-reconciliation settings, NPO-order workflows, PRN-medication workflows, Treatment Team settings, In Basket routing rules, and other local Epic workflows used by UT Southwestern, Clements University Hospital, the transplant clinic, cardiology, oncology, endoscopy, and inpatient units involved in Dov Fischman's care during November 2024 through January 2025.

**Request No. 43:** Produce documents sufficient to identify the personnel who implemented, configured, maintained, supported, administered, or modified the Epic functionality used in Dov Fischman's care, including their roles, responsibilities, qualifications, clinical or technical backgrounds, reporting structure, and the person or department serving as UT Southwestern's primary point of contact for Epic-related issues, together with the training materials used by UT Southwestern personnel concerning that functionality and any governance, clinical informatics, or EHR committee materials concerning it.

**Request No. 44:** Produce documents reflecting Epic's involvement in UT Southwestern's implementation and operational support for Epic functionality used by the Heart Clinic, Clements University Hospital, or Dov Fischman's care, and documents sufficient to show how Epic releases and updates were evaluated, adopted, or deferred by UT Southwestern for that functionality.

**Request No. 45:** Produce documents sufficient to show the requirements, functional design, technical design, build, testing, validation, acceptance, go-live, post-go-live, and ongoing configuration process for Epic functionality used or available for heart-transplant recipients at UT Southwestern — including what transplant-related functionality UT Southwestern requested, what Epic or any implementation partner made available, what was implemented, what was not implemented, what issues, defects, limitations, safety concerns, gaps, or corrective actions were identified during implementation or post-implementation review, whether those issues were resolved before go-live or deferred to a later release, and whether configuration or optimization of that functionality remained ongoing during Dov Fischman's care — together with documents sufficient to show the division of responsibility between UT Southwestern, Epic, and any implementation partner, consultant, or third party for that functionality, including what Epic agreed or was expected to deliver, what UT Southwestern agreed or was expected to configure, build, test, validate, maintain, monitor, or operate, and how responsibility was allocated for core system functionality, local configuration, transplant workflows, medication reconciliation, clinical decision support, alerts, reporting, interfaces, patient-facing records, and record production.

**Request No. 46:** Produce documents from January 1, 2020 through May 1, 2025 concerning known limitations, defects, usability concerns, safety issues, or operational problems involving Epic functionality applicable to Dov Fischman's care, including audits, assessments, issue reports, corrective actions, support tickets, root-cause findings, workarounds, fixes, and records showing

Page 23

whether an issue resulted from Epic's underlying functionality or UT Southwestern's local configuration. This request includes mapping specifications, data dictionaries, provenance records, validation results, data-quality reports, conformance-testing results, and documents showing whether medication-status, temporal, reconciliation, and interoperability functions were tested against applicable standards or implementation guidance and whether any identified failures, exceptions, or nonconformities were corrected. This request includes interface specifications, implementation guides, customer-only documentation, test scripts, test results, validation records, upgrade-impact assessments, regression testing, and records showing whether any Epic release, interface modification, screen change, mapping change, or connected-system update caused data to be omitted, delayed, duplicated, misclassified, mismatched, or silently altered.

**Request No. 47:** Produce documents sufficient to identify any third-party system, middleware, application, repository, clinical knowledge base, medical-reference database, drug-information database, antimicrobial-stewardship platform, infectious-disease decision-support tool, pharmacy decision-support resource, or internally created tool that UT Southwestern acquired, implemented, or used to supplement Epic functionality applicable to Dov Fischman's care. This request includes documents showing how any such resource connected to Epic; what patient information it received or could access; whether its recommendations, warnings, diagnostic guidance, treatment guidance, or infection-risk information appeared within Epic or required separate access; whether providers caring for Dov Fischman had access to it; and whether Epic functionality applicable to his care was considered unavailable, inadequate, or unable to support complex diagnostic or treatment decisions. Produce documents identifying any such functionality that UT Southwestern tested or considered but did not use due to usability, complexity, workflow, performance, integration, or safety concerns, together with documents explaining that decision.

Page 24

**Request No. 48:** Produce all IT tickets, support tickets, error logs, and help-desk records from January 1, 2023 through May 1, 2025 concerning any failure, alert suppression, missed monitoring, or system malfunction involving Dov Fischman's care, sepsis alerts, medication reconciliation, transplant functionality, or MyChart.

**Request No. 49:** Provide Plaintiff with access to any UT Southwestern Epic training, test, demo, sandbox, or non-production environment available to UT Southwestern that shows Epic functionality applicable to Dov Fischman's care. If such access is not available, produce documents sufficient to show that functionality in screenshots, exports, training materials, configuration documents, or other reasonably usable form.

**Request No. 50:** Provide Plaintiff with access to any UT Southwestern portal, repository, shared drive, clinical trial management system, or other system through which Epic documentation, configuration, implementation, governance, audit, or operational materials are stored or accessed. If such access is not available, produce documents sufficient to show that information in another reasonably usable form.

**Request No. 51:** Produce UT Southwestern's written policies, protocols, procedures, and clinical guidelines applicable to Dov Fischman's care concerning medication transitions, off-label prescribing, immunosuppression management, transplant medication monitoring, clinical deterioration, sepsis recognition, informed consent, care-team handoffs, patient-assistance or specialty-pharmacy workflows, and heart-transplant patient management, including documents showing how those policies were incorporated into or supported by Epic or any connected UT Southwestern system.

Page 25

**Request No. 52:** Produce all communications, correspondence, emails, support tickets, service requests, meeting notes, attachments, and records of communications between UT Southwestern Medical Center and Epic Systems Corporation concerning Dov Fischman, his medical record, medication records, medication reconciliation, medication history, medication timelines, transplant management, future orders, standing orders, prior-authorization workflows, order routing, record exports, diagnosis coding, or any other issue relating to his care from January 1, 2023 through January 6, 2025.

**Request No. 53:** Produce all documents reflecting requests by UT Southwestern Medical Center to Epic Systems Corporation for modifications, fixes, patches, enhancements, configuration changes, workflow changes, display changes, reporting changes, or patient-safety improvements concerning medication management, medication reconciliation, medication timelines, medication metadata, active-versus-historical medication displays, transplant workflows, order routing, future orders, standing orders, encounter closure, record fragmentation, longitudinal patient records, or record continuity from January 1, 2023 through May 1, 2025.

**Request No. 54:** Produce all documents reflecting Epic Systems Corporation's responses, recommendations, analyses, workarounds, technical guidance, implementation guidance, configuration guidance, enhancement proposals, fixes, patches, or other recommendations provided to UT Southwestern Medical Center in response to the requests, issues, and subjects identified in Requests Nos. 52 and 53.

**Request No. 55:** Produce all meeting minutes, meeting notes, agendas, presentations, action-item logs, issue-tracking records, enhancement requests, follow-up communications, and related documents reflecting meetings, governance sessions, optimization reviews, account-management

meetings, Technical Services meetings, steering committee meetings, application-review meetings, or other recurring discussions between Epic and UT Southwestern Medical Center from January 1, 2014 through May 1, 2025 concerning medication management, medication reconciliation, medication-history displays, longitudinal medication timelines, transplant workflows, Phoenix, Care Everywhere medication data, outpatient and inpatient medication visibility, patient-safety concerns, clinician-reported issues, user feedback, clinician feedback, known limitations, defects, enhancements, workarounds, workflow assessments, usability assessments, governance reviews, risk assessments, or requests for modification of Epic functionality, whether discussed internally within UT Southwestern or in communications with Epic Systems Corporation.

**Request No. 56:** Produce all reports, complaints, or submissions made by UT Southwestern, or received or maintained by UT Southwestern concerning submissions made by Epic, to the FDA's MAUDE database or any other governmental or accrediting body concerning defects, malfunctions, safety concerns, or adverse events involving Epic functionality applicable to Dov Fischman's care, together with related communications and responses.

**Request No. 57:** Produce documents sufficient to show how UT Southwestern's risk-management process was structured for issues involving Epic functionality applicable to Dov Fischman's care, including the events or information that triggered review, the applicable policies, the personnel responsible, and how Epic alerts, reports, complaints, incident records, or other system information contributed to the process.

Respectfully submitted,

Date: June 17, 2026

/s/ *Gallit Fischman*
_____

GALLIT FISCHMAN, Pro Se
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com


## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 45(a)(4), I certify that on June 17, 2026, a copy of the subpoena directed to non-party UT Southwestern Medical Center, together with Schedule A, was served on counsel for Defendant Epic Systems Corporation before or simultaneously with service of the subpoena on UT Southwestern Medical Center.

/s/ *Gallit Fischman*
_____

Gallit Fischman, Plaintiff, Pro Se