IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:26-CV-0770-D |
| v. | § | |
| | § | |
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO NON-PARTY THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER'S MOTION TO QUASH AND FOR PROTECTIVE ORDER, AND SUPPORTING BRIEF**

**USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

Plaintiff discloses that generative artificial intelligence was used to assist in preparing this brief.

i

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................... 1

II. ARGUMENT ................................................................................................................... 2

    A. Russell addressed materially different facts, process, and sovereign interests. ................. 2

    B. The Rule 45 motion and Rule 26(c) request must be evaluated independently. ................ 6

    C. UT Southwestern served no timely written objections to the subpoena. .......................... 7

    D. UT Southwestern's counsel did not meaningfully confer before filing the Motion. ........... 8

    E. Modification and staged production are the proper Rule 45 alternatives. (See UTSW Mot. Ex. A; Appendix A.). ........................................................................................................... 9

    F. UT Southwestern's cited standards do not establish a prima facie burden. (See UTSW Mot. Ex. A; Appendix A.). ......................................................................................................... 10

    G. UT Southwestern holds the complete evidence needed to test Epic's configuration defense. .............................................................................................................................. 13

    H. Epic cannot rely on evidence that Plaintiff is barred from examining. ............................ 14

III. CONCLUSION .............................................................................................................. 15

APPENDIX A: Burden-Reduction Measures Included in Schedule A ...............(Filed Separately)

# TABLE OF AUTHORITIES

## CASES

*American Electric Power Co. v. United States*, 191 F.R.D. 132 (S.D. Ohio 1999) .................... 11

*Daniel v. University of Texas Southwestern Medical Center*, 960 F.3d 253 (5th Cir. 2020) ........ 3

*Dennis v. United States*, No. 3:16-CV-3148-G-BN, 2017 WL 4778708 (N.D. Tex. Oct. 23, 2017) ................................................................................................................................................ 11

*In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998) .................................................................. 8

*In re Missouri Department of Natural Resources*, 105 F.3d 434 (8th Cir. 1997) ........................ 3

*In re Modern Plastics Corp.*, 890 F.3d 244 (6th Cir. 2018) ........................................................ 11

*In re Nonparty Patient No. 1*, Nos. 15-25-00031-CV & 15-25-00032-CV (Tex. App.-15th Dist. Oct. 16, 2025, orig. proceeding) (mem. op.)............................................................................... 4

*In re Terra International, Inc.*, 134 F.3d 302 (5th Cir. 1998) ................................................. 7, 10

*Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422 (Fed. Cir. 1993)..................... 11

*Meier v. UHS of Delaware, Inc.*, No. 4:18-CV-00615, Dkt. 725 (E.D. Tex. Apr. 1, 2021).... 5, 10

*Merrill v. Waffle House, Inc.*, 227 F.R.D. 475 (N.D. Tex. 2005).................................................. 11

*Mick v. Gibbons*, 171 F.4th 1097 (8th Cir. 2026)...................................................................... 3–4

*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022)............................................................... 1–6, 15

*Samsung Electronics America, Inc. v. Chung*, 325 F.R.D. 578 (N.D. Tex. 2017) ...................... 11

*SEC v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006) ........................................................................ 11

*State v. Nonparty Patient No. 1*, No. 15-25-00023-CV, 2025 WL 2355380 (Tex. App.-15th Dist. Aug. 14, 2025, no pet.) ......................................................................................................... 4

*Surles v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007)................................................... 14

*TexasLDPC, Inc. v. Broadcom, Inc.*, No. 4:22-mc-1780 (S.D. Tex. 2023).................................... 5

*Thompson v. Richter*, No. 24-10837, 2025 WL 1233519 (5th Cir. Apr. 29, 2025)....................... 5

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 270 (D.D.C. 2002) ........................................................................................................................................ 5

*Virginia Department of Corrections v. Jordan*, 921 F.3d 180 (4th Cir. 2019)........................... 11

*Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018)........................................... 10–11

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) ........................................... 10

## RULES

Fed. R. Civ. P. 26(b)(1).................................................................................................................. 14

Fed. R. Civ. P. 26(c) ........................................................................................................... 1, 6–7, 10

Fed. R. Civ. P. 45...................................................................................... 1–3, 6–7, 9–10, 13, 15–16

Fed. R. Evid. 403 ........................................................................................................................... 15

## I. INTRODUCTION

The subpoena seeks institution-specific evidence needed to determine whether the alleged failures arose from Epic's core architecture or UT Southwestern's local implementation. Epic placed that distinction at the center of its defense. UT Southwestern nevertheless seeks to quash every request or obtain a protective order requiring complete nonproduction.

UT Southwestern's position depends principally on *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022), which addressed materially different federal compulsory process. UT Southwestern's status as an arm of Texas permits it to invoke sovereign immunity, but that status alone does not bar a Rule 45 subpoena. The dispositive question is whether *Russell* extends to this subpoena, which seeks no liability or substantive relief against UT Southwestern and is directed solely to evidence needed in an action against Epic.

UT Southwestern also failed to preserve or meaningfully address its ordinary discovery objections. It served no timely written objections, did not meaningfully confer, and requests the same blanket result under both Rule 45 and Rule 26(c) without satisfying the distinct requirements of either rule.

If the Court reaches burden, modification and staged production provide the proper remedy. Plaintiff proposed beginning with controlled access so she could conduct the initial review and identify any remaining gaps before broader collection occurred. UT Southwestern ignored that proposal, offered no evidence of actual burden, and assumed the most demanding form of compliance before seeking to block all production.

The requested evidence is uniquely necessary. UT Southwestern holds the complete institutional record needed to test Epic's configuration defense. If that evidence is placed beyond Plaintiff's reach, Epic should not be permitted to rely on the same category of information to shift responsibility to UT Southwestern.

## II. ARGUMENT

**A. Russell addressed materially different facts, process, and sovereign interests.**

In *Russell*, private plaintiffs served document and deposition subpoenas on state judges acting in their official capacities. The Fifth Circuit held that sovereign immunity barred those subpoenas since compelled compliance subjected the State to coercive judicial process. *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022).

The procedural history was central to that ruling. The plaintiffs originally named the felony judges as defendants. After an appellate decision created an immunity obstacle, they dismissed the judges while continuing the same action against Harris County and its Sheriff. They then served Rule 45 subpoenas on those same judges in the same continuing action. The subpoenas concerned the judges' official roles in creating and administering the felony-bail system, which was the same conduct that had made them defendants. The Fifth Circuit therefore treated the subpoenas as a continuation of discovery directed to the same officials, concerning the same conduct, in the same case.

The Court's analysis should turn on the subpoena's purpose, not merely the identity of its recipient. Although both subpoenas were directed to state entities, the subpoena in *Russell* served a materially different purpose. This subpoena does not seek to establish UT Southwestern's liability. It seeks customer-side evidence that Epic placed directly at issue by attributing the alleged failures to UT Southwestern's local configuration rather than Epic's core architecture. UT Southwestern holds the institution-specific evidence showing how Epic's system was configured and used during Dov Fischman's care and what support it received from Epic. That evidence is necessary to distinguish product design from local implementation. Limited production would allow Plaintiff to test Epic's defense without imposing liability or substantive relief on UT Southwestern.

2

UT Southwestern's status as an arm of Texas does not resolve whether this subpoena is barred. *Daniel v. University of Texas Southwestern Medical Center*, 960 F.3d 253 (5th Cir. 2020), involved a direct ADA claim against UT Southwestern and established only its institutional status. It did not address a Rule 45 subpoena seeking existing records relevant to claims against a private software vendor. *Daniel* therefore does not establish that every record held by UT Southwestern is categorically beyond federal discovery.

Other authorities support this distinction. In *In re Missouri Department of Natural Resources*, 105 F.3d 434 (8th Cir. 1997), a private litigant subpoenaed ordinary-course investigative records from a nonparty state agency concerning environmental contamination central to private litigation. The Eighth Circuit held that production did not implicate the Eleventh Amendment where the agency showed no interference with state autonomy or threat to the treasury. The court protected legitimate interests through redaction and document-specific review. Although *Russell* declined to adopt *Missouri DNR's* broader Eleventh Amendment analysis, the case remains persuasive on the practical distinction between a custodial subpoena for existing records and the official-capacity discovery at issue in *Russell*.

The Eighth Circuit recently confirmed that *Missouri DNR* remains binding as to some nondisruptive document discovery from state agencies. *Mick v. Gibbons*, 171 F.4th 1097 (8th Cir. 2026). *Mick* distinguished a limited document subpoena from a Rule 30(b)(6) deposition that would require extensive preparation and participation by public employees and state counsel. The court quashed the deposition but rejected the State's request for a categorical rule shielding states from all third-party discovery. It held that *Missouri DNR* continues to require compliance, at least in some circumstances, with a nondisruptive document subpoena.

That distinction supports Plaintiff's alternative request here. Plaintiff proposed beginning with patient-specific information and controlled access to the relevant systems. Her initial review could identify any remaining need before UT Southwestern undertook broader collection. Unlike

the organizational deposition in *Mick*, UT Southwestern offers no evidence quantifying the work, cost, or operational effect of that limited starting point.

Recent Texas appellate litigation involving subpoenas served directly on UT Southwestern further illustrates the distinction between a substantive suit and an ancillary subpoena proceeding. In *State v. Nonparty Patient No. 1*, the State served subpoenas on UT Southwestern and Children's Health seeking medical and related records. The affected patients sought protection, and the State asserted sovereign immunity. The Fifteenth Court of Appeals rejected that position, holding that the protection proceeding did not seek liability, threaten the public fisc, or hamper government action and therefore was not itself a suit to which sovereign immunity applied. No. 15-25-00023-CV, 2025 WL 2355380 (Tex. App.—15th Dist. Aug. 14, 2025, no pet.).

The court emphasized that sovereign immunity generally does not shield the State from procedural motions or ancillary proceedings and that courts remain responsible for determining whether immunity exists and defining its scope. The same court later reiterated that a motion for protection from subpoenas served on UT Southwestern was not itself a suit to which sovereign immunity applied. *In re Nonparty Patient No. 1*, Nos. 15-25-00031-CV & 15-25-00032-CV (Tex. App.—15th Dist. Oct. 16, 2025, orig. proceeding) (mem. op.).

The court granted mandamus only to prevent production while the patients' protection motions remained pending. It did not declare UT Southwestern's records categorically immune from subpoena process. Those decisions arose under Texas procedure, involved the State as the subpoenaing party, and do not displace *Russell*'s federal holding. They nevertheless confirm that a subpoena dispute seeking no damages or substantive relief against the sovereign differs from a suit imposing liability or controlling governmental action.

The favorable authorities share a practical feature. They involve existing factual evidence for which tailored protection was more appropriate than categorical nonproduction. *Missouri*

*DNR* permitted production subject to protection for privileged information. The recent UT Southwestern proceedings required the privilege process to run its course rather than treating the medical records as categorically unavailable. In *Meier v. UHS of Delaware, Inc.*, the court preserved relevant discovery while narrowing an overbroad demand through a folder-and-file index. No. 4:18-CV-00615, Dkt. 725 (E.D. Tex. Apr. 1, 2021).

These cases do not create a subject-matter exception to sovereign immunity. They demonstrate that courts can protect legitimate confidentiality and burden interests through focused review, narrowing, and staged production rather than foreclosing access to the evidence entirely.

The central distinction is therefore functional. *Russell* involved coercive discovery into official governmental conduct by parties who had dismissed the same officials from the same case. The authorities supporting narrower relief involve existing records held by a state entity that bear on separate claims against private parties. Plaintiff's proposed first stage falls within the latter category. It seeks existing evidence concerning Dov Fischman's care and UT Southwestern's use of Epic's product. It does not seek testimony concerning sovereign deliberations or an order controlling governmental policy.

UT Southwestern also relies on *TexasLDPC, Inc. v. Broadcom, Inc.* and *Thompson v. Richter*, which applied *Russell* to subpoenas directed to Texas state agencies. Those decisions do not extend *Russell* beyond the circumstances presented in those cases. For the reasons discussed above, this subpoena serves a different purpose and seeks customer-side evidence relevant solely to claims against a private defendant. Those decisions therefore do not resolve the materially different circumstances presented here.

UT Southwestern's reliance on *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.* establishes only that district courts supervise nonparty discovery within their districts. Plaintiff does not dispute this Court's authority to regulate the subpoena. The issue is

whether that authority should be exercised through categorical nonproduction or through the narrower methods authorized by Rule 45.

Sovereign immunity is not a statutory evidentiary privilege. *Russell* is binding, but the Court need not extend its holding beyond the sovereign interests and procedural circumstances it addressed. Plaintiff respectfully preserves that distinction for further review.

## B. The Rule 45 motion and Rule 26(c) request must be evaluated independently.

UT Southwestern seeks two forms of relief that would produce the same result. Under Rule 45, it asks the Court to quash the subpoena. Under Rule 26(c), it asks to be protected from complying with it. Although the title joins the requests with "and," Section IV and the Prayer describe the protective order as requested "in the alternative." Each request is governed by a different standard and must be decided separately.

Rule 26(c) permits a subpoenaed nonparty to seek protection, but it does not displace Rule 45's subpoena-specific standards or create a second procedural route to blanket noncompliance. The Advisory Committee explained that Rule 45's subpoena protections and Rule 26(c) are "largely repetitious." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment. That overlap coordinates protection; it does not create two independent opportunities to obtain the same blanket relief. A movant seeking a protective order must certify a good-faith effort to resolve the dispute without court action and make a particularized showing of good cause.

UT Southwestern makes no such showing. Although Rule 26(c) permits complete protection upon a sufficient showing of good cause, UT Southwestern seeks to prohibit every request without explaining why narrower protection would be inadequate. Although labeled as relief "in the alternative," its protective-order request seeks the same practical result as quashing:

complete noncompliance with the subpoena. The Motion identifies no request-specific limitation and no meaningful distinction between the relief sought under Rule 26(c) and Rule 45.

Nor does UT Southwestern satisfy Rule 26(c)'s procedural requirements. The Motion identifies no protected category, handling procedure, redaction, access restriction, or particularized injury justifying an unlimited protective order. Its Certificate states only that counsel attempted to confer regarding the filing of the Motion, not the underlying discovery dispute. A voicemail announcing an intent to file approximately two hours later did not propose narrowing, staged production, confidentiality protections, or any other means of avoiding court action. Conclusory references to burden or sensitivity cannot establish good cause. *In re Terra International, Inc.*, 134 F.3d 302 (5th Cir. 1998).

The distinction affects both the scope and future effect of any ruling. Quashing would resolve only the subpoena now before the Court. A protective order could affect later narrowed or alternative discovery unless expressly limited. If sovereign immunity resolves the Rule 45 request, no protective order is necessary. If it does not, Rule 45 permits modification and partial compliance, and any protection should be limited to the specific burden or confidentiality interest actually established while preserving non-objectionable production.

The Motion includes no proposed order. If the Court requests that UT Southwestern submit a proposed order, Plaintiff respectfully requests leave to review and respond to the proposed language before entry.

## C. UT Southwestern served no timely written objections to the subpoena.

Rule 45(d)(2)(B) required UT Southwestern to serve written objections before the earlier of the compliance date or fourteen days after service. Plaintiff served the subpoena on June 25, 2026, making the fourteen-day deadline no later than July 9, 2026. UT Southwestern served no written objections during that period and instead filed its Motion on July 24, 2026, twenty-nine

days after service. Untimely objections are ordinarily waived absent unusual circumstances or good cause. *In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998). Plaintiff does not rely on the missed deadline as an independent waiver of sovereign immunity. The failure applies to, or at minimum weighs heavily against, UT Southwestern's separate objections based on breadth, burden, confidentiality, form of production, and its request for an unlimited protective order.

The one communication Plaintiff did receive before the Motion confirmed that production was being processed, not opposed. On July 1, 2026, at 10:29 a.m., Semea Bowens of UT Southwestern Medical Records emailed Plaintiff asking for a statement-of-assurance document or a signed authorization, attaching UT Southwestern's release form. That email did not object to the subpoena, dispute its enforceability, or mention sovereign immunity. Although it addressed only the authorization needed for the medical-record portion of the subpoena and did not constitute acceptance of every request, it reasonably indicated that at least part of the subpoena was being processed. UT Southwestern did not accompany that request with written objections or notify Plaintiff that production had stopped, so Plaintiff had no reason to understand that UT Southwestern intended to seek blanket relief until counsel's same-day voicemail immediately preceding the Motion.

**D. UT Southwestern's counsel did not meaningfully confer before filing the Motion.**

UT Southwestern's Certificate of Conference states that counsel attempted to confer and received no response, but that attempt consisted of a voicemail left at 2:22 p.m. on July 24, 2026, followed by the filing of the Motion at 4:29 p.m. that same day. Counsel stated that he represented UT Southwestern, that Plaintiff had served a nonparty subpoena, that he intended to file a motion to quash that day, and that he wanted to know whether Plaintiff opposed it. The message did not identify any request-specific objection, propose modification, invite discussion of staged production, or indicate that filing could be avoided through agreement. Nor did it

provide a meaningful opportunity to resolve the dispute as required by Northern District of Texas Local Civil Rule 7.1(a).

**E. Modification and staged production are the proper Rule 45 alternatives. (See UTSW Mot. Ex. A; Appendix A.).**

If the Court reaches burden, the proper response is modification, not complete nonproduction. Plaintiff did not insist on a single method of compliance. The subpoena itself was structured to reduce burden through controlled access, phased production, alternative forms of production, representative materials, and continued conferral as discovery progressed.

Plaintiff proposed beginning with direct access to the relevant patient record and UT Southwestern's Epic systems and materials. That approach would allow Plaintiff to conduct the initial review herself and identify any remaining gaps before UT Southwestern undertook broader collection. The subpoena further divided production into three phases so the parties could evaluate earlier disclosures before determining whether later production remained necessary.

The subpoena also expressly allowed UT Southwestern to avoid duplicative production and to use existing reports, exports, demonstrations, or representative materials where they could provide substantially the same information. It invited UT Southwestern to propose any other less burdensome method that preserved the substance of the discovery and offered continued good-faith conferral regarding narrowing, deferral, or alternative compliance.

These accommodations were not added after the Motion was filed. They were built into the subpoena from the outset. UT Southwestern did not engage with them, propose a narrower method, or explain why any of them was infeasible. It instead assumed the most burdensome possible form of compliance and sought to quash every request.

*Meier v. UHS of Delaware, Inc.* confirms that narrowing and staged disclosure are appropriate alternatives to wholesale quashing. No. 4:18-CV-00615, Dkt. 725 (E.D. Tex. Apr. 1, 2021). There, the court found part of the requested discovery overbroad but preserved access to relevant evidence through a narrower first step that would permit more focused requests. The same approach is available here.

If the Court determines that additional protection is warranted, it should begin with the first stage already built into the subpoena and allow the parties to evaluate what remains before proceeding to the second and third stages. Any claimed burden should be supported by evidence explaining why that staged process is unworkable and identifying a less burdensome substitute.

Confidentiality likewise does not require nonproduction. Patient information can be confined to Dov Fischman, and any legitimate proprietary or security concern can be addressed through tailored protection supported by good cause. See Fed. R. Civ. P. 26(c)(1)(G). Private confidentiality obligations do not create an evidentiary privilege or justify withholding all responsive evidence.

**F. UT Southwestern's cited standards do not establish a prima facie burden. (See UTSW Mot. Ex. A; Appendix A.).**

Rule 45 protects nonparties from undue burden and significant expense. Fed. R. Civ. P. 45(d)(2)(B)(ii), 45(d)(3)(A)(iv). Those protections do not create a categorical exemption from discovery or make burden self-proving. Courts instead evaluate the subpoena in context. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004). Nonparty status receives appropriate weight, but it does not authorize blanket relief from relevant discovery. *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018).

The resisting party must support its position with a "particular and specific demonstration of fact," not conclusory assertions. *In re Terra International, Inc.*, 134 F.3d 302 (5th Cir. 1998).

10

Northern District decisions likewise require competent evidence showing the actual burden compliance would impose. *Samsung Electronics America, Inc. v. Chung*, 325 F.R.D. 578 (N.D. Tex. 2017); *SEC v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475 (N.D. Tex. 2005).

UT Southwestern's own authorities reinforce that requirement. In *In re Modern Plastics Corp.*, relief followed a developed factual record, sustained efforts to resolve the dispute, and concrete evidence supporting the claimed burden. 890 F.3d 244 (6th Cir. 2018). None of that occurred here. *Whole Woman's Health* involved a nonparty that had already produced responsive material and faced additional discovery of limited value. UT Southwestern has produced nothing despite possessing information unavailable from Epic. 896 F.3d 362. *Virginia Department of Corrections v. Jordan* gives special consideration to nonparty status, but it does not create automatic immunity from relevant discovery. 921 F.3d 180 (4th Cir. 2019).

The remaining authorities point in the same direction. *Dennis v. United States* required evidence supporting the claimed burden and granted only request-specific relief. No. 3:16-CV-3148-G-BN, 2017 WL 4778708 (N.D. Tex. Oct. 23, 2017). *Katz v. Batavia Marine & Sporting Supplies, Inc.* shifts the burden to justify breadth only after the resisting party makes a prima facie showing, which UT Southwestern has not done. 984 F.2d 422 (Fed. Cir. 1993). *American Electric Power Co. v. United States* requires a case-specific balance and does not permit burden to be presumed from the number of requests. 191 F.R.D. 132 (S.D. Ohio 1999).

Before UT Southwestern claimed burden, Plaintiff proposed a method designed to minimize collection. The Clarification of Scope requested restored access to the relevant patient information and controlled access to the Epic systems and materials maintained by UT Southwestern.

That proposal was the foundation of Plaintiff's approach. Plaintiff would conduct the initial review and confer only if gaps remained, allowing UT Southwestern to avoid broader

collection. UT Southwestern never addressed that proposal, suggested a workable alternative, or explained why it was infeasible. It instead assumed the most burdensome method of compliance and attributed that hypothetical burden to the subpoena. UT Southwestern cannot claim that only the most burdensome method is possible after ignoring every less burdensome alternative Plaintiff proposed.

The burden argument therefore rests on speculation rather than evidence. UT Southwestern asks the Court to quash all discovery based upon the most burdensome hypothetical method of compliance without ever addressing the substantially narrower alternatives Plaintiff actually proposed.

The Motion frames its burden claim as merely "potential," not actual. It identifies no knowledgeable witness, estimate of the work required, factual basis for its prediction of tens of thousands of documents or "complete operational stoppage," or request-specific analysis. Its discussion describes only the ordinary work associated with document production without showing why compliance with this subpoena would be unduly burdensome.

Attorney argument cannot fill that gap. Although the Attorney General represents UT Southwestern, the Motion includes no declaration from anyone familiar with the relevant systems or the actual work required to respond. Without institution-specific evidence, the claimed burden remains speculative.

UT Southwestern overstates the temporal scope. Many requests identify a governing period, while others seek point-in-time records that do not require a separate date range. Those requests are inherently limited by the specific information sought.

To remove any remaining uncertainty, Plaintiff confirms that patient-specific discovery is limited to January 1, 2023 through May 1, 2025 unless a request states a narrower period. Historical materials are limited to January 1, 2014 through May 1, 2025 and only insofar as they

concern functionality used or available in Dov Fischman's care. Any remaining temporal concern can therefore be resolved through modification rather than quashing all 57 requests.

The Motion recasts the subpoena as a demand to "give us almost everything you have on Epic's MyChart platform," but no request uses that language or requires anything approaching that scope. It substitutes an exaggerated characterization for the subpoena's actual terms and offers no request-specific evidence showing that compliance would impose the sweeping burden it claims.

Epic's possession of some institution-specific information does not eliminate the need for UT Southwestern's complete record. The Motion treats UT Southwestern's nonparty status as controlling while disregarding the needs of the parties litigating the underlying case. It offers no proof that producing the institutional and patient-level evidence would impose undue expense, while Plaintiff's phased and alternative compliance proposal satisfies Rule 45(d)(1).

**G. UT Southwestern holds the complete evidence needed to test Epic's configuration defense.**

UT Southwestern incorrectly argues that Plaintiff should obtain the requested information from Epic. Epic holds only part of the institution-specific evidence through its role as the software manufacturer and its contractual relationship with UT Southwestern. UT Southwestern controls the complete institutional and patient-level record showing how Epic was configured and used in Dov Fischman's care.

That distinction is central to Epic's defense. Epic attributes the alleged failures to UT Southwestern's local implementation rather than Epic's core architecture. Testing that contention requires more than Epic's vendor-side records. It requires the full institutional record showing what occurred within UT Southwestern's deployed environment and how the system functioned in actual care.

The same is true of Epic's implementation and support records. Epic may possess information showing its own involvement, but UT Southwestern holds the corresponding institutional evidence showing how that assistance was received and applied. Neither source alone supplies the complete picture.

This is not the fishing expedition addressed in *Surles v. Greyhound Lines, Inc.* It is focused discovery made directly relevant by Epic's own defense. The evidence bears on causation and the allocation of responsibility and cannot be obtained completely from Epic. See Fed. R. Civ. P. 26(b)(1).

Plaintiff's Complaint is centered on the allegation that Epic's core architecture caused the failures at issue, and Plaintiff genuinely believes that to be true. Epic instead attributes those failures to UT Southwestern's local configuration. Plaintiff seeks information that will support UT Southwestern's position by showing that the failures originated with Epic's product.

In the Public Information Act proceeding, UT Southwestern argued that disclosure could "bolster or expand" Plaintiff's claims against the University and interfere with its defense. That is not the purpose of this subpoena. Plaintiff seeks to use the requested evidence in UT Southwestern's defense against the responsibility Epic has placed on it.

## H. Epic cannot rely on evidence that Plaintiff is barred from examining.

Through its contractual relationship with UT Southwestern, Epic possesses a limited portion of the institution-specific implementation information that Plaintiff cannot access. Epic refuses to produce UT Southwestern-specific information, while UT Southwestern seeks to shield the complete record through sovereign immunity.

That creates an asymmetrical process in which Epic may blame UT Southwestern through evidence available only to Epic, while Plaintiff is denied any meaningful opportunity to examine or test it. Although Rule 403 governs admissibility at trial, its fairness principles support

preventing one-sided reliance on evidence placed beyond Plaintiff's reach. See Fed. R. Evid. 403. Protected information should not operate as both a sword and a shield.

If sovereign immunity places UT Southwestern's implementation evidence beyond Plaintiff's reach, Epic should be precluded from relying on that same category of evidence in support of its defenses. Epic cannot attribute the alleged failures to UT Southwestern's configuration while the evidence necessary to test that contention remains unavailable to Plaintiff. Doing so would insulate Epic's central factual contention from adversarial testing and deny Plaintiff any meaningful opportunity to challenge the basis of that defense.

UT Southwestern submitted no declaration or other evidence showing what compliance would require. It did not address Plaintiff's proposal to begin with restored MyChart access and controlled access to the relevant Epic systems and materials.

Instead, the Motion assumes the most burdensome form of production, warns of "possible complete operational stoppage," and seeks to block all 57 requests. Rule 45 permits modification where narrowing is appropriate. It does not require categorical nonproduction.

## III. CONCLUSION

Plaintiff respectfully requests that the Court deny the Motion to Quash and deny UT Southwestern's request for an unlimited protective order. UT Southwestern has not shown that sovereign immunity, burden, confidentiality, or any other asserted concern justifies placing all of the requested evidence beyond reach. Plaintiff further requests a reasonable compliance deadline and continued jurisdiction to prevent blanket nonproduction.

If the Court concludes that *Russell* bars some portion of compulsory production, Plaintiff requests a ruling confined to that issue. Such a ruling should not be expanded into findings that the evidence is irrelevant, privileged, disproportionate, or unavailable through other lawful means.

If the Court reaches Rule 45, the proper remedy is modification, not complete nonproduction. Plaintiff requests staged compliance beginning with the access-based and alternative methods already built into the subpoena, followed by a focused conference concerning any genuine request-specific dispute that remains.

UT Southwestern frames this dispute as though traditional principles of Texas sovereign immunity alone resolve the issue. The threshold question is whether, under *Russell*, sovereign immunity bars this particular Rule 45 subpoena. Plaintiff has not briefed potential waiver arguments, as they become relevant only if the Court first concludes that sovereign immunity otherwise applies. If the Court reaches that issue, Plaintiff respectfully requests an opportunity to address any applicable waiver before a ruling is entered.

Alternatively, if sovereign immunity places UT Southwestern's institution-specific implementation evidence beyond Plaintiff's reach, Epic should be precluded from relying on that same evidence to shift responsibility to UT Southwestern. Epic cannot make local configuration the centerpiece of its defense while Plaintiff is legally barred from obtaining the evidence necessary to test it. The Federal Rules require factual assertions to remain open to meaningful adversarial examination, not insulated from challenge by one-sided access to the evidence.

Respectfully submitted,

Date: August 5, 2026

/s/ _Gallit Fischman_____

**GALLIT FISCHMAN, Pro Se**

10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2026, a true and correct copy of the foregoing instrument was served by electronic filing through the Court's CM/ECF system on all counsel of record and registered ECF users entitled to notice in this case.

/s/ _Gallit Fischman_

Gallit Fischman, Plaintiff, Pro Se

17