**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GALLIT FISCHMAN,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Case No. 3:26-CV-0770-D** |
| | § | |
| **EPIC SYSTEMS CORPORATION,** | § | |
| | § | |
| *Defendant.* | § | |

---

**DEFENDANT EPIC SYSTEMS CORPORATION'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT,
OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT**

---

Defendant Epic Systems Corporation ("Epic") respectfully submits this Reply in Support of its Motion to Dismiss or, alternatively, Motion for More Definite Statement (Dkt. #33), related to Plaintiff Gallit Fischman's ("Plaintiff") Second Amended Complaint ("SAC") (Dkt. #25).

## I.    INTRODUCTION

The Response (Dkt. #34) concedes that the SAC does not fix the defects the Court identified. The gross negligence claim still fails to identify any vice principal, specific conduct, or facts showing subjective awareness; thus, it should be dismissed. So should Plaintiff's other claims. Plaintiff's filings in parallel lawsuits against UTSW, Boston Children's, and Novartis allege that UTSW held exclusive control over the very safeguards the SAC says only Epic could provide. Though the Response argues at length that the Court should not consider Plaintiff's allegations in these other lawsuits, it neither withdraws nor reconciles them. Moreover, in an attempt to clarify the allegations in the SAC, the Response confirms that the alleged defect was a generalized industry risk and that Epic's alleged conduct, at most, "formed part of the environment" in which harm occurred, which renders Plaintiff's

---

causation and duty theories implausible as a matter of law. For these reasons, the Court should dismiss Plaintiff's claims with prejudice, or, alternatively, order a more definite statement.

## II.   ARGUMENT & ANALYSIS

### A.   The Gross Negligence Claim Should Be Dismissed.

#### 1.   *The repleaded gross negligence claim repeats the defect the Court identified.*

The Court previously dismissed Plaintiff's gross negligence claim because the First Amended Complaint "failed to identify any agents or vice [principals] for whose actions Epic is liable." Dkt. #23 at 16. In the Response, Plaintiff concedes that the SAC still does not identify a specific vice principal for whose conduct Epic is purportedly responsible. *See* Dkt. #34 at 22–23. Because the SAC fails to cure the defect the Court identified, Plaintiff's gross negligence claim should be dismissed with prejudice. *See* Dkt. #33 at 3 (collecting cases).

Plaintiff's argument that the decision-makers' "personal identities and precise titles" will be "obtained in discovery" does not change the result. *See* Dkt. #34 at 20–21. The defect in the SAC is not merely the absence of a name. The SAC also fails to allege any specific conduct by any agent or vice principal to tie Epic to the specific (yet unidentified) architecture, risk, and decision challenged here. Moreover, "plead now, identify later" inverts the pleading rules: Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[1] *Iqbal*, 556 U.S. at 678–79; *see also Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 365 (5th Cir. 2021) ("'[T]o get to discovery, [a plaintiff] must allege sufficient facts in [the] complaint to state a plausible claim for relief. '[If] [a plaintiff's] complaint is deficient under Rule 8, [the plaintiff] is not entitled to discovery, cabined or otherwise.'") (quoting *Jackson v. City of Hearne*, 959 F.3d 194, 202 (5th Cir. 2020)).

Plaintiff's attempt to identify "categories of corporate decisionmakers" fares no better.

---

[1] Plaintiff attempts to excuse the deficiency by arguing that Epic did not identify the name of a corporate representative in its initial disclosures. Epic's initial disclosures postdated the SAC and do not alter what Rule 8 required when the pleading was filed. The burden is on Plaintiff—not Epic—to plead facts to support her claims.

---

Dkt. #34 at 20. The SAC identifies only a generic group—officers and executives—with unspecified "corporate authority" over broad categories of Epic's business. Essentially, Plaintiff is attempting to get around the requirement to plead the identity of a vice principal by alleging that Epic is liable for any officer or executive with any "corporate" level of control over any area of Epic's business that could conceivably be related to "Epic's EHR platform." SAC ¶ 104. That falls far short of the factual predicate required by Rule 8. The SAC does not identify a vice principal or agent, and alleges no concrete decision, report, warning, meeting, product-safety finding, or other event from which actual awareness and conscious indifference could be inferred. The SAC simply restates the *Hammerly Oaks* definition of a vice principal and the elements of gross negligence without supporting facts, which warrants dismissal. *See Iqbal*, 556 U.S. at 678–79.

## 2. *The gross negligence claim also fails to allege subjective awareness.*

Plaintiff's Response fails to point to any allegations of subjective awareness, another element of gross negligence. Though Plaintiff contends that she pleaded actual awareness of "the extreme risks created by the challenged design," Plaintiff admits that her allegations are based on industry-wide risks. *See* Dkt. #34 at 20, 21 ("The Complaint . . . alleges that Epic actively participated in the industry through which these risks were recognized"). Industry-wide knowledge or knowledge of a category of risks is not a substitute for subjective awareness. *See Coulter v. Deere & Co.*, No. CV H-21-2105, 2022 WL 912778, at *3 (S.D. Tex. Mar. 29, 2022) ("Courts have consistently held that knowledge of a potential problem is not actual knowledge of an existing dangerous condition."); *Tex. Dep't of Transp. v. Bagg*, 2024 WL 4533568, at *9 (Tex. App.—El Paso Oct. 21, 2024, pet. denied). Plaintiff has not alleged facts sufficient for the Court to infer that a specific Epic vice principal actually knew that a specific challenged software feature posed an extreme risk and then consciously disregarded it, and

thus she has not pleaded sufficient allegations to proceed on her gross negligence claim.[2] The claim should be dismissed with prejudice.

**B.      The Court Should Consider Plaintiff's Allegations in Other Lawsuits.**

Epic requests the Court consider Plaintiff's filings in three other lawsuits, not to determine which account of Dov Fischman's death is true, but to assess whether Plaintiff's allegations against Epic in this case are plausible. Plaintiff's reasons for ignoring her other lawsuits are unpersuasive and do not address the merits of Epic's argument.

### 1.    *Plaintiff's allegations in the other lawsuits are uncontroverted.*

Plaintiff's prior pleadings are nonbinding evidentiary admissions that she has "every right to explain or controvert." *Sanders v. Univ. of Tex. Pan Am.*, 776 F. App'x 835, 837–38 (5th Cir. 2019); *Doyle v. Combined Sys., Inc.*, 2023 WL 5945857, at *7 (N.D. Tex. Sept. 11, 2023). In her Response, Plaintiff disputes whether the Court may consider the filings; however, she does not "explain or controvert" the specific assertions Epic identified. This decision is telling.

For instance, the SAC alleges that the challenged (yet unidentified) safeguard "cannot be created through configuration, workflow design, or user input," that "[h]ospitals cannot configure a system to generate data that the architecture does not require, store, or reconcile," and that the defect is "fixed and uniform across deployments." SAC ¶¶ 84, 91. In the UTSW action, by contrast, Plaintiff alleged that UTSW held "exclusive control over authorization systems, records governance . . . dispensing pathways, [and] monitoring frameworks[.]" App. 120. She also asserted—in a verified filing—that "UTSW failed to configure Epic EHR's automated scheduling and monitoring capabilities

---

[2] Nor does Rule 9(b) excuse the deficiency, as Plaintiff argues. Although conditions of mind "may be alleged generally," Dkt. #34 at 23–24, Rule 9 "does not give [a plaintiff] license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87. A general averment of knowledge still requires a factual context making that knowledge plausible, and the SAC's only context is the industry-wide material addressed above.

for Everolimus use[.]" *See* Dkt. #33, App. 138. Plaintiff's Response quotes none of these allegations, addresses none of them, and—most importantly—disavows none of them.[3]

Plaintiff's attempt to divide "local implementation" from "underlying architecture," *see* Dkt. #34 at 9–11, does not answer the conflict presented by her allegations in the other lawsuits. Against UTSW, Plaintiff alleged that hospital-configured Epic systems could require linked appointments and laboratory testing, prevent encounter closure, and issue overdue-monitoring alerts, but that UTSW failed to configure those capabilities. Dkt. #33, App. 169. Those allegations directly overlap with the system-level validation, reconciliation, scheduling, and monitoring safeguards that the SAC says hospitals cannot create and that are fixed across deployments. SAC ¶¶ 84–91. Plaintiff cannot avoid this overlap by assigning different labels to the same alleged capabilities.[4] And while Plaintiff could have "explained or controverted" this overlap in her Response, she didn't. Plaintiff gives no reason why she should be provided yet another opportunity to explain "before dismissal is considered." *See* Dkt. #34 at 17. Because Plaintiff failed to reconcile these contradictory allegations, the Court may and should consider them in assessing the plausibility of allegations in the SAC.

### 2.  *The Motion addresses material filed after Epic's prior motion to dismiss.*

Plaintiff also argues that Epic's reliance on her allegations in the other lawsuits is improper because the materials were "available when [Epic] filed its original motion." Dkt. #34 at 5. Not so.

Epic's motion to dismiss the FAC was filed on April 14 and the Court's dismissal order on June 8. *See* Dkts. #13, #23. Plaintiff filed or amended two parallel complaints after Epic's original motion, including her complaint against Novartis on June 5 and her amended complaint against

---

[3] Though Plaintiff nonsuited her claims against UTSW, she has never disavowed the factual allegations she asserted in that case, and in fact continues to rely on them to allege a causal theory here as shown in Exhibit A.

[4] Plaintiff also asserts that an 11,000-page medical record contained information that was fragmented or inadequately presented. Dkt. #34 at 16. Even if considering this information, *see Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005), the narrative describes a record in which the information existed such that even Plaintiff could locate it, not an architectural failure to "require, store, or reconcile" the information as alleged in the SAC. SAC ¶ 91. Nor has she ever identified or alleged the errors she purportedly found in that record.

Boston Children's on July 8. Thus, the Motion does not rely only on filings that existed beforehand. Even if it did, the June 8 ruling was interlocutory, and under Rule 54(b), the Court may revise it at any time before final judgment "for any reason it deems sufficient." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citation omitted). In fact, the Court expressly conditioned part of its decision on later development of the record. *See* Dkt. #23 at 9 n.5. Thus, the Court has discretion to consider Plaintiff's allegations against UTSW, Boston Children's, and Novartis—whether made before or after Epic's original motion—to decide whether the inferences drawn in the Court's order remain plausible.

### 3. The Court may notice Plaintiff's prior assertions without accepting them as true.

Similarly, Epic is not asking the Court to "resolve disputed factual issues," Dkt. #34 at 3, or to accept the truth of Plaintiff's allegations in the other lawsuits. Rather, Epic asks the Court to take notice that Plaintiff made specific factual assertions in those proceedings and has neither withdrawn nor reconciled them here. Court filings are proper subjects of judicial notice as public records. FED. R. EVID. 201(b); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). That position respects the distinction Plaintiff draws from *Taylor* and *Lovelace* between noticing a filing and treating its disputed contents as established fact.[5] That also answers Plaintiff's argument that Epic is treating her other pleadings as "conclusive evidence." Dkt. #34 at 14. Epic treats them as conclusive of nothing. They matter because plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and the context here includes Plaintiff's unreconciled descriptions of the software and care.[6]

---

[5] *Payne* is not to the contrary. *See* Dkt. #34 at 1 (relying on *Payne v. City of Houston*, No. 24-20150, 2025 WL 999085 (5th Cir. Apr. 3, 2025)). There, the proponent sought notice of deposition excerpts and summary-judgment exhibits from a separate case—*i.e.*, testimonial evidence from third parties offered to prove the truth, which is "not beyond reasonable dispute." *Payne*, 2025 WL 999085, at *2. A party's own pleaded allegations differ in kind: their existence is indisputable, and their probative force derives from the party admission itself, not from a third-party witness's credibility.

[6] Plaintiff implies that consideration of her other allegations requires conversion of Epic's Motion to one for summary judgment. *See* Dkt. #34 at 12 (citing FED. R. CIV. P. 12(d)). Rule 12(d) does not require conversion merely because the Court notices public court filings and the assertions Plaintiff made in them. *Funk*, 631 F.3d at 783. Plaintiff has also

---

**C.      The Appendix to the Response Confirms the Implausibility of Plaintiff's Allegations.**

Plaintiff attempts to defend the SAC's allegations of causation and duty by relying on a demonstrative chart and various medical publications.[7] As a threshold matter, none of these materials appear in the SAC, and a plaintiff may not amend her complaint through an opposition brief. *Cutrera*, 429 F.3d at 113. Even if considered, however, Plaintiff's own material undermines rather than reinforces the inferences the Court previously drew in denying dismissal.

**1.      *The SAC does not allege a legally cognizable causal theory.***

Texas law requires more than but-for causation. As this Court previously recognized, a plaintiff must allege facts showing not only that the injury would not have occurred absent the defendant's conduct, but also that the defendant was a substantial factor "'actually responsible for the ultimate harm,'" rather than merely furnishing the condition that made the injury possible. Dkt. #23 at 6 (quoting and applying *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 532–33 (Tex. 2025) (citation omitted)). Plaintiff's own causation framework demonstrates that the SAC falls short of this standard.

In Exhibit A, Plaintiff identifies the conduct of four actors—UTSW, Epic, Boston Children's, and Novartis—as separate "independent necessary condition[s]" for her father's death and asserts that "[i]f any one condition was absent, Dov Fischman's harm would not have occurred." Dkt. #34-1 at 3. That is a textbook description of but-for causation, but it says nothing about why Epic's alleged

---

received adequate notice and the opportunity to address the documents in Epic's appendix. Even if the Court declines to consider the prior allegations' effect under Rule 12(b)(6), the same unreconciled descriptions independently support relief under Rule 12(e) as the SAC does not permit Epic to determine whether the challenged safeguards concern hospital configuration, Epic-controlled architecture, or some unidentified combination of the two.

[7] Plaintiff also relies on an August 2025 email seeking "review and possible representation regarding a critical issue involving Epic Systems." Dkt. #34-1 at 4–6. The email is extrinsic evidence outside any judicial-notice category, and it responds to an observation the Motion did not make. The Motion described a sequence, and Plaintiff does not dispute it: she nonsuited UTSW after Texas's healthcare-liability discovery limits took hold, filed this action six days before that nonsuit, and then subpoenaed from UTSW as a nonparty the discovery she could not obtain from it as a defendant in state court. Dkt. #33 at 12 n.5; *see also* Dkts. #35, #35-1. Whatever Plaintiff contemplated in August 2025, the 2026 sequence stands unrebutted. And despite Epic's repeated requests, Plaintiff has refused to provide Epic an unredacted copy of this exhibit as required under local sealing procedures. *See* L.Cv.R. 79.3. Thus, Epic has not been provided a fulsome opportunity to review and respond to the email in preparing this Reply—another reason to disregard the email.

conduct renders Epic "actually responsible for the ultimate harm." *Werner*, 719 S.W.3d at 532–33.[8] Further, rather than alleging that Epic itself caused the death, Plaintiff argues that Epic's conduct merely "formed part of the environment that allowed the death to occur." Dkt. #34 at 10. According to Plaintiff, the EHR system failed to display certain information, thereby creating a circumstance in which treating physicians allegedly failed to recognize the need for intervention. *But see supra* n.4. That is precisely the distinction *Werner* draws between actionable causation and conduct that merely furnishes a condition making an injury possible. *See Werner*, 719 S.W.3d at 532–33; *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 800–01 (Tex. 2004).

Nor does Plaintiff identify the facts necessary to bridge that gap. The SAC still fails to identify the specific missing or inaccurately displayed information, any clinician affected by that deficiency, or any different intervention that plausibly would have prevented the death. Instead, five days after filing her Response, Plaintiff alleged in her action against Novartis that the delayed recognition of Everolimus complications resulted from Novartis's safety messaging, and that Everolimus "was not timely discontinued or identified as the cause." *Fischman v. Novartis Pharms. Corp.*, No. 3:26-cv-01882-K-BT (N.D. Tex. July 27, 2026), Dkt. #16. Plaintiff thus attributes the same delayed-recognition theory to Novartis's conduct rather than any Epic display failure, undermining the plausibility of the inference that an alleged Epic architectural deficiency was a substantial factor causing the death.

### 2.    *Plaintiff's extra literature unwinds the basis for the Court's duty inference.*

The Court previously concluded that the FAC plausibly alleged a duty of care because it permitted a reasonable inference that Epic could foresee that the alleged deficiencies in the EHR would cause harm to patients. Dkt. #23 at 7, 9. The Court expressly recognized, however, that this

---

[8] The SAC also fails to sufficiently allege but-for causation, and Plaintiff cannot do so through Exhibit A. Exhibit A alleges that but-for Epic's alleged conduct, "the drug would not have been prescribed." Dkt. #34-1 at 3. However, the SAC alleges only that "the dangerous condition would have been visible and correctable." SAC ¶ 61. Not once in the SAC does Plaintiff blame Epic for the Everolimus prescription, plead that greater or different visibility would have changed the outcome or avoided the Everolimus prescription, or explain the link between Epic's alleged conduct and Dov Fischman's death.

conclusion could change if "the record later develops . . . in a manner that persuades the court that a duty of care does not exist[.]" Dkt. #23 at 9 n.5. In the Response, Plaintiff relies on seven publications to establish foreseeability and argues that they demonstrate the challenged risks were well documented before the events at issue. Dkt. #34 at 6–9. But Plaintiff's own description of those authorities reveals that they discuss industry-wide concerns regarding medication reconciliation, EHR usability, excessive information and alerts, and data quality—not any specific architectural defect within an Epic product, its implementation at UTSW, or any functionality involved in Dov Fischman's care.[9]

As with the gross negligence analysis, *see supra*, Part II.A.2, industry-wide knowledge of a "general danger" is insufficient to allege the foreseeability required to establish a duty of care. *See Diamond Shamrock Refin. Co. v. Hall*, 168 S.W.3d 164, 172–73 (Tex. 2005); *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 462 (Tex. App.—Dallas 2007, pet. denied). Even Plaintiff concedes that "no standard method yet exists for ensuring EHR data quality." Dkt. #34 at 7. Thus, Plaintiff's theory of foreseeability does not suggest specific deficiencies in an Epic-specific EHR system that the Court's prior duty inference relied on. The Court should therefore decline Plaintiff's request to convert its conditional duty analysis into a definitive holding and instead dismiss the SAC.

### D.    If Any Remaining Claim Survives, a More Definite Statement Is Warranted.

Plaintiff argues that Epic's ability to formulate a motion to dismiss proves Epic understands the claims well enough to answer them, but that conflates understanding Plaintiff's general theory with the ability to admit or deny an undefined causal chain. The SAC never identifies what Epic-controlled function allegedly failed, what information was not generated or displayed, which clinician

---

[9] Only two of the studies cited in the Response even mention Epic, and neither supports the plausibility of Plaintiff's duty of care theory. One discusses an implementation and particular configuration by an Epic customer in Europe (not at UTSW or even in the United States) (https://www.mdpi.com/2227-9032/10/6/1020), and the other addresses opportunities to reduce medication-related alerts—*i.e.*, the opposite of the alert-deficient architectural defect alleged in the SAC (http://link.springer.com/10.1007/s40264-021-01048-0). *See* Dkt. #34 at 8.

---

encountered the deficiency, or what intervention would have changed the outcome.[10] Those are not requests for proof but requests to define the alleged product feature and causal theory to which Epic must respond.

Plaintiff's Response only underscores those omissions. The SAC never discloses the "specific omissions, documentation errors, and [ ] broader pattern of fragmented information" in Dov Fischman's "11,000 page[ ]" medical record that Plaintiff's claims are apparently based on. *See* Dkt. #34 at 16. And although Plaintiff contends that "individual clinical decisions" are irrelevant, the SAC alleges that clinicians relied on the EHR as the authoritative source of Dov Fischman's medication history and that the alleged defect deprived them of a complete understanding of his clinical course, making those clinicians and their reliance on the EHR central to Plaintiff's causation theory. SAC ¶¶ 34, 59. Plaintiff's argument that discovery is needed to determine the scope of Epic's responsibility and whether the relevant system was even used in the clinical setting only confirms that these foundational predicates remain unpleaded. Given Plaintiff's intent to seek excessively broad discovery and access to Epic's "sandbox" and "repositories," *see* Dkt. #34-1 at 10, Dkt. #35-1, a more definite statement is necessary to ensure that discovery proceeds on the basis of pleaded claims rather than speculation. Accordingly, if the Court declines dismissal, it should require a more definite statement as described in the Motion.

### III.    CONCLUSION

For these reasons and those stated in its Motion, Epic respectfully requests that the Court dismiss the gross negligence claim with prejudice and dismiss the remaining claims under Rule 12(b)(6). Alternatively, if the Court declines to dismiss the remaining claims, Epic requests an order under Rule 12(e) as set forth in the Motion.

---

[10] Plaintiff increases the ambiguity by asserting that the medication allegations are only "one example" of broader unidentified defects in "patient-safety functions." Dkt. #34 at 18. If so, the SAC does not disclose what other Epic-controlled feature is challenged, what information that feature failed to process, or how it affected Dov Fischman's care.

DATE: August 5, 2026

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jessica D. Cox
Texas Bar No. 24114769
jcox@lynnllp.com
Madelyn C. Stanley
Texas Bar No. 24121529
mstanley@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on August 5, 2026, a true and correct copy of the foregoing was filed electronically and served on all counsel and parties of record, including pro se Plaintiff Gallit Fischman, through the Court's CM/ECF system and/or by email in accordance with the Federal Rules of Civil Procedure.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann