**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GALLIT FISCHMAN,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 3:26-CV-0770-D** |
| | § | |
| **EPIC SYSTEMS CORPORATION,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**DEFENDANT EPIC SYSTEMS CORPORATION'S**
**MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Defendant Epic Systems Corporation ("Epic") respectfully submits this Motion for Entry of a Protective Order ("Motion").

## I. INTRODUCTION

Epic moves for entry of a protective order before it produces documents in this action. Epic's proposed protective order is attached to this Motion as Exhibit A.

In its structure, the order Epic proposes is the ordinary confidentiality order this Court regularly enters: a reciprocal, two-tier order under Federal Rule of Civil Procedure 26(c) that confines designated material to the prosecution and defense of this litigation, reserves a "Highly Confidential" designation for the most competitively sensitive material, permits Plaintiff personally to receive material at either tier, and routes any sealed filing through the Court's established procedures. Epic seeks that protection at the threshold because the discovery Plaintiff has served reaches the core proprietary architecture of Epic's electronic health record software: the data model, schema, and data dictionary; the clinical-decision-support and alerting logic; Epic's internal defect and design records;

and the confidential commercial terms of Epic's agreements with its customers. That material is the product of decades of investment and is among the most sensitive commercial information Epic possesses. Rule 26(c)(1)(G) singles out precisely this category of trade secrets and confidential commercial information for protection. Good cause is plain.

Beyond those conventional terms, the proposed order adds one provision that warrants particular mention, and that addition is narrow and increasingly routine in the federal courts: it provides that a recipient may not input designated confidential material into artificial-intelligence tools or platforms that retain user submissions or use them to train their models. The reason is straightforward. Once confidential information is entered into a consumer AI service that ingests and trains on it, the disclosure cannot be undone. The information has been handed to a third party, absorbed into a model beyond any litigant's or this Court's control, and stripped of the secrecy that gives it value and legal protection. A conventional "use only for this litigation" clause does not squarely reach that risk because a litigant or other recipient of designated information may never conceive of an AI provider as a "person" to whom disclosure is forbidden. District courts confronting this problem, including in cases involving pro se litigants, have responded by entering the very limitations Epic proposes here.

That limitation is carefully bounded. It reaches only material a producing party has designated for protection under the order. It does not restrict use of artificial intelligence for any other purpose, including legal research, drafting, and the general conduct of the case. And it expressly permits the use of AI platforms that are contractually barred from retaining or training on inputs. The order thus protects Epic's trade secrets against an irreversible form of disclosure while leaving Plaintiff free to litigate, and to use these tools, as she sees fit. Because Epic has demonstrated good cause and the order is narrowly tailored, the Court should enter it. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## II. BACKGROUND

Plaintiff Gallit Fischman, proceeding pro se, brings this wrongful-death and products-liability action arising from the death of her father, Dov Fischman, following a change in his immunosuppressant medication. Plaintiff alleges that failures in the electronic health record system used in his care caused or contributed to his death, and that those failures originated in the design of Epic's software rather than in the configuration choices of the treating institution. Following the Court's June 8, 2026 ruling on Epic's first motion to dismiss, three claims remain: negligence, strict products liability for design defect, and a derivative claim for wrongful death.[1]

Plaintiff has served two sets of written discovery on Epic, Interrogatories Nos. 1–14 and Requests for Production Nos. 1–63, that seek to reconstruct the internal design and operation of Epic's software. A substantial portion of what they demand is trade secret and confidential commercial information within the meaning of Rule 26(c)(1)(G), including:

- the platform's data model, schema, and data dictionary, and the boundary between Epic's vendor-controlled or hardcoded elements and customer-configurable ones (*e.g.*, Interrogatories 1, 4, 11; Requests 4, 20–22, 31, 40, 43, 60);
- the internal logic by which the software structures encounter-based clinical data, reconciles and displays medications, and routes and activates orders (*e.g.*, Interrogatories 6–10, 13; Requests 5, 6, 26, 32, 34, 36–38, 47–49, 62);
- the design of Epic's clinical-decision-support and patient-safety features (its alerting, data-validation gating, and high-risk-medication logic) and any internal evaluation of safer alternative designs (*e.g.*, Interrogatory 14; Requests 7–9, 13, 17–19, 28–30, 35, 51);
- Epic's internal records of known issues and defects, including its Sherlock and Nova issue-tracking data and similar-incident reports (*e.g.*, Requests 11, 12, 39, 44, 45, 50); and
- the confidential commercial terms of Epic's agreements with UT Southwestern, including the statements of work, customization restrictions, and indemnification, warranty-disclaimer, and limitation-of-liability provisions (*e.g.*, Interrogatory 12; Requests 15, 41, 42).

[1] Epic's renewed Motion to Dismiss, ECF No. 33, is fully briefed and remains pending.

The requests further seek access to Epic's "sandbox" environments and to the implementer and training materials Epic makes available only to licensed customers (*e.g.*, Requests 14, 16, 24, 25, 46). Whatever the ultimate scope of Epic's production obligations (a question Epic expressly reserves and does not present here), responsive material will necessarily include Epic's proprietary design information and the confidential terms on which it licenses its software. *See* Declaration of Brett Rehm, Ex. B ¶¶ 9-11 (App. 29-30); *see also Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1124 (7th Cir. 2020) (describing Epic's web portal "UserWeb" as containing "confidential information about Epic's health-record software" and the measure Epic takes to protect the confidential information).

This motion concerns only the terms on which confidential material, once produced, will be protected.

Generative artificial intelligence platforms now in widespread public use commonly retain the text and files that users submit and use those submissions to train and improve the providers' models. Material entered into such a platform is, by that act, disclosed to the provider as a third party and may be absorbed into the model itself. That disclosure is effectively irreversible: unlike a misdirected document, which can be clawed back or sequestered, information that has been ingested and used in training cannot be retrieved, deleted from the model, or contained. For confidential and trade-secret material, the consequence is the loss of the very secrecy that makes the material protectable in the first place.

The risk here is not hypothetical. Plaintiff has represented to the Court that she uses generative artificial intelligence in litigating this action. Her response to Epic's motion to dismiss discloses, on its first page, that "generative artificial intelligence was used to assist in drafting and revising portions of this brief." Pl.'s Resp. to Def.'s Mot. to Dismiss 1 (ECF No. 15).

A standard confidentiality order (which restricts disclosure to enumerated categories of "persons") does not squarely foreclose this risk, because a litigant may not regard the operator of an AI tool as a recipient at all. The provision Epic proposes closes that gap directly and prospectively, without disturbing Plaintiff's freedom to use these tools for any purpose that does not involve Epic's confidential information.

## III. ARGUMENT

Federal Rule of Civil Procedure 26(c)(1) authorizes the Court, "for good cause," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1), (c)(1)(G). The Rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required," in recognition that the court "is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

To obtain a protective order, the movant must show good cause through "a particular and specific demonstration of fact." A protective order may not rest on "stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). That showing is most readily made where the discovery at issue consists of trade secrets and confidential commercial information, the category Rule 26(c)(1)(G) singles out by name. *See Meisenheimer v. DAC Vision Inc.*, No. 3:19-cv-1422-M, 2019 WL 6619198, at *2 (N.D. Tex. Dec. 4, 2019). And where, as here, a protective order would not withhold discovery but would instead set the terms on which sensitive material is exchanged, the order facilitates discovery rather than restricting it and raises no First Amendment concern. *See Seattle Times*, 467 U.S. at 32–34.

**A. Good Cause Exists to Protect Epic's Trade Secrets and Confidential Information.**

Plaintiff's existing discovery requests call for, among other things, Epic's data model, schema, and data dictionary; the internal logic governing its medication-reconciliation, order-routing, and clinical-decision-support functions; Epic's internal records of known defects, including its Sherlock and Nova issue-tracking data; its evaluations of "alternative designs;" and the confidential terms of its license and statements of work with UT Southwestern. Information of this kind (the design of a commercial software system and the confidential commercial terms on which it is licensed) is trade secret and confidential commercial information in the most conventional sense. It derives its value from not being known to Epic's competitors, and Epic does not make it public. Ex. B, ¶¶ 10-18 (App. 30-31).

Epic's showing is the "particular and specific demonstration of fact" that Rule 26(c) requires. *In re Terra Int'l*, 134 F.3d at 306. Epic does not rest on a generalized assertion that its documents are sensitive; it has identified, by category and by request, the specific bodies of proprietary information the discovery reaches: from the system's schema and data dictionary (*e.g.*, Requests 4, 20–22) to its clinical-decision-support and alerting logic (*e.g.*, Requests 7–9, 17–19) to the confidential terms of its customer agreements (*e.g.*, Requests 15, 41, 42). That request-specific showing distinguishes a supportable protective order from the "stereotyped and conclusory" request against which the Fifth Circuit has cautioned. *Id.*

Uncontrolled disclosure of this material would work a concrete and serious injury. Epic sells healthcare software to customers across the United States and in countries around the world, and the design choices, defect history, and contractual terms that Plaintiff's requests target are among the categories of non-public information whose confidentiality gives Epic's software its competitive value. Ex. B, ¶¶ 10-18 (App. 30-31); *see Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1124 (7th

Cir. 2020) (describing how customers license Epic software modules to fit the customer's specific needs).

Were that information disseminated outside this litigation (to competitors, to the public, or into systems that absorb and reuse it), the secrecy that makes it protectable would be irretrievably lost. *See* Ex. B, ¶¶ 12-18 (App. 30-31). That is the injury Rule 26(c) exists to prevent.

And this risk of injury would not just impact Epic but third parties as well, as Plaintiff seeks from Epic the confidential information of third parties (*e.g.*, Requests 14, 15, 24, 26, 41, 42, 44). Plaintiff also seeks confidential information directly from third parties, such as from UT Southwestern. Thus, by entering a fulsome protective order now to protect the confidential information of parties and non-parties who sign onto the order, the Court will obviate future confidentiality concerns third parties will raise.

By this Motion, Epic does not ask the Court to relieve it of its discovery obligations or to withhold responsive material from Plaintiff. It asks only that the material be produced subject to the ordinary protections of a confidentiality order, so that discovery can proceed without sacrificing the secrecy of Epic's most sensitive information. The order is reciprocal and consistent with the confidentiality orders this Court routinely enters.[2] Because it governs only the use of information exchanged in pretrial discovery, it raises no First Amendment concern. *See Seattle Times*, 467 U.S. at 32–34.

### B. Plaintiff's Use of Consumer Artificial Intelligence Presents a Distinct, Irreversible Harm That an Ordinary Protective Order Does Not Reach.

The good cause shown above supports the conventional terms of the proposed order. Epic's artificial-intelligence provision responds to a further harm, distinct in kind, that those conventional

[2] Plaintiff's Responses and Objections to Epic's first set of discovery requests reinforces the need for a protective order, as she repeatedly objects to information being sensitive or confidential.

terms do not reach. The value of Epic's trade-secret and confidential commercial information depends entirely on its secrecy: the information is protectable only so long as it is not generally known. When material of that kind is entered into a generative artificial-intelligence platform that retains user inputs and uses them to train or improve its models, the material is absorbed into the model and may be reflected, in whole or in part, in the platform's outputs to other users. The secrecy that makes the information protectable is then lost, and it cannot be restored.[3] This is unlike the ordinary risk of inadvertent disclosure, for which the proposed order and Federal Rule of Evidence 502(d) supply a remedy. A document produced by mistake can be clawed back; a trained model cannot be untrained. The harm is irreversible.

A conventional confidentiality order does not squarely guard against that harm. Orders of this kind work by enumerating the categories of persons to whom confidential material may be disclosed and forbidding disclosure to anyone outside those categories. But a litigant who enters a confidential document into a consumer AI assistant (to summarize it, to analyze it, or to help draft a brief) may not think of the tool's operator as a "person" to whom a disclosure is being made at all. Even a careful litigant, conscious of the order, may not appreciate that using the tool transmits the document to a third party that retains and trains on it. Because the conduct that creates the risk does not resemble "disclosure" in the ordinary sense, an order that speaks only in those terms leaves the risk unaddressed.

The District of Colorado confronted this very problem in *Morgan v. V2X, Inc.*, No. 25-cv-01991-SKC-MDB, 2026 WL 864223 (D. Colo. Mar. 30, 2026). There, as here, a corporate party producing confidential discovery material, including trade secrets, was concerned that a pro se opponent would enter that material into mainstream AI platforms that retain and train on user inputs.

[3] For these reasons, Epic instructs its staff to only use approved AI tools when an input may be company confidential information. Ex. B, ¶ 23 (App. 32). Additionally, the UserWeb terms of use include restrictions on inputting Epic confidential information into generally available generative AI tools. Ex. B, ¶ 20 (App. 32).

The court entered a protective-order provision barring any party from inputting confidential information into an AI platform unless the provider is contractually prohibited from storing or using the inputs to train its model and from disclosing them to third parties beyond what is essential to deliver the service, and affords the user the ability to delete the inputs on request. *Id.* The court explained that the restriction was not meant to limit the use of AI as such, but to ensure that confidential information would not be entrusted to platforms lacking those safeguards. *Id.* The provision Epic proposes is modeled directly on *Morgan*.

This distinct harm also confirms that the artificial-intelligence provision falls comfortably within Rule 26(c). The Rule authorizes the Court not merely to forbid disclosure but to require that confidential commercial information "be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). A direction that Epic's confidential material not be routed into AI platforms that retain or train on it is a paradigmatic "specified way" restriction: it withholds nothing from Plaintiff, but channels how the material may be handled so that its secrecy survives. And because the injury, the loss of trade-secret status through model ingestion, cannot be undone once it occurs, the protection must be in place before Epic produces the material. That is why Epic seeks the order now, at the beginning of discovery, rather than after a problem that no order could later cure.

**C. The AI Restriction Epic Proposes Reflects a Consistent and Growing Line of Authority.**

Epic's proposal is not novel. In the past year, federal courts confronting the risk that confidential discovery would be entered into generative artificial-intelligence platforms have repeatedly responded by entering protective-order provisions that restrict the practice. *See, e.g.*, *Morgan*, 2026 WL 864223 (requiring contractual safeguards against training, retention, and onward disclosure before confidential information may be input into any AI platform); *Fiorito v. Metropolitan Council*, 2025 WL 1806612 (D. Minn. 2025) (barring any party from uploading confidential data to any generative

AI platform such as ChatGPT); *Jeffries v. Harcros Chemicals, Inc.*, 2026 WL 820218 (D. Kan. Mar. 25, 2026) (extending the restriction to all discovery materials and emphasizing that information incorporated into a model cannot afterward be clawed back); *United States v. Jackson*, 2025 WL 1666249 (W.D. Wash. 2025), and *United States v. Navarro Hernandez*, 2025 WL 3290753 (W.D. Wash. 2025) (prohibiting protected material from being loaded into AI tools whose providers retain rights to the data). Whatever their differences in scope, these orders rest on the same premise as Epic's: that confidential material must not be put into AI platforms that retain or train on what they receive.

The same concern has reached Texas courts. In *Tate Group Automotive, LLC v. Legacy Automotive Capital, LLC*, the Texas Business Court, after reviewing a litigant's ChatGPT conversations in camera, ordered the litigant to disclose all discovery materials it had shared with ChatGPT, including materials produced under the governing protective order, and recommended that the parties negotiate protective-order amendments making "unquestionably clear whether, how, and to what extent if so, Confidential Information may be shared with any AI tool or other Large Language Model system." No. 25-BC11B-0020, slip op. at 4 (Tex. Bus. Ct. June 3, 2026) (minute entry) (citing *Morgan*, 2026 WL 864223, at *6–7). Epic's proposed order supplies at the outset precisely the clarity the Tate court urged the parties to negotiate after the fact.

That courts have entered these restrictions in cases involving pro se litigants is significant here. The plaintiffs in *Morgan* and *Fiorito* were both unrepresented, and in each case the court concluded that the interest in keeping confidential and trade-secret material out of AI platforms that retain and train on user inputs justified the restriction notwithstanding the litigant's pro se status. The same interest supports the same restriction here.

### D. The Proposed Order Is Narrowly Tailored and Imposes No Undue Burden.

The order Epic proposes is carefully limited in every dimension that matters. First, the artificial-intelligence restriction reaches only material that a producing party has designated for

protection under the order. It does not touch ordinary, non-designated discovery. That makes Epic's proposal narrower than restrictions other courts have entered, including *Jeffries*, which extended the bar to all discovery materials, designated or not. *See Jeffries*, 2026 WL 820218. Second, the restriction is not a categorical prohibition on artificial intelligence: it permits the use of any AI platform whose provider is contractually barred from retaining or training on the inputs and from disclosing them to third parties. Third, it is forward-looking; it imposes no retrospective obligation and asks nothing of Plaintiff for anything she has already done. And fourth, it is reciprocal, binding Epic to the same terms it asks of Plaintiff.

The order's treatment of Plaintiff's pro se status confirms that tailoring. Two-tier orders entered between represented parties commonly restrict "Highly Confidential" material to outside counsel and experts, a structure that would be unworkable here, where Plaintiff is at once the party and the advocate. The proposed order therefore departs from that convention in Plaintiff's favor: it expressly permits a party proceeding pro se to receive and review Highly Confidential material personally subject to secure-storage and handling requirements. The order accordingly withholds nothing from Plaintiff at either tier of designation; it governs only how designated material must be stored, handled, and disclosed.

The restriction also imposes no undue burden on Plaintiff. It does not prevent her from using artificial intelligence to litigate this case. She remains free to use AI for legal research, for drafting, for organizing her materials, and for working with the documents and information in this case that are not designated under the order. The only thing the order forbids is entering designated confidential documents into a platform that would retain or train on them, and it permits even that where the tool or platform offers the requisite contractual protections. Two further features of the provision confirm its fit. The restriction applies whether designated material is entered into a platform verbatim or in anonymized, redacted, or summarized form, because the harm it addresses is the ingestion of the

substance of Epic's confidential information. A summary that conveys the substance of a trade secret discloses it as surely as the document itself. And the provision's documentation requirement mirrors the disclosure the *Morgan* court itself ordered: a person relying on a compliant platform must retain documentation of the platform's contractual protections and, on the designating party's request, identify the platform and produce that documentation, so that a producing party can assess whether its confidential information has been compromised. *See Morgan*, 2026 WL 864223, at *5; *Tate Grp. Auto.*, slip op. at 3–4 (ordering disclosure, by Bates number, of all discovery materials shared with ChatGPT).

## IV. CONCLUSION

For these reasons, Epic respectfully requests that the Court grant its motion, enter the accompanying proposed protective order (attached as Exhibit A), and grant Epic such further relief as the Court deems just and proper.

DATE: August 28, 2026

Respectfully submitted,

*/s/ Christopher J. Schwegmann*

Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jessica D. Cox
Texas Bar No. 24114769
jcox@lynnllp.com
Madelyn C. Stanley
Texas Bar No. 24121529
mstanley@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANT EPIC SYSTEMS CORPORATION**

## CERTIFICATE OF CONFERENCE

The movant hereby certifies that counsel for Epic conferred with Ms. Fischman on June July 7, July 22, July 23, July 30, July 31, August 5, August 13, and August 16 via electronic mail and on August 28 via phone call in a good faith attempt to resolve the matter by agreement. Ultimately, Ms. Fischman indicated that she was opposed to Epic's proposed protective order.

/s/ *Christopher J. Schwegmann*
Christopher J. Schwegmann

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon counsel of record in accordance with the Federal Rules of Civil Procedure via ECF and email on August 28, 2026.

/s/ *Christopher J. Schwegmann*
Christopher J. Schwegmann