IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. |
| EPIC SYSTEMS CORPORATION, | § | 3:26-CV-0770-D |
| Defendant. | § | |

**USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

Plaintiff discloses that generative artificial intelligence was used to assist in preparing this brief, consistent with Local Rule 7.2(f).

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT EPIC SYSTEMS CORPORATION'S MOTION FOR ENTRY OF A PROTECTIVE ORDER AND BRIEF IN SUPPORT**

---

**INTRODUCTION**

Plaintiff Gallit Fischman, proceeding pro se, opposes entry of Epic Systems Corporation's proposed Protective Order (ECF No. 40) in its present form. Plaintiff does not oppose reasonable protection of confidential information under Rule 26(c). The dispute concerns whether the Order provides clear, reciprocal requirements that permit discovery to proceed while protecting Plaintiff in complying with those requirements.

Plaintiff acted in good faith throughout the meet-and-confer process and agreed to the core substantive protections. Plaintiff sought a Protective Order that functions as a practical, step-by-step compliance guide, clearly stating how Protected Material must be handled, used, stored, and disclosed. Plaintiff also requested express language providing that Epic would not bring a separate trade-secret action arising from Plaintiff's handling of discovery. Epic revised

the proposed Order to provide that enforcement disputes would be decided by this Court, but Epic's counsel expressly stated that counsel could not waive Epic's rights to future actions. That revision did not resolve Plaintiff's concern, and the issue remains a principal reason Plaintiff could not agree to Epic's proposed joint Order. Plaintiff therefore asks the Court to provide both clear compliance requirements and express protection against a separate trade-secret action arising from conduct permitted by the Court's Order.

Plaintiff likewise does not oppose reasonable restrictions on AI-assisted review and has obtained AI tools intended to satisfy Epic's stated security requirements. Plaintiff is willing to identify those platforms and provide information sufficient to evaluate compliance. Once those requirements are met, their use should not require document-by-document restrictions or Epic's approval.

**I. GOVERNING AUTHORITY UNDER RULE 26(c)**

The party seeking protection bears the burden of establishing good cause through particular and specific facts, rather than conclusory assertions. *In re Terra International, Inc.*, 134 F.3d 302 (5th Cir. 1998). Labels alone, such as "confidential," "proprietary," "internal," "technical," or "trade secret," do not establish that protection is warranted. The designating party must show why the particular material warrants protection and what specific harm disclosure would cause.

This Court has recognized that the designating party retains the burden of justifying challenged confidentiality designations and the danger of designating potentially sensitive material confidential merely out of caution. *United Surgical Partners International, Inc. v. Stitt*, No. 3:14-CV-0499-D (N.D. Tex. June 5, 2014). Entry of a blanket protective order does not establish that every unilateral designation is proper. Such designations remain subject to challenge and judicial review. *Neon Enterprise Software, LLC v. International Business Machines Corp.*, No. 1:09-CV-896-LY (W.D. Tex. Feb. 13, 2012).

A confidentiality designation does not determine whether a judicial record must be sealed. Judicial records carry a presumption of public access, and sealing requires an independent determination by the Court. *Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410 (5th Cir. 2021). Epic has already incorrectly asserted in this action that a redacted exhibit filed by Plaintiff should have been sealed. The Order should make clear that confidentiality designations govern discovery handling, while sealing is governed separately by applicable law and Court order.

## II. EPIC'S DESIGNATION FRAMEWORK SHOULD REFLECT ITS ORDINARY-COURSE CONFIDENTIALITY PRACTICES

Epic's own declaration describes different categories of information and systems subject to different access controls. (App. 30, Rehm Decl. ¶¶ 10–12.) Yet its proposed Order provides only Confidential and Highly Confidential classifications, with no affirmative Non-Confidential classification or sufficiently objective distinction between the protected levels. Protection effectively becomes the default, leaving Plaintiff to challenge designations after Epic imposes them.

That structure is particularly unnecessary for information Epic already provides outside the company through UserWeb, Epic's access-controlled online portal for customers and those who implement and support Epic systems. Plaintiff requested access to UserWeb and a demo unit so that she could review this information directly, but Epic declined that access. Epic protects UserWeb information through confidentiality agreements governing access, not document-by-document designations. Epic should not impose a more burdensome confidentiality structure in discovery than it uses for the same information in the ordinary course.

Rule 26(c)(1)(G) permits the Court to specify how confidential commercial information may be revealed. Plaintiff therefore requests the same basic approach: information ordinarily accessible through UserWeb or implementations should be protected by the Court's Order as a

whole, without document-by-document confidentiality designations. When Epic produces a document accessible through UserWeb, the production should identify it as UserWeb material, either on the document or in accompanying production metadata. Heightened designation should be reserved for material requiring additional protection.

Before ruling, Plaintiff requests that the Court direct Epic to submit the confidentiality agreements, terms of use, access restrictions, and other documentation governing UserWeb, Galaxy, Sherlock, Nova, and implementation access. Rehm's declaration describes these repositories and tools and characterizes their contents and restrictions, but does not provide the underlying documentation showing their access status, the categories of persons permitted access, or the restrictions applicable to each. That documentation would permit the Court to evaluate Epic's ordinary-course treatment of the information and determine whether the greater restrictions sought here are supported by good cause.

This is particularly important where Epic's General Objection No. 1 states that "each Interrogatory and each Request" seeks confidential, proprietary, and trade-secret information, including licensing, pricing, architecture, design, configuration, implementation, and operation information, and Epic has withheld substantive discovery pending a protective order. That blanket objection should not become a blanket designation.

For other material designated Confidential or Highly Confidential, Epic should provide a brief contemporaneous basis for the designation, with a categorical explanation permitted for documents sharing the same basis. Epic should retain the burden of establishing that the designated level of protection is warranted.

## III. THE ORDER MUST CLEARLY GOVERN HANDLING AFTER DESIGNATION

The parties have spent two months negotiating the Protective Order. Epic represents that Plaintiff may personally access both Confidential and Highly Confidential material and use AI-

assisted review when specified security requirements are satisfied. The fundamental protections Epic seeks are therefore largely undisputed.

The dispute is what happens after material is designated. The Order should clearly state what a Receiving Party may do, what is prohibited, and what constitutes compliance. Plaintiff therefore submits a proposed Protective Order as Appendix A, using Epic's proposal as its foundation while clarifying provisions that are ambiguous or open-ended.

Plaintiff also requests that Exhibit A to Epic's proposed Protective Order be expressly limited to nonparties receiving Protected Material and retitled "Agreement of Nonparty to Be Bound by Protective Order." Plaintiff, as a Party directly governed by the Court's Order, should not be required to execute a separate agreement.

Epic's Motion itself invokes *Epic Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117 (7th Cir. 2020), in emphasizing the risk of irreversible loss of its alleged trade secrets. Plaintiff therefore requested express language providing that Epic would not bring a separate trade-secret action arising from Plaintiff's handling of discovery. Although Epic revised the proposed Order to provide that enforcement disputes would be decided by this Court, Epic's counsel expressly stated in writing that counsel could not waive Epic's rights to future actions. That revision therefore did not resolve Plaintiff's concern.

Plaintiff requests that the Court expressly provide that good-faith conduct permitted by the Protective Order does not itself constitute a basis for sanctions, contempt, or a separate claim arising from the handling of Protected Material. Plaintiff will receive this information solely through Court-authorized discovery and must be able to rely on the Court's Order in determining what conduct is permitted. Inadvertent errors should be subject to notice and a reasonable opportunity to cure, absent an ongoing unauthorized disclosure requiring immediate Court intervention.

**IV. AI RULES SHOULD BE OBJECTIVE AND TECHNOLOGY-NEUTRAL**

Epic's portrayal of AI as an extraordinary confidentiality danger is difficult to reconcile with its own ordinary-course use. Epic publicly states that it has embedded AI throughout its software and integrated generative AI into the EHR used by its customers. Its development materials identify machine learning, natural-language processing, and generative AI among technologies used by developers, including in projects intended to go live. Rehm likewise confirms that Epic employees may use approved AI and LLM tools under Epic's guidance. (App. 32, Rehm Decl. ¶ 23.)

Epic therefore permits controlled AI use involving its proprietary technology. Plaintiff seeks to use secure AI tools to review operational documentation Epic provides outside the company to authorized customers and those who implement and support Epic systems, not source code or internal development repositories. Epic should not characterize Plaintiff's more limited use as an extraordinary threat while managing AI exposure through its own security controls.

Epic's assertion that the risk here "is not hypothetical" rests only on Plaintiff's disclosure that generative AI assisted in drafting. Epic identifies no instance in which Plaintiff placed Protected Material into an AI platform or caused the irreversible disclosure described in its Motion. AI-assisted drafting does not establish misuse of Protected Material.

Epic also reads its AI authorities more broadly than their holdings require. *Morgan v. V2X, Inc.*, No. 1:25-cv-01991-SKC-MDB (D. Colo. Mar. 30, 2026), recognized potential work-product protection for a pro se litigant's AI-assisted litigation preparation while requiring identification of AI platforms used with confidential information. *Jefferies v. Harcros Chemicals Inc.*, No. 2:25-cv-02352 (D. Kan. Mar. 25, 2026), distinguished closed from open AI tools based on confidentiality risks. *Tate Group Automotive, LLC v. Legacy Automotive Capital, LLC*, No.

25-BC11B-0020 (Tex. Bus. Ct. 11th Div. June 3, 2026), protected most AI conversations reviewed in camera while requiring limited disclosure concerning materials provided to the platform. These decisions support objective safeguards, not discovery into Plaintiff's AI-assisted litigation preparation.

Epic's proposed restrictions also make a blanket statement about ChatGPT, Claude, and Gemini without distinguishing business and enterprise versions that do not use customer content for model training by default. Paragraphs 27 and 28 already establish security requirements for AI platforms. Once those requirements are met, use should not require Epic's approval or disclosure of Plaintiff's litigation preparation or work product.

## V. CONFIDENTIALITY CANNOT CONTROL DISCOVERABILITY

A confidentiality designation governs handling after production; it does not authorize withholding otherwise discoverable material. If Epic withholds responsive information, it should identify an independent legal basis, such as privilege, work product, or proportionality.

Paragraph 46 of Epic's proposed Protective Order provides that disputes under the Order do not stay discovery absent a request or Court order. That protection is particularly important here, where Epic has withheld substantive discovery pending entry of a Protective Order. Once entered, disputes under the Order should not provide a new basis for delaying production.

That distinction is particularly important where Epic possesses and controls the technical and operational information concerning its own system and Plaintiff has no independent access to it. Confidentiality may govern qualifying information after production, but it should not extend Epic's control over the source of the evidence into discretionary control over Plaintiff's ability to access, review, analyze, and use that evidence in this litigation.

Epic also seeks technical contentions from Plaintiff while withholding the technical material necessary to formulate them. Plaintiff should receive Epic's complete disclosures and technical production before being required to state conclusions that depend on that evidence.

**VI. THE ORDER SHOULD PROTECT BOTH PARTIES AND ALL DISCOVERY**

Epic frames the central technical issue as whether the alleged conduct resulted from Epic's software or UT Southwestern's implementation, configuration, or use of it. Discovery should therefore focus on the technology, its implementation and configuration, and the respective roles of Epic and UT Southwestern. Yet Epic has withheld the technical discovery necessary to address that issue pending entry of a protective order and resolution of its Second Motion to Dismiss.

Plaintiff's unrelated personal information does not bear on that issue. Epic seeks Plaintiff's mental-health records, private family communications, journals and notes, unrelated employment information, journalist communications, broad categories of her father's texts, and litigation-preparation materials. None bears on whether the alleged system conduct originated with Epic's software or UT Southwestern's implementation or configuration.

To the extent Epic contends Plaintiff's mental state bears on non-economic damages, recoverable damages are ultimately a question for the factfinder. That issue does not place Plaintiff's entire mental-health history at issue or make unrelated private records discoverable. Any damages discovery must remain relevant and proportional to the damages actually claimed.

**VII. REQUEST FOR RELIEF**

Plaintiff respectfully requests that the Court decline to enter Epic’s proposed Protective Order as written and instead enter Plaintiff’s Proposed Protective Order, attached as Appendix A, with any modifications the Court deems appropriate. If the Court determines that revisions to

Plaintiff's Proposed Protective Order are necessary, Plaintiff requests an opportunity to submit a revised proposed order incorporating the Court's direction.

Plaintiff also requests that the Court expressly provide that good-faith conduct permitted by the Protective Order does not itself constitute a basis for sanctions, contempt, or a separate claim arising from Plaintiff's handling of Protected Material and, if the Court grants any portion of Epic's Motion, decline to award sanctions, fees, or expenses against Plaintiff, as Plaintiff's opposition was substantially justified by a good-faith dispute grounded in the authorities presented herein.

Finally, upon entry of the Protective Order, Plaintiff requests that Epic promptly produce the substantive discovery withheld on confidentiality grounds.

Respectfully submitted,

Date: September 18, 2026

/s/ Gallit Fischman

**GALLIT FISCHMAN, Pro Se**
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record through the Court's CM/ECF system, or by other means authorized by the Federal Rules of Civil Procedure, on September 18, 2026.

/s/ Gallit Fischman

**GALLIT FISCHMAN, Pro Se**