**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GALLIT FISCHMAN,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **Case No. 3:26-CV-0770-D** |
| **EPIC SYSTEMS CORPORATION,** | § | |
| *Defendant.* | § | |

---

**DEFENDANT EPIC SYSTEMS CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CASE MANAGEMENT TO RESOLVE THRESHOLD ISSUE AFFECTING THE SCOPE OF DISCOVERY**

---

## TABLE OF CONTENTS


**TABLE OF CONTENTS** .................................................................................... i

**TABLE OF AUTHORITIES** ............................................................................. ii

**I. INTRODUCTION** ......................................................................................... 1

**II. BACKGROUND** ............................................................................................ 2

**III. ARGUMENT** ................................................................................................. 3

**A. The Court Should Deny the Motion to Compel.** ............................................ 3

**B. Who Implemented the UTSW Epic EHR System Is Not a Threshold Issue for Plaintiff's Causes of Action.** ........................................................ 7

*1. By Plaintiff's own account, answering the question would narrow nothing.* ................................................................................ 8

*2. Neither Section III of the Motion nor the Rehm declaration makes it one.* ..................................................................................... 10

*3. Rule 26(d)(3) supplies the standard for ordering a sequence, and the Motion does not attempt to meet it.* ...................................... 11

**C. If the Court Stages Discovery, the Medical Records Are the Stage That Could Narrow or Hone Discovery In This Case.** ................................ 12

**IV. CONCLUSION** ............................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC*, 313 F.R.D. 39 (N.D. Tex. 2015) ..... 5

*Archer v. Kennedy*, No. 3:21-CV-748-N, 2022 WL 17069122 (N.D. Tex. Nov. 16, 2022) (Godbey, C.J.) ..... 5

*Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933 (5th Cir. 2005) ..... 3

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc) ..... 3

*Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340 (1979) ..... 6

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 1128730 (N.D. Tex. Apr. 15, 2022) (Fitzwater, J.) ..... 6

*Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250 (N.D. Tex. 2017) ..... 4

**Statutes**

45 C.F.R. § 160.103 ..... 12

45 C.F.R. § 164.512(e)(1)(ii)(B) ..... 12

45 C.F.R. § 164.512(e)(1)(v) ..... 12

Tex. Civ. Prac. & Rem. Code § 82.005(a)(1)–(2) ..... 8

**Rules**

Fed. R. Civ. P. 12(e) ..... 5, 9

Fed. R. Civ. P. 26(b)(1) ..... 8

Fed. R. Civ. P. 26(c)(1)(G) ..... 6, 7

Fed. R. Civ. P. 26(d)(3)(A) ..... 11

Fed. R. Civ. P. 26(d)(3)(B) ..... 11

Fed. R. Civ. P. 33(a)(1) ..... 2, 4

Fed. R. Civ. P. 37 ..... 4

Loc. R. Civ. P. 7.1(i) ..... 10

Defendant Epic Systems Corporation ("Epic") respectfully submits this Response in Opposition to Plaintiff's Motion for Case Management to Resolve Threshold Issue Affecting the Scope of Discovery (Doc. 42) (the "Motion").

## I. INTRODUCTION

Plaintiff's Motion is premature where no protective order has been entered. Epic's response to Interrogatory No. 1, which Plaintiff reproduces at pages 2 through 4 of her own Motion, commits Epic to serve amended responses "[w]ithin thirty days after entry of an appropriate protective order." Doc. 42 at 4. There is no dispute as to whether Epic will answer Plaintiff's Interrogatory, but the parties disagree about when and under what protections. Plaintiff asks the Court to resolve the implementation question "before a protective order is entered." Doc. 42 at 6. But the absence of a protective order is the reason the question is unanswered. That remains true after Plaintiff's response to Epic's motion for entry of a protective order. Filed September 18, her response states that she "agreed to the core substantive protections" and that "the fundamental protections Epic seeks are therefore largely undisputed." Doc. 43 at 1, 5. She asks this Court to enter a protective order—her own rather than Epic's. Doc. 43 at 8–9; Doc. 44. Both parties have now put a proposed order before the Court, and no one contends that none should issue. Plaintiff's Motion asks the Court to proceed as though none will.

The Motion also misdiagnoses the problem it identifies. Plaintiff says that discovery "lacks a clear direction" and "cannot progress efficiently." Doc. 42 at 6. Epic agrees that discovery in this product-liability case lacks direction based on the number and scope of discovery requests Plaintiff served on Epic and her refusal to produce information in response to Epic's discovery requests. But the direction discovery needs will come from the production of Dov Fischman's medical record, which Epic does not have, not from a single interrogatory answer. Plaintiff has reviewed the medical record. Epic has never seen it, because Plaintiff has refused to produce it (or at least the portion in

her possession) without a protective order. The protective order Plaintiff opposes is drafted to make the medical record producible as protected health information. Doc. 41, Ex. A ¶ 25 (App. 13–16). Entry of a protective order is the answer to the problem the Motion describes, and the relief Plaintiff requests is premature without one.

The Motion fails on its own terms as well. It asks the Court to compel a discovery response without engaging any of the objections Epic asserted, and the response it asks the Court to compel is not the one Interrogatory No. 1 requests. It proposes to stage discovery around a question that, by Plaintiff's own account, would narrow nothing. The Motion should be denied.

## II. BACKGROUND

Plaintiff served her first set of interrogatories and requests for production on June 7, 2026, and her second set on June 11, 2026. Doc. 41, Ex. B ¶ 8 (App. 29). Together they comprise Interrogatories Nos. 1–14 and Requests for Production Nos. 1–63. Doc. 40 at 3.

Epic served its responses and objections to all of Plaintiff's requests on July 21, 2026. As to Interrogatory No. 1, Epic objected that the interrogatory is compound and contains multiple discrete subparts under Rule 33(a)(1); that it is overbroad and disproportionate because it reaches back to "initial implementation," a period spanning more than a decade, untethered to any Epic product placed at issue by the operative complaint; that it is vague and ambiguous in several identified respects; and that it seeks confidential, proprietary, and trade-secret information at a time when no protective order had been entered. Doc. 42 at 2–3. Epic further stated that it would serve amended responses within thirty days after entry of an appropriate protective order. *Id.* at 4.

Epic raised with Plaintiff the need for a protective order even before it served its responses and objections. The parties conferred about a protective order eight times by electronic mail between July 7 and August 16, 2026, and once by telephone on August 28, 2026. Doc. 40 at 13. Although Plaintiff has never proposed her own protective order or provided an alternative to Epic's proposed

protective order during meet and confer negotiations, Epic nonetheless made multiple rounds of changes to address items requested by Plaintiff. Plaintiff did not raise the sequencing issue advanced in her Motion until August 25 (Doc. 42 at 7), nor did she provide Epic with a draft protective order until she submitted it with her Motion.

These discovery negotiations have occurred against the backdrop of a pending Rule 12 motion. On July 9, 2026, Epic moved to dismiss the Second Amended Complaint (the "SAC") (Doc. 25) or, in the alternative, for a more definite statement under Rule 12(e). Doc. 33. Epic identified three factual predicates that Plaintiff's causal theory requires and the pleading does not supply: what information the Epic software allegedly failed to generate or display in Dov Fischman's clinical record as it appeared to treating physicians; which clinician was in fact misled or deprived of information by that alleged failure; and how the availability of accurate information would have altered the clinical course. *Id.* at 20–21. Epic explained that "[w]ithout a more definite statement clarifying the specific theories of liability and the factual bases underlying Plaintiff's causal theory, Epic cannot reasonably determine the scope of what is relevant to this litigation, much less respond to discovery requests of this breadth." *Id.* at 22. That motion has been fully briefed since August 5, 2026, and remains pending.

Because Plaintiff did not agree to any protective order that Epic proposed, on August 28, Epic moved for entry of a reciprocal Rule 26 protective order that covers confidential and proprietary information to be produced by all parties. Doc. 40. Plaintiff filed this Motion the following day.

## III. ARGUMENT

### A. The Court Should Deny the Motion to Compel.

The Motion is effectively a premature motion to compel. A motion is measured by the relief it seeks, not by its title. *See Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) ("the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label"); *Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 936 (5th Cir. 2005).

And in asking the Court to "direct[] Epic to identify who participated in the implementation of the Epic system at UTSW and specifically identify Epic's role," Doc. 42 at 6, Plaintiff is requesting relief in the form of a compelled discovery response. Epic therefore urges and supports its objections below, as a responding party must. *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 284 (N.D. Tex. 2017).

But the burden is not Epic's alone. A party seeking to compel "may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, . . . the parties' relative access to relevant information, . . . and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing." *Id.* at 283. Discoverable matter must be "both relevant and proportional to the needs of the case — which are related but distinct requirements." *Id.* at 279. The Motion addresses neither.

Plaintiff addresses none of Epic's objections to her Interrogatory. She does not respond to the discrete-subparts objection under Rule 33(a)(1). She does not respond to the objection that the interrogatory reaches back more than a decade to "initial implementation" without regard to any Epic product placed at issue. She does not respond to the vagueness objections. And she does not respond to the trade-secret objection except to argue that a protective order should wait.

Interrogatory No. 1 also asks Epic to state its role, "direct or advisory," in the "implementation, configuration, operation, and maintenance" of three separate systems, over a period beginning at an unspecified "initial implementation" and running through May 1, 2025. Doc. 42 at 2. Four distinct activities across three systems are not one interrogatory. Rule 33(a)(1) limits a party to twenty-five interrogatories "including all discrete subparts," and a subpart is discrete when it is not logically or factually subsumed within, and necessarily related to, the primary question. Epic's role in operating and maintaining a system years after go-live is not subsumed within the question of who initially implemented it. Plaintiff does not contest the objection. She narrows her request to "address[]" it. Doc. 42 at 4. But narrowing a request in a brief is not the same as serving one. Rule 37 relief runs

to the interrogatory as served, and Plaintiff does not ask the Court to compel an answer to the interrogatory as served. She asks the Court to compel an answer to a question she reformulated in a motion, and that Epic has never had the opportunity to answer or object to.

Epic's vagueness objection is well founded too. Interrogatory No. 1 asks Epic to state its "role, whether direct or advisory, in the implementation, configuration, operation, and maintenance" of what Plaintiff calls three UT Southwestern systems, "from initial implementation through May 1, 2025." Doc. 42 at 2. Plaintiff asks Epic to describe its role in relation to a defect the operative pleading does not identify with specificity. The Second Amended Complaint does not name the Epic product at issue or identify the information the software is said to have failed to display. It names no clinician, date, or encounter. Doc. 33 at 20–21. Epic made that point to the Court in July, in the Rule 12(e) request quoted above, and to Plaintiff during the August 28 conference. *See* Ex. A, App. 4.

The interrogatory is also overly broad. Interrogatory No. 1 reaches "initial implementation through May 1, 2025," a period open at one end and spanning more than a decade, as to three systems, without regard to which Epic product, which functionality, or which alleged defect is at issue. A request that fails "to state with reasonable particularity" what is sought and "does not specify temporal limits" is "facially deficient and requires no further explanation" from the responding party. *Archer v. Kennedy*, No. 3:21-CV-748-N, 2022 WL 17069122, at *2 (N.D. Tex. Nov. 16, 2022) (Godbey, C.J.) (denying motion to compel as to requests lacking reasonable particularity and temporal limits); *see also Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 43 (N.D. Tex. 2015) (non-party subpoena facially overbroad where the requests are "not particularized" and "[t]he period covered by the requests is unlimited").

This Court has applied that principle to deny a motion to compel on facts materially like these. In *Hunsinger v. Alpha Cash Buyers, LLC*, a pro se plaintiff moved to compel answers to requests that asked the defendant to "[l]ist all contracts you have sent out or have executed" and to produce "all

contracts and agreements you have ever had or made." No. 3:21-CV-1598-D, 2022 WL 1128730, at *1 (N.D. Tex. Apr. 15, 2022) (Fitzwater, J.). The Court declined: "Because Hunsinger's discovery requests, on their face, appear to substantially exceed the scope allowed by Rule 26(b)(1), the court declines to grant his motion to compel." *Id.* The Court denied the motion without prejudice and directed the responding party to serve more specific objections. *Id.* The same outcome is appropriate here.

Epic's remaining objection is that the interrogatory reaches confidential, proprietary, and trade-secret information at a time when no protective order had been entered. The Motion makes no effort to address that objection. Epic has never claimed immunity from disclosure. "[T]here is no absolute privilege for trade secrets and similar confidential information," and courts instead "weigh[] their claim to privacy against the need for disclosure," a weighing the Federal Rules resolve through a protective order under Rule 26(c)(1)(G). *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 357, 362 (1979). Describing Epic's role in the implementation of its software for a named health system discloses how Epic staffs and executes an implementation, which are the tools and methods Epic "guards . . . as trade secrets," Doc. 41, Ex. B ¶ 6 (App. 29), and requires reference to the terms on which Epic contracted with UT Southwestern, which are confidential and are in part a third party's.

Epic does not decline to answer. It declines to answer into an unprotected record. Epic has moved for that order. Doc. 40. And Epic committed, in the very response Plaintiff reproduces in her Motion, to serve amended responses "[w]ithin thirty days after entry of an appropriate protective order." Doc. 42 at 4. Plaintiff's only answer to the trade-secret objection is that the protective order should wait until after Epic answers. Doc. 42 at 5–6. That inverts the sequence Epic proposed and gets Plaintiff nothing sooner: the absence of a protective order is the reason the interrogatory is unanswered, and entry of one is what starts the thirty-day clock. Within thirty days after the Court enters a protective order, Epic will serve an amended response describing Epic's role in the

implementation of the Epic software licensed to UT Southwestern for the period relevant to Dov Fischman's care, and identifying any third party that Epic contends performed part of that work.[1]

### B. Who Implemented the UTSW Epic EHR System Is Not a Threshold Issue for Plaintiff's Causes of Action.

In the parties' Joint Scheduling Proposal, Epic proposed that if discovery went forward it proceed in two phases, with Phase 1 limited to threshold causation issues, namely "the configuration of Epic's electronic-health-record system as deployed at the relevant health system, the information actually available to the treating physicians, and the providers' clinical decision-making," and Phase 2, "consisting of all remaining discovery," to follow. Doc. 17 at 12. Plaintiff opposed it and opposed sequencing as a category: she "oppose[d] any sequencing that would require completion of Phase 1 and a subsequent narrowing motion before broader discovery may proceed, as such a structure would function as an additional de facto stay tied to Defendant's preferred merits framework rather than neutral case management." *Id.* at 15.

The Court adopted Plaintiff's position and did not order phased discovery. The Scheduling Order establishes a single discovery period closing April 7, 2027. Doc. 21. But Plaintiff has had a change of heart and now asks for the structure she called a de facto stay, with the issue selected by her. Staging serves a purpose, which is why Epic initially proposed it. But a first phase of phased discovery earns its place when answering it resolves the case, narrows the issues, or spares the parties work they would otherwise duplicate. The staging motion Plaintiff proposes does none of that.

---

[1] Plaintiff cites two sentences of the Rehm declaration, quoted without the sentence that completes the paragraph. She cites paragraphs 6 and 7 for the propositions that Epic has "accumulated extensive hands-on implementation experience" and has spent more than forty years refining its implementation strategies and schedules. Doc. 42 at 4–5. The paragraph she quotes ends: "Epic guards those tools and methods as trade secrets." Doc. 41, Ex. B ¶ 6 (App. 29). The declaration describes Epic's implementation methodologies to establish that they are confidential and proprietary. Rule 26(c)(1)(G) authorizes protection for "a trade secret or other confidential research, development, or commercial information." Plaintiff's reliance on paragraphs 6 and 7 supplies Epic's good cause for the proposed protective order. The declaration says nothing about UT Southwestern. It does not identify the customer, the project, the personnel, or the period. That a company has developed implementation methodologies does not establish who performed any particular implementation.

### *1. By Plaintiff's own account, answering the question would narrow nothing.*

A discovery issue is a threshold issue when resolving it would narrow or eliminate the discovery that follows. The Motion says that if Epic participated in implementing or configuring the UT Southwestern system, "the scope and direction of that discovery may materially change." Doc. 42 at 5. Change how? Discovery proceeds on the claims in the operative complaint, none of which allege liability based on implementation choices. Epic does not concede that either answer would enlarge the proper scope of discovery under Rule 26(b)(1). The point is narrower: Plaintiff's own premise yields no narrowing, and a question whose answer narrows nothing is not a gate through which discovery must pass. Nor does it supply direction for further discovery. Discovery direction in this case comes from the information contained in Dov Fischman's medical record, which would show the "medication timeline," "medication information," "alerts," and "visible information" delivered by the system as it relates to the prescription at issue that Plaintiff alleges otherwise "would not have been prescribed." *See* Doc. 34-1 at 3.

The causes of action Plaintiff has asserted confirm that who implemented the system is not a threshold issue that will direct or narrow further discovery. Three claims remain: negligence, strict products liability for design defect, and a derivative claim for wrongful death. Doc. 40 at 3. A Texas design-defect claim requires proof of "a safer alternative design" and that the defect "was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery." Tex. Civ. Prac. & Rem. Code § 82.005(a)(1)–(2). Neither element turns on the identity of the persons who installed the software at a particular customer site. The negligence claim as pleaded is no different. It rests on the same allegations about the architecture and design of Epic's software, SAC ¶¶ 93-96, not on any act of installation at a particular customer site. Plaintiff has described her own pleading the same way: her complaint, she wrote, "focuses on Epic's core architecture." Ex. A, App. 3. Who

implemented the software at and for UT Southwestern is a fact to be developed in discovery like any other.[2]

Plaintiff also says that discovery is "unnecessarily complicated." Doc. 42 at 6. It is complicated. But Plaintiff made it so, and answering her question would not relieve any of it.[3] In June 2026, within days of filing the SAC, Plaintiff served fourteen interrogatories and sixty-three requests for production reaching Epic's data model and schema, its clinical-decision-support and alerting logic, its internal defect and issue-tracking records, its customer agreements, its sandbox environments, and its implementer and training materials. Doc. 40 at 3–4. None of those requests depends on the answer to the question Plaintiff now calls a threshold. And Plaintiff has not withdrawn, narrowed, or deferred a single one of them. She tells the Court that the implementation question must be resolved before "the scope of discovery is further defined," Doc. 42 at 1, and that resolving it "will establish the factual basis necessary for discovery to proceed on the correct and efficient path," *id.* at 2. Yet every one of the seventy-seven requests she served in June remains outstanding, and she continues to demand responses to all of them. Doc. 40 at 3–4. A litigant who believed that discovery could not sensibly proceed until the threshold question was answered would not have served the requests first and would not be pressing them now.

---

[2] Epic does not now seek a stay of discovery, and its proposed protective order provides that nothing in it stays, postpones, limits, or conditions any party's discovery obligations based on the pendency of a motion to dismiss. Doc. 41, Ex. A ¶ 46 (App. 23). Plaintiff's response describes that protection as "particularly important." Doc. 43 at 7. Her own proposed order contains a parallel provision. Doc. 44 ¶ 23. But the operative pleading may not remain the operative pleading. Epic's pending Rule 12(e) request asks the Court to require Plaintiff to replead the causal chain with the specificity Epic has identified. Doc. 33 at 20–22. Building a bespoke discovery sequence around the current pleading, while a motion directed at that pleading's adequacy is under submission, could compound rather than reduce the inefficiency the Motion complains of.

[3] Identifying who participated in the UT Southwestern implementation would not narrow any of those requests. Plaintiff's Request No. 4 would still seek Epic's data model, schema, and data dictionary; her Requests Nos. 20–22 would still seek the categories of information described there; her Requests Nos. 11, 12, 39, 44, 45, and 50 would still seek Epic's internal defect and issue-tracking records, including its Sherlock and Nova data; and her Requests Nos. 14, 16, 24, 25, and 46 would still seek credentialed access to Epic's sandbox environments and to the implementer and training materials Epic makes available only to licensed customers. See Doc. 40 at 3–4.; Doc. 42 at 3 (Plaintiff reiterates she wants access to Epic's UserWeb system). What would simplify this discovery is a pleading that identifies the product, the functionality, and the information at issue. That is what Epic's pending Rule 12(e) request asks the Court to require. Doc. 33 at 20–22.

### *2. Neither Section III of the Motion nor the Rehm declaration makes it one.*

The Motion rests on a premise Epic has never asserted. Its first page states that "Epic attributes the deficiencies at issue to UTSW's configuration choices." Doc. 42 at 1. Epic has attributed nothing to anyone. Epic has not answered the Second Amended Complaint; its Rule 12 motion is pending. It has pleaded no defenses. Its discovery responses state that the allocation of design and configuration is a disputed merits issue that Epic will not be made to characterize at the outset of discovery. *See* Ex. B, App. 15, 30, 33, 47, 60. What Epic has done is point out that Plaintiff herself has pleaded the question both ways. Her operative complaint alleges that the defects at issue "are not matters of configuration or user preference" and "cannot be created through configuration, workflow design, or user input." SAC ¶ 91. Her petition against UT Southwestern alleged that the same safeguard was achievable through configuration that UT Southwestern controlled. Doc. 33 at 16 (quoting App. 124–25 ¶ 7.2). If the identity of the implementer now looks like a threshold issue to Plaintiff, that is because her own pleadings point in opposite directions. The way to resolve that is the more definite statement Epic has already requested, Doc. 33 at 20–22, not an order compelling a discovery response.

Section III of the Motion does not fill that gap. Plaintiff says she "reviewed public financial records reflecting substantial expenditures attributed to Epic during the relevant implementation period" and "found no corresponding expenditures . . . identifying an outside consulting firm as the implementer." Doc. 42 at 4. She filed no such records and no declaration describing them, and she has refused to produce them in response to Epic's requests. *See* Epic's Request for Production No. 24. Local Civil Rule 7.1(i) required her to include in an appendix any materials on which the Motion relies. There is nothing for Epic to answer and nothing for the Court to weigh. But take the assertion at face value. It shows that a health system paid a software vendor during the period it was implementing that vendor's software. It does not show who participated in the implementation, and it does not begin to show who made the decisions about how the system would be configured, which

is a different question from who performed the work. The Motion treats the two as one. And on Plaintiff's own pleading, neither question bears on her claims: the defects she alleges "are not matters of configuration or user preference." SAC ¶ 91.

#### *3. Rule 26(d)(3) supplies the standard for ordering a sequence, and the Motion does not attempt to meet it.*

Generally, "methods of discovery may be used in any sequence," and "discovery by one party does not require any other party to delay its discovery," unless "the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice." Fed. R. Civ. P. 26(d)(3)(A), (B). Plaintiff does not attempt to meet that standard. The Motion does not cite Rule 26(d), identifies no party or witness whose convenience would be served, and offers no reason grounded in the interests of justice for departing from the default rule that discovery proceeds in any sequence. What the Motion proposes instead is that Epic's answer to a single question set the pace for the case. And Plaintiff has already told Epic what that means in practice. On August 28, 2026, she wrote that she "expect[s] Epic to provide complete initial disclosures and substantive responses to the discovery [she] served first." Ex. A, App. 4. Rule 26(d)(3)(B) states the opposite rule: "discovery by one party does not require any other party to delay its discovery." Plaintiff's sequence would leave Epic's requests, including the one category that requires nothing from Epic and no protective order to gather, Dov Fischman's medical records, unanswered until Epic had answered hers. Epic does not ask the Court to resolve the parties' disputes about that category on this Motion.[4] It raises the point because the Motion asks the Court to bless a sequence, and the sequence Plaintiff has in mind is one Rule 26(d)(3)(B) rejects on its face.

---

[4] Epic will confer with Plaintiff and, if the parties cannot resolve the dispute, move separately for relief as to that category. The alternative request in Epic's prayer is made to preserve Epic's position should the Court be inclined to sequence discovery in response to the Motion.

### C. If the Court Stages Discovery, the Medical Records Are the Stage That Could Narrow or Hone Discovery In This Case.

Epic's position is that discovery should proceed in the ordinary course and that no staging is warranted. But if the Court concludes that some sequencing would help this case, one category would do the work Plaintiff's proposed stage cannot: Dov Fischman's medical records and the medical information surrounding them, produced after entry of a protective order. That is not a new position. It is the substance of the Phase 1 Epic proposed in May: "the information actually available to the treating physicians." Doc. 17 at 12. Plaintiff's stage requires a protective order, requires Epic to assemble information from its records and its personnel, and, on her own account, narrows nothing. The medical-records stage requires the same protective order, requires Plaintiff to produce documents she has already gathered and reviewed, and could narrow a great deal.

The protective order is also the mechanism for producing and using the medical records. Dov Fischman's records are protected health information. *See* 45 C.F.R. § 160.103. They cannot responsibly be produced, filed, or used in this litigation without an order that governs how they are handled. Epic's proposed order is drafted as a HIPAA qualified protective order for that purpose, under 45 C.F.R. § 164.512(e)(1)(ii)(B) and § 164.512(e)(1)(v), with its own provisions for stamping, sealing, and redaction. Doc. 41, Ex. A ¶ 25 (App. 13–16).[5] With the records, the parties can determine what Dov Fischman's chart contained, who saw it, and when. Those are the facts that tell both sides which Epic product, which functionality, and which period are at issue. That is what would give discovery a "clear direction." Doc. 42 at 6. An order compelling one interrogatory answer would not.

---

[5] Plaintiff has already told the Court she agrees with this approach, at least as it relates to third-party production. Opposing UT Southwestern's motion to quash, she wrote that "[c]onfidentiality likewise does not require nonproduction," that "[p]atient information can be confined to Dov Fischman," and that "any legitimate proprietary or security concern can be addressed through tailored protection supported by good cause. *See* Fed. R. Civ. P. 26(c)(1)(G)." Doc. 37 at 10. Epic agrees. Its proposed order is the tailored protection Plaintiff described.

It could narrow discovery because the SAC's central allegations are assertions about what a particular set of documents does and does not contain. Section IV.H of the SAC is titled "Application to Dov Fischman—Causation and Manifestation of System Failure." It alleges that "the Epic-generated record did not permit reconstruction of a coherent medication timeline"; that "[t]he record reflected a diagnosis of cancer despite a clinical course involving an unresolved infection and sepsis"; that entries reflecting significant clinical developments "were minimal, fragmented, or conclusory"; and that adverse developments "were recorded, if at all, in isolated entries not integrated into a unified assessment." SAC ¶¶ 52, 57, 58, 59. Each of those is a factual claim about the contents of a document. Each can be evaluated only by reading the document. And each would help resolve what part of the EHR software is truly at issue in Plaintiff's claims. *See, e.g.*, Epic's Interrogatory No. 1.

The same is true of the three factual predicates Epic identified in July: what information the software failed to generate or display in Dov Fischman's clinical record as it appeared to treating physicians, which clinician was in fact misled or deprived of that information, and how accurate information would have altered the clinical course. Doc. 33 at 20–21. What the record displayed on a given day, which clinician viewed it, and how the clinical course unfolded are questions the medical record answers directly or could help answer. Plaintiff alleges that the record failed to capture what was observed and reported at the time. Once the record is produced, Epic can read what the record captured and test that allegation against it.

Plaintiff has already performed this exercise. She told this Court that her allegations were "reinforced by [her] subsequent review of more than 11,000 pages of medical records," and that "[t]he records confirmed specific omissions, documentation errors, and a broader pattern of fragmented information." Doc. 34 at 16. Epic asks for nothing more than the chance to read the same pages and evaluate the same assertions. A discovery stage that lets both parties measure the pleading's central factual claims against the document those claims describe is a stage that moves this case forward.

And Plaintiff has already designed a staged discovery sequence for this subject matter, at least as it relates to third-party productions, that shows that she agrees the medical record—not who implemented the system—is the threshold discovery question to be answered. On June 17, 2026, Plaintiff served a Rule 45 subpoena on UT Southwestern whose Schedule A offered "staged production by subject-matter section" in three phases. Doc. 35-1 at 6. Phase One was Dov Fischman's complete record and audit trail, his care team and handoffs, the everolimus, consent, and medication-monitoring materials, the diagnosis and cause-of-death determination, and family communications. Phase Two was system architecture, data flow, and clinical workflows. Phase Three, the last, was "Implementation, Configuration, Governance, and Known Limitations." *Id.* at 7. That is the section containing Plaintiff's request that UT Southwestern "identify the personnel who implemented, configured, maintained, supported, administered, or modified the Epic functionality used in Dov Fischman's care." *Id.* at 25 (Request No. 43).

The sequencing, she wrote, was "intended to permit efficient production, allow the parties to evaluate what information is obtained from earlier phases, and reduce unnecessary collection efforts if responsive information can be obtained through a more targeted or less burdensome method." Doc 35-1 at 7. When she sat down to sequence discovery on this subject, she put the medical record in the first phase and the implementation question in the last. Ten weeks later, she asks this Court to invert that order and to suspend everything else until the last phase is answered.

Epic conferred with Plaintiff on discovery about her father's medical record by letter dated August 25, 2026, identifying the Epic discovery requests at issue: Interrogatory No. 7 and Requests for Production Nos. 5–9, 14, 22, 34, 47, 56, 57, 60, 64, 66, and 67. The letter explained why each request is tied to a specific allegation of the SAC. The parties conferred by telephone on August 28, 2026. Ex. A, App. 2-5. Accordingly, should the Court be inclined to stage discovery in response to the Motion, Epic respectfully requests in the alternative that the Court direct Plaintiff to respond to that

category within thirty days after entry of a protective order. That is the sequence Plaintiff designed in June. Epic asks only that it apply to her as well as to UT Southwestern.

## IV. CONCLUSION

Compelling a response to an interrogatory Plaintiff never served, before a protective order is entered, is not warranted. Epic has agreed that Plaintiff will get a substantive response to her interrogatory after a protective order is entered. Epic respectfully requests that the Court deny Plaintiff's Motion for Case Management to Resolve Threshold Issue Affecting the Scope of Discovery and enter the protective order submitted with Epic's Motion for Entry of a Protective Order (Doc. 40), or such other protective order as the Court deems appropriate.

In the alternative, if the Court is inclined to stage discovery, Epic respectfully requests that the Court enter the protective order and direct that, within thirty days after its entry, Plaintiff respond to Epic's Interrogatory No. 7 and Epic's Requests for Production Nos. 5–9, 14, 22, 34, 47, 56, 57, 60, 64, 66, and 67.

Epic further requests all other relief to which it is justly entitled.

DATE: September 21, 2026

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jessica D. Cox
Texas Bar No. 24114769
jcox@lynnllp.com
Madelyn C. Stanley
Texas Bar No. 24121529
mstanley@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANT**
**EPIC SYSTEMS CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record and upon Plaintiff, proceeding pro se, in accordance with the Federal Rules of Civil Procedure via ECF and electronic mail on September 21, 2026.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann