**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GALLIT FISCHMAN,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 3:26-CV-0770-D** |
| | § | |
| **EPIC SYSTEMS CORPORATION,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**APPENDIX IN SUPPORT OF DEFENDANT EPIC SYSTEMS CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CASE MANAGEMENT TO RESOLVE THRESHOLD ISSUE AFFECTING THE SCOPE OF DISCOVERY**

| **EXHIBIT** | **DESCRIPTION** | **APP PAGE** |
|---|---|---|
| A | Email from J. Cox to G. Fischman re follow up to meet and confer | App. 001-005 |
| B | Defendant's Objections and Responses to Plaintiff's Second Interrogatories and Requests for Production | App. 006-109 |

DATE: September 21, 2026

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jessica D. Cox
Texas Bar No. 24114769
jcox@lynnllp.com
Madelyn C. Stanley
Texas Bar No. 24121529
mstanley@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANT**
**EPIC SYSTEMS CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon counsel of record in accordance with the Federal Rules of Civil Procedure via ECF and email on September 21, 2026.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann

# EXHIBIT A

**From:** Jessica Cox
**To:** Gallit Fischman
**Cc:** Chris Schwegmann; Madelyn Stanley; Natalie Stallbohm; Scott Smoot; Julie Archuleta
**Subject:** RE: Follow-Up Regarding Today's Meet-and-Confer
**Date:** Friday, August 28, 2026 5:24:55 PM

---

Hi Gallit,

Thank you for your time today. My corrections and notations to your recap are in blue, below.

Best,

**JESSICA COX** | Attorney
**LynnPinkerHurstSchwegmann**
Direct 214 292 3607
Cell 601 951 9887
jcox@lynnllp.com

2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
lynnllp.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Lynn Pinker Hurst & Schwegmann, LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

---

**From:** Gallit Fischman <gallitfischman@yahoo.com>
**Sent:** Friday, August 28, 2026 4:09 PM
**To:** Jessica Cox <jcox@lynnllp.com>
**Cc:** Chris Schwegmann <cschwegmann@lynnllp.com>; Madelyn Stanley <mstanley@lynnllp.com>; Natalie Stallbohm <nstallbohm@lynnllp.com>; Scott Smoot <ssmoot@lynnllp.com>; Julie Archuleta <jarchuleta@lynnllp.com>
**Subject:** Follow-Up Regarding Today's Meet-and-Confer

Counsel,

Thank you for speaking with me today. I am writing to confirm my understanding of the discussion and the issues that remain unresolved.

- **Purpose of the call:** Epic requested the meet-and-confer following its letter to determine whether the parties could resolve the outstanding discovery and protective-order disputes without Court involvement.

The meet and confer was also requested to confer on the items raised in your August 25th email

- **Overall discussion:** Epic's positions remained substantially the same as those previously communicated. I asked what resolution Epic was proposing, but no substantive change in position was identified that would resolve the outstanding issues.
- **Protective order:** The parties have been attempting to reach agreement on the protective order for almost

two months. The protections I requested have either not been included or have been incorporated using language that remains open-ended and does not provide the protection requested. In my view, the proposed order provides protections for Epic without providing corresponding clarity regarding my obligations and potential exposure.

As noted on the call, we did attempt to incorporate and have incorporated several of your requested revisions. In addition, I reiterated that if you could send us alternative language or a protective order that you have drafted, we'd be happy to review and discuss to see if a resolution can be reached. I understand you do not believe this would be a fruitful exercise.

- **Separate trade-secret action:** I requested express language stating that Epic would not bring a separate trade-secret action against me arising from my handling of discovery. Although Epic added language addressing this issue, you confirmed during the call that you could not represent that Epic would not bring such an action. Accordingly, this issue remains unresolved.

More specifically, I stated that I can't waive our client's rights to future actions, not that Epic would not bring a trade secret action against you. I did confirm that we had already revised the Protective Order to state that any disputes over enforcement would be decided by this Court. I understand that change was not satisfactory to resolve your concern.

- **Threshold implementation issue:** I identified as a threshold issue whether Epic implemented or configured the Epic system at UT Southwestern. You stated that the protective order is the threshold issue. My position is that Epic's implementation and configuration role should be determined first. My Complaint focuses on Epic's core architecture, as Epic's role in implementation and configuration was not known to me when it was filed. Epic has attributed those functions to UT Southwestern or a consultant. The public records I located reflect substantial payments to Epic during the relevant implementation period and no comparable payments to an outside implementation consultant. I therefore asked whether Epic, including Epic Professional Services, performed or participated in that work. You stated that this information would need to be obtained through formal discovery following resolution of the protective order. The answer may determine both the scope of discovery and whether discovery is necessary.

We disagree with your characterization on this issue. During the call, you stated that you believed there was a single question that, if answered, would resolve the entire case without the need for any discovery. Specifically: "What was Epic's role when it came to implementing and configuring the UTSW system?" You stated that you didn't understand why you needed to go through formal discovery just to get an answer to that question. I explained that obtaining a response to your question would necessarily require discovery, which in turn would first require a protective order. I also explained that, in terms of discovery being sequenced to deal with "threshold issues" up front, Epic would also be entitled to discovery on items it viewed as threshold issues, including, but not limited to, Dov Fischman's medical records and your damages. You stated that you did not believe much discovery would be required from you in this case, and that you intended to ask the Court to order Epic to answer your "threshold question" and to prohibit any discovery until that question is answered.

- **Epic's discovery requests:** You stated that the primary information Epic seeks from me is my father's

medical records and my damages. Epic nevertheless served more than 60 discovery requests, including requests for substantial personal information unrelated to either category. In light of your statement, I continue to question the relevance, proportionality, and scope of those requests.

The "primary information" characterization is incorrect. I raised Epic's request for yours and Dov Fischman's medical records in the context of conferring on sequenced discovery, not as a limitation on the scope of discovery. As noted at the end of the call, our position is that all of the information Epic has requested thus far is relevant and appropriate for discovery. On the request for your medical records, I explained that the request was relevant to your damages (more on that below). You responded that producing those records was "not going to happen," and that you would not be producing anything until you get an answer to your threshold question.

We remain willing to discuss the scope of Epic's request for your medical records if you can clarify what damages you are seeking.

- **Information imbalance and initial disclosures:** The relevant information concerning Epic's technology is within Epic's possession or control. Epic's initial disclosures contain little substantive information, while Epic is requesting extensive information from me. I am continuing to calculate my damages and will supplement my disclosures when that work is complete. I expect Epic to provide complete initial disclosures and substantive responses to the discovery I served first.

You did not mention on our call that you had or were continuing to calculate your damages or that you would supplement when that work is complete. Instead, you stated that you would not provide us any information on your damages, or any other information that we've requested (including yours and Dov Fischman's medical records), until Epic (a) provided you with amended initial disclosures and (b) answered your threshold question.

I requested clarification on what damages you were seeking so that we could have a productive conversation about sequencing discovery. You first responded, "What damages have I pursued? I haven't shared any damages with you guys at this point in time." You then stated that while you have claimed damages, you have not pursued any damages, and that you cannot tell me what damages you are seeking.

As for Epic's initial disclosures, you alleged that Epic's initial disclosures were "incomplete." However, you could not identify what specific information you believe is allegedly missing, aside from stating that Epic's disclosures do not identify any specific individuals at Epic with relevant information. I explained that answer was dependent on a better understanding of the bases of your claims, as explained in Epic's Motion for a More Definite Statement.

- **Conduct of the discussion:** Several issues were addressed repeatedly during the call, including requests that I clarify points previously explained. This resulted in substantial repetition without advancing resolution of the disputed issues.
- **Next steps:** My understanding at the conclusion of the call is that Epic intends to file a motion regarding the protective order. I advised that I intend to file my case-management request addressing the threshold implementation issue, initial disclosures, Epic's discovery requests, and the protective order as originally presented to me. These were the two contemplated filings discussed during the meet-and-confer. If Epic

intends to file any additional motion arising from these disputes, please advise and confer with me regarding that motion before filing.

Please let me know if the above does not accurately reflect Epic's position or our discussion today.

Thank you,

Gallit

On Wednesday, August 26, 2026 at 06:48:08 PM CDT, Jessica Cox <jcox@lynnllp.com> wrote:

Topic: Fischman/Epic - Meet & Confer re Case Management
Time: Aug 28, 2026 02:00 PM Central Time (US and Canada)
Join Zoom Meeting
https://lynnllp.zoom.us/j/86703641612?pwd=haSpIaaiKxwq8KJZ1n6gshpGaMgO57.1

Meeting chat link
https://lynnllp.zoom.us/launch/jc/86703641612

Meeting ID: 867 0364 1612
Passcode: 762634

---

One tap mobile
+13462487799,,86703641612#,,,,*762634# US (Houston)
+16699006833,,86703641612#,,,,*762634# US (San Jose)

---

Join by SIP
• 86703641612@zoomcrc.com

Join instructions
https://lynnllp.zoom.us/meetings/86703641612/invitations?signature=tpcEEFn_0NzT5d_SQnF7dkUFr0JZyD7fhojkCX3WhoI

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GALLIT FISCHMAN,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:26-CV-0770-D** |
| | § | |
| **EPIC SYSTEMS CORPORATION,** | § | |
| | § | |
| *Defendant.* | § | |

---

**DEFENDANT EPIC SYSTEMS CORPORATION'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND SECOND REQUESTS FOR PRODUCTION**

---

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, Defendant Epic Systems Corporation ("Epic") serves these objections and responses to Plaintiff Gallit Fischman's Second Set of Interrogatories and Second Requests for Production, served June 11, 2026 (the "Second Set"). Epic's objections and responses are made subject to, and without waiver of, the following: (a) Epic's investigation of the facts and its review of documents and information are ongoing, and these objections and responses are based on information reasonably available to Epic as of the date of service; (b) Epic reserves the right to supplement, amend, or correct these objections and responses pursuant to Rule 26(e); (c) no objection or response constitutes an admission that any requested

information or document exists, is relevant, is discoverable, or would be admissible in evidence, and Epic reserves all objections as to competency, relevance, materiality, privilege, and admissibility; and (d) no objection or response waives, and Epic expressly preserves, all objections and defenses available to it, including in connection with any motion pending before or hereafter presented to the Court, including Epic's pending renewed motion to dismiss directed to the Second Amended Complaint.

Central to these responses: no protective order has been entered in this action. The Second Set — notwithstanding its self-description as "narrowed" and "tailored" — seeks, pervasively and by design, Epic's most sensitive confidential, proprietary, and trade-secret information, including the internal architecture of Epic Chronicles, M-Code documentation, entity-relationship diagrams, data dictionaries, and schema-level materials functionally adjacent to source code, as well as confidential information of non-parties and protected health information. The parties are actively negotiating the terms of a stipulated protective order under Rule 26, and Epic has provided Plaintiff with its proposed form of order. If the parties cannot reach agreement, Epic will move the Court, pursuant to Rule 26(c), for entry of an appropriate protective order. As stated in Epic's objections to each individual Interrogatory and Request below, Epic will not provide any substantive response, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard that information; pursuant to Rule

34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on that basis and on the basis of the other objections stated below.

Epic's position is not open-ended. Within thirty days after entry of an appropriate protective order, Epic will serve amended objections and responses stating, subject to and without waiving its objections, what if anything it will answer or produce in response to each Interrogatory and Request. In connection with any resulting production, Epic will serve any privilege log required by Rule 26(b)(5)(A) with respect to responsive documents withheld on grounds of privilege or work-product protection. Epic further remains willing to confer with Plaintiff in good faith, at any mutually convenient time, regarding the terms of a protective order and the scope of the Second Set, and invites Plaintiff to contact the undersigned counsel to schedule a conference before seeking relief from the Court.

**OBJECTIONS TO THE INCORPORATED "NOTICE OF INTEGRATION," "CLARIFICATION OF THE DISCOVERY SCOPE," DEFINITIONS, AND INSTRUCTIONS**

1. The Second Set purports to incorporate by reference the "Notice of Integration," the "Clarification of the Discovery Scope," and the Definitions set forth in Plaintiff's First Interrogatories and First Requests for Production. Epic incorporates by reference, and reasserts as to each Interrogatory and Request in the Second Set, each of the objections to those materials stated in Epic's Objections and Responses to Plaintiff's First Interrogatories and First Requests for Production, served July 21, 2026, as though

fully set forth herein — including Epic's objections that those materials are argumentative, mischaracterize Epic's motion-to-dismiss briefing, embed disputed legal conclusions, purport to impose obligations beyond the Federal Rules of Civil Procedure, and improperly demand "access" in lieu of production.

2. Epic further objects to the instructions set forth in the Second Set's preamble to the extent they purport to impose obligations beyond the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, including by purporting to dictate the tools, repositories, and systems — "System Pulse, Chronicles, workstation, session, reporting, or user-action tools" — through which Epic must search for or produce electronically stored information, and by purporting to define the scope of production by reference to what Epic "ordinarily maintains" or makes available to categories of personnel rather than by reference to the claims and defenses in this action. Epic will respond to discovery in accordance with the Rules, the Local Civil Rules, and the orders of this Court, and with nothing else.

3. Epic further objects to the Second Set's self-characterization as "narrowed," "tailored," and "limited to targeted discovery." A discovery request's scope is measured by what it demands, not by how it describes itself; as set forth in the individual objections below, the Second Set demands, among other things, the internal architecture of Epic Chronicles and M-Code, entity-relationship diagrams, data dictionaries, enterprise-wide

support-repository searches spanning 2021 to the present, and executive-level governance files — discovery that is neither narrow nor targeted.

4. Epic further objects to the preamble's assertion that overlap with the First Set "shall not be a basis for withholding responsive materials." Rule 26(b)(2)(C)(i) requires the court to limit discovery that is unreasonably cumulative or duplicative, and Plaintiff's instruction cannot displace that limitation.

## GENERAL OBJECTIONS

Epic asserts the following General Objections to the Second Set, and to the definitions and instructions incorporated into it, and incorporates them into each individual response below as though fully set forth therein. The assertion of any specific objection in an individual response is not a waiver of any General Objection not repeated there.

1. Absence of a Protective Order. Epic objects to each Interrogatory and each Request because it seeks confidential, proprietary, and trade-secret information, including information concerning licensing, pricing, architecture, design, configuration, implementation and operation of Epic's software, and because no protective order has been entered in this action. The parties are actively negotiating the terms of a stipulated protective order under Rule 26, and Epic has provided Plaintiff with its proposed form of order. If the parties cannot reach agreement, Epic will move the Court, pursuant to Rule 26(c), for entry of an appropriate protective order. Epic will not provide any

substantive response to any Interrogatory and will not produce any documents in response to any Request, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

2. Numerical Limit of Rule 33(a)(1). Rule 33(a)(1) permits a party to serve no more than twenty-five written interrogatories, "including all discrete subparts," absent stipulation or leave of court. Counting discrete subparts in good faith, the interrogatories in Plaintiff's First Set, together with the additional interrogatory embedded in Definition No. 5, approach or exceed that limit standing alone, and the nine additional multi-part interrogatories in this Second Set place Plaintiff well beyond it. Plaintiff has neither sought nor obtained leave of court or Epic's stipulation to serve interrogatories in excess of the limit. Epic objects to each Interrogatory in the Second Set on this ground and does not waive, and expressly preserves, the numerical limit as to these and any future interrogatories.

3. Privilege and Work Product. Epic objects to each Interrogatory and each Request to the extent it seeks information or documents protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest or joint-defense privilege, or any other applicable privilege, protection, or immunity. Epic will not provide privileged or protected information, and any inadvertent disclosure shall not

constitute a waiver of any privilege or protection, consistent with Federal Rule of Evidence 502.

4. Proportionality. Epic objects to each Interrogatory and each Request to the extent it exceeds the scope of discovery permitted by Rule 26(b)(1), including because the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the issues, and the importance of the discovery in resolving them.

5. Requests for "Access." Epic objects to each Request to the extent it, or any definition, instruction, or prefatory statement incorporated into it, demands that Epic provide Plaintiff with access to software environments, accounts, portals, or repositories. Such demands exceed the scope of Rule 34, which does not obligate a responding party to create accounts, provision environments, or grant interactive access to proprietary systems. *See In re Ford Motor Co.*, 345 F.3d 1315, 1316–17 (11th Cir. 2003) (Rule 34(a) does not grant a requesting party unrestricted, direct access to a respondent's databases); Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment (the rule on testing and sampling of electronically stored information is "not meant to create a routine right of direct access to a party's electronic information system").

6. Third-Party Confidentiality and Privacy. Epic objects to each Interrogatory and each Request to the extent it seeks confidential information of non-parties, including

the contractual, financial, operational, support, or configuration information of UT Southwestern or other Epic customers, or information implicating patient privacy, including protected health information subject to HIPAA and other federal and state privacy laws.

7. Possession, Custody, or Control. Epic objects to each Interrogatory and each Request to the extent it seeks information or documents not within Epic's possession, custody, or control, including patient-level records, transactional data, audit trails, and configuration data recorded and maintained in production environments implemented, configured, and operated by UT Southwestern, a non-party from which Plaintiff has already sought discovery by subpoena and which is a more convenient, less burdensome, and less expensive source within the meaning of Rule 26(b)(2)(C)(i).

8. Equally Available Information. Epic objects to each Interrogatory and each Request to the extent it seeks information or documents that are publicly available or otherwise equally available to Plaintiff, and therefore obtainable from another source that is more convenient, less burdensome, or less expensive within the meaning of Rule 26(b)(2)(C)(i).

9. Premature Contention Discovery. Epic objects to each Interrogatory and each Request to the extent it seeks to compel Epic, at the outset of discovery and while Epic's renewed motion to dismiss remains pending, to adopt, construct, or commit to classifications or characterizations of its software architecture, including which

components are vendor-controlled, system-controlled, or customer-configurable, that are disputed merits issues in this action. Courts in this District routinely defer contention discovery until discovery is substantially complete.

10. Vague, Argumentative, and Assumptive Phrasing. Epic objects to each Interrogatory and each Request to the extent it employs vague, ambiguous, undefined, or argumentative terms, assumes disputed facts, or embeds legal conclusions, including terms and premises drawn from the operative complaint — such as "fragmentation," "ghost medications," "failures," and "siloing" — that Epic denies, and including the argumentative demand for "complete, unedited" records. Epic's use of any such term in these responses is for convenience of reference only and is not an adoption of Plaintiff's characterizations or an admission of any kind.

11. Temporal Scope. Epic objects to each Interrogatory and each Request to the extent it seeks information or documents "from 2021 to the present" or for any other period that predates, or extends beyond, the events at issue, or that contains no temporal limitation at all, as overbroad, unduly burdensome, and not proportional to the needs of the case.

12. Failure to Tether Requests to Any Epic Product at Issue. Epic objects to each Interrogatory and each Request to the extent it is not tied to any specific Epic product, module, version, or functionality alleged to have been used in the decedent's care at UT Southwestern. The operative complaint does not identify which Epic product or products

UT Southwestern licensed, deployed, or used in connection with that care, and information concerning the composition of UT Southwestern's environment associated with that care is within the possession, custody, or control of UT Southwestern, a non-party. Epic further objects to each Interrogatory and each Request to the extent it seeks information concerning products or functionality having no connection to the claims pleaded in the operative complaint.

13. Cumulative and Duplicative Requests. Epic objects to each Request to the extent it is unreasonably cumulative or duplicative of requests in Plaintiff's First Set or of other requests in the Second Set, within the meaning of Rule 26(b)(2)(C)(i).

14. Requests That Simultaneously Seek Specific Documents and Documents "Sufficient to Show" Certain Information. Epic objects to each Request that seeks specific documents followed by "or documents sufficient to show" other information as being overly cumulative and unclear. For each of these Requests, Epic will only consider producing documents sufficient to show.

15. No Admission. Neither an objection to, nor any future response to, any Interrogatory or Request constitutes an admission that the information or documents sought exist, are relevant, are discoverable, or would be admissible, nor an adoption of any definition, characterization, or premise contained in the Second Set.

16. Reservation of Rights. Epic's investigation is ongoing. Epic reserves the right to supplement, amend, or correct these objections and responses pursuant to Rule

26(e), and reserves all rights under Rules 26(c) and 37, including the right to seek additional protective relief and to oppose any motion to compel.

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 6 (Encounter-Based Data Segregation):** Describe the technical database rules within Epic Chronicles that govern the segregation of clinical data into distinct encounter records, and identify the software logic, configuration logic, or presentation-layer rules that allow historical encounter data to render alongside current data on a live screen.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Interrogatory because it demands a narrative engineering description of the core database architecture of Epic Chronicles — the technical rules governing how clinical data is structured and rendered— which constitutes Epic's most sensitive confidential, proprietary, and trade-secret information, and because the burden of composing such a description in interrogatory form, untethered to any product, module, version, environment, or time period relevant to this action, is undue and disproportionate to the needs of the case under Rule 26(b)(1).

Epic further objects to this Interrogatory as compound and as containing discrete subparts within the meaning of Rule 33(a)(1), inquiring separately into database rules, software logic, configuration logic, and presentation-layer rules and, counting discrete

subparts as Rule 33(a)(1) requires, this Interrogatory — together with Plaintiff's First Interrogatories — exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to this Interrogatory as vague, ambiguous, and argumentative, including in its use of the undefined phrases "technical database rules," "segregation of clinical data into distinct encounter records," and "render alongside current data on a live screen," and because it assumes disputed characterizations of system behavior drawn from the operative complaint that Epic denies.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the architecture, design, configuration, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that

this Interrogatory may be answered by documents produced in this matter. *See* Fed. R. Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**INTERROGATORY NO. 7 (Global Medication Status Commands):** State whether Epic's core code, system-controlled logic, or customer-configurable functionality possesses an automated feature that pushes a system-wide expire, delete, discontinue, or status-update command to the master clinical profile when a high-risk immunosuppressant is marked as swapped, stopped, discontinued, or replaced in a localized encounter menu.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Interrogatory as a premature contention interrogatory. By demanding that Epic classify functionality as "core code," "system-controlled logic," or "customer-configurable functionality," the Interrogatory seeks to commit Epic, at the outset of discovery and while Epic's renewed motion to dismiss remains pending, to merits characterizations

concerning the allocation of design and configuration that are central to the disputed issues in this action. Courts in this District routinely defer contention discovery until discovery is substantially complete.

Epic further objects to this Interrogatory as vague and ambiguous, including in its use of the undefined phrases "core code," "system-controlled logic," "customer-configurable functionality," "master clinical profile," "localized encounter menu," "high-risk immunosuppressant," "swapped," and "pushes a system-wide . . . command," and because it assumes facts concerning system behavior and embeds disputed characterizations that Epic denies.

Epic further objects to this Interrogatory as compound and as containing discrete subparts within the meaning of Rule 33(a)(1), inquiring across three classifications of functionality, four command types, and four triggering statuses and, counting discrete subparts as Rule 33(a)(1) requires, this Interrogatory — together with Plaintiff's First Interrogatories — exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to this Interrogatory as overbroad and not proportional to the needs of the case because it is untethered to any product, version, environment, or time period relevant to this action, and because a description of medication-status logic constitutes confidential, proprietary, and trade-secret information.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the architecture, design, configuration, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that this Interrogatory may be answered by documents produced in this matter. *See* Fed. R. Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**INTERROGATORY NO. 8 (Future or Standing Order Lifecycle):** Identify the software logic and interface triggers that dictate the lifecycle of a future or standing order once its

parent encounter file is signed and closed, and state whether closing an encounter affects active data transmission pathways to administrative scheduling queues.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Interrogatory as vague and ambiguous, including in its use of the undefined phrases "interface triggers," "lifecycle," "parent encounter file," "active data transmission pathways," and "administrative scheduling queues," and because it embeds the disputed factual premise — which Epic denies — that closing an encounter affects the transmission or handling of orders.

Epic further objects to this Interrogatory because it demands a narrative engineering description of order-management logic across Epic's software, which constitutes confidential, proprietary, and trade-secret information, and because the Interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case, being untethered to any product, module, version, environment, or time period relevant to this action.

Epic further objects to this Interrogatory as compound and as containing discrete subparts within the meaning of Rule 33(a)(1) and, counting discrete subparts as Rule 33(a)(1) requires, this Interrogatory — together with Plaintiff's First Interrogatories —

exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the architecture, design, configuration, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that this Interrogatory may be answered by documents produced in this matter. *See* Fed. R. Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**INTERROGATORY NO. 9 (Future Order Submission and Routing Logic):** Explain the user-interface, transactional, and routing logic that displays a visual confirmation to a physician that a future standing order is complete or submitted, including whether any transactional boundary, routing condition, queue failure, encounter-closure rule, or configuration setting can prevent that order from reaching administrative scheduling queues.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Interrogatory as argumentative and as assuming facts. Its second clause presupposes that orders fail to reach "administrative scheduling queues" and invites Epic to hypothesize mechanisms of failure — a disputed characterization of system behavior, drawn from the operative complaint, that Epic denies.

Epic further objects to this Interrogatory as vague and ambiguous, including in its use of the undefined phrases "transactional boundary," "routing condition," "queue failure," "encounter-closure rule," "configuration setting," and "administrative scheduling queues," and as compound and containing discrete subparts within the meaning of Rule 33(a)(1), inquiring across three categories of logic and five hypothesized failure conditions and, counting discrete subparts as Rule 33(a)(1) requires, this

Interrogatory — together with Plaintiff's First Interrogatories — exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to this Interrogatory because it demands a narrative engineering description of user-interface, transactional, and routing logic constituting confidential, proprietary, and trade-secret information, and because it is overbroad, unduly burdensome, and not proportional to the needs of the case, being untethered to any product, version, environment, or time period relevant to this action.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the architecture, design, configuration, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that this Interrogatory may be answered by documents produced in this matter. *See* Fed. R.

Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**INTERROGATORY NO. 10 (Medication Display Without Source Metadata):** Identify the core software logic, configuration logic, or data-validation rules that permit a medication to be displayed on the active Medication Administration Record, medication list, or medication reconciliation layout while omitting the original prescribing physician's name, credentials, or start/stop-date chronological metadata.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Interrogatory as argumentative and as assuming facts. The Interrogatory presupposes that medications are displayed "while omitting" prescriber and chronological metadata and that software logic "permit[s]" such omission — disputed characterizations of system behavior, drawn from the operative complaint, that Epic denies.

Epic further objects to this Interrogatory as a premature contention interrogatory to the extent it demands that Epic classify functionality as "core software logic,"

"configuration logic," or "data-validation rules" classifications bearing on the disputed allocation of design and configuration that is central to the merits of this action.

Epic further objects to this Interrogatory as compound and as containing discrete subparts within the meaning of Rule 33(a)(1), inquiring across three categories of logic, three display surfaces, and multiple metadata fields and, counting discrete subparts as Rule 33(a)(1) requires, this Interrogatory — together with Plaintiff's First Interrogatories — exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to the terms "core software logic," "configuration logic," and "data-validation rules" as well as the Interrogatory as whole as vague, ambiguous, overbroad, and not proportional to the needs of the case, being untethered to any product, version, environment, or time period relevant to this action, and because a description of display and validation logic constitutes confidential, proprietary, and trade-secret information.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation and operation of Epic's software and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's

confidential, proprietary, and trade-secret information and the confidential information of third parties.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that this Interrogatory may be answered by documents produced in this matter. *See* Fed. R. Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**INTERROGATORY NO. 11 (Epic-Controlled Architectural Boundaries):** Identify the database elements, data-validation loops, medication-status rules, order-routing rules, and presentation-layer rules within Epic Chronicles, M-Code, medication-management modules, and related Epic functionality that are system-controlled, vendor-controlled, hardcoded, or not customer-configurable by a hospital IT department.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of

which applies to this response as though fully set forth herein. Epic objects to this Interrogatory as a premature contention interrogatory of the most sweeping kind. It demands that Epic classify — element by element, across the entire Chronicles database, M-Code, and all medication-management functionality — which components are "system-controlled, vendor-controlled, hardcoded, or not customer-configurable." Those classifications go to the heart of disputed merits issues in this action, including issues presented in Epic's pending renewed motion to dismiss, and Epic objects to being required to marshal and commit to such characterizations at the outset of discovery. Courts in this District routinely defer contention discovery until discovery is substantially complete.

Epic further objects to this Interrogatory as grossly overbroad, unduly burdensome, and not proportional to the needs of the case under Rule 26(b)(1). An inventory of every database element, validation loop, status rule, routing rule, and presentation-layer rule across Epic's software, classified by locus of control, is not a task that can be performed in interrogatory form at all, let alone proportionately; the Interrogatory is untethered to any product, version, environment, or time period relevant to this action.

Epic further objects to this Interrogatory as vague and ambiguous, including in its use of the undefined and overlapping terms "database element," "validation loop," "status rule," "routing rule," "presentation-layer rule," "system-controlled," "vendor-

controlled," "hardcoded," "not customer-configurable by a hospital IT department," and "related Epic functionality," and as compound and containing numerous discrete subparts within the meaning of Rule 33(a)(1), five categories of components across four classifications and, counting discrete subparts as Rule 33(a)(1) requires, this Interrogatory — together with Plaintiff's First Interrogatories — exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to this Interrogatory because the architectural boundary information it seeks — including the internal structure of Epic Chronicles and M-Code — constitutes the most sensitive stratum of Epic's confidential, proprietary, and trade-secret information.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that this Interrogatory may be answered by documents produced in this matter. *See* Fed. R. Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**INTERROGATORY NO. 12 (System Upgrade and Support Rules):** State whether Epic's licensing, maintenance, support, or update agreements provide that if a hospital directly modifies the underlying database architecture, schema, core tables, or vendor-controlled portions of Epic Chronicles, Epic may void the software warranty, limit technical support, refuse to deploy standard system-wide updates, or require remediation before future support or updates are provided.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this

Interrogatory because it calls for legal conclusions. What Epic's contracts "provide" — and the circumstances under which any contractual right or remedy may be exercised — are questions of contractual interpretation; the agreements are the best evidence of their own terms, and Epic objects to characterizing them in narrative interrogatory form.

Epic further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, because it is directed to "Epic's licensing, maintenance, support, or update agreements" generally — across all customers, all agreements, and all time — rather than to any agreement relevant to this action, and because the terms of Epic's customer agreements are highly confidential commercial information, implicating the confidentiality interests of Epic's customers, including non-party UT Southwestern.

Epic further objects to this Interrogatory as a premature contention interrogatory to the extent it seeks to commit Epic to characterizations concerning the allocation of control over, and responsibility for, database architecture and configuration — disputed merits issues in this action — and as vague and ambiguous, including in its use of the undefined phrases "directly modifies," "vendor-controlled portions," "standard system-wide updates," and "require remediation."

Epic further objects to this Interrogatory as compound and as containing discrete subparts within the meaning of Rule 33(a)(1), inquiring across four categories of agreements, four categories of modification, and four categories of contractual

consequence and, counting discrete subparts as Rule 33(a)(1) requires, this Interrogatory — together with Plaintiff's First Interrogatories — exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that this Interrogatory may be answered by documents produced in this matter. *See* Fed. R. Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if

anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**INTERROGATORY NO. 13 (Prior Authorization Clinical Validation):** State whether Epic's core software logic, clinical decision support logic, or customer-configurable settings contain a validation rule that flags, suspends, requires review of, or forces clinical re-certification of a medication order if more than thirty (30) days elapse between initial provider order entry and final insurance, Medicare, or prior-authorization approval.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Interrogatory as a premature contention interrogatory to the extent it demands that Epic classify functionality as "core software logic," "clinical decision support logic," or "customer-configurable settings" — classifications bearing on the disputed allocation of design and configuration that is central to the merits of this action.

Epic further objects to this Interrogatory as vague and ambiguous, including in its use of the undefined phrases "validation rule," "flags, suspends, requires review of, or forces clinical re-certification," and "final insurance, Medicare, or prior-authorization approval," and as compound and containing discrete subparts within the meaning of Rule 33(a)(1) — three classifications of functionality crossed with four validation actions

— and, counting discrete subparts as Rule 33(a)(1) requires, this Interrogatory — together with Plaintiff's First Interrogatories — exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to this Interrogatory as overbroad and not proportional to the needs of the case, being untethered to any product, version, environment, or time period relevant to this action, and because a description of order-validation and clinical-decision-support logic constitutes confidential, proprietary, and trade-secret information.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Epic further objects to this Interrogatory because it assumes that the tracking of, and response to, medication-related deterioration occurs exclusively within an electronic health record system. Such activities may be carried out through non-Epic systems and tools, or through provider workflows outside any software system, and the Interrogatory

conflates the capabilities of Epic software with the manner in which a particular customer's internal processes and software systems were configured and operated — matters within the possession, custody, or control of UT Southwestern. Epic objects to the extent the Interrogatory seeks information not within Epic's possession, custody, or control.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that this Interrogatory may be answered by documents produced in this matter. *See* Fed. R. Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**INTERROGATORY NO. 14 (Off-Label and High-Risk Medication Alert Triggers):** Identify the core software logic, database elements, configuration settings, or Clinical Decision Support rules within Epic that govern the generation of off-label, high-risk, non-standard, or last-resort medication alerts, and state whether those alerts can be

suppressed, bypassed, or altered when a medication is ordered through a specialized transplant workflow, research protocol, or clinical trial tracking pathway.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case. It demands a narrative description of the alert-generation architecture of Epic's clinical-decision-support functionality across the system — untethered to any product, version, environment, or time period relevant to this action — together with an analysis of alert behavior across three categories of ordering pathways.

Epic further objects to this Interrogatory as argumentative and as assuming facts, including in its premise that alerts "can be suppressed, bypassed, or altered," and as vague and ambiguous, including in its use of the undefined phrases "off-label," "high-risk," "non-standard," "last-resort medication alerts," "specialized transplant workflow," and "clinical trial tracking pathway."

Epic further objects to this Interrogatory as a premature contention interrogatory to the extent it demands classification of functionality as "core software logic," "database elements," "configuration settings," or "Clinical Decision Support rules," and as compound and containing discrete subparts within the meaning of Rule 33(a)(1) and,

counting discrete subparts as Rule 33(a)(1) requires, this Interrogatory — together with Plaintiff's First Interrogatories — exceeds, or contributes to Plaintiff exceeding, the twenty-five interrogatories permitted, and Epic objects to answering interrogatories in excess of that limit.

Epic further objects to this Interrogatory because the alert logic and clinical-decision-support architecture it seeks to have described constitute confidential, proprietary, and trade-secret information.

Epic further objects to this Interrogatory because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Interrogatory unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Epic further objects to this Interrogatory because it assumes that the tracking of, and response to, medication-related deterioration occurs exclusively within an electronic health record system. Such activities may be carried out through non-Epic systems and tools, or through provider workflows outside any software system, and the Interrogatory conflates the capabilities of Epic software with the manner in which a particular

customer's internal processes and software systems were configured and operated — matters within the possession, custody, or control of UT Southwestern. Epic objects to the extent the Interrogatory seeks information not within Epic's possession, custody, or control.

Based on the foregoing objections, Epic provides no substantive answer to this Interrogatory at this time, and information responsive to this Interrogatory, to the extent any exists, is being withheld on the basis of the foregoing objections, including Epic's objection to responding in the absence of a protective order. Epic further responds that this Interrogatory may be answered by documents produced in this matter. *See* Fed. R. Civ. P. 33(d). If so and after the entry of a protective order, Epic will amend its response to so indicate. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will answer in response to this Interrogatory. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 32 (Order Routing Architecture):** Documents sufficient to show how future orders or standing orders are routed, stored, queued, displayed, and segregated across distinct encounter IDs within Epic Chronicles, including data-flow diagrams, technical specifications, implementation guidance, or architecture materials ordinarily available to Epic personnel, customers, implementers, or Technical Services personnel.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case under Rule 26(b)(1). It demands architectural documentation — data-flow diagrams, technical specifications, and architecture materials — of the order-routing and storage design of Epic Chronicles, without temporal limitation and without confinement to any product, module, version, or environment relevant to this action.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "segregated across distinct encounter IDs" and "materials ordinarily available to Epic personnel," and because its audience-based framing purports

to define the scope of production by reference to internal availability rather than to the claims and defenses in this action.

Epic further objects to this Request because the architectural documentation sought constitutes Epic's core confidential, proprietary, and trade-secret information.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 33 (Future Order Audit Logs):** Complete, unedited system metadata and transactional audit trail records, to the extent maintained, showing the backend status, routing path, queue status, and system-level handling of future clinical or lab orders generated during Dov Fischman's final relevant clinical encounters.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative, including in its demand for "[c]omplete, unedited" records — phrasing that insinuates, without basis, that Epic would edit or alter records — and as vague and ambiguous, including in its use of the undefined phrases "final relevant clinical encounters," "backend status," and "system-level handling."

Epic further objects to this Request because it seeks patient-level records, transactional data, and configuration data recorded and maintained in a production environment implemented, configured, and operated by UT Southwestern, a non-party. Such materials are, to the extent they exist, in the possession, custody, or control of UT Southwestern — from which Plaintiff has already sought discovery by subpoena — and are therefore obtainable from a source that is more convenient, less burdensome, and less expensive within the meaning of Rule 26(b)(2)(C)(i). Epic further objects because such

materials contain protected health information subject to HIPAA and other federal and state privacy laws.

Epic further objects to this Request as assuming facts, including the existence, character, and handling of particular orders during particular encounters — matters drawn from disputed allegations in the operative complaint.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Subject to and without waiving the foregoing objections, Epic responds: None.

**REQUEST FOR PRODUCTION NO. 34 (Encounter Closure Technical Specifications):** Documents sufficient to show the functional boundaries, file locks, routing rules, inheritance rules, and data segregation that occur when an outpatient encounter is finalized, closed, or archived, including technical manuals, M-Code documentation, configuration logic, engineering guidance, or data-flow documentation.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. While the Request claims to seek documents "sufficient to show" certain information, it then demands technical manuals, M-Code documentation, and engineering guidance concerning encounter-closure behavior across Epic's software, without temporal limitation and without confinement to any product, module, version, or environment relevant to this action.

Epic further objects to this Request because M-Code documentation, engineering guidance, and the internal technical specifications of Epic Chronicles constitute the most sensitive stratum of Epic's confidential, proprietary, and trade-secret information — materials functionally adjacent to source code.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "functional boundaries," "file locks," "routing rules," "inheritance rules," and "data segregation."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software,

and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 35 (Health Maintenance and Care Gap Transplant Configuration Materials):** Documents sufficient to show the technical limitations, configuration options, and customer-configurable boundaries of Epic Health Maintenance, Care Gap, transplant, medication-management, or follow-up tracking functionality when used for specialized transplant protocols or high-risk immunosuppressant monitoring.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. It demands documentation of the "technical limitations, configuration options, and customer-configurable boundaries" —all vague, undefined terms—of five broad categories of functionality, without temporal limitation and without confinement to any version or environment relevant to this action. Further, these documents have no relevance to this matter as Plaintiff has not alleged that UTSW used Epic Health Maintenance or Care Gap in its medical care for Dov Fischman.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "customer-configurable boundaries," "specialized transplant protocols," and "high-risk immunosuppressant monitoring," and to the extent it seeks documents characterizing the allocation of design and configuration — disputed merits issues in this action — in advance of meaningful discovery.

Epic further objects to this Request because the configuration and design documentation sought constitutes confidential, proprietary, and trade-secret information.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 36 (Medication Reconciliation Usability and Safety Materials):** Usability testing reports, clinician focus-group materials, hazard analyses, human-factors reviews, or documents sufficient to show how Epic evaluates whether providers can distinguish active medications from historical medications on

Medication Reconciliation, Medication Administration Record, medication list, or related medication-management screens.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. It contains no temporal limitation and demands internal evaluation materials — usability testing, focus-group materials, hazard analyses, and human-factors reviews — across four categories of screens and the entirety of Epic's medication-management functionality, together with documentation of Epic's internal evaluation methodology itself.

Epic further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the attorney work-product doctrine, including any analyses or reviews prepared in anticipation of or in connection with litigation, and to the extent it assumes the existence of documents of the kinds described.

Epic further objects to this Request because internal usability, human-factors, and design-evaluation materials constitute highly sensitive confidential, proprietary, and trade-secret information.

Epic further objects to this Request as seeking information unknown to Epic, as it seeks information about what "providers can distinguish."

Epic further objects to this Request because it seeks licensing, pricing, confidential, proprietary, and trade-secret information, including information concerning the architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 37 (Data Integrity Validation Rules):** Documents sufficient to show which medication data fields are mandatory, required, optional,

allowable as blank, or allowable as null before an entry can be rendered on a provider-facing medication screen, including data validation rules, entity-relationship diagrams, data dictionaries, or technical specifications governing Epic Chronicles and related medication-management functionality.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request because it targets the most sensitive stratum of Epic's confidential, proprietary, and trade-secret information. Entity-relationship diagrams, data dictionaries, field-level validation rules, and the technical specifications of Epic Chronicles are foundational design assets whose disclosure would reveal the internal structure of Epic's software in a manner functionally adjacent to source-code disclosure.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, being without temporal limitation and without confinement to any product, version, or environment relevant to this action, and as duplicative and cumulative of Request No. 31 of Plaintiff's First Set within the meaning of Rule 26(b)(2)(C)(i).

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined and overlapping terms "mandatory," "required," "allowable as blank,"

"allowable as null," "data validation rules," "entity-relationship diagrams," and "related medication-management functionality."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 38 (UI Layout Guidelines for Missing Medication Metadata):** Documents sufficient to show how Epic visually alerts, flags, suppresses, or

does not alert a provider when a displayed medication lacks critical safety metadata, including start dates, stop dates, prescribing provider names, provider credentials, medication status, or source encounter information.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative and as assuming facts. Its premise — that displayed medications "lack[] critical safety metadata" and that Epic "suppresses, or does not alert" providers — adopts disputed characterizations of system behavior, drawn from the operative complaint, that Epic denies, and its use of the term "critical safety metadata" embeds a disputed conclusion.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. While the Request claims to seek documents "sufficient to show" certain information, it actually seeks a litany of data without temporal limitation and without confinement to any product, version, or environment relevant to this action.

Epic further objects to this Request because user-interface design specifications and alerting logic constitute confidential, proprietary, and trade-secret information.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 39 (Medication Metadata and Timeline Sherlock Tickets):** Copies of Sherlock tickets, Nova tickets, client complaint logs, software patches, safety reports, or substantially similar records from 2021 to the present concerning missing start/stop dates, blank prescriber fields, ghost medications, medication timeline

confusion, active-versus-historical medication confusion, future-order routing failures, or orphaned orders.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as grossly overbroad, unduly burdensome, and not proportional to the needs of the case under Rule 26(b)(1). It demands an enterprise-wide search of Epic's customer-support and release-tracking repositories, across every customer and every product, spanning from 2021 "to the present" — a period that both predates and extends more than a year beyond the events at issue — for records matching seven vague and colloquial subject descriptions. The burden and expense of that undertaking vastly outweigh any likely benefit.

Epic further objects to this Request as vague, ambiguous, and argumentative, including in its use of the undefined and colloquial phrases "ghost medications," "medication timeline confusion," "active-versus-historical medication confusion," "future-order routing failures," and "orphaned orders," and in its premise — which Epic denies — that "future-order routing failures" occurred.

Epic further objects to this Request because customer-support records concern, identify, and contain the confidential and personal health information of Epic's

customers — non-parties whose support communications are maintained under confidentiality restrictions — as well as Epic's own confidential, proprietary, and trade-secret information.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 40 (Epic-Controlled Customization Boundaries):** Documents sufficient to identify which core database tables, medication layout rules, data models, user-interface frameworks, medication-status rules, order-routing rules, or system-controlled functions UT Southwestern was legally, technically, or operationally restricted from changing.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request because it demands, in document form, a premature merits contention. Which components of Epic's software UT Southwestern was "legally, technically, or operationally restricted from changing" is a disputed characterization at the center of this action — including of issues presented in Epic's pending renewed motion to dismiss — and no existing category of documents "identifies" that characterization; the Request in substance asks Epic to construct and commit to a classification of its architecture at the outset of discovery.

Epic further objects to this Request as grossly overbroad, unduly burdensome, and not proportional to the needs of the case, spanning seven categories of components across the entire system without temporal limitation, and as vague and ambiguous, including in its use of the undefined and overlapping phrases "legally, technically, or operationally

restricted," "system-controlled functions," and "user-interface frameworks." Because the term "legally" implies a legal determination which is not proper for discovery, to the extent Epic produces documents responsive to this Request, it will do so considering the word "legally" to mean "contractually." Further, Epic objects to the Request as it seeks documents regarding "operationally restricted" functions and that information would be in UTSW's custody and control, not Epic's.

Epic further objects to this Request because the architectural-boundary and licensing information it implicates constitutes Epic's confidential, proprietary, and trade-secret information as well as confidential information concerning Epic's contractual relationship with non-party UT Southwestern.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's

objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 41 (UT Southwestern Licensing and Customization Restrictions):** Copies of the sections, schedules, addenda, implementation terms, support terms, and related provisions in Epic's agreements with UT Southwestern that restrict reverse-engineering, modifying, decompiling, altering, or bypassing Epic's proprietary code, data models, user-interface frameworks, vendor-controlled logic, or core database architecture.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request because it seeks highly confidential commercial agreements between Epic and a non-party, containing negotiated business terms and competitively sensitive information, and implicating the confidentiality interests of UT Southwestern, whose interests are affected by any production.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case — including through the phrase "related provisions," which is without ascertainable limit, and through the absence of any temporal limitation — and as duplicative and cumulative of Request No. 15 of Plaintiff's First Set within the meaning of Rule 26(b)(2)(C)(i).

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "vendor-controlled logic" and "core database architecture," and to the extent it seeks to have contractual provisions characterized or selected by reference to disputed merits classifications of Epic's architecture.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no

substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 42 (Risk Allocation and Responsibility Provisions):** Copies of contractual provisions between Epic and UT Southwestern that allocate responsibility for clinical injury, patient-safety failures, software design limitations, configuration decisions, implementation decisions, medical-record accuracy, medication-record accuracy, order-routing failures, or adverse clinical outcomes, including indemnification, hold-harmless, warranty-disclaimer, limitation-of-liability, or substantially similar risk-allocation provisions.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as seeking information irrelevant to any claim or defense within the meaning of Rule 26(b)(1). The contractual allocation of risk between Epic and UT Southwestern — a non-party — does not bear on whether any Epic software is defective, or whether any alleged defect caused the death at issue; indemnification and risk-allocation provisions between

a defendant and a non-party are not insurance agreements subject to disclosure under Rule 26(a)(1)(A)(iv) and are collateral to the merits of Plaintiff's claims.

Epic further objects to this Request as argumentative and as assuming facts, including in its references to "patient-safety failures," "order-routing failures," and "adverse clinical outcomes" — characterizations Epic denies — and as vague and ambiguous, including in its use of the phrase "substantially similar risk-allocation provisions."

Epic further objects to this Request because it seeks highly confidential commercial terms negotiated between Epic and a non-party, implicating the confidentiality interests of both Epic and UT Southwestern, and as overbroad and without temporal limitation.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's

objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 43 (M-Code and Chronicles Architecture Boundaries):** Technical documentation, system architecture manuals, database administration guides, or documents sufficient to show the boundaries between vendor-controlled core code, vendor-controlled system logic, and customer-configurable files, templates, settings, display options, or workflows within Epic Chronicles, M-Code, and medication-management functionality.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request because it targets the most sensitive stratum of Epic's confidential, proprietary, and trade-secret information. System architecture manuals, database administration guides, and technical documentation delineating the internal structure of Epic Chronicles and M-

Code are foundational design assets whose disclosure would reveal Epic's software architecture in a manner functionally adjacent to source-code disclosure.

Epic further objects to this Request to the extent it demands, in document form, a premature merits contention: the delineation of "boundaries between vendor-controlled core code, vendor-controlled system logic, and customer-configurable" components is a disputed characterization central to this action, including to issues presented in Epic's pending renewed motion to dismiss, and Epic objects to being required to construct or commit to such a delineation at the outset of discovery.

Epic further objects to this Request as grossly overbroad, unduly burdensome, and not proportional to the needs of the case, being without temporal limitation and spanning the entire system, and as vague and ambiguous, including in its use of the undefined and overlapping phrases "vendor-controlled core code" and "vendor-controlled system logic."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a

protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 44 (UT Southwestern Change Request and Resolution Logs):** Copies of correspondence, emails, Sherlock tickets, Nova tickets, support tickets, implementation tickets, Technical Services tickets, escalation records, or substantially similar records where UT Southwestern requested changes, fixes, patches, configuration guidance, or workarounds concerning medication timelines, medication reconciliation, medication metadata, future orders, standing orders, order routing, encounter closure, or patient-record fragmentation, and where Epic denied, deferred, restricted, escalated, closed, or otherwise responded to those requests.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the

Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case under Rule 26(b)(1). It contains no temporal limitation, spans eight broad subject-matter categories, and demands every form of support communication with a single customer over the life of a relationship spanning many years, together with all internal handling of each such communication. Epic further objects because the eight subject-matter categories listed in this Request have no connection to the software Plaintiff complains about in her pleading as being used in decedent's care at UTSW.

Epic further objects to this Request as argumentative and as assuming facts, including in its use of the phrase "patient-record fragmentation" — a disputed characterization drawn from the operative complaint that Epic denies — and in its framing of Epic's support responses as instances where Epic "denied, deferred, [or] restricted" customer requests.

Epic further objects to this Request because support communications with UT Southwestern, a non-party, are confidential to both Epic and its customer and contain Epic's confidential, proprietary, and trade-secret information, including the personal health information of Epic's customers, and to the extent responsive materials are equally within the possession, custody, or control of UT Southwestern, from which Plaintiff has already sought discovery by subpoena.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 45 (Epic Internal Ticket Triage and Technical Services Activity):** For tickets responsive to the preceding Request, produce internal Epic triage notes, assignment records, Technical Services notes, analyst notes, engineer notes, testing notes, reproduction steps, priority classifications, severity classifications,

escalation records, workaround recommendations, closure notes, and documents sufficient to identify the Epic personnel who reviewed, tested, escalated, deprioritized, closed, or deferred the issue.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request because it is defined entirely by cross-reference to Request No. 44 and therefore incorporates and compounds each of the defects of that Request, including its lack of temporal limitation, its breadth, and its argumentative premises.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. It demands thirteen categories of internal work records — triage notes, engineering notes, testing notes, reproduction steps, and classification records — for an unbounded universe of support tickets, together with the identification of every Epic employee who touched each ticket, and its framing of Epic personnel as having "deprioritized" or "deferred" issues is argumentative. Epic further objects because the information sought in this Request has no connection to the software Plaintiff complains about in her pleading as being used in decedent's care at UTSW.

Epic further objects to this Request because internal engineering, triage, and support-analysis records constitute confidential, proprietary, and trade-secret

information, and to the extent it seeks documents protected by the attorney-client privilege or the attorney work-product doctrine.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 46 (Epic Training Materials for Medication Reconciliation and Future Orders):** Epic-authored user-training videos, walkthroughs,

interactive modules, user manuals, implementation guidance, or UserWeb materials provided or made available to UT Southwestern concerning medication reconciliation across multiple encounters or tracking and scheduling future orders or standing orders after an encounter is finalized.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, being without temporal limitation and encompassing every training and guidance artifact — in every medium — made available to a customer over the life of a relationship spanning many years, and as duplicative and cumulative of Request No. 25 of Plaintiff's First Set within the meaning of Rule 26(b)(2)(C)(i).

Epic further objects to this Request because Epic's training materials, user manuals, implementation guidance, and UserWeb materials are confidential, proprietary, and trade-secret materials made available to customers only under contractual confidentiality restrictions.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "provided or made available," "medication reconciliation across multiple encounters," and "after an encounter is finalized."

Epic further objects to this Request as overly broad and seeking irrelevant information because Plaintiff has not pleaded a claim for failure to warn or any other type of claim regarding training. Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 47 (Medication Screen View-State Configuration):** A digital copy of the View State, layout configuration file, build record, profile setting, or other configuration data, to the extent maintained, that dictated how medication row entries were sorted, hidden, filtered, or displayed on the medication list, Medication Administration Record, or medication reconciliation layout viewed by the clinical team during the relevant encounters.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as vague and ambiguous, including in its use of the undefined phrases "the relevant encounters," "the clinical team," and "View State," and as argumentative to the extent its use of "hidden" and "filtered" adopts disputed characterizations of system behavior that Epic denies.

Epic further objects to this Request because it seeks build records, profile settings, and configuration data specific to screens viewed by particular providers recorded and maintained in a production environment implemented, configured, and operated by UT Southwestern, a non-party. Such materials are, to the extent they exist, in the possession, custody, or control of UT Southwestern — from which Plaintiff has already sought discovery by subpoena — and are therefore obtainable from a source that is more

convenient, less burdensome, and less expensive within the meaning of Rule 26(b)(2)(C)(i). Epic further objects because such materials contain protected health information subject to HIPAA and other federal and state privacy laws.

Epic further objects to this Request because configuration data and build records reflecting the structure of an Epic environment constitute confidential, proprietary, and trade-secret information of Epic and confidential information of UT Southwestern.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if

anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 48 (Medication Timeline Display Specifications):** Documents sufficient to show how Epic displays conflicting, inconsistent, historical, discontinued, or active medication timelines on the same screen, including user-experience wireframes, screen-rendering specifications, configuration guides, human-factors reviews, hazard analyses, or rules governing when the system triggers or does not trigger an alert, warning, hard stop, or reconciliation action.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative and as assuming facts, including in its premise that Epic "displays conflicting, inconsistent" medication timelines "on the same screen" — a disputed characterization of system behavior, drawn from the operative complaint, that Epic denies.

Epic further objects to this Request as vague, ambiguous, and calling for clinical judgment, including in its use of the undefined phrases "conflicting" or "inconsistent" "medication timelines."

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, being without temporal limitation and without confinement to any product, version, or environment relevant to this action, and demanding six categories of design documentation together with system-wide alerting rules.

Epic further objects to this Request because user-experience wireframes, screen-rendering specifications, human-factors reviews, and alerting logic constitute confidential, proprietary, and trade-secret information, and to the extent any hazard analyses or reviews were prepared in anticipation of or in connection with litigation, they are protected by the attorney-client privilege or the attorney work-product doctrine.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's

objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 49 (Medication Reconciliation Module Architecture):** Internal technical specifications, design reviews, engineering evaluations, hazard analyses, human-factors reviews, or documents sufficient to show whether the Epic Medication Reconciliation Module requires an affirmative, manual clinical reconciliation during transitions of care or after delayed medication approval, prior authorization, discontinued medication status, or medication-status conflict.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. It contains no temporal limitation and demands internal technical specifications, design reviews, and engineering evaluations of an entire module, across five triggering scenarios, without confinement to any version or environment relevant to this action.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "affirmative, manual clinical reconciliation," "transitions of care," "delayed medication approval," "discontinued medication status," and "medication-status conflict."

Epic further objects to this Request because internal design reviews, engineering evaluations, and technical specifications constitute highly sensitive confidential, proprietary, and trade-secret information, and to the extent any analyses or reviews were prepared in anticipation of or in connection with litigation, they are protected by the attorney-client privilege or the attorney work-product doctrine.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no

substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 50 (Immunosuppressant Data Conflict Reports):** Sherlock tickets, Nova tickets, client complaints, safety reports, or substantially similar records from 2021 to the present where healthcare systems reported overlap, visual confusion, missing metadata, delayed activation, inconsistent status, or difficulty distinguishing active versus historical transplant medications, immunosuppressants, mTOR inhibitors, calcineurin inhibitors, or high-risk medications.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as grossly overbroad, unduly burdensome, and not proportional to the needs of the case under Rule 26(b)(1). Like Request No. 39 — of which it is substantially duplicative and cumulative within the meaning of Rule 26(b)(2)(C)(i) — it demands an enterprise-wide search of Epic's customer-support repositories, across every customer, spanning from 2021 "to the present," a period that both predates and extends more than a year beyond

the events at issue, for records matching six vague subject descriptions crossed with five medication categories. This Request seeks irrelevant information that is untethered to the factual allegations in Plaintiff's Complaint.

Epic further objects to this Request as vague, ambiguous, and argumentative, including in its use of the undefined phrases "visual confusion," "delayed activation," and "inconsistent status," and in its premise that such conditions occurred or were reported.

Epic further objects to this Request because customer-support records concern, identify, and contain the confidential information of Epic's customers — non-parties whose support communications are maintained under confidentiality restrictions — as well as Epic's own confidential, proprietary, and trade-secret information.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 51 (CMV and Transplant Medication Alert Logic):** Documents sufficient to show how donor/recipient serostatus data, transplant-module data, immunosuppressant orders, antiviral discontinuation workflows, pharmacy discontinuation workflows, and Clinical Decision Support alerts interface within Epic transplant, pharmacy, and medication-management functionality.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. It demands documentation of how six categories of data and workflows "interface" across three domains of functionality — in substance, the integration architecture of Epic's

transplant, pharmacy, and medication-management functionality — without temporal limitation and without confinement to any version or environment relevant to this action. This Request seeks irrelevant information, as, for example, there is no allegation that Epic's transplant module or functionality is at issue or was used in the care of decedent.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "interface within," "antiviral discontinuation workflows," and "transplant-module data."

Epic further objects to this Request because integration architecture, clinical-decision-support logic, and module-interface documentation constitute confidential, proprietary, and trade-secret information.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's

objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 52 (TDM Dosage Increase Audit Trail):** Complete, unedited system metadata, transaction receipts, alert records, and screen-rendering logs, to the extent maintained, for the medication adjustment order that increased Dov Fischman's Everolimus dosage, showing what baseline data fields, medication-status information, source metadata, or historical timeline warnings were visible to the ordering provider when the increase was authorized.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative — including in its demand for "[c]omplete, unedited" records, phrasing that insinuates, without basis, that Epic would edit or alter records — and as assuming facts, including the existence and characterization of a particular "medication adjustment

order," the circumstances of its authorization, and what was "visible to the ordering provider," all of which are disputed matters drawn from the operative complaint.

Epic further objects to this Request because it seeks patient-level records, transactional data, and configuration data recorded and maintained in a production environment implemented, configured, and operated by UT Southwestern, a non-party. Such materials are, to the extent they exist, in the possession, custody, or control of UT Southwestern — from which Plaintiff has already sought discovery by subpoena — and are therefore obtainable from a source that is more convenient, less burdensome, and less expensive within the meaning of Rule 26(b)(2)(C)(i). Epic further objects because such materials contain protected health information subject to HIPAA and other federal and state privacy laws.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "screen-rendering logs," "baseline data fields," and "historical timeline warnings."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a

protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 53 (Prior Authorization Timestamp and Workflow Audit Logs):** Complete, unedited transactional metadata, workflow tracking audit trails, order-status records, prior-authorization records, and medication-order lifecycle records, to the extent maintained, for the prior-authorization lifecycle of the disputed immunosuppressant drug, including records showing when the order was entered, held, dormant, approved, activated, released, routed, or reconciled, and whether the system prompted a medication reconciliation check before or after final approval.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of

which applies to this response as though fully set forth herein. Epic objects to this Request as vague and ambiguous, including in its use of the undefined phrases "the disputed immunosuppressant drug," "prior-authorization lifecycle," and "medication-order lifecycle records," and as argumentative in its demand for "[c]omplete, unedited" records. Epic further objects to this Request as seeking information outside of Epic's possession, custody, and control regarding matters specific to the care of decedent at issue, including information regarding "the disputed immunosuppressant drug."

Epic further objects to this Request because it seeks patient-level records, transactional data, and configuration data recorded and maintained in a production environment implemented, configured, and operated by UT Southwestern, a non-party. Such materials are, to the extent they exist, in the possession, custody, or control of UT Southwestern — from which Plaintiff has already sought discovery by subpoena — and are therefore obtainable from a source that is more convenient, less burdensome, and less expensive within the meaning of Rule 26(b)(2)(C)(i). Epic further objects because such materials contain protected health information subject to HIPAA and other federal and state privacy laws.

Epic further objects to this Request as assuming facts, including the existence, status history, and handling of a particular order and the operation of reconciliation prompts in a particular environment — disputed matters drawn from the operative complaint.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 54 (Clinical Trial Database and Pharmacy Interface Documentation):** Software integration guides, data dictionaries, entity-relationship diagrams, interface specifications, and data-mapping documents sufficient to show how Epic's standard inpatient pharmacy formulary interface, transplant

workflows, medication-management functionality, and specialized research-protocol or clinical-trial databases map to, exchange data with, or remain segregated from each other.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request because it targets the most sensitive stratum of Epic's confidential, proprietary, and trade-secret information — data dictionaries, entity-relationship diagrams, and interface specifications whose disclosure would reveal the internal structure of Epic's software in a manner functionally adjacent to source-code disclosure.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, being without temporal limitation and without confinement to any version or environment relevant to this action, and as vague and ambiguous, including in its use of the undefined phrases "standard inpatient pharmacy formulary interface" and "specialized research-protocol or clinical-trial databases." Epic further objects to this Request as seeking information not relevant to the claims pleaded by Plaintiff and outside of Epic's possession, custody, and control, such as "clinical trial databases." Epic further objects to this Request to the extent it is duplicative and cumulative of Request No. 23 of Plaintiff's First Set within the meaning of Rule 26(b)(2)(C)(i).

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 55 (Sepsis and Final Diagnosis Cross-Mapping Specifications):** Documents sufficient to show how Epic integrates clinical Problem Lists, bedside diagnoses, encounter diagnoses, discharge diagnoses, death-related diagnoses, and financial billing codes, specifically including whether and how a financial billing

code can override, supplant, prioritize, or alter a physician's active bedside diagnosis of sepsis on final summary documents.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative and as assuming facts. Its central premise — that "a financial billing code can override, supplant, prioritize, or alter a physician's active bedside diagnosis of sepsis" — is a disputed characterization of system behavior, that is not pleaded in the operative complaint. The Request invites Epic to document a phenomenon that has never been alleged to have occurred.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, demanding documentation of the integration of six categories of diagnosis and coding data across the system, without temporal limitation and without confinement to any version or environment relevant to this action.

Epic further objects to this Request because diagnosis-integration and coding-workflow architecture constitutes confidential, proprietary, and trade-secret information, and as vague and ambiguous, including in its use of the undefined phrases "death-related diagnoses" and "final summary documents."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 56 (Deceased Patient Workflow Diagnosis Selection Logs):** Complete, unedited metadata, system logs, audit trails, diagnosis-selection records, coding workflow records, and transaction records, to the extent maintained, for the Deceased Patient workflow used during Dov Fischman's final

encounter, showing which automated billing algorithms, user inputs, diagnosis-selection rules, coding workflows, or system rules selected, displayed, prioritized, exported, or caused Hodgkin's Lymphoma / PTLD to appear as the primary diagnosis code for the final record.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative and as assuming facts, including in its demand for "[c]omplete, unedited" records and in its premise that "automated billing algorithms" or "system rules" "caused Hodgkin's Lymphoma / PTLD to appear as the primary diagnosis code" — a disputed characterization of events in a non-party's environment, drawn from the operative complaint, that Epic denies.

Epic further objects to this Request because it seeks patient-level records, transactional data, and configuration data recorded and maintained in a production environment implemented, configured, and operated by UT Southwestern, a non-party. Such materials are, to the extent they exist, in the possession, custody, or control of UT Southwestern — from which Plaintiff has already sought discovery by subpoena — and are therefore obtainable from a source that is more convenient, less burdensome, and less expensive within the meaning of Rule 26(b)(2)(C)(i). Epic further objects because such

materials contain protected health information subject to HIPAA and other federal and state privacy laws.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "coding workflow records," "Deceased Patient workflow," "diagnosis-selection rules," "Dov Fischman's final encounter," and "the final record."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if

anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 57 (ROI and Print Engine Technical Materials):** Documents sufficient to show how Epic's Release of Information and printing modules filter, hide, exclude, strip, omit, or include appointment tracking data, encounter data, medication data, diagnosis data, MyChart data, or provider-facing fields when generating printed or exported medical records.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative, including in its framing of Release of Information functionality as designed to "filter, hide, exclude, strip, [or] omit" patient data — a disputed characterization, drawn from the operative complaint, that Epic denies. Epic further objects to this Request as seeking irrelevant information, as no allegations regarding Epic's Release of Information software or functionality are at issue in Plaintiff's operative complaint.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, demanding documentation of the export and printing architecture of Epic's Release of Information functionality across six categories

of data, without temporal limitation and without confinement to any version or environment relevant to this action.

Epic further objects to this Request because export, filtering, and rendering logic constitutes confidential, proprietary, and trade-secret information.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 58 (ROI Transaction and Export Logs):** Complete, unedited system metadata and transaction receipts, to the extent maintained, for the February and April record extraction requests, specifically capturing database filters, user exclusions, system holds, system locks, export settings, or workflow conditions that caused or contributed to Dov Fischman's November and December clinical records being omitted from the February printout.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative and as assuming facts. Its premise — that "database filters, user exclusions, system holds, system locks, export settings, or workflow conditions . . . caused or contributed to" records "being omitted" from a printout — is a disputed characterization of events in a non-party's environment, that Epic denies, and its demand for "[c]omplete, unedited" records is likewise argumentative.

Epic further objects to this Request because it seeks patient-level records, transactional data, and configuration data recorded and maintained in a production environment implemented, configured, and operated by UT Southwestern, a non-party. Such materials are, to the extent they exist, in the possession, custody, or control of UT Southwestern — from which Plaintiff has already sought discovery by subpoena — and

are therefore obtainable from a source that is more convenient, less burdensome, and less expensive within the meaning of Rule 26(b)(2)(C)(i). Epic further objects because such materials contain protected health information subject to HIPAA and other federal and state privacy laws.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "the February and April record extraction requests" — which identify neither a year, a requester, nor a system — "the February printout, " and "Dov Fischman's November and December clinical records."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this

time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 59 (Patient-Facing and Print-View Field Comparison):** A complete system-level comparison report, database schema, field map, or documents sufficient to identify the data fields extracted for the patient-facing MyChart view versus the fields extracted for the physical print view or Release of Information export during Dov Fischman's final relevant encounters.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request because it exceeds the scope of Rule 34 to the extent it demands that Epic create "[a] complete system-level comparison report" — a document that does not exist. Rule 34 requires the production of existing documents within a party's possession, custody, or control; it does not obligate a party to generate analyses, compilations, or comparison reports for its adversary.

Epic further objects to this Request because it seeks extraction records and field-level data concerning particular encounters recorded and maintained in a production

environment implemented, configured, and operated by UT Southwestern, a non-party. Such materials are, to the extent they exist, in the possession, custody, or control of UT Southwestern — from which Plaintiff has already sought discovery by subpoena — and are therefore obtainable from a source that is more convenient, less burdensome, and less expensive within the meaning of Rule 26(b)(2)(C)(i). Epic further objects to these materials as irrelevant as they are not at issue in Plaintiff's complaint. Epic further objects because such materials contain protected health information subject to HIPAA and other federal and state privacy laws.

Epic further objects to this Request because database schemas and field maps constitute Epic's confidential, proprietary, and trade-secret information, and as vague and ambiguous, including in its use of the undefined phrase "final relevant encounters."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 60 (Entity-Relationship Diagrams and Schema Maps):** Entity-relationship diagrams, data dictionary schemas, database maps, technical specifications, or documents sufficient to identify how the Patient MRN maps, inherits values, or restricts data-cascading updates to Contact Serial Numbers or Encounter IDs regarding the Medication Administration Record, medication lists, order tables, flowsheet modules, diagnosis fields, and Release of Information exports.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request because it targets the most sensitive stratum of Epic's confidential, proprietary, and trade-secret information. Entity-relationship diagrams, data dictionary schemas, and database

maps of Epic Chronicles are foundational design assets whose disclosure would reveal the internal structure of Epic's software in a manner functionally adjacent to source-code disclosure, and no protections currently exist in this action that could begin to address the resulting risk of irreparable competitive harm.

Epic further objects to this Request as grossly overbroad, unduly burdensome, and not proportional to the needs of the case, demanding schema-level documentation across six categories of records and modules without temporal limitation, and as duplicative and cumulative of Request No. 31 of Plaintiff's First Set and Request No. 37 of this Second Set within the meaning of Rule 26(b)(2)(C)(i).

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "inherits values," "restricts data-cascading updates," and "flowsheet modules."

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 61 (Inter-Facility Medication Continuity Data Maps):** Documents sufficient to show how Epic package-bundles medication lists for electronic export to non-Epic facility databases, including Care Everywhere transfer rules, interoperability documentation, interface schema maps, and system logic that appends, suppresses, distinguishes, or fails to distinguish unreconciled historical medications from active discharge-summary medications.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as argumentative and as assuming facts, including in its premise that Epic's export logic "suppresses . . . or fails to distinguish unreconciled historical medications from active

discharge-summary medications" — a disputed characterization of system behavior, that Epic denies.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, demanding interoperability documentation and interface schema maps for Epic's inter-facility export functionality across the system, without temporal limitation and without confinement to any version or environment relevant to this action. Epic further objects to this Request as seeking irrelevant information not tethered to the issues in this matter, including information regarding "non-Epic facility databases."

Epic further objects to this Request as vague and ambiguous, including its use of undefined terms "interface schema maps," and "system logic" that "appends, suppresses, distinguishes, or fails to distinguish unreconciled historical medications from active discharge-summary medications."

Epic further objects to this Request because interoperability architecture, transfer rules, and interface schema maps constitute confidential, proprietary, and trade-secret information whose disclosure would additionally implicate the security of data exchange among health-care institutions.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software,

and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 62 (Medication Discontinuation and Global Profile UI Logic):** Documents sufficient to show the visual, technical, or configuration distinction between a localized encounter stop order and a global medication-profile deletion, including how overlapping row entries are displayed on standard nursing, Medication Administration Record, medication reconciliation, provider medication-list, and patient-facing medication interfaces.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as vague and ambiguous, including in its use of the undefined phrases "localized encounter stop order," "global medication-profile deletion," and "overlapping row entries" — vocabulary drawn from the operative complaint rather than from Epic's software — and as assuming facts, including the premise that "overlapping row entries" are displayed on the interfaces described.

Epic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, demanding display-logic documentation across five categories of interfaces, without temporal limitation and without confinement to any version or environment relevant to this action. Epic further objects to this Request as seeking irrelevant information not at issue in this matter, including nursing records and stop orders.

Epic further objects to this Request because user-interface design specifications and display logic constitute confidential, proprietary, and trade-secret information.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software,

and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

**REQUEST FOR PRODUCTION NO. 63:** Documents, to the extent not already requested in Plaintiff's First Set of Discovery, sufficient to show formal executive-level authorizations, sign-offs, risk-assessment evaluations, product-release approvals, or product-safety certifications by Epic corporate officers, executive directors, chief medical officers, or other senior personnel from 2021 to the present concerning the baseline software design, release, maintenance, or continued use of EpicCare, Willow Pharmacy, medication reconciliation, medication-list display, medication-status logic, encounter-

based data structure, or order-routing functionality. This Request is limited to materials concerning medication timeline fragmentation, active-versus-historical medication display, encounter-based data siloing, medication reconciliation, or related customer complaints, engineering alerts, safety reviews, support escalations, or internal risk assessments concerning the issues addressed in the Court's June 8, 2026 Order.

**RESPONSE:** Epic incorporates by reference its Preliminary Statement, its General Objections, and its objections to the "Notice of Integration," "Clarification of the Discovery Scope," Definitions, and instructions incorporated into this Second Set, each of which applies to this response as though fully set forth herein. Epic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case under Rule 26(b)(1). It spans from 2021 "to the present" — a period that both predates and extends more than a year beyond the events at issue — and demands a search of executive-level files across multiple product lines and five categories of functionality for five categories of governance documents, together with all "related" complaints, alerts, reviews, escalations, and assessments; its purported limitation is itself defined by vague and argumentative subject descriptions.

Epic further objects to this Request as argumentative and as assuming facts, including in its use of the phrases "medication timeline fragmentation" and "encounter-based data siloing" — disputed characterizations drawn from the operative complaint

that Epic denies — and in its assumption that documents of the kinds described, including "product-safety certifications" by "corporate officers," exist.

Epic further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the attorney work-product doctrine, including risk assessments and evaluations prepared in anticipation of or in connection with litigation, and because internal governance, release-approval, and risk-assessment materials constitute highly sensitive confidential, proprietary, and trade-secret information.

Epic further objects to this Request as vague and ambiguous, including in its use of the undefined phrases "EpicCare," "formal executive-level authorizations," "baseline software design," and "substantially similar" categories of "related" materials, and to the extent its cross-reference to "the issues addressed in the Court's June 8, 2026 Order" fails to identify the documents sought with reasonable particularity as Rule 34(b)(1)(A) requires.

Epic further objects to this Request because it seeks confidential, proprietary, and trade-secret information, including information concerning the licensing, pricing, architecture, design, configuration, implementation, and operation of Epic's software, and no protective order has been entered in this action. Epic is seeking entry of an appropriate protective order, and Epic will not provide any substantive response to this Request, and will not produce any documents, unless and until the Court enters a

protective order adequate to safeguard Epic's confidential, proprietary, and trade-secret information and the confidential information of third parties.

Pursuant to Rule 34(b)(2)(C), Epic states that responsive documents, to the extent any exist, are being withheld on the basis of the foregoing objections, including Epic's objection to producing documents in the absence of a protective order. Epic provides no substantive response and will produce no documents in response to this Request at this time. Epic further notes that this Request may become wholly irrelevant if the Court dismisses Plaintiff's gross negligence claim, which is currently before the Court in Epic's Motion to Dismiss the Second Amended Complaint. Within thirty days after entry of an appropriate protective order, Epic will serve amended responses stating, subject to and without waiving its objections, what if anything it will produce in response to this Request. Epic reserves the right to supplement or amend this response pursuant to Rule 26(e).

Dated: July 21, 2026

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
State Bar No. 24051315
cschwegmann@lynnllp.com
Jessica D. Cox
State Bar No. 24114769
jcox@lynnllp.com
Madelyn C. Stanley
State Bar No. 24121529
mstanley@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANT EPIC SYSTEMS CORPORATION**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2026, a true and correct copy of the foregoing Defendant Epic Systems Corporation's Objections and Responses to Plaintiff's Second Set of Interrogatories and Second Requests for Production was served on Plaintiff Gallit Fischman, pro se, via electronic mail at gallitfischman@yahoo.com in accordance with the parties' Rule 26(f) agreement.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann