IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. |
| EPIC SYSTEMS CORPORATION, | § | 3:26-CV-0770-D |
| Defendant. | § | |

**USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

Plaintiff discloses that generative artificial intelligence was used to assist in preparing this brief, consistent with Local Rule 7.2(f).

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CASE MANAGEMENT REGARDING THRESHOLD ISSUE OF CONTROL**

---

Plaintiff respectfully submits this Reply in support of Plaintiff's Motion for Case Management to Resolve the Threshold Issue of Who Implemented the UTSW Epic System.

Plaintiff's Motion presents one factual question: *Did Epic perform the initial implementation of the Epic system at UT Southwestern?* Epic responded with nineteen pages of briefing, more than one hundred pages of discovery materials, and annotated correspondence without answering that question.

**I. PLAINTIFF'S MOTION SEEKS RULE 16 CASE MANAGEMENT, NOT AN ORDER COMPELLING DISCOVERY**

Epic's characterization of Plaintiff's Motion as one to compel ignores the relief requested. A motion is determined by its substance rather than its label. *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc); *Armstrong v. Capshaw, Goss & Bowers, LLP*,

404 F.3d 933 (5th Cir. 2005). That principle supports Plaintiff. Plaintiff does not seek to compel a response to Interrogatory No. 1 as served. Plaintiff asks the Court to resolve one factual issue for case-management purposes: whether Epic performed the initial implementation of the UTSW Epic system and, if not, who did.

Epic itself recognizes the distinction. Its Response emphasizes that Interrogatory No. 1 sought broader information and argues that the question presented by this Motion is not the interrogatory as served. Epic cannot emphasize that distinction when discussing Interrogatory No. 1 while disregarding it to characterize this Motion as one to compel. The relief requested is not an order compelling compliance with Interrogatory No. 1.

Rule 16 supplies the authority Plaintiff invokes. Its purposes include expediting disposition, preventing protracted litigation, and discouraging wasteful pretrial activity. Fed. R. Civ. P. 16(a). The Fifth Circuit recognizes Rule 16's case-management framework, including the Court's authority to formulate and simplify issues under Rule 16(c)(2)(A). *Bye v. MGM Resorts International, Inc.*, 49 F.4th 918 (5th Cir. 2022). That authority permits the Court to simplify the issues here by resolving the identity of the initial implementer.

Epic has now confirmed that it will provide its implementation role and identify any third party that performed part of that work after entry of a protective order. The dispute is therefore not whether Epic will provide the information, but whether this discrete factual issue must remain unresolved while the separate protective-order dispute proceeds and Epic's additional thirty-day response period runs. Epic argues that the answer would narrow nothing, yet the significance of an undisclosed fact cannot be determined before it is known. The answer may determine what further discovery, if any, is necessary.

Epic's reliance on Rule 26(d)(3) does not change the analysis. Plaintiff does not ask the Court to stay Epic's discovery, establish a general discovery sequence, or, as Epic characterizes

the Motion, "suspend everything else" until the implementation question is answered. Nothing in the requested relief prevents either party from otherwise proceeding under the Scheduling Order. Nor does the Motion reverse Plaintiff's position in the Joint Scheduling Proposal. Plaintiff opposed Epic's proposed structure, not phased discovery itself, and the Court adopted neither proposal. This Motion asks only that the Court exercise its Rule 16 authority to resolve a discrete issue without disturbing the Scheduling Order.

Rule 7(b)(1) reinforces that distinction by requiring a motion to state with particularity its grounds and requested relief. The Local Rules confine discovery materials submitted with motions to those actually in dispute or relied upon. Fed. R. Civ. P. 7(b)(1); N.D. Tex. L. Civ. R. 5.2(c), (d). Plaintiff's Motion placed one narrow case-management issue before the Court. Epic's introduction of collateral discovery disputes does not transform the relief Plaintiff requested.

Resolving the initial implementation question establishes the factual premise from which the Court and the parties can determine what follows. If Epic did not perform the initial implementation, the identity of the entity that did becomes known. If Epic did, that fact becomes known. The Court can then determine the significance of the answer and what further discovery, if any, is necessary. Continued deferral accomplishes none of those purposes.

## II. EPIC'S "EVERYTHING-BUT-THE-KITCHEN-SINK" RESPONSE OBSCURES A STRAIGHTFORWARD THRESHOLD QUESTION

Plaintiff first sought Epic's implementation role through ordinary discovery. Epic objected and provided no substantive answer. Plaintiff therefore sought case-management relief after ordinary discovery failed to resolve the threshold issue promptly. Epic's Response confirms that the answer will remain withheld through resolution of the separate protective-order dispute and the additional response period Epic proposes.

Epic relies on *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D (N.D. Tex. Apr. 15, 2022) (Fitzwater, J.). *Hunsinger* involved a motion to compel discovery that appeared on its face to substantially exceed Rule 26(b)(1). It did not address Rule 16 case-management relief directed to a threshold issue. Its treatment of an actual motion to compel does not resolve the different question presented here.

Epic also relies on the placement of implementation materials in the third phase of Plaintiff's UTSW subpoena to suggest that Plaintiff did not previously regard implementation as a threshold issue. The premise does not follow. The subpoena governed the sequence of production from a third party; it did not rank the substantive importance of issues between Plaintiff and Epic. Indeed, the subpoena explained that staging production was intended to permit information obtained in earlier phases to make later collection more targeted or less burdensome. Plaintiff had separately sought Epic's implementation role directly from Epic. The organization of a third-party production request therefore does not establish that Plaintiff considered the identity of the initial implementer unimportant or non-threshold.

Epic further expands the Response through the medical-record dispute. Epic states that it does not ask the Court to resolve that dispute through this Motion, yet briefs the issue and requests an order directing Plaintiff to respond to separate discovery concerning it. Epic cannot disclaim seeking resolution of a dispute while simultaneously requesting affirmative relief on it. Those matters have their own procedural records and must be addressed, if necessary, through the procedures applicable to them.

Epic's Response takes an "everything-but-the-kitchen-sink" approach to a question that could have been answered directly. It imports arguments from separate matters whose briefing records are already closed, effectively giving Epic a sur-reply on those matters through a Response directed to a different Motion. Plaintiff's decision not to litigate those separate disputes

in this Reply does not waive or concede any position concerning them. The Court should disregard Epic's arguments and deny its alternative request for affirmative discovery relief.

None of this motion practice was necessary. Epic could have identified whether it performed the initial implementation of the UTSW Epic system before Plaintiff filed the Motion or in its Response. Instead, a discrete factual question has generated extensive briefing while the answer remains withheld, consuming the Court's time and the parties' resources.

## III. EPIC ASSIGNS RESPONSIBILITY TO THE INTERMEDIARY WHILE THE IMPLEMENTATION PARTNER REMAINS UNIDENTIFIED

Epic attributes the condition of the UTSW system to the hospital's configuration and use without establishing who performed or controlled that implementation. This continues a position Epic advanced at the outset of this litigation. In its first motion to dismiss, Epic sought to place responsibility on the intermediary rather than its own technology and conduct. The Court nevertheless concluded that Plaintiff had plausibly pleaded claims against Epic, including causation sufficient for her negligence and wrongful-death claims to proceed. In addressing causation, the Court expressly considered whether Epic's alleged conduct constituted both a but-for cause and a substantial factor in the resulting harm.

Plaintiff's First Amended Complaint focused on Epic's core architecture, which Plaintiff knew was Epic's responsibility. Plaintiff did not then know who implemented the UTSW system. Plaintiff's First Amended Complaint expressly recognized that "[t]he full extent of the system's configuration options, safeguards, and capabilities is within Defendant's exclusive knowledge…." The absence of an implementation allegation therefore did not establish that UTSW performed the work or that Epic's responsibility ended with its core architecture. The identity of the implementer remained unknown.

Further investigation provides a factual basis to determine whether Epic's role extended further. Publicly available UTSW records reflect payments to Epic but identify no separate firm paid to perform the initial implementation of UTSW's core Epic system. Epic's own evidence states that it has a "track record of successful implementations" and created tools for implementing its software. This evidence does not establish that Epic implemented UTSW's system, but it makes Epic's implementation role a legitimate factual question.

If Epic implemented the UTSW system, its responsibility extended beyond the core architecture. Implementation required translating UTSW's needs into a functioning system capable of producing a cohesive electronic health care record and ensuring that UTSW was equipped to use that system as intended. Epic determined how information was structured and made available; if Epic performed the implementation, UTSW operated the system through the training and guidance Epic provided. Any failure to provide or effectively communicate the practices necessary for proper use was therefore an implementation deficiency, not an independent failure by UTSW. Plaintiff contends that, if Epic performed the implementation, Epic was responsible for the system as implemented and the resulting electronic health care record, including deficiencies attributable to how UTSW was trained and instructed to use it.

## IV. LACK OF REGULATION ENABLES EPIC TO AVOID ACCOUNTABILITY

Epic is the leading EHR company in the United States and exercises enormous control over its technology and the information surrounding it. Yet that power is not matched by comparable regulatory oversight. Epic can define the boundaries of its involvement, tightly restrict access to information concerning its technology, and direct responsibility elsewhere when that technology is challenged.

Congress reinforced this gap in the 21st Century Cures Act by excluding qualifying electronic patient-record functions from the definition of a medical device. ONC certification

does not replace FDA regulation. It establishes requirements for certified health IT, but it does not provide comparable oversight of Epic or determine responsibility when an EHR contributes to patient harm. The result is an accountability gap between the enormous role EHR technology plays in patient care and the external oversight of the companies that create it.

Epic's control over information magnifies that gap. Much of the evidence needed to examine Epic's conduct is subject to confidentiality and proprietary restrictions controlled by Epic itself. Without independent regulatory oversight, Epic can define its role while limiting access to evidence that could challenge that definition and direct responsibility elsewhere.

**V. EPIC'S FILINGS EXPAND THE ISSUES PRESENTED**

Epic's filings reflect a broader practice of expanding the matter before the Court beyond the issue presented. This was apparent in Epic's second motion to dismiss, where Epic brought Plaintiff's other filings and proceedings into a motion directed to the sufficiency of the operative complaint. The same practice continues throughout this litigation.

The problem is not simply volume. Epic repeatedly introduces matters outside the proceeding in which they arose and uses them to support arguments directed to a different issue. This blurs the procedural boundaries between separate matters and forces Plaintiff and the Court to determine what is actually being presented for decision.

That creates a risk of unfair surprise. A collateral issue embedded in another filing may be considered without proper notice or briefing. The Supreme Court's principle of party presentation provides that the parties frame the issues for decision and the Court decides the matters they present. *Greenlaw v. United States*, 554 U.S. 237 (2008). Epic should not be able to obtain relief on separate disputes by inserting them into unrelated briefing, nor should Plaintiff's failure to address them constitute waiver or concession.

The Court should evaluate each matter on the record properly presented for that matter. Arguments and requests for relief should remain within the proceedings to which they belong. Plaintiff therefore respectfully requests that the Court disregard portions of Epic's Response that exceed the issue presented. Doing so preserves the structure of the litigation and ensures that each issue is decided after both parties have had a fair opportunity to address it.

## VI. EPIC'S LITIGATION MIRRORS ITS ALLEGED RECORD PROBLEM

Plaintiff alleges that Epic's electronic health care record fragments information so that relevant information may exist but fail to communicate what matters when obscured by other information or separated from its context. Plaintiff alleges that Dov Fischman's record reflected this problem: outdated and carried-forward information remained alongside current information, related information remained siloed, and clinicians were left to reconstruct his condition from scattered information. Epic created the architecture through which that information was organized and presented and, Plaintiff alleges, was responsible for keeping the patient's current clinical profile in focus.

The same problem appears in this litigation. A Motion presenting one factual question produced a Response filled with collateral matters that do not answer it, requiring the Court to separate what matters from what does not. The information necessary to resolve the Motion has not become more complicated; it has become obscured by information surrounding it.

Plaintiff contends that Epic's handling of information in this litigation reflects the same organizational pattern alleged in the operative complaint: relevant information is separated from its necessary context, while collateral material obscures what requires attention. Although Epic's litigation conduct is not itself the basis of Plaintiff's substantive claims, it provides further factual support for Plaintiff's allegation that Epic's information-management practices contributed to the fragmented presentation of Dov Fischman's electronic health care record.

## VII. THE JUNE 8 ORDER AND EPIC'S CHANGE IN LITIGATION TACTICS

The Court's June 8 Memorandum Opinion and Order materially changed Epic's exposure. The Court allowed Plaintiff's negligence, design-defect, and wrongful-death claims to proceed and made *Erie* predictions concerning Epic's duty to patients and whether its EHR platform constitutes a product under Texas law. The Order recognized potential liability for patient harm arising from Epic's technology and opened Epic to discovery that, to Plaintiff's knowledge, it has not previously faced.

Epic's litigation posture shifted after this Court's Order. Its filings and discovery requests increasingly extended beyond Plaintiff's claims to Plaintiff herself, including her professional reputation, private matters, outside litigation, and informal communications. Epic also takes statements from Plaintiff's filings and communications out of context to attribute positions to Plaintiff that she did not take. This marks a departure from the litigation before June 8.

Plaintiff is a pro se litigant facing a multibillion-dollar corporation supported by a substantial litigation team, without counsel as an intermediary. This case requires Plaintiff to repeatedly confront the death of her father, whom she continues to grieve, and that grief may surface in informal exchanges with Epic. Epic now relies on those exchanges and isolated statements to characterize Plaintiff and her litigation positions. The Fifth Circuit liberally construes pro se filings and applies less stringent standards to litigants proceeding without counsel. *Grant v. Cuellar*, 59 F.3d 523 (5th Cir. 1995). That principle is particularly important here, where Epic attributes positions to Plaintiff from isolated language rather than the substance and context of her filings as a whole.

## VIII. CONCLUSION

Plaintiff respectfully requests that the Court disregard portions of Epic's Response and appendix that exceed the case-management issue presented by Plaintiff's Motion.

Plaintiff further requests that the Court exercise its case-management authority under Fed. R. Civ. P. 16(c)(2)(A) and direct Epic to resolve the threshold implementation issue by stating whether it implemented the UTSW Epic system and, if not, identifying the entity that did.

Respectfully submitted,

Date: September 28, 2026

/s/ Gallit Fischman

**GALLIT FISCHMAN, Pro Se**
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record through the Court's CM/ECF system, or by other means authorized by the Federal Rules of Civil Procedure, on September 28, 2026.

/s/ Gallit Fischman

**GALLIT FISCHMAN, Pro Se**