IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:26-CV-0770-D |
| | § | |
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This is a diversity action brought by *pro se* plaintiff Gallit Fischman ("Fischman"), who asserts various state-law claims against defendant Epic Systems Corporation ("Epic") arising from the death of her father Dov Fischman ("Dov"). Epic moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted, or, in the alternative, for a more definite statement under Rule 12(e). For the reasons that follow, the court grants the Rule 12(b)(6) motion in part and denies it in part and denies the Rule 12(e) motion.

I

Fischman sues Epic based on claims arising from the death of her father, who died after receiving medical care at a facility that used Epic's electronic health record ("EHR") system. According to Fischman's second amended complaint ("SAC"), the Epic EHR system is "a centralized platform that structures clinical workflows, governs data entry, and

determines how information is presented and used in patient care." SAC (ECF No. 25) ¶ 16.[1] Fischman alleges that deficiencies in Epic's EHR system caused her father's death by preventing the display of accurate medical information, failing to enforce requirements for medication approval and administration, and failing to provide warnings to dangers posed by administered medication. *See id.* ¶¶ 52-55. According to the SAC, the EHR system's deficiencies exist "independent of user conduct" and instead "arise from Epic's architectural design[.]" *Id.* ¶¶ 6, 10. Because "Epic exclusively controls the structure through which medication data is created, stored, and displayed," "[a]ny hospital configuration operates within and is constrained by Epic's architecture." *Id.* ¶¶ 26, 29. Fischman now sues Epic, alleging state-law claims for wrongful death, negligence, gross negligence, and products liability.

The court previously ruled on a motion to dismiss in this case and held as follows: first, Fischman's allegations enabled "the court to draw the reasonable inference that the EHR system's deficiencies" caused Dov's death; and, second, Fischman failed to plausibly plead gross negligence. *See Fischman v. Epic Sys. Corp.* (*Fischman I*), 2026 WL 1651510, at *5, 7 (N.D. Tex. June 8, 2026) (Fitzwater, J). After the court decided *Fischman I*,

[1]In deciding Epic's Rule 12(b)(6) motion to dismiss, the court construes the SAC in the light most favorable to Fischman, as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Fischman's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). Moreover, because Fischman is proceeding *pro se*, the court liberally construes the allegations of the SAC and her briefing. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam).

Fischman filed her SAC, making additional allegations relating to gross negligence while largely retaining the same causation allegations.

Epic now moves to dismiss under Rule 12(b)(6), contending that Fischman has failed to plausibly plead gross negligence and the causation elements of her other state-law claims. In support of its motion, Epic presents new materials: three complaints that Fischman filed in separate lawsuits against various defendants alleging liability for Dov's death.

Fischman opposes the motion, which the court is deciding on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the] plaintiff['s] amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (final alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). Although the court must accept such allegations as true, it will "not accept . . . conclusionary allegations in the complaint[,]" like those that are inconsistent. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Cicalese v. Univ. of Tex. Med. Branch*, 456 F.Supp.3d 859, 866 (S.D. Tex. 2020). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court turns initially to two preliminary issues: first, whether the court can reconsider the plausibility of Fischman's causation allegations where they are essentially unchanged from the prior version of her complaint; and, second, whether the court can take judicial notice of the three complaints[2] on which Epic now relies.

A

The court is authorized by Rule 54(b) to reconsider whether Fischman has plausibly pleaded causation in her SAC, despite the fact that they are essentially unchanged from the allegations contained in her first amended complaint. In *Fischman I* the court "adjudicate[d]

---

[2]One of the pleadings is a state-court "petition." For ease of reference, the court will refer to all three pleadings as "complaints."

fewer than all the claims," and its decision "may be revised at any time before the entry of a [final] judgment." Rule 54(b). In these circumstances, "'the trial court is free to reconsider and reverse its decision for *any* reason it deems sufficient, even in the absence of new evidence[.]'" *Austin v. Kroger, L.P.*, 864 F.3d 326, 337 (5th Cir. 2017) (emphasis added) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

Fischman's reliance on the law-of-the-case doctrine to preclude the court from reconsidering the sufficiency of her causation allegations is misplaced. The law-of-the-case doctrine prevents "'an issue of law or fact decided on appeal'" from being "'reexamined either by the district court on remand or by the appellate court on a subsequent appeal.'" *United States v. Avelar*, 2007 WL 2120039, at *2 (N.D. Tex. July 23, 2007) (Fitzwater, J.) (quoting *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998)). It does not prevent a district court from reviewing its own interlocutory decisions. Therefore, the court is able to reconsider whether Fischman has plausibly pleaded causation, even if the allegations of her SAC are essentially unchanged from those of her first amended complaint

B

The court considers next whether it may take judicial notice of the three complaints that Epic attaches to its motion.

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)). "A

court is permitted, however, to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Additionally, "[f]ederal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *see also Hall v. Hodgkins*, 305 Fed. Appx. 224, 227 (5th Cir. 2008) (per curiam) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation omitted)).

And if a plaintiff makes factual allegations in separate pleadings, these constitute nonbinding "evidentiary admissions" until otherwise "explain[ed] or controvert[ed]." *Sanders v. Univ. of Tex. Pan Am.*, 776 Fed. Appx. 835, 838 (5th Cir. 2019) (per curiam) (citations and internal quotations omitted). Courts are free to consider these admissions on a motion to dismiss. *Id.* But once a party explains or disputes the previously admitted facts, "a district court . . . cannot take [judicial] notice if those records are offered to establish the facts therein." *Knighton v. Univ. of Tex. at Arlington*, 2019 WL 13252502, at *2 (N.D. Tex. Aug. 20, 2019) (Means, J.) (internal quotation marks and citations omitted).

Epic has introduced three separate complaints that Fischman filed in various courts: a complaint filed in Texas state court against the University of Texas Southwestern Medical Center ("UT Southwestern"); a complaint filed in the Northern District of Texas against Novartis Pharmaceuticals Corporation ("Novartis"); and a complaint filed in the District of Massachusetts against Boston Children's Hospital ("BCH"). Each complaint (collectively, "the previous complaints") alleges that the defendant in question is liable for Dov's death.

The court can take judicial notice of the admissions in the previous complaints to the extent they are not explained or controverted or are not "offered to establish the facts therein." *Sanders*, 776 Fed. Appx. at 837; *Knighton*, 2019 WL 13252502, at *2.

IV

The court now turns to whether Fischman has plausibly pleaded the causation element of her state-law claims in the present suit given the contents of her complaints against UT Southwestern, Novartis, and BCH filed in other lawsuits.

A

Negligence, gross negligence, and products liability claims each require proof of causation. *Bartolowits v. Wells Fargo Bank*, 2016 WL 1436430, at *7 (N.D. Tex. Apr. 11, 2016) (Fitzwater, J.) (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001)); *Nowzaradan v. Ryans*, 347 S.W.3d 734, 741 (Tex. App. 2011, no pet.) ("causation element is the same for ordinary negligence and gross negligence."); *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (causation in products liability requires that the product's defect be a "a substantial factor in bringing about an injury, and without which the injury would not have occurred." (citations and internal quotation marks omitted)). The court need not consider these three claims separately.[3]

---

[3]For a negligence claim, proximate cause consists of cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). "Cause in fact has two components: (1) 'but-for' causation, and (2) 'substantial-factor' causation." *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 532 (Tex. 2025) (citation omitted). "The defendant's negligence is the 'but-for' cause of an injury if, without the act or omission, the harm would not have occurred." *Id.* (citation and internal quotation marks omitted). To satisfy the

B

Epic maintains that several categories of nonbinding admissions in the other complaints render Fischman's causation allegations implausible. Of them, the court finds that only one warrants discussion:[4] the complaint against UT Southwestern. That complaint

---

substantial factor component, it must be reasonable to conclude that the defendant is "actually responsible for the ultimate harm." *Id.* at 533 (citation omitted). In other words, the defendant's conduct must do more than "merely create[] the condition that makes the harm possible[.]" *Id.* (citation omitted). Foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe v. Boys Clubs*, 907 S.W.2d at 478.

For a products liability claim, "Texas courts define producing cause as one that is 'a substantial factor in bringing about an injury, and without which the injury would not have occurred.'" *Goodner*, 650 F.3d at 1040 (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)).

[4]Fischman's suit against Novartis alleges liability based on the "drug [Everolimus], its off-label administration, and the trial's missing safeguards," and does not mention Epic or the EHR system. D. Br. (ECF No. 33) at 17-18. For the reasons explained in *Fischman I*, it is not inconsistent to allege multiple causes. *See Fischman I*, 2026 WL 1651510, at *5. In her other suits, Fischman was not required to allege Epic's role, just as she need not allege Novartis's role in the instant suit.

Similarly, Fischman's suit against BCH alleges liability based on a failure to include proper disclosures and warning labels in consent materials prepared for her father. It is not inconsistent, however, to allege multiple causes.

Epic maintains that Fischman's suits against Novartis and BCH "treat[ed] the medical record as an accurate reflection of the clinical course[.]" D. Br. (ECF No. 33) at 18. The court has been unable, however, to find this allegation to have beem clearly made in the complaints, and Epic has not provided sufficiently specific citations to support its position.

Fischman's suit against BCH alleges that the prescribing physician reached the decision to prescribe Everolimus based on her prior experience in the hospital's trial. D. App. (ECF No. 33) at 19. Epic maintains that this is inconsistent with Fischman's present allegations that the prescription resulted from the EHR system's failure. The court disagrees. The prescribing physician could have reached her decision both because of her prior experience and because of Epic's alleged informational failure. Fischman does allege that the warnings that would have prevented her father's death were available in the FDA labeling. D. Br. (ECF No. 33) at 18. But, again, two causes can coexist. And to the extent

alleges that UT Southwestern had "*exclusive control* over authorization systems, records governance . . . dispensing pathways, monitoring frameworks, escalation infrastructure, and institutional reporting." D. App. (ECF No. 33) at 120 (emphasis added). By contrast, the SAC alleges that "Epic *exclusively controls* the structure through which medication data is created, stored, and displayed," because "hospitals cannot modify the underlying architecture of Epic's platform[.]" SAC (ECF No. 25) ¶¶ 26-27 (emphasis added). According to the SAC, Epic's control extends to the "database structure, medication record design, reporting frameworks, and system logic governing medication timelines and historical data." *Id.* ¶ 17. And the deficiencies that are alleged to be subject to Epic's exclusive control include the software's failure to "enforce[] medication timelines, require[] prescriber attribution, reconcile[] active and discontinued medications, and produce[] reports distinguishing current from historical information[.]" *Id.* ¶ 61.

On initial review, the two sets of allegations do not necessarily appear to be inconsistent. But the complaint against UT Southwestern goes farther. For example, Fischman alleged in her complaint against UT Southwestern that it had previously "enforced safeguards, including *consistent documentation*, monitoring protocols, escalation pathways, and *continuity of critical information*," but then, leading to Dov's death, UT Southwestern "weakened or ceased enforcing these safeguards across its systems. Authorization, documentation, monitoring, and accountability controls were no longer consistently applied."

---

that Epic asks the court to consider all of these together and to find a lack of plausibility, the court declines to do so for the same reason: multiple causes can coexist.

D. App. (ECF No. 33) at 121 (emphasis added). And, more specifically, Fischman alleged that UT Southwestern "controlled the *electronic* and administrative systems through which medication orders were authorized and executed." *Id.* at 125 (emphasis added). In essence, the complaint against UT Southwestern seems to place the informational and software failures within UT Southwestern's exclusive control, rather than Epic's. *See id.* at 113-126.

C

Two rulings by judges of this court guide the court's decision concerning whether to take judicial notice and accept Epic's theory of implausibility: *Knighton*, 2019 WL 13252502, and *Doyle v. Combined Systems Inc.* 2023 WL 5945857, at *7 (N.D. Tex. Sept. 11, 2023) (Kinkeade, J.). Both rely on a Fifth Circuit decision that Epic cites: *Sanders*, 776 Fed. Appx. 835.

In *Knighton* Judge Means refused to take judicial notice of factual allegations in a superseded original complaint. *Knighton*, 2019 WL 13252502, at *1-2. In that case, the *pro se* plaintiff's Rule 12(b)(6) response maintained that the defendants' citation to her previous nonbinding admissions "provided [the] court with false and misleading statements, including false statements of fact referencing [her] previous complaint." *Id.* at *2 (alterations omitted). The plaintiff also made "three other references to what she believe[d]" were "mischaracterization[s] of the complaint's factual allegations." *Id.* Judge Means concluded that this constituted a "dispute" and declined to take judicial notice of the nonbinding admissions. *Id.* at *3.

By contrast, in *Doyle* Judge Kinkeade did what Epic requests the court do here: he

found allegations in separate pleadings to be "non-binding admissions that may be judicially noticed" and relied on them to dismiss a complaint. *Doyle*, 2023 WL 5945857, at *7.

At issue in *Doyle* was whether officers were acting "criminally or unlawfully" when using certain weapons. *Id.* If so, a federal statute barred the plaintiffs' suit. *Id.* To prove that the officers *were* acting "criminally or unlawfully[,]" the defendant introduced a separate complaint where plaintiffs alleged that the same officers had "violated 24 U.S.C. § 1983." Taking judicial notice, Judge Kinkeade "treat[ed] the admissions as undisputed and rel[ied] upon them to dismiss Plaintiffs' complaint." *Id.* The key difference between *Doyle* and *Knighton* is that, in *Doyle*, "Plaintiffs fail[ed] to explain or controvert their admissions in the" separate pleading. *Id.* Indeed, the plaintiffs' briefing in *Doyle* only argued that it was inappropriate to consider materials outside the complaint. P. Resp. Br., 3:22-CV-1536-K (ECF No. 24, Oct. 17, 2022).

The difference in these two cases guides the court's approach here. If Fischman's previous nonbinding admissions are "explain[ed] or controvert[ed,]" they are "subject to reasonable dispute" and are no longer appropriate for judicial notice. *Sanders*, 777 Fed. Appx. at 838; Fed. R. Evid. 201.

D

Epic maintains that Fischman's "factual allegations in [the UT Southwestern] suit" are "nonbinding admissions" that contradict the SAC. D. Br. (ECF No. 33) at 13. But in response, Fischman has "every right to explain or controvert" nonbinding admissions. *Sanders*, 776 Fed. Appx. at 838 (alterations omitted). If she does, it is "not appropriate for

the Court to take judicial notice" of these nonbinding admissions as facts "since they are not capable of accurate and ready determination[.]" *Knighton*, 2019 WL 13252502, at *2; Fed. R. Evid. 201.

The court holds the Fischman has satisfied this requirement, although it does so based on its duty to "liberally construe the pleadings and filings of *pro se* plaintiffs." *In re Tipton*, 2022 WL 1028026, at *1 (S.D. Tex. Apr. 6, 2022) (citing *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011)).[5] Fischman contends that Epic has mischaracterized her previous allegations, "manufactur[ing] the appearance of inconsistency" by presenting previous references to the EHR "as though they concern the same functionality challenged here." P. Resp. (ECF No. 34) at 1. Fischman also maintains that she "distinguish[es] UT Southwestern's control over local implementation and use" alleged in the previous pleading "from Epic's control [of the] architecture and safety design" alleged here. *Id.* at 9. And Fischman posits that "Epic identifies no allegation in another action . . . that another entity exclusively controlled the architecture and safety features challenged here." *Id.* at 11. Finally, Fischman maintains that she "prepared each pleading based on the information available at the time" because, as her "investigation progressed, her understanding became more informed." *Id.* at 14.

The court recognizes that Fischman has failed to address the inconsistent factual

[5]In doing so, the court heavily relies on Fischman's *pro se* status. If Fischman were represented by counsel, the court would expect a more cogent response—particularly as to the varying "exclusive control" allegations found in the pleadings.

allegations at a granular level, including the most concerning one described above in § IV(B). But, as in *Knighton*, Fischman's characterization and interpretation arguments are sufficient to satisfy her obligation to have "explain[ed] or controvert[ed]" the previous nonbinding admissions. *See Sanders*, 776 Fed. Appx. at 838. Accordingly, the court declines to take judicial notice of the previous complaints for the facts they assert because they are subject to a reasonable dispute.

E

Because the court declines to take judicial notice of the previous allegations as admissions of fact, and the other inconsistencies are unproblematic, it is left to consider only what was present in *Fischman I*. Therefore, Epic's motion to dismiss is denied as to Fischman's claims for products liability, wrongful death, and negligence.[6]

V

The court now turns to Fischman's gross negligence claim.

A

Under Texas law,

> [g]ross negligence requires a showing of two elements: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective

[6]Because Fischman's wrongful death cause of action is a derivative of her other claims—two of which she has plausibly pleaded—the court concludes that her claim for wrongful death damages should not be dismissed. *Davenport v. Phillip Morris, Inc.*, 761 S.W.2d 70, 71 (Tex. App. 1988, no writ).

> awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others. Under the first, objective element, an extreme risk is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. Under the subjective element, actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care.

*Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (internal quotation marks and citations omitted).

"A corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). A corporation commits gross negligence "if it authorizes or ratifies an agent's gross negligence," "if it is grossly negligent in hiring an unfit agent," or "if it commits gross negligence through the actions or inactions of a vice principal." *Id.* at 921-22. An identified agent or vice principal must have specific subjective awareness; "[g]ross negligence requires that the actor has subjective actual knowledge of . . . [the] risk . . . created by *his* behavior." *Quintanilla v. K-Bin, Inc.*, 993 F. Supp. 560, 563 (S.D. Tex. 1998) (emphasis added); *see also Garza v. Pullen*, 2022 WL 2821084, at *5 (Tex. App. July 20, 2022, no pet.) (mem. op.) (gross negligence requires knowledge of the particular risk alleged) (citing *Suarez v. City of Texas City*, 465 S.W.3d 623, 637 (Tex. 2015)). Accordingly, general knowledge of potential risks present in the defendant's industry cannot establish subjective awareness. *See In re Oncor Elec. Delivery Co.*, 716 S.W.3d 525, 533 (Tex. 2025) (explaining that " 'common knowledge' in the defendant's industry" can "establish [the]

objective component of gross negligence," but holding that plaintiffs failed to plausibly allege the subjective component) (citing *Ellender*, 968 S.W.2d at 922).[7]

B

Epic maintains that Fischman's SAC fails to plausibly allege that any agent or vice principal of Epic had "subjective awareness of the risk involved" in the EHR system. D. Br. (ECF No. 33) at 5-6. The court agrees.[8]

Fischman's allegations supporting subjective awareness are as follows: first, "[p]ublic guidance, safety reports, and industry materials identify . . . patient safety hazards" that were known to Epic because it participates in the EHR industry; and, second, Epic "was aware of the specific failure modes alleged here." SAC (ECF No. 25) at ¶¶ 46, 103-05. The SAC's alleged facts go to the EHR industry at large, not to Epic's knowledge of the risks posed by "[its own] behavior." *Quintanilla*, 993 F. Supp. at 563. And the allegation that Epic was "aware of the specific failure modes alleged here" is unsupported by any facts and is therefore conclusory. *See Coulter v. Deere & Co.*, 2022 WL 912778, at *3 (S.D. Tex. Mar. 29, 2022).

---

[7]Epic's cited cases are also instructive on this point. *See Tex. Dep't of Transpo. v. Bagg*, 2024 WL 4533568, at *9 (Tex. App. Oct. 21, 2024, pet. denied) (mem. op.) ("knowledge of a potential problem" present in an industry practice "is not actual knowledge"); *De La Hoya Moreno v. K-Bar Tex. Elec.*, Inc., 2020 WL 1161097, at *5 (Tex. App. Mar. 10, 2020, no pet.) (mem. op.) ("knowledge of the general risk . . . inherent" in the industry is not "subjective awareness of the risk of [a] particular task.").

[8]In so holding, the court need not consider Fischman's naming of an Epic vice president.

Fischman maintains that the SAC "alleges that the challenged medication-management and information architecture created patient-safety hazards *recognized within the EHR industry* and that Epic actively participated in [this] industry[.]" P. Resp. (ECF No. 34) at 21 (emphasis added). But this is precisely what is insufficient to establish subjective awareness. *See Bagg*, 2024 WL 4533568, at *9; *De La Hoya Moreno*, 2020 WL 1161097, at *5. Accordingly, Epic's motion to dismiss is granted as to Fischman's gross negligence claim.

VI

The court now considers Epic's motion for a more definite statement under Rule 12(e).

Rule 12(e) is applicable when "a pleading . . . is so vague or ambiguous that the party cannot reasonably prepare a response." *Id.* "Motions for a more definite statement are generally disfavored." *Conceal City, L.L.C. v. Looper Law Enforcement, L.L.C.*, 917 F.Supp.2d 611, 621 (N.D. Tex. 2013) (Fitzwater, C.J.) (internal quotation marks and citations omitted). "Since the theoretical overall scheme of the federal rules calls for notice pleading and places the burden of unearthing the underlying factual details on the discovery process, federal courts have been properly desirous of avoiding any possibility that the permissive allowance of Rule 12(e) motions seeking detailed factual allegations will shift the burden of fact elicitation from the discovery phase back to the pleadings[.]" 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1376 (3d ed. 2008).

The SAC is not "so unclear" so that "that drafting a response to [it] is impossible."

*Sweet Lake Land & Oil Co. v. Exxon Mobil Corp.*, 2009 WL 4716090, at *1 (W.D. La. Dec. 9, 2009). Epic "complain[s] of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading[.]" *Conceal City*, 917 F.Supp.2d at 621 (internal quotation marks omitted). Therefore, an order directing the Fischman to provide a more definite statement is not warranted, and Epic's motion is denied.

VII

Although the court is granting dismissal in part, it will allow Fischman to replead. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.). There is no indication that Fischman cannot, or is unwilling to, cure the defects that the court has identified. And Fischman has expressly requested leave to amend. Moreover, as a *pro se* plaintiff, Fischman should be given a fair opportunity to plead her best case. *See, e.g.*, *Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *1 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.) ("Although the court granted Merrill Lynch's motion to dismiss, it gave Robinette one more opportunity to plead his best case, because he was proceeding *pro se*."). Accordingly, the court will grant Fischman 28 days from the date this memorandum opinion and order is filed to file a third amended complaint.

* * *

For the reasons explained, the court dismisses Fischman's gross negligence claim, declines to dismiss her wrongful death, negligence, and products liability claims, and grants her leave to replead.

**SO ORDERED**.

September 30, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE