**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GALLIT FISCHMAN,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Case No. 3:26-CV-0770-D** |
| | § | |
| **EPIC SYSTEMS CORPORATION,** | § | |
| | § | |
| ***Defendant.*** | § | |

# DEFENDANT EPIC SYSTEMS CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF A PROTECTIVE ORDER

Defendant Epic Systems Corporation ("Epic") files this reply in support of its Motion for Entry of a Protective Order ("Motion") (Doc. 40).

## I. INTRODUCTION

Plaintiff "does not oppose reasonable protection of confidential information," "agree[s] to the core substantive protections" in Epic's proposed protective order, and does not dispute that Epic has satisfied the showing to obtain a Rule 26(c) protective order. Doc. 43 at 1, 2. Plaintiff also states that she "does not oppose reasonable restrictions on AI-assisted review," and that she has "obtained AI tools intended to satisfy Epic's stated security requirements." *Id.* at 2. She accepts that "[t]he fundamental protections Epic seeks are therefore largely undisputed." *Id.* at 5.

Thus, Plaintiff's Response narrows the Court's review to one question: which of two proposed orders should the Court enter. The order Plaintiff asks for cannot be enforced and would not protect confidential information. Her proposed order would bar Epic from enforcing its provisions; would invite unintentional disclosure; would prevent Epic from learning which AI platform received its trade secrets; and would require Epic to move for a ruling every time she disputes a designation. Her order

also asks the Court to define the scope of discovery in advance and to compel production—relief outside the scope of Rule 26(c). And it omits what a protective order must contain: it does not confine confidential material to use in this case and provides no protections for non-parties. It also lacks two provisions required by HIPAA for the production of the decedent's medical records.

But Epic's proposed order provides meaningful, enforceable protection of confidential information of parties and non-parties alike and is consistent with the protective orders routinely entered in this District. It confines Protected Material to use only in this litigation, contains HIPAA-required provisions, provides a conventional mechanism for disputing designations that encourages resolution without court involvement, and includes reasonable and necessary AI restrictions in line with recent authority. Further, Epic has revised its proposed order to adopt changes Plaintiff requested in her Response that do not compromise the order's protections. *See* App. 1–26 (revised order); App. 27–52 (redline). Accordingly, the Court should grant the Motion and enter Epic's revised proposed protective order.

## II. ARGUMENT AND ANALYSIS

### A. Plaintiff's Response Leaves Epic's Rule 26(c) Showing Unrebutted.

Rule 26(c) requires "a particular and specific demonstration of fact" for a protective order. *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Plaintiff does not dispute that Epic has identified categories of information that she seeks in discovery that are trade secret and confidential, and thus necessitate protection under Rule 26(c). Doc. 40 at 3, 6. There is no dispute that a protective order should issue.

What remains is Plaintiff's contention that the order should carry an affirmative "Non-Confidential" tier as well as a written justification for every designation. Doc. 43 at 3–4. Epic's proposed order already accounts for a non-confidential category: undesignated material. Only documents that qualify as confidential or highly confidential may be designated as such. *See* Doc. 41,

Ex. A ¶¶ 2, 5, 7, 14, 16 (App. 3–5). For example, publicly available information is not protected at all. *Id.* ¶ 33 (App. 19). Moreover, Epic's proposed order provides that, upon request, a producing party shall designate only the portions of a document that qualify, and it contains a mechanism for withdrawing mistaken designations. *Id.* ¶ 17 (App. 5). Thus, despite Plaintiff's claim to the contrary, Epic's proposed order contains the very provisions that Plaintiff says are necessary under Rule 26(c).

### B. Plaintiff's Proposed Order Would Not Protect Epic's Trade Secrets.

Plaintiff's stated reason for refusing an agreed order is that Epic's counsel would not "waive Epic's rights to future actions." Doc. 43 at 2, 5. Her order supplies a waiver: "Neither Party may use an alleged violation of this Order as the basis for a separate trade-secret, confidentiality, or similar action against the other Party where the alleged conduct is governed by this Order. This provision survives final disposition of this Action." Doc. 44 ¶ 43 (App. 7); *see id.* ¶¶ 41, 45 (App. 7). Rule 26(c) does not authorize that relief.

#### *1. Plaintiff's proposed order would release claims that have not accrued.*

Rule 26(c) permits the Court to order that trade secrets "not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G). It does not permit the Court to extinguish, in advance, a producing party's remedies under the Defend Trade Secrets Act or other law.

Nor does the provision in Epic's proposed order justify Plaintiff's concern. Conduct the order authorizes is not a violation of it and cannot be the basis of a misappropriation claim. Epic's order already provides that good-faith compliance waives nothing, Doc. 41, Ex. A ¶ 47 (App. 23). Nevertheless, Epic added the sentence Plaintiff asked for to its revised order: "Conduct expressly authorized by this Order does not constitute a violation of the Order." App. 49–50 ¶ 47.

#### *2. Plaintiff's proposed order would make enforcement turn on scienter.*

Under Plaintiff's order, an "inadvertent or unintentional unauthorized disclosure of Protected Material does not itself constitute a violation." Doc. 44 ¶ 32 (App. 6). Only "an intentional disclosure

known at the time to violate an express provision" loses that protection. *Id.* ¶ 34 (App. 6). Any other breach earns fourteen days to cure before a party may seek relief. *Id.* ¶ 44 (App. 7).

Together, those provisions require proof of a knowing violation of an express term before the order can be enforced, and they excuse in advance the likeliest breach. The Motion explained why. A litigant who enters a confidential document into a consumer AI platform "may not think of the tool's operator as a 'person' to whom a disclosure is being made at all." Doc. 40 at 8. That breach is, by definition, unintentional. But under Plaintiff's order, it is not a violation—and it cannot be cured in fourteen days, because "a trained model cannot be untrained." *Id.*[1] Thus, Plaintiff's cure period would not remedy the harm a protective order exists to prevent.

Epic's order handles inadvertence conventionally: a corrected designation creates no retroactive liability, Doc. 41, Ex. A ¶ 17 (App. 5); a party that discovers an unauthorized disclosure must notify, retrieve, and inform, *id.* ¶ 35 (App. 20); and whether a violation warrants sanctions is left with the Court, *id.* ¶¶ 41–42 (App. 22).

### *3. Plaintiff's proposed order would require Epic to litigate every designation.*

Plaintiff's order requires a written "basis" for every designation—challenged or not. Doc. 44 ¶¶ 10–13 (App. 2–3) ("A designation without the required basis is insufficient."). Then, if the receiving party "disputes a designation and the Designating Party wishes to maintain it," the designating party has the burden to "seek a ruling from the Court," *id.* ¶ 14 (App. 3), with no conference required.

Epic's proposed order gets it right. It places the burden on the objecting party to raise the initial challenge, confer, and move if the conference fails. Doc. 41, Ex. A ¶¶ 20–21 (App. 7). Epic's order provides a ten-business-day response window, as well as continuing protection until the Court rules. *Id.* Plaintiff's order keeps the last of those features and discards the rest. *See* Doc. 44 ¶ 14

[1] *See Fry v. Fry*, No. 26-cv-3469-KSM, 2026 WL 2531956, at *5 (E.D. Pa. Aug. 27, 2026) (holding that it would be "inappropriate" for the Court to seal documents that have been uploaded to non-enterprise versions of Claude because the documents have been provided to Anthropic and thus are no longer private).

(App. 3). Plaintiff's proposal—requiring the producing party to move every time the receiving party objects—would generate motions on designations rather than resolve them.

The protective orders routinely entered in this District agree with Epic's approach. *See, e.g.*, Doc. 20 ¶ 7 in *Colorado Biolabs, Inc. v. Three Arrows Nutra, LLC*, No. 3:25-CV-00601-D (N.D. Tex. May 27, 2025) (Fitzwater, J.).[2] So too do the cases Plaintiff cites—in fact, the challenge mechanism in Epic's order is equivalent in all material respects to the protective orders entered in those cases. *Compare* Doc. 41, Ex. A ¶¶ 20–21 (App. 7) ("In the event that a Party disagrees with a Producing Party's designation . . . the objecting Party shall advise counsel for the Producing Party, in writing, of the objection and identify the particular document or item with sufficient specificity to permit identification. . . .") *with* Doc. 34 ¶ 5 in *United Surgical Partners*, No. 3:14-CV-0499-D (N.D. Tex. June 5, 2014) ("A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. . . .") *and* Doc. 28 ¶ 12 in *Neon Enter. Software*, No. 1:09-CV-896-LY (W.D. Tex. June 6, 2010 ("At any time, a Party may challenge the designation of information as Highly Confidential by notifying the Designating Party in writing of the designation that the challenging Party in good faith believes should not have been made. . . .").

***4. Plaintiff's proposed order omits statutory requirements for HIPAA protection.***

Plaintiff's order contains no provision allowing a non-party to designate material or to invoke the order's protections. In a wrongful death case such as this one, under the HIPAA Privacy Rule, a qualified protective order must prohibit the use or disclosure of protected health information "for any purpose other than the litigation or proceeding for which such information was requested" and must require its return or destruction "at the end of the litigation or proceeding." 45 C.F.R. § 164.512

[2] *See also* Default Agreed Protective Order ¶ 8 (Brown, J.) (https://www.txnd.uscourts.gov/sites/default/files/documents/BrownProtectiveOrder-Attach2.pdf); Default Agreed Protective Order ¶ 5 (Godbey, J.) (https://www.txnd.uscourts.gov/sites/default/files/documents/ProtectiveOrder.pdf).

(e)(1)(v)(A)–(B). Plaintiff's order contains no return-or-destruction provision for any material, and no use limitation beyond a bar on public disclosure. Doc. 44 ¶¶ 17–18 (App. 3–4). Epic's order contains both, together with the covered-entity authorization that would allow the decedent's medical records to be produced without a separate HIPAA dispute. Doc. 41, Ex. A ¶¶ 25, 39 (App. 13–16, 21).

The missing use limitation matters beyond HIPAA. Epic's order confines Protected Material to "purposes of this Action." Doc. 41, Ex. A ¶ 22 (App. 8). Plaintiff's order prohibits only public disclosure. Doc. 44 ¶¶ 17–18 (App. 3–4). But Plaintiff is prosecuting two other actions arising from the same death. Doc. 33-1, Ex. D (App. 181–82) (Notice of Related Case). Thus, an order without a use limitation could not prevent Protected Material produced for this case, including Epic's trade secrets, from being used in the other lawsuits, at which point protection would be beyond the control of the parties and this Court.[3]

**C. Plaintiff's Objections to the AI Provisions Confirm the Need for Them.**

On the use of AI, Plaintiff states that she "seeks to use secure AI tools to review" Epic's documents, and that she "has obtained AI tools intended to satisfy Epic's stated security requirements." Doc. 43 at 2, 6. But Plaintiff then contends that since those requirements are met, what she does with Epic's documents and AI "should not require document-by-document restrictions or Epic's approval," *id.* at 2, as would be required under Paragraph 27 of Epic's order. Epic's order remains necessary.

An order that must precede production because the harm cannot be undone, Doc. 40 at 9, is needed most where the receiving party has announced that it intends to do the thing the order regulates. Some courts have even proactively prohibited AI use. Recently, a district judge, unasked,

[3] Plaintiff's order also lacks any deposition-designation mechanism, expert-disclosure procedure, subpoena-notice requirement, or reference to Administrative Order No. 337, *compare* Doc. 41, Ex. A ¶¶ 19, 23(c), 24(c), 32, 37 (App. 6–7, 9, 12–13, 19–20) *with* Doc. 44, and it would permit delivery of Highly Confidential material to any "governmental or regulatory authorit[y]" without notice to Epic. Doc. 44 ¶ 39 (App. 7).

added a provision to a stipulated order between represented parties barring the use of discovery material with any AI tool not "subject to enforceable contractual terms" against retention, training, and third-party disclosure, such as "any publicly available or consumer-based AI platform." *Zask v. Kohl's Corp.*, No. 25-CV-948-JPS, 2026 WL 2531856, at *1, *5 (E.D. Wis. Aug. 27, 2026). And some courts have gone so far as to prohibit *pro se* litigants from using AI tools altogether. *Warner v. Gilbarco, Inc.*, No. 2:24-CV-12333, 2025 WL 3047881, at *1 (E.D. Mich. Oct. 30, 2025) ("[A]ny documents marked confidential shall not be uploaded onto ***any*** AI platform.") (emphasis added). As one court acknowledged, this "disadvantages *pro se* litigants," but the courts "cannot ignore the real risks associated with mainstream tools[.]" *Morgan v. V2X, Inc.*, No. 25-cv-01991-SKC-MDB, 2026 WL 864223, at *7 (D. Colo. Mar. 30, 2026). Paragraph 27 of Epic's order tracks the language adopted in *Morgan*. *See, id.* at *7.

*Paragraph 27 permits enterprise tools.* Plaintiff objects that Epic's order "make[s] a blanket statement about ChatGPT, Claude, and Gemini without distinguishing business and enterprise versions[.]" Doc. 43 at 7. It does not. Paragraph 27 permits any platform whose provider is contractually barred from training on, retaining, or disclosing inputs and affords deletion on request. Doc. 41, Ex. A ¶ 27 (App. 16–17). The sentence Plaintiff objects to refers to "the standard consumer or other publicly accessible versions" of those services. *Id.* But an enterprise tier of those platforms that meets the contractual test is permitted by the paragraph's terms. That is the line courts draw. *See Orechovesky v. BNY Admin. Servs., LLC*, No. 1:25-CV-08517, 2026 WL 1725149, at *4 (S.D.N.Y. June 15, 2026) (approving enterprise versions of Gemini for Google Workspace, but only so long as they do not use produced documents for AI training). For avoidance of doubt, Epic's revised protective order makes plain that enterprise versions of AI tools that otherwise comply are not prohibited. App. 17 ¶ 27.

*Paragraph 29 is a safe harbor, not a veto.* Plaintiff reads Paragraph 29 as requiring "Epic's approval." Doc. 43 at 2, 7. Agreement under Paragraph 29 is only required when a party "is unsure whether a specific AI Platform satisfies Paragraph 27." Doc. 41, Ex. A ¶ 29 (App. 18). It lets that party confer rather than guess, and leaves the decision to the Court if the parties disagree.

*Paragraph 30 asks for what Plaintiff has offered.* Paragraph 30 requires a party who relies on a compliant platform to retain the platform's contractual documentation and, on request, to identify the platform and produce that documentation. Doc. 41, Ex. A ¶ 30 (App. 18). It does not reach prompts, outputs, drafts, or strategy, and it exempts platforms used solely for research and drafting. *Id.* ¶¶ 28, 30 (App. 18). Plaintiff has agreed to "identify those platforms and provide information sufficient to evaluate compliance." Doc. 43 at 2. That is Paragraph 30. By Plaintiff's own account, Paragraph 30 is consistent with authorities on the topic. *See id.* at 6–7 ("*Morgan* . . . requir[ed] identification of AI platforms used with confidential information. *Jefferies* . . . distinguished closed from open AI tools based on confidentiality risks. *Tate Group Automotive* . . . requir[ed] limited disclosure concerning materials provided to the platform."); *see also Skaf v. Google LLC*, No. 1:25-CV-06029, 2026 WL 2620563, at *10–11 (S.D.N.Y. Sept. 4, 2026) (requiring parties to "retain written documentation" of the platform's contractual protections). Plaintiff cites no decision entering an order that bars a producing party from learning which platform received its trade secrets. Yet, her order would do that, Doc. 44 ¶ 31 (App. 5), and would foreclose the *in camera* review the *Tate* court conducted. *See* Doc. 40 at 10. And her own AI standard, Doc. 44 ¶ 29 (App. 5), drops the third-party-disclosure bar and deletion right *Morgan* imposed.

*Epic's internal practices prove the rule.* Plaintiff argues that because Epic "permits controlled AI use involving its proprietary technology," it cannot object to hers. Doc. 43 at 6. What the Rehm declaration describes is that Epic employees are instructed not to input information about Epic's software into "an unapproved AI or LLM tool," Doc. 41, Ex. B ¶ 23 (App. 32), and that every

UserWeb user agrees not to disclose UserWeb content "to large language models such as ChatGPT or chatbots," *id.* ¶ 20 (App. 32). Epic applies Paragraph 27's standard to itself and to every customer that accesses its documentation. The same standard should govern discovery here.

### D. Plaintiff's Remaining Requests Seek Relief Outside of Rule 26(c).

*Category treatment of UserWeb material.* Plaintiff asks that material "ordinarily accessible through UserWeb or implementations" be protected under the order "as a whole," without designation, and that the Court direct Epic to file the access documentation for UserWeb, Galaxy, Sherlock, and Nova before ruling. Doc. 43 at 3–4. Her first request concedes the point: she asks that UserWeb material be protected. The second inverts the process. Rule 26(c) permits a movant to seek entry of a blanket protective order upon a showing of good cause based on categories of documents that need protection. *See, e.g.*, *In re Terra*, 134 F.3d at 306. That is what Epic has done here through the Rehm declaration. Doc. 41, Ex. B ¶¶ 10–12, 18–20 (App. 30–32). Challenges to document-by-document designations come after a protective order is entered and documents are produced.

*Compelled production.* Plaintiff's order would direct that material withheld pending a protective order "shall be produced," Doc. 44 ¶ 22 (App. 4); that the pendency of a motion to dismiss is no basis for delay, *id.* ¶ 23 (App. 4); and that nothing may be withheld on confidentiality grounds, *id.* ¶ 25 (App. 5). Her response asks the Court to order Epic to "promptly produce" any "substantive discovery withheld on confidentiality grounds." Doc. 43 at 9. That is Rule 37 relief, and it requires a Rule 37 motion. Epic's Motion expressly reserved the scope of Epic's production obligations, Doc. 40 at 4, and, as Epic has stated in both written discovery responses and its response to Plaintiff's motion for case management, Epic will amend its discovery responses within thirty days after the entry of an appropriate protective order. Doc. 42 at 4; Doc. 45 at 6. The delay Plaintiff describes ends when a protective order is entered, which Epic has sought for months now.

*Scope of discovery*. Plaintiff's order would declare what discovery "shall concern," Doc. 44 ¶ 1 (App. 1), and what is "outside the scope of discovery," *id.* ¶ 2 (App. 1), and would provide that nothing in it "expands the permissible scope of discovery into Plaintiff's personal or mental-health information," *id.* ¶ 37 (App. 6). Epic's order takes no position on the scope of discovery in either direction. Doc. 41, Ex. A ¶ 43 (App. 23). A Rule 26(c) order governs how material is handled once it is produced. What must be produced is decided on a motion directed to particular requests, as is Plaintiff's contention that she need not answer contention interrogatories until Epic's production is complete. *See* Doc. 43 at 8.

### E. Epic's Revised Proposed Order Adopts Some of Plaintiff's Requested Changes.

Epic has filed a revised proposed order, App. 1–26, along with a redline version, App. 27–52. The changes address some of the concerns identified in Plaintiff's Response. The revised order retitles Exhibit A "Agreement of Non-Party to Be Bound by Protective Order," provides that conduct expressly authorized by the order does not violate it, and clarifies that Paragraph 27's illustrative list of AI platforms refers to consumer versions of the named services, not enterprise versions. None of these changes alter the order's substance. Specifically, the provisions discussed in Parts B through D of this Reply remain unchanged and in dispute. Plaintiff's proposed revisions to these sections would not make the order clearer. They would make it unenforceable.

## III. CONCLUSION

Epic respectfully requests that the Court grant its Motion, enter Epic's revised proposed protective order (App. 1–26), and grant Epic such further relief as the Court deems just and proper.

DATE: October 2, 2026

Respectfully submitted,

*/s/ Jessica D. Cox*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jessica D. Cox
Texas Bar No. 24114769
jcox@lynnllp.com
Madelyn C. Stanley
Texas Bar No. 24121529
mstanley@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANT EPIC SYSTEMS CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon Plaintiff in accordance with the Federal Rules of Civil Procedure via ECF and email on October 2, 2026.

*/s/ Jessica D. Cox*
Jessica D. Cox