IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GALLIT FISCHMAN, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. |
| EPIC SYSTEMS CORPORATION, | § | 3:26-CV-0770-D |
| Defendant. | § | |

**APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER INDEX OF APPENDIX MATERIALS**


Exhibit A — Morgan v. V2X, Inc., Original Protective Order
ECF No. 30 (September 26, 2025) App. 2–8

Exhibit B — Morgan v. V2X, Inc., Amended Protective Order
ECF No. 66 (March 30, 2026) App. 9–15

Exhibit C — Morgan v. V2X, Inc., Order Granting Motion in Part
ECF No. 65 (March 30, 2026) App. 16–32

# EXHIBIT A

**Original Protective Order**

Morgan v. V2X, Inc.

ECF No. 30

September 26, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:25-cv-01991-SKC-MDB

ARCHIE MORGAN,

Plaintiff,

v.

V2X, INC.,

Defendant.

---

**PROTECTIVE ORDER**

---

Upon a showing of good cause in support of the entry of a protective order to protect the discovery and dissemination of certain confidential information, it is hereby ORDERED:

1. This Protective Order shall apply to all documents, materials, and information, including without limitation, documents produced, answers to interrogatories, responses to requests for admission, deposition testimony, and other information disclosed pursuant to the disclosure or discovery duties created by the Federal Rules of Civil Procedure.

2. As used in this Protective Order, "document" is defined as provided in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3. Information designated "CONFIDENTIAL" shall be information that is confidential and implicates the privacy or business interests of the parties, including but not limited to: medical and personal financial information, private personnel information, trade secrets, and other proprietary business information.

CONFIDENTIAL information shall not be disclosed or used for any purpose except the preparation and trial of this case.

4. CONFIDENTIAL documents, materials, and/or information (collectively, "CONFIDENTIAL information") shall not, without the consent of the designating party or further Order of the Court, be disclosed except that such information may be disclosed to:

a. attorneys actively working on this case and persons regularly employed or associated with said attorneys whose assistance is required by said attorneys in the preparation for trial, at trial, or at other proceedings in this case;

b. the parties, including their designated representatives and counsel;

c. expert witnesses and consultants retained in connection with this proceeding to whom disclosure is reasonably necessary for this litigation;

d. the Court and its employees ("Court Personnel") and the jury at trial;

e. stenographic and video reporters who are engaged in proceedings necessarily incident to the conduct of this action;

f. deponents, witnesses, or potential witnesses;

g. the Colorado Division of Insurance, law enforcement officers, and/or other government agencies, as permitted or required by applicable state and federal law, including, but not limited to, C.R.S. § 10-1-128(5)(a) and Colo. Ins. Reg. 6-5-1;

h. anyone as otherwise required by law; and

i. other persons by written agreement of the parties.

5. Prior to disclosing any CONFIDENTIAL information to any person identified in sub-paragraph 4(c) (expert witnesses and consultants) or sub-paragraph 4(f) (deponents, witnesses, or potential witnesses), counsel shall provide such person with a copy of this Protective Order and obtain from such person a written acknowledgment stating that he or she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to in camera review by the Court if good cause for review is demonstrated by opposing counsel.

6. Documents are designated as CONFIDENTIAL by placing or affixing on them (in a manner that will not interfere with their legibility) the following or other appropriate notice: "CONFIDENTIAL."

7. Whenever a deposition involves the disclosure of CONFIDENTIAL information, the deposition or portions thereof shall be designated as CONFIDENTIAL and shall be subject to the provisions of this Protective Order. Such designation shall be made on the record during the deposition whenever possible, but a party may designate portions of depositions as CONFIDENTIAL after transcription, provided written notice of the designation is promptly given to all counsel of record within thirty days after notice by the court reporter of the completion of the transcript. All testimony shall be treated as CONFIDENTIAL information until the thirty-day period has expired.

8. A party may object to the designation of particular CONFIDENTIAL information by giving written notice to the party designating the disputed information. The written notice shall identify the information to which the objection is made and the basis for that objection. Pursuant to D.C.COLO.MJ VI.2, the Parties shall meet and confer in "good faith" in accordance with 4 D.C.COLO.LCivR 7.1(a). If

the parties cannot resolve the discovery dispute within **ten business days** after the time the notice is received, the parties shall **jointly** contact Chambers pursuant to the discovery dispute procedures set forth in D.C.COLO.MJ VI.3–4. If this procedure is timely pursued, the disputed information shall be treated as CONFIDENTIAL under the terms of this Protective Order until the Court issues a ruling on the dispute. If this procedure is not timely pursued, the disputed information shall lose its designation as CONFIDENTIAL and shall not thereafter be treated as CONFIDENTIAL in accordance with this Protective Order. The party designating the information as CONFIDENTIAL shall bear the burden of establishing that good cause exists for the disputed information to be treated as CONFIDENTIAL.

9. Unless other arrangements are agreed upon in writing by the parties, within thirty days of the final determination of this action, each person or party who has received CONFIDENTIAL information shall be obligated to return the CONFIDENTIAL information, including any copies, to the designating party, or the receiving party may elect to destroy the CONFIDENTIAL information, including any copies, and certify that it has been destroyed. The receiving party, however, need not destroy or return (a) any Confidential information that it is required by law to maintain or (b) one archival copy of all deposition transcripts and all materials filed with the Court, regardless of whether such materials (including exhibits and appendices) contain or refer to CONFIDENTIAL information.

10. The termination of this action shall not relieve counsel or other persons obligated hereunder from their responsibility to maintain the confidentiality of CONFIDENTIAL information pursuant to this Protective Order. However, the Court will not retain jurisdiction over a matter once the case is closed.

11. Any request to restrict public access to materials designated as CONFIDENTIAL pursuant to this Protective Order must comply with the requirements of D.C.COLO.LCivR 7.2. The party seeking to restrict a document filed with the Court shall bear the burden of establishing that the document should be restricted.

12. This Protective Order may be modified by the Court at any time for good cause shown following notice to all parties and an opportunity for them to be heard.

DATED: 26th of September, 2025

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge

APPROVED:

*/s/ Archie Morgan*
Archie Morgan
14514 Pearl Flats
San Antonio, TX 78253
Telephone: 573.225.5536
Email: keon_keon2@hotmail.com

Pro Se *Plaintiff*

*/s/ David C. Gartenberg*
David C. Gartenberg
dgartenberg@littler.com
Billie Jo M. Risheim
brisheim@littler.com
LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200

Attorneys for Defendant
V2X, Inc.

# EXHIBIT B

**Amended Protective Order**

Morgan v. V2X, Inc.

ECF No. 66

March 30, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:25-cv-01991-SKC-MDB

ARCHIE MORGAN,

Plaintiff,

v.

V2X, INC.,

Defendant.

---

# AMENDED PROTECTIVE ORDER

---

Upon a showing of good cause in support of the entry of a protective order to protect the discovery and dissemination of certain confidential information, it is hereby ORDERED:

1. This Protective Order shall apply to all documents, materials, and information, including without limitation, documents produced, answers to interrogatories, responses to requests for admission, deposition testimony, and other information disclosed pursuant to the disclosure or discovery duties created by the Federal Rules of Civil Procedure.

2. As used in this Protective Order, "document" is defined as provided in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3. Information designated "CONFIDENTIAL" shall be information that is confidential and implicates the privacy or business interests of the parties, including but not limited to: medical and personal financial information, private personnel information, trade secrets, and other proprietary business information.

CONFIDENTIAL information shall not be disclosed or used for any purpose except the preparation and trial of this case.

4. CONFIDENTIAL documents, materials, and/or information (collectively, "CONFIDENTIAL information") shall not, without the consent of the designating party or further Order of the Court, be disclosed except that such information may be disclosed to:

a. attorneys actively working on this case and persons regularly employed or associated with said attorneys whose assistance is required by said attorneys in the preparation for trial, at trial, or at other proceedings in this case;

b. the parties, including their designated representatives and counsel;

c. expert witnesses and consultants retained in connection with this proceeding to whom disclosure is reasonably necessary for this litigation;

d. the Court and its employees ("Court Personnel") and the jury at trial;

e. stenographic and video reporters who are engaged in proceedings necessarily incident to the conduct of this action;

f. deponents, witnesses, or potential witnesses;

g. the Colorado Division of Insurance, law enforcement officers, and/or other government agencies, as permitted or required by applicable state and federal law, including, but not limited to, C.R.S. § 10-1-128(5)(a) and Colo. Ins. Reg. 6-5-1;

h. anyone as otherwise required by law; and

i. other persons by written agreement of the parties.

5. Prior to disclosing any CONFIDENTIAL information to any person identified in sub-paragraph 4(c) (expert witnesses and consultants) or sub-paragraph 4(f) (deponents, witnesses, or potential witnesses), counsel shall provide such person with a copy of this Protective Order and obtain from such person a written acknowledgment stating that he or she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to in camera review by the Court if good cause for review is demonstrated by opposing counsel.

6. Documents are designated as CONFIDENTIAL by placing or affixing on them (in a manner that will not interfere with their legibility) the following or other appropriate notice: "CONFIDENTIAL."

7. Whenever a deposition involves the disclosure of CONFIDENTIAL information, the deposition or portions thereof shall be designated as CONFIDENTIAL and shall be subject to the provisions of this Protective Order. Such designation shall be made on the record during the deposition whenever possible, but a party may designate portions of depositions as CONFIDENTIAL after transcription, provided written notice of the designation is promptly given to all counsel of record within thirty days after notice by the court reporter of the completion of the transcript. All testimony shall be treated as CONFIDENTIAL information until the thirty-day period has expired.

8. A party may object to the designation of particular CONFIDENTIAL information by giving written notice to the party designating the disputed information. The written notice shall identify the information to which the objection is made and the basis for that objection. Pursuant to D.C.COLO.MJ VI.2, the Parties shall meet and confer in "good faith" in accordance with 4 D.C.COLO.LCivR 7.1(a). If

the parties cannot resolve the discovery dispute within **ten business days** after the time the notice is received, the parties shall **jointly** contact Chambers pursuant to the discovery dispute procedures set forth in D.C.COLO.MJ VI.3–4. If this procedure is timely pursued, the disputed information shall be treated as CONFIDENTIAL under the terms of this Protective Order until the Court issues a ruling on the dispute. If this procedure is not timely pursued, the disputed information shall lose its designation as CONFIDENTIAL and shall not thereafter be treated as CONFIDENTIAL in accordance with this Protective Order. The party designating the information as CONFIDENTIAL shall bear the burden of establishing that good cause exists for the disputed information to be treated as CONFIDENTIAL.

9. Unless other arrangements are agreed upon in writing by the parties, within thirty days of the final determination of this action, each person or party who has received CONFIDENTIAL information shall be obligated to return the CONFIDENTIAL information, including any copies, to the designating party, or the receiving party may elect to destroy the CONFIDENTIAL information, including any copies, and certify that it has been destroyed. The receiving party, however, need not destroy or return (a) any Confidential information that it is required by law to maintain or (b) one archival copy of all deposition transcripts and all materials filed with the Court, regardless of whether such materials (including exhibits and appendices) contain or refer to CONFIDENTIAL information.

10. The termination of this action shall not relieve counsel or other persons obligated hereunder from their responsibility to maintain the confidentiality of CONFIDENTIAL information pursuant to this Protective Order. However, the Court will not retain jurisdiction over a matter once the case is closed.

11. Any request to restrict public access to materials designated as CONFIDENTIAL pursuant to this Protective Order must comply with the requirements of D.C.COLO.LCivR 7.2. The party seeking to restrict a document filed with the Court shall bear the burden of establishing that the document should be restricted.

12. *No party or authorized recipient may input, upload, or submit CONFIDENTIAL Information into any modern artificial intelligence platform, including any generative, analytical, or large language model-based tool ("AI"), unless the AI provider is contractually prohibited from: (1) storing or using inputs to train or improve its model; and (2) disclosing inputs to any third party except where such disclosure is essential to facilitating delivery of the service. Where disclosure to a third party is essential to service delivery, any such third party shall be bound by obligations no less protective than those required by this Order. In addition, the AI provider must contractually afford the party or authorized recipient the ability to remove or delete all CONFIDENTIAL information upon request. A party intending to use AI that it contends meets these requirements must retain written documentation of these contractual protections.*

13. This Protective Order may be modified by the Court at any time for good cause shown following notice to all parties and an opportunity for them to be heard.

DATED: 30th of March, 2026.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge

APPROVED:

*_/s/ Archie Morgan_*
Archie Morgan
14514 Pearl Flats
San Antonio, TX 78253
Telephone: 573.225.5536
Email: keon_keon2@hotmail.com

Pro Se *Plaintiff*

*_/s/ David C. Gartenberg_*
David C. Gartenberg
dgartenberg@littler.com
Billie Jo M. Risheim
brisheim@littler.com
LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200

Attorneys for Defendant
V2X, Inc.

# EXHIBIT C

**Order Granting Motion to Amend Protective Order in Part**

Morgan v. V2X, Inc.

ECF No. 65

March 30, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 25–cv–01991–SKC–MDB

ARCHIE MORGAN,

Plaintiff,

v.

V2X, Inc.,

Defendant.

---

**ORDER**

---

Before the Court is Defendant's Motion to Amend the Stipulated Protective Order, seeking to add language that specifically addresses the use of modern artificial intelligence tools ("AI"), and asking the Court to compel disclosure of Plaintiff's AI. (["Motion"], Doc. No. 52). Plaintiff opposes, in part. (Doc. Nos. 58, 59.) Defendant has replied. (Doc. No. 60.) After considering the Motion, applicable law, and facts and circumstances of this case, **the Motion is GRANTED, in part**.

**SUMMARY FOR *PRO SE* PLAINTIFF**

The Court is granting Defendant's Motion, in part. Federal Rule of Civil Procedure 26(b)(3) can protect your mental impressions and litigation preparation materials, but you must disclose the name of any AI tool you used in connection with Confidential Information. This is because you have not demonstrated that identifying the tool itself will reveal your mental impressions or legal strategy, and Defendant needs that information to assess whether

Confidential Information was compromised. The Court is also amending the Protective Order to address AI use. The practical effect is that you may not upload, input, or submit Confidential Information into any mainstream AI tool like standard ChatGPT, Claude, Gemini, or similar platforms.

## BACKGROUND

This is an employment discrimination case where Plaintiff, a self-described "qualified Black American manager," claims he was subjected to a hostile work environment and eventually "terminated based on his race and national origin and in retaliation for protected activities, including opposing sexual harassment and engaging in protected whistleblowing activity." (Doc. No. 35 at 2-3.)

Defendant says Plaintiff was discharged for "legitimate and non-discriminatory, non-retaliatory reasons," after "a workplace complaint was lodged against [Plaintiff]," and Defendant "conducted a thorough investigation, including interviewing and/or taking the statements of more than 30 witnesses." (*Id.* at 3-4.)

*The Dispute*

Defendant brought the instant Motion shortly after Plaintiff moved to compel an insurance policy. (["Plaintiff's MTC"], Doc. No. 48.) Plaintiff's MTC claimed that Defendant was refusing to produce a copy of the insurance policy, as "leverage to force Plaintiff's consent to a modified Protective Order." (Doc. No. 48 at 2.) Specifically, Plaintiff claimed that Defendant sought disclosure of Plaintiff's AI tool, and restrictions on Plaintiff's AI use, before it would provide the insurance policy to Plaintiff. (*Id.*) Plaintiff characterized this as "holding a four-month overdue disclosure 'hostage' to force an amendment to a Protective Order," in a way

that "creates an unfair 'technological gap' by barring a *pro se* litigant from using modern analytical aids while Defendant's firm maintains its own proprietary AI and cloud-based systems." (*Id.* at 3.)

The Court struck Plaintiff's MTC for failure to follow the Court's discovery dispute procedures but set a discovery hearing to address Plaintiff's concerns. (Doc. No. 51.) However, the morning of the discovery hearing, Defendant's counsel emailed Chambers saying:

> *I am writing on behalf of Defendant, V2X, Inc. ("V2X"), with regarding to the discovery conference set in the above-referenced case for 12:00 p.m. MT today, March 3, 2026, in connection with Plaintiff Archie Morgan's motion to compel. See ECF Nos. 48, 51. Mr. Morgan is cc'ed on this correspondence and agrees to the relief requested herein.*
>
> *Per the Court's direction, the parties meaningfully conferred via videoconference on February 26, 2026. Following that conferral, the parties resolved their discovery dispute regarding Mr. Morgan's motion to compel discovery, and V2X has produced to Plaintiff the requested document underlying his motion. Accordingly, the parties jointly request that the Court vacate the discovery conference set for later today.*

Accordingly, the Court vacated the hearing.

Upon careful review of the instant Motion and related materials, the Court finds it is based on some of the same disputes underlying Plaintiff's now stricken MTC. Both parties appear to be using AI in connection with their litigation work, but they disagree on how AI should or should not be used in connection with Confidential Information as defined in the current Protective Order. (Doc. No. 30.)

<u>*The Current Protective Order*</u>

The current Protective Order allows the parties to designate information "Confidential" when it "is confidential and implicates the privacy or business interests of the parties, including but not limited to: medical and personal financial information, private personnel information,

trade secrets, and other proprietary business information." (Doc. No. 30 at 1.) The Protective Order provides that all Confidential Information "shall not, without the consent of the designating party or further Order of the Court, be disclosed," except under limited, specifically enumerated, circumstances. (*Id.* at 2.)

*Defendant's Motion & Plaintiff's Response*

Although Defendant's Motion is styled as one to amend the current Protective Order, it requests two forms of relief. First, Defendant asks the Court to enter an amended protective order with new language that specifically addresses its AI-related concerns. Second, Defendant asks the Court compel Plaintiff to "disclose the identity of the AI tool [Plaintiff] is utilizing in this case so that [Defendant] can determine whether it does, in fact, have appropriate safeguards in place regarding [Defendant's] confidential information." (Doc. No. 52 at 5.)

For his part, Plaintiff does not oppose amending the current Protective Order, but he offers competing language. Plaintiff does however oppose disclosure of his AI, saying "[t]he specific software, research platforms, and analytical tools chosen by a litigant to review discovery, synthesize information, and prepare for trial fall squarely under the Work-Product Doctrine, codified in Federal Rule of Civil Procedure 26(b)(3)." (Doc. No. 58 at 2.)

**ANALYSIS**

AI is forcing litigants and courts to confront difficult questions about how and to what extent longstanding protections will apply when parties use AI to assist them in the litigation process. In particular, courts are beginning to wrestle with practical questions surrounding confidentiality, work product, and privilege. This dispute raises two such questions: (1) to what extent will work product protections apply to a *pro se* litigant's use of AI, and (2) to what extent

should a protective order expressly restrict the use of AI? The Court addresses each question in turn.

**I. Do work product protections apply to *pro se* Plaintiff's use of AI, and in particular, to his tool selection?**

Defendant seeks disclosure of Plaintiff's AI so it can "verify it has appropriate confidentiality restrictions." (Doc. No. 60 at 3; *see also* Doc. No. 52 at 5.) Plaintiff resists, citing Federal Rule of Civil Procedure 26(b)(3). (Doc. No. 58 at 2.) The Court begins by considering the applicability of the Rule, then it moves on to consider the scope of its protections under these facts and circumstances.

**A. Applicability of Rule 26(b)(3)**

Federal Rule of Civil Procedure 26(b)(3)(A) protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Mental impressions, conclusions, opinions, and legal theories, are contents that may be embedded in such documents and tangible materials. *See* Rule 26(b)(3)(B) (referencing Rule 26(b)(3)(A) and recognizing that "those materials" may include mental impressions, conclusions, opinions, and legal theories). Rule 26(b)(3)(B) adds another layer of protection to mental impressions and opinions when they come from "a party's attorney or other representative…" This heightened protection is consistent with the doctrine's origins in *Hickman v. Taylor*, 329 U.S. 495 (1947).

The Tenth Circuit has not weighed in on the applicability of Rule 26(b)(3) to *pro se* litigants, but the plain language broadly refers to things prepared in anticipation of litigation by any *party*, language that would "seem to include material created by a party before retaining a lawyer as well as a party who never actually hires an attorney." Jennifer A. Gundlach & Zeus

Smith, *Expanding the Federal Work Product Doctrine to Unrepresented Litigants*, 30 GEO. J. ON POVERTY L. & POL'Y 53, 62 (2022) (hereinafter "Gundlach & Smith"). This reading is reinforced by the Rule's history. *See generally id.* Prior to the 1970 amendments, some courts had declined to protect work product prepared by anyone other than an attorney, but the Advisory Committee's amendments were specifically designed to extend protection beyond attorneys' work product to materials prepared by or for a *party*. *Id.* at 61–62. Since then, courts routinely interpret the Rule to apply not just to attorney work product, but to a *pro se* litigant's work product as well. *See Carbajal v. St. Anthony Cent. Hosp.,* 2014 WL 2459713, at *2 (D. Colo. June 2, 2014) (assuming without deciding that the work product protection in Rule 26(b)(3) applies to a *pro se* litigant); *Anderson v. Furst,* 2019 WL 2284731, at *4 (E.D. Mich. May 29, 2019) (stating, "a pro se litigant[ ] has a right to assert work product protection" under Rule 26(b)(3)); *Yates v. Cobb Cnty. Sch. Dist.*, 2016 WL 9444452, at *2 (N.D. Ga. Aug. 4, 2016) (finding persuasive authority indicating *pro se* plaintiffs can assert work product protections under Rule 26(b)(3)).

Moreover, courts have broadly interpreted the rule to protect not just litigation preparation materials, but also the mental impressions, opinions, and theories of *parties*. *See, e.g.*, *Moore v. Tri-City Hosp. Auth.*, 118 F.R.D. 646, 649–50 (N.D. Ga. 1988) (finding work product protection applied to plaintiff's diary); *Ortega v. New Mexico Legal Aid, Inc.*, 2019 WL 5864784, at *3 (D.N.M. Nov. 8, 2019) (finding *pro se* plaintiff's mental impressions, opinions and legal theories set forth in diaries, agendas, notebooks, and more, to be protected work product); *Carrier-Tal v. McHugh*, 2016 WL 9185306 (E.D. Va. Feb. 3, 2016) (overruling objections to a magistrate judge's order that found work product protections applied to a *pro se*

plaintiff's mental thoughts, impressions, and litigation strategy); *Moore v. Kingsbrook Jewish Med. Ctr.*, 2012 WL 1078000, at *8 (E.D.N.Y. Mar. 30, 2012) (overruling objections to magistrate judge order that found a *pro se* litigant's personal notes reflected her mental impressions of the deposition and the litigation and were therefore protected work product). Thus, while only attorneys and "other representatives" receive additional heightened protection under Rule 26(b)(3)(B), a party's own mental impressions are nevertheless protected under Rule 26(b)(3), generally.

The importance of applying these protections to *pro se* litigants is magnified in the context of AI—one of the most powerful knowledge tools ever to become available to the masses. This is because *pro se* litigants are forced to act as both party and advocate, simultaneously. *See* Gundlach & Smith, at 70 (quoting *Boegh v. Harless*, 2021 WL 1923365, at *6 n.5 (W.D. Ky. May 13, 2021)). And for the first time in history, widespread access to powerful technology may make that dual role surmountable. A reading of Rule 26(b)(3) that conditions work product protection over AI materials on the involvement of counsel finds no support in the rule's text and would further disadvantage unrepresented litigants. *Pro se* litigants are held to the same standard as represented litigants. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018). They should be afforded the same protections. *See Nielsen v. Soc'y of New York Hosp.*, 1988 WL 100197, at *2 (S.D.N.Y. Sep. 22, 1988) (saying, "[i]f plaintiff were represented by counsel, his attorney's notes in similar circumstances would not be subject to production. A plaintiff appearing *pro se* is entitled to no less protection.").

The Court is mindful of a recent decision that at first blush may appear contrary. *See United States v. Heppner*, 2026 WL 436479 (S.D.N.Y. Feb. 17, 2026). In *Heppner*, the court

observed that work product protections have historically been rooted in shielding the mental impressions and legal theories of attorneys. *Id.* at *3. It concluded that a represented criminal defendant who used an AI tool on his own initiative, without any direction or involvement from their attorney, could not claim work product protection over the resulting materials. *Id.* at *3-4. The *Heppner* decision is of course not binding on this Court, but even if it were, the case is distinguishable for at least two reasons. First, *Heppner* was a criminal matter; this is a civil case governed by the Federal Rules of Civil Procedure, and the text of Rule 26(b)(3) broadly protects the work product of a party, not merely counsel. Second, in *Heppner*, there was a gap between the party and the attorney because the defendant acted entirely apart from his lawyer. No such gap exists in the *pro se* context. A *pro se* litigant is simultaneously the party and the advocate.

Here, like in *Warner v. Gilbarco, Inc.,* 2026 WL 373043 (E.D. Mich. Feb. 10, 2026), Plaintiff can assert work product protections in connection with his AI use. It is true that AI systems like ChatGPT, Claude, Gemini, and others widely available to the public, collect user data for training and other purposes. But in this Court's estimation, that does not eliminate all expectations of privacy or automatically waive protections.

Today, nearly all electronic interaction passes through third-party systems. Google, for example, hosts millions of accounts, and by extension, has access to millions of messages, emails, documents, videos, and more. Moreover, we now know that our phones, computers, in-home smart devices, and other electronics, collect information about us to offer more bespoke services. Does that mean that anyone with a Gmail account has forfeited all rights to confidentiality and privacy? In *United States v. Warshak*, the Sixth Circuit held—albeit in the context of a Fourth Amendment seizure analysis—that email subscribers have a reasonable

expectation of privacy in the contents of emails stored with commercial internet service providers. 631 F.3d 266, 268 (6th Cir. 2010). The court rejected the idea that intermediary access alone extinguishes privacy expectations. *Id.* at 285-86. And though the Tenth Circuit did not fully weigh in on this issue in *United States v. Ackerman*, 831 F.3d 1292, 1308 (10th Cir. 2016), the Supreme Court has since held that the mere fact that information is held by a third-party intermediary, does not automatically extinguish a reasonable expectation of privacy in that information. *Carpenter v. United States*, 585 U.S. 296, 310-16 (2018).

The Fourth Amendment governs searches and seizures and offers a wholly different legal framework from the work product doctrine, but the principle reflected in those cases is informative: routing information through a third-party system does not forfeit all privacy. Moreover, the case for privacy is arguably stronger in the context of modern AI use (as contrasted with email use or cell site location). Unlike a general-purpose search engine, which passively returns results, many modern AI platforms are specifically designed and trained to engage. They invite candid and significant disclosure of information, including sensitive information. They simulate empathy, foster trust, and interact in a way that feels genuine and intimate.[1] Research confirms that people share personal and sensitive information with AI chatbots, often without appreciating what happens to that information once shared. *See* Jennifer King et al., *User Privacy and Large Language Models: An Analysis of Frontier Developers' Privacy Policies*, 8 PROCEEDINGS OF THE AAAI/ACM CONFERENCE ON AI, ETHICS, AND SOCIETY 1465 (2025) (noting that the conversational nature of AI chatbots encourages greater disclosure

[1] The Court does not endorse these practices but simply notes them to describe the environment in which AI users operate.

of personal information than traditional search interfaces); *see also* Molly G. Smith, Thomas N. Bradbury & Benjamin R. Karney, *Can Generative AI Chatbots Emulate Human Connection? A Relationship Science Perspective*, 20 PERSPECTIVES ON PSYCHOLOGICAL SCIENCE 1081 (2025).

Moreover, and in the context of a *pro se* litigant's use of AI to assist with their litigation preparation, the use of AI closely resembles the kind of confidential, strategy-laden iterative work product that Rule 26(b)(3) was designed to protect. In other words, given how AI tools function, it is entirely reasonable for a person to expect some privacy and confidentiality when interacting with these tools, even though they understand a third party is behind the tool collecting and storing their information.

In any event, work product protections are typically waived by disclosure to an adversary, or in circumstances that substantially increase the likelihood that an adversary will obtain the materials. *United States v. Am. Tel. & Tel. Co*., 642 F.2d 1285, 1297-1301 (D.C. Cir. 1980); *see also Warner*, 2026 WL 373043; *In re Qwest Commc'ns Int'l Inc*., 450 F.3d 1179, 1186 (10th Cir. 2006) (citing *Foster v. Hill,* 188 F.3d 1259, 1272 (10th Cir. 1999) for the proposition that "the work-product doctrine is affected when a disclosure is to an adversary"). In other words, even though AI use technically "discloses" information to a third party, it is highly unlikely the information will fall into the hands of an adversary absent some legal process to compel it. Thus, AI interactions do not automatically compromise work product protections. *See Warner,* 2026 WL 373043, at *4 (finding that even if *pro se* plaintiff's AI-generated information is discoverable, it is subject to work product protection and the protections were not waived because ChatGPT and other generative AI programs are tools, not persons, and the disclosure is therefore not to an adversary or in a way likely to get in an adversary's hands.)

In sum, Rule 26(b)(3) applies and offers Plaintiff some level of work product protection in connection with his use of AI. The question is, how far will that protection extend?

**B. Scope of Rule 26(b)(3) Protections**

Plaintiff seeks to shield from disclosure, not only the outputs from the AI system, but the name of the AI tool he is using.

Some courts have applied the work product doctrine broadly to cover, for example, processes not just outputs. *See, e.g.*, *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985) (finding that counsel's selection process and grouping certain documents together out of the thousands produced in litigation was work product entitled to protection under Rule 26(b)(3)). But the Court does not need to delve into that issue here. Even if it is possible that in some contexts disclosing an AI tool can reveal mental impressions or strategy, Plaintiff has not carried his burden to demonstrate that here. *See Martin v. Monfort, Inc.*, 150 F.R.D. 172, 172-73 (D. Colo. 1993) (describing the sequential step approach to resolving work product issues, and noting that once the party seeking discovery establishes relevance, the burden shifts to the resisting party to show the materials are protected work product); *Pouncil v. Branch L. Firm*, 277 F.R.D. 642, 653 (D. Kan. 2011) (noting that the proponent of a work product protection had the burden of establishing that certain calendars, appointment books, and event logs contain information that constitutes protected mental impressions). At best, Plaintiff states, in conclusory fashion and without any legal or factual support, that "[t]he selection and use of specific litigation support tools reveal a party's mental impressions, case strategy, and legal resource allocation." (Doc. No. 58 at 2; *see also* Doc. No. 58-1 (offering similar conclusory statements.).) But the Court cannot discern from that, or any other information Plaintiff provides, how disclosing the name of an AI

tool would reveal Plaintiff's mental impressions or case strategy. Moreover, Defendant's request for the name of the tool is legitimate and reasonable. If Plaintiff already submitted Confidential Information to some AI system—and it appears he has—Defendant is entitled to know which system.

## II. To what extent should a protective order restrict AI use?

The current Protective Order arguably covers the use of AI already,[2] but the parties appear to agree that a clarifying amendment is necessary.

Defendant asks the Court to add the following language to the Protective Order:

> *Restrictions on Use of AI to process Confidential or Highly Confidential Information: Absent notice to and written permission from the producing party, any person or entity authorized to have access to Confidential Information under the terms of this Order:*
>
> *a. shall not use or employ any application, service, or analytical software that will transfer, transmit, send or allow access to Confidential Information, in whole or in part – including metadata, unless such application, service or analytical software:*
>
> > *i. does not further transfer the Confidential Information to another provider, unless the receiving party has confirmed through due diligence that the security and privacy controls of and contractual obligations for such provider allow that party to comply with its obligations under this Protective Order; and*
> >
> > *ii. provides the receiving party the ability to remove or delete from the system all Confidential information.*
>
> *b. shall not permit any Confidential Information to be used to train any artificial intelligence tool.*

---

[2] The current Protective Order broadly prohibits disclosure, not just to a person or entity, but generally and in any fashion, except under specifically enumerated circumstances. (Doc. No. 30.) Thus, "disclosure" in the form of transmission to an AI system with a provider that stores the Confidential Information in their own databases, and/or for their own purposes, may violate the current Protective Order.

> *These restrictions apply to the use of advanced or generative AI tools from OpenAI's GPT or ChatGPT, Harvey.AI, Google's Bard, Anthropic's Claude, and similar tools or applications.*

(Doc. No. 52 at 2-3.) Plaintiff says Defendant's proposed language is "overly broad, technologically vague, and improperly attempt[s] to dictate the specific litigation strategies and work-product tools utilized by a pro se litigant." (Doc. No. 58 at 1-2.) Plaintiff also argues that "Defendant's language fails to account for the capabilities of professional-grade, closed-circuit platforms that already ensure strict data isolation and prohibit machine learning training on user data." (*Id.*) Plaintiff proposes the following language instead:

> *Any party utilizing third-party software, cloud-based platforms, or artificial intelligence tools for the storage, processing, review, or analysis of Confidential Information must ensure that such tools operate within a secure, closed-circuit environment. No Confidential Information may be uploaded to any platform or service whose Terms of Service permit the provider to utilize the uploaded data for the training of Large Language Models (LLMs), machine learning algorithms, or for any internal human-in-the-loop review.*

(Doc. No. 58 at 5.) Defendant says Plaintiff's proposed language does not offer sufficient safeguards. (Doc. No. 60 at 3.) Defendant also advocates for its own proposal because it is "narrowly-tailored." (*Id.*)

Upon careful consideration of the issues and close review of the competing provisions, the Court finds it appropriate to amend the Protective Order with a provision similar to Defendant's proposed provision, but tailored to the practical realities of this litigation and the current dispute.

Defendant is correct that Plaintiff's proposal does not offer sufficient guardrails. It allows Confidential Information to be uploaded into an AI system so long as it operates in "a secure, closed-circuit environment," which seems to address cybersecurity concerns about unauthorized

access rather than the distinct risks associated with today's widely available AI platforms. (*See generally* Doc. No. 58-1.) Moreover, to the extent Plaintiff's proposal *does* address the unique risks associated with AI, it does so in a very limited and vague way, prohibiting the uploading of Confidential Information only when the provider's terms of service "permit the provider to utilize the uploaded data for the training of Large Language Models (LLMs), machine learning algorithms, or for any internal human-in-the-loop review." (Doc. No. 58 at 5.)

Defendant's proposed language is better, but not without its shortcomings. It is, as Defendant says, narrowly-tailored, but not in the way Defendant touts. Defendant's proposed language appears crafted to fit the precise bounds of Defendant's contractual engagement with AI providers, resulting in an over-engineered provision that feels vague to Plaintiff. (*See* Doc. No. 58 at 1 (saying the provision is broad, vague, and an attempt to dictate his strategies and tools).)[3]

Thus, instead of adopting the parties' proposals, the Court will amend the Protective Order to include the following AI-specific language:

> *No party or authorized recipient may input, upload, or submit CONFIDENTIAL Information into any modern artificial intelligence platform, including any generative, analytical, or large language model-based tool ("AI"), unless the AI provider is contractually prohibited from: (1) storing or using inputs to train or improve its model; and (2) disclosing inputs to any third party except where such disclosure is essential to facilitating delivery of the service. Where disclosure to a third party is essential to service delivery, any such third party shall be bound by obligations no less protective than those required by this Order. In addition, the AI provider must contractually afford the party or authorized recipient the ability to remove or delete all CONFIDENTIAL information upon request. A party intending to use AI that it contends meets these requirements must retain written documentation of these contractual*

[3] Defendant's proposed provision also references "Google's Bard," which has since been rebranded as Gemini.

*protections.*

The Court recognizes that practically speaking, and in light of the current state of AI, this provision will (at least for now) bar the parties from using most, if not all, mainstream low-to-no-cost AI to process Confidential Information. This type of restriction disadvantages *pro se* litigants.[4] Enterprise-tier AI accounts that satisfy these requirements may be available only through organizational procurement processes, or at costs that a *pro se* litigant is unlikely to bear.[5] But the Court cannot ignore the real risks associated with mainstream tools that persistently collect and store data and could compromise confidentiality.

To be clear, the Court does not intend to leave *pro se* Plaintiff without the benefits of AI. Modern AI tools may be used in many ways that do not involve uploading Confidential Information, and nothing in this particular Order restricts those uses.[6] What this Order requires is that Confidential Information not be entrusted to platforms that lack the contractual safeguards described above, regardless of the sophistication or apparent trustworthiness of the tool.

## CONCLUSION

For these reasons, the Court **GRANTS Defendant's Motion in part, and DENIES it in part** as follows:

---

[4] In light of this restriction, the parties are strongly cautioned against the over-designation of Confidential Information.

[5] This highlights a growing problem in the age of AI: as large firms pour thousands of dollars into enterprise-grade AI and make their use of AI more secure, efficient, effective, and powerful, how will a *pro se* litigant or a litigant who cannot afford big-ticket legal services and better AI keep up?

[6] Still, the parties must still comply with all applicable rules, litigation obligations, and the presiding judge's practice standards and orders when using AI.

(1) The Court will enter an amended protective order reflecting the AI-specific provision set forth in this Order; and

(2) Plaintiff is **ORDERED** to, within ten (10) days of this Order, disclose the name of any AI platform he used to upload, submit, process, review, analyze, organize, or store any information designated by Defendant as "CONFIDENTIAL" under the Protective Order.

(3) Defendant is **ORDERED** to, within ten (10) days of Plaintiff's disclosure, file a Notice with this Court indicating whether it intends to seek relief from this Court (and if so, what relief), or whether it has mitigated any potential harm or reached agreement with Plaintiff, such that no relief will be necessary.

Dated this 30th day of March, 2026.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge